MICHAEL C. TU (State Bar No. 186793)
*mctu@cooley.com*
BENJAMIN B. SWEENEY (State Bar No. 313650)
*bsweeney@cooley.com*
COOLEY LLP
355 South Grand Street, Suite 900
Los Angeles, California 90071
Telephone:   (213) 561-3250
Facsimile:   (213) 561-3244

*Attorneys for Defendants*
*Everbridge, Inc., Patrick Brickley,*
*Jaime Ellertson and David Meredith*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SYLEBRA CAPITAL PARTNERS MASTER FUND LTD, SYLEBRA CAPITAL PARC MASTER FUND, AND SYLEBRA CAPITAL MENLO MASTER FUND, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>EVERBRIDGE, INC., DAVID MEREDITH, PATRICK BRICKLEY, AND JAIME ELLERTSON,<br><br>Defendants. | Case No. 2:22-cv-2249-FWS-RAO<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date:   March 9, 2023<br>Time:   10:00 a.m.<br>Dept:   10D<br>Judge:   Hon. Fred W. Slaughter<br><br>*Date Action Filed:  April 4, 2022* |

COOLEY LLP
ATTORNEYS AT LAW

**TABLE OF CONTENTS**

                                                                          **Page**

I.      INTRODUCTION ...........................................................................................1

II.     PLAINTIFFS DO NOT STATE A CLAIM UNDER SECTION 10(B). .......2

        A.    The FAC Does Not Establish a "Strong Inference" of Scienter. .........2

              1.    The CW allegations are unreliable and insufficient. .................3

                    a.    CW1 is not described with sufficient particularity,
                          and the statements attributed to her are not
                          indicative of scienter. ......................................................3

                    b.    The remaining CWs offer no scienter-supporting
                          statements. ........................................................................5

              2.    The FAC's "core operations" allegations are insufficient..........6

              3.    Neither Meredith's departure nor his bonuses suggest
                    scienter. ...................................................................................7

              4.    Even "holistically," the scienter allegations are
                    insufficient. .............................................................................9

        B.    No Actionable False or Misleading Statements Are Alleged...............9

              1.    The Integration-Related Theory Should Be Rejected. ..............9

                    a.    The challenged statements are non-actionable
                          puffery. ...........................................................................10

                    b.    The FAC cannot demonstrate falsity............................11

                    c.    The statements fall under the Reform Act's Safe
                          Harbor...............................................................................13

                    d.    Any misstatements were immaterial. ............................14

              2.    Allegations of a "Change in Strategy" Are Non-
                    Actionable...............................................................................14

              3.    Allegations Regarding Disclosure of "Acquired"
                    Revenue. ..................................................................................16

COOLEY LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS
(continued)

|  |  |  |  | Page |
|---|---|---|---|---|
|  | a. | Revenue from acquired companies was publicly disclosed. | | 16 |
|  | b. | The statements are protected under the Reform Act's safe harbor. | | 18 |
|  | c. | The FAC does not allege any false statement. | | 19 |
|  | C. | The December Press Release Is Unconnected to the Alleged Fraud. | | 19 |
| III. | | THE SECTION 20(A) CLAIMS MUST BE DISMISSED. | | 20 |
| IV. | | CONCLUSION | | 21 |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Peregrine,*
2014 WL 2444373 (C.D. Cal. May 1, 2014) ................................................................. 5

*In re BofI Holding, Inc. Sec. Litig.,*
977 F.3d 781 (9th Cir. 2020) ....................................................................................... 20

*Brady v. Delta Energy and Commc'ns, Inc.,*
2022 WL 3643659 (C.D. Cal. Aug. 5, 2022) ............................................................ 2, 9

*Brody v. Transitional Hosps. Corp.,*
280 F.3d 997 (9th Cir. 2002) ....................................................................................... 16

*Carson Optical Inc. v. eBay Inc.,*
202 F. Supp. 3d 247 (E.D.N.Y. 2016) ......................................................................... 10

*Children's Hosp. & Med. Ctr. v. Countrywide Fin.,*
2011 WL 13220509 (C.D. Cal. Aug. 22, 2011) .......................................................... 20

*City of Roseville Ret. Sys. v. Sterling Corp.,*
963 F. Supp. 2d 1092 (E.D. Wash. 2013) .................................................................... 12

*City of Sunrise v. Oracle Corp.,*
2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) ............................................................. 19

*In re Cooper Sec. Litig.,*
691 F. Supp. 2d 1105 (C.D. Cal. 2010) ....................................................................... 11

*Costabile v. Natus Med. Inc.,*
293 F. Supp. 3d 994 (N.D. Cal. 2018) ........................................................................... 5

*In re Cutera Sec. Litig.,*
610 F.3d 1103 (9th Cir. 2010) .......................................................................... 11, 14, 18

*Cutler v. Kirchner,*
696 F. App'x 809 (9th Cir. 2017) ................................................................................. 20

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005)……………………………………………20

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ....................................................................7

*In re Dot Hill Sys. Corp. Sec. Litig.*,
594 F. Supp. 2d 1150 (S.D. Cal. 2008) ...................................................10

*In re Downey Sec. Litig.*,
2009 WL 736802 (C.D. Cal. Mar. 18, 2009) .............................................7

*Ellington Mgmt. Group, LLC v. Ameriquest Mortg. Co.*,
2009 WL 3170102 (S.D.N.Y. Sept. 29, 2009) ..........................................3

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .................................................................3

*Feola v. Cameron*,
2016 WL 11750382 (C.D. Cal. Aug. 25, 2016) ........................................7

*Ferraro Fam. Found., Inc. v. Corcept Ther. Inc.*,
2021 WL 3748325 (N.D. Cal. Aug. 24, 2021) ........................................20

*Fosbre v. Las Vegas Sands Corp.*,
2013 WL 5970250 (D. Nev. Nov. 7, 2013) .............................................18

*In re FoxHollow Techs., Inc. Sec. Litig.*,
2008 WL 220600 (N.D. Cal. May 27, 2008) ...........................................15

*Garcia v. Gen. Motors LLC*,
2019 WL 247227 (C.D. Cal. Jan. 17, 2019)............................................10

*Grouse River Outfitters Ltd. v. NetSuite, Inc.*,
2017 WL 6539854 (N.D. Cal. Dec. 21, 2017) ........................................10

COOLEY LLP
ATTORNEYS AT LAW

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Heliotrope Gen., Inc. v. Ford Motor Co.*,

   189 F.3d 971 (9th Cir. 1999) ................................................................... 15

*Hutton v. McDaniel*,

   264 F. Supp. 3d 996 (D. Ariz. 2017) ........................................................ 7

*In re Hypercom Corp. Sec. Litig.*,

   2006 WL 726791 (D. Ariz. Jan. 25, 2006) .......................................... 3, 4

*In re Immune Response Sec. Litig.*,

   375 F. Supp. 2d 983 (S.D. Cal. 2005) ..................................................... 10

*Jui-Yang Hong v. Extreme Networks, Inc.*,

   2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) ........................................ 10

*Keeney v. Larkin*,

   102 F. App'x 787 (4th Cir. 2004) ............................................................ 14

*Kipling v. Flex Ltd.*,

   2020 WL 2793463 (N.D. Cal. May 29, 2020) ...................................... 3, 4, 5, 19

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,

   667 F.3d 1331 (10th Cir. 2012) ............................................................... 10

*In re LexinFintech Sec. Litig.*,

   2021 WL 5530949 (D. Or. Nov. 24, 2021) ............................................ 12

*Limantour v. Cray Inc.*,

   432 F. Supp. 2d 1129 (W.D. Wash. 2006) ............................................... 4

*Lomingkit v. Apollo Ed. Group Inc.*,

   275 F. Supp. 3d 1139 (D. Ariz. 2017) ..................................................... 13

*Macomb Cnty. Empl. Ret. Savings v. Align Tech., Inc.*,

   39 F.4th 1092 (9th Cir. 2022) ................................................................. 10

*Mulligan v. Impax Lab, Inc.*,

   36 F. Supp. 3d 942 (N.D. Cal. 2010) ...................................................... 10

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Norfolk Cnty. Ret. Sys. v. Solazyme,*

2018 WL 3126393 (N.D. Cal. June 26, 2018) .......................................................6

*Nuveen Mun. Fund v. City of Alameda,*

730 F.3d 1111 (9th Cir. 2013) ................................................................20

*In re NVIDIA Corp. Sec. Litig.,*

768 F.3d 1046 (9th Cir. 2014) ................................................................6

*Or. Pub. Empl. Ret. Fund v. Apollo Group Inc.,*

774 F.3d 598 (9th Cir. 2014) ................................................................17

*In re Oracle Corp. Sec. Litig.,*

627 F.3d 376 (9th Cir. 2010) ................................................................12

*Pac Dawn LLC v. Pritzker,*

831 F.3d 1166 (9th Cir. 2016) ................................................................11

*Paciga v. Invuity Inc.,*

2019 WL 3779694 (N.D. Cal. Aug. 12, 2019) ................................................................3

*Par Investment v. Aruba Network,*

681 F. App'x 618 (9th Cir. 2017) ................................................................17

*Paracor Fin. Inc. v. GE Corp.,*

96 F.3d 1151 (9th Cir. 1996) ................................................................20

*Police Ret. System of St. Louis v. Intuitive Surgical, Inc.,*

759 F.3d 1051 (9th Cir. 2014) ................................................................6, 11

*In re Quality Systems Sec. Litig.,*

865 F.3d 1130 (9th Cir. 2017) ................................................................3

*In re Restoration Robotics Sec. Litig.,*

417 F. Supp. 3d 1242 (N.D. Cal. 2019) ................................................................14

*Retail Wholesale v. Hewlett Packard Co.,*

845 F.3d 1268 (9th Cir. 2017) ................................................................10, 11

COOLEY LLP
ATTORNEYS AT LAW

vi

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Rok v. Identiv, Inc.*,
   2017 WL 35496 (N.D. Cal. Jan. 4, 2017) ...........................................................5

*S. Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) .............................................................................7

*Sgarlata v. PayPal*,
   409 F. Supp. 846 (N.D. Cal. 2019)......................................................................5

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) .............................................................................4

*Smith v. Circuit City Stores*,
   286 F. Supp. 2d 707 (E.D. Va. Feb. 10, 2003).................................................17

*In re Syncor Int'l Corp. Sec. Litig.*,
   239 F. App'x 318 (9th Cir. 2007)........................................................................8

*Tellabs, Inc. v. Makor Issues*,
   551 U.S. 308 (2007) ...........................................................................................1

*Valley Nat. Bank of Ariz. v. Trustee for Westgate*,
   609 F.2d 1274 (9th Cir. 1979).........................................................................17

*In re WageWorks, Inc. Sec. Litig.*,
   2020 WL 2896547 (N.D. Cal. June 1, 2020) .....................................................8

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021).........................................................................14

*Xiaojiao Lu v. Align Tech., Inc.*,
   417 F. Supp. 3d 1266 (N.D. Cal. 2019).............................................................11

*Zee v. Green Dot Corp.*,
   2013 WL 12133841 (C.D. Cal. May 2, 2013)...................................................13

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009)....................................................................5, 7, 8

COOLEY LLP
ATTORNEYS AT LAW

REPLY MEMORANDUM ISO MOTION TO DISMISS
CASE NO. 2:22-CV-2249-FWS-RAO

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Statutes & Other Authorities**

15 U.S.C.

  §78u-5 ................................................................................................................ 14, 18

Federal Rules of Civil Procedure

  9(b) ...................................................................................................................... 2

## I.   INTRODUCTION

Plaintiffs' Opposition is more notable for what it does not say, than for what it does. Though replete with bluster, it does nothing to refute defendants' showing that the claims against them should be dismissed for several reasons.

<u>First</u>, nothing in the Opposition changes the reality that neither the unreliable statements of CW1, a purported former Everbridge employee about whom no details are offered, nor any of the other theories postulated by plaintiffs (e.g., "core operations" theory, Meredith's departure) can supply the required strong inference of scienter, which must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues*, 551 U.S. 308, 314 (2007).

<u>Second</u>, all three categories of alleged misrepresentations suffer from multiple defects, each of which is sufficient to warrant dismissal:

**(i)** The challenged integration-related statements are not actionable as a matter of law because they consist of corporate puffery and are controverted only by unreliable and easily discounted statements of a few alleged CWs.[1] Many of these statements are also either forward-looking and covered by the Reform Act's safe harbor, or are so obviously immaterial that they cannot provide the basis for a claim.

**(ii)** The vague allegations of some undisclosed strategy change rely entirely on a disingenuously incomplete and highly misleading characterization of defendants' statements. The actual statements make clear that far from disclaiming them, Everbridge acknowledged revenue and customer acquisition as important aspects of its M&A strategy. FAC ¶73 (pre-class period statement by Ellertson touting "buying into a market, a new market or a geography, . . . and not only captur[ing] that revenue on our platform but then doubl[ing] or tripl[ing] that revenue"). The handful of alleged CW statements on this topic are unreliable and should be disregarded.

---

[1] Plaintiffs also resort to misrepresenting defendants' statements. For instance, plaintiffs repeatedly assert that defendants claimed in August and November of 2021 that the xMatters integration was complete and "already integrated," notwithstanding that the ***full text of the statements they selectively edit out*** clearly state that integration was ongoing and "ha[d] a long way to go." Supp. RJN, Ex. 20 at 10.

**(iii)** In response to the reality that revenue attributable to acquired companies—information that Everbridge was under no duty to disclose—*was nevertheless disclosed* in public SEC filings, the Opposition, rather than dispute those disclosures, instead argues that the Court should close its eyes and refuse to take judicial notice of them, or alternatively, that they should not be considered because *one* of the three filings fell outside plaintiffs' self-selected class period.  The remaining allegations related to anticipated revenue from xMatters fare no better, as they are forward-looking, accompanied by meaningful cautionary language, and thus protected under the Reform Act's safe harbor.  The FAC also cannot establish falsity.

Third, the FAC fails to plead loss causation for the December 2021 release, which disclosed no facts to contradict or call into question the challenged statements.

Rather than address these shortcomings, the Opposition doubles down on what plaintiffs themselves now essentially concede is an impermissible puzzle pleading, Opp. at 5:16 ("*each allegation adds a piece to the puzzle*"), restating the same conclusory allegations, relying upon misleadingly edited and incomplete quotations, backtracking from some allegations, and creating others not found anywhere in the FAC.  The exacting pleading requirements for securities fraud claims under the Reform Act, Rule 9(b) and Ninth Circuit precedent demand well-pled allegations establishing a strong inference of scienter and actionable misstatements.  Conclusory assertions and otherwise nonactionable supposed statements, based on unreliable hearsay from CWs, do not suffice, no matter how lengthy the complaint.

**II.    PLAINTIFFS DO NOT STATE A CLAIM UNDER SECTION 10(b).**

**A.    The FAC Does Not Establish a "Strong Inference" of Scienter.**

Claims of securities fraud must be accompanied by a "strong inference of scienter," and will only survive a motion to dismiss where "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Brady v. Delta Energy*, 2022 WL 3643659, at *7 (C.D. Cal. Aug. 5, 2022) (Slaughter, J.).  Plaintiffs'

Cooley LLP
Attorneys at Law

approach to establishing the required "strong inference" is to simply layer one conclusory and deficient allegation on top of another. But merely "bulking up" a complaint's size is insufficient. *See Ellington Mgmt. Group, LLC v. Ameriquest Mortg. Co.*, 2009 WL 3170102, at \*2 (S.D.N.Y. Sept. 29, 2009) (despite "flood of detail, the Court c[ould] not discern an adequate allegation of scienter"). The scienter requirement is "not an easy standard to comply with . . . [and] was not intended to be." *Eminence v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). To preserve and enforce this important requirement and to protect companies from frivolous and costly litigation, the Ninth Circuit has erected a number of important guardrails.

### 1. *The CW allegations are unreliable and insufficient.*

One such guardrail is the requirement (1) that "confidential witnesses . . . be described with sufficient particularity to establish their reliability and personal knowledge"; and (2) that "those statements . . . must themselves be indicative of scienter." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144–45 (9th Cir. 2017).

#### a. <u>*CW1 is not described with sufficient particularity, and the statements attributed to her are not indicative of scienter.*</u>

CW1, the only CW who even purports to have had any scienter-supporting contacts with defendants, is not described with anything approaching the "particularity [sufficient] to establish [her] reliability and personal knowledge." *Id.* at 1144–45.[2] Her description is precisely like those rejected by courts in this circuit.[3]

Plaintiffs assert *for the first time* in the Opposition that CW1 "worked on Everbridge's M&A deals, including xMatters . . . [and] revenue forecasting." Opp.

---

[2] Plaintiffs assert in conclusory fashion that the statements attributed to CW1 "all-but [sic] establish Defendants' liability." Opp. at 27. But the statements attributed to CW1 do not pass muster even at the pleadings stage. *See* Mem. at 13–15, 31–32.

[3] *Compare* FAC ¶48 (CW1 "was two levels removed from the CEO, Meredith") *with Paciga v. Invuity Inc.*, 2019 WL 3779694, at \*6 n.1 (N.D. Cal. Aug. 12, 2019) (discounting CW statements lacking "important details about the proffered witnesses' employment information, including 'his or her job description and responsibilities'"); *Kipling v. Flex*, 2020 WL 2793463, at \*16 (N.D. Cal. May 29, 2020) (description of CWs as "Flex Senior Director for Global Account Management" and "Human Resources Generalist" insufficient to furnish required "'large degree of specificity,' including not just the witnesses' job description, but also his or her 'responsibilities'"); *In re Hypercom Corp. Sec. Litig.*, 2006 WL 726791, at \*6–8 (D. Ariz. Jan. 25, 2006) (rejecting several CWs as unreliable).

Cooley LLP
Attorneys at Law

REPLY MEMORANDUM ISO MOTION TO DISMISS
CASE NO. 2:22-CV-2249-FWS-RAO

at 28.  These descriptions, too, remain impermissibly vague and too indefinite to allow for a plausible inference that CW1 would, in fact, have had access to the alleged information.  *See Hypercom*, 2006 WL 726791, at *6 (CW description insufficient absent explanation of "*how* CW[] would know" information).  After all, "working on" a project—absent some independent understanding of the employee's role and responsibilities—could mean just about anything at any level of involvement.  In any event, the Opposition's newly "pled" assertions regarding CW1 appear nowhere in the FAC.  FAC ¶¶131 (alleging only generic "knowledge of Everbridge's M&A process and transactions"),[4] 134 (generic reference to "forecasts," with no indication that CW1 was involved in creating or reviewing them).  Plaintiffs' suggestion that their admittedly "watered down" description of CW1 should be overlooked on account of some supposed vague and entirely speculative "fear[] of retaliation," Opp. at 29, should also be rejected.[5]  *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 983 n.12 (9th Cir. 1999) (rejecting *in camera* review of CWs' details); *Kipling*, 2020 WL 2793463, at *15 (rejecting similar "retaliation" argument).

The supposed "buffer" statement by Meredith is also not alleged with anything approaching the required specificity.[6]  The FAC offers no indication as to when, where, or in what medium the supposed comment was made.  FAC ¶¶4 ("According to CW1, . . . the rationale Meredith provided was that the discrepancy in figures was to "buffer" the declines in Everbridge's organic revenue."), 24, 133, 221, 341 (same).  It is not even clear whether "Meredith provided" the rationale to CW1 at all, or if she claims to have heard it *from someone else*.  It is also impossible to discern what,

---

[4] Accepting as adequate the conclusory allegation that CW1 "had knowledge of Everbridge's M&A process and transactions," FAC ¶131, would essentially do away with the requirement regarding job "descriptions and responsibilities."

[5] Plaintiffs have not even attempted to identify any supporting authority to defend the propriety of their improper *in camera* offer.

[6] CW1's other statements regarding "acquisitions before xMatters" are equally problematic, given their reliance on CW1's supposedly "speaking with" unidentified employees.  *Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129, 1142–43 (W.D. Wash. 2006) (disregarding CW allegation that "'talk that [the corporation] was fudging its books'" as "mere[] regurgitati[on of] gossip and innuendo").

COOLEY LLP
ATTORNEYS AT LAW

exactly, Meredith is even supposed to have said—every reference to the alleged "buffer" comment suspiciously and conspicuously quotes *only that single word from CW1*. Courts routinely reject allegations suffering from even one of these defects. *See Kipling*, 2020 WL 7261314, at *11 (rejecting CW hearsay that "fail[ed] to (1) specify who gave them this alleged information; (2) provide dates or details of the discussions; and (3) explain how these colleagues knew the information"); *Costabile v. Natus Med.*, 293 F. Supp. 3d 994, 1010 (N.D. Cal. 2018) (rejecting CW statements lacking "context surrounding when, why, or how these individuals provided [the CW] with information"); *Zucco v. Digimarc*, 552 F.3d 981, 997 (9th Cir. 2009) ("vague hearsay . . . not enough to satisfy *Daou*'s reliability standard"); *Anderson v. Peregrine*, 2014 2444373, at *5 (C.D. Cal. May 1, 2014) (disregarding allegations "replete with qualifying phrases that suggest [the CW] is engaging in speculation").

### b. *The remaining CWs offer no scienter-supporting statements.*

The Opposition argues that "multiple CWs" offer "specific details demonstrating Defendants intended to deceive investors." Opp. at 30. However, with the exception of CW1, not a single CW even *purports* to have evidence of "intentional deceit" or "deliberate recklessness" on the part of defendants. Plaintiffs' protestations confirm this: for example, they point to statements attributed to CW 9 and CW 3, that defendants "provided 'zero resources'" and "showed 'no effort'" to integrate acquired companies. Opp. at 31. But these are merely regurgitations of the underlying falsity allegations, doing nothing to "provide personal knowledge [defendants] made knowingly false or misleading statements" or bolster the FAC's conclusory allegations regarding defendants' "states of mind," and should therefore be disregarded. *Rok v. Identiv, Inc.*, 2017 WL 35496, at *14 (N.D. Cal. Jan. 4, 2017).[7] Plaintiffs' reference to CW 6 similarly adds nothing. That Brickley and Meredith may have attended meetings during which a "strategy" of "five to six acquisitions

---

[7] *Accord Sgarlata v. PayPal*, 409 F. Supp. 846, 858 n.6 (N.D. Cal. 2019) ("Confidential statements can only create a strong inference of scienter when the reporting witness has reliable personal knowledge of the defendants' mental state.").

COOLEY LLP
ATTORNEYS AT LAW

per year" was discussed has no bearing on whether they were aware that *other* strategy-related representations were false or misleading. After all, the number or size of acquisitions is not an M&A "strategy"—if it were, plaintiffs' strategy theory would make even less sense, as the details of each acquisition were publicly reported.

### 2. The FAC's "core operations" allegations are insufficient.

Plaintiffs' reliance on the so-called "core operations" theory also falls short. The Opposition suggests this is the "exceedingly rare" case in which the supposed misrepresentation is so central to the defendants' responsibilities that it would be "absurd" to suggest they were unaware of the true facts. Whether the CEM suite *overall* was "critical to the Company's growth plan," Opp. at 32, establishes nothing with respect to defendants' alleged awareness of *particular* challenges allegedly encountered in the integration process.[8] Federal courts routinely reject similar arguments. *See, e.g.*, *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d, 1046, 1064 (9th Cir. 2014) (fact that problem at center of alleged fraud "concerned [NVIDIA's] flagship product and was cause for concern to [NVIDIA's] two largest customers" insufficient to invoke core-operations inference); *Norfolk Cnty. Ret. Sys. v. Solazyme*, 2018 WL 3126393, at *9 (N.D. Cal. June 26, 2018) (declining to draw inference even where misrepresentations concerned "central cornerstone" of defendants' strategy").

Plaintiffs also assert that "Meredith and Brickley had access to the Company's sales data and publicly admitted their close monitoring of the Company's sales efforts." Opp. at 32. The only support offered for these supposed "admi[ssions]" of "close monitoring," however, are statements in which Meredith and Brickley acknowledged that **the Company** tracked sales and "growth bookings"; these unremarkable confirmations do not come close to establishing each defendant's "detailed involvement in the minutia of [the] company's operations," *Police Ret. System of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014),

---

[8] This theory is particularly farfetched considering that revenue from the acquired companies accounted for less than 10% of net annual revenue. Mem. at 29-30.

COOLEY LLP
ATTORNEYS AT LAW

REPLY MEMORANDUM ISO MOTION TO DISMISS
CASE NO. 2:22-CV-2249-FWS-RAO

or that they had "actual access to the disputed information," *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008).[9]   Finally, even if the FAC could establish each defendant's "actual access" to sales or bookings data, no misstatement or omission has been alleged regarding the disclosure of that information.  Absent some showing that defendants had access to *and accessed* the information actually in dispute—i.e., information that would demonstrate the falsity of the three categories of challenged statements—plaintiffs cannot make use of the disfavored core operations theory.  *Dearborn Heights v. Align Tech, Inc.*, 856 F.3d 605, 620–21 (9th Cir. 2017) (no scienter inference where defendants "had direct access" to information through a "data room," without allegation they "personally accessed the data room"); *Zucco*, 552 F.3d at 1000 ("allegations [must be] buttressed with '*detailed and specific* allegations about management's exposure to factual information'").

### 3.  *Neither Meredith's departure nor his bonuses suggest scienter.*

As previously explained, Mem. at 12–13, and reflected in judicially noticeable public statements, RJN, Ex. 17, Meredith departed Everbridge in December 2021 to accept a CEO position at another industry-leading company.[10]   Nothing about his departure was "suspicious" or supports an inference of scienter.  *See In re Downey Sec. Litig.*, 2009 WL 736802, at *10–11 (C.D. Cal. Mar. 18, 2009) ("Resignations or terminations by themselves do not support a strong inference of scienter."); *accord Feola v. Cameron*, 2016 WL 11750382, at *10–11 (C.D. Cal. Aug. 25, 2016).  Simply labeling the departure suspicious—without any facts—does not make it so.  *See* FAC ¶¶323-25.  Indeed, the only fact Plaintiffs even try to connect to Meredith's departure—that it "was announced on the same day the Company reduced 2022

---

[9] FAC ¶¶320 (Brickley: "And we'll be tracking internally, certainly, watching the products per customer go up."), 321 (Meredith: "[W]e have an internal metric around what we call growth bookings, which is basically cross sell and upsell.").  Other references, to the effect that defendants had **general** responsibility and/or knowledge of the Company's acquisitions, Opp. at 34, are similarly unhelpful to plaintiffs' case.

[10] Plaintiffs suggest that reference to this judicially noticeable fact "is improper." Opp. at 33.  However, they do not dispute, and thus concede, its authenticity. *See Hutton v. McDaniel*, 264 F. Supp. 3d 996, 1008 (D. Ariz. 2017).

COOLEY LLP
ATTORNEYS AT LAW

revenue guidance to a historically low figure"—is demonstrably wrong. FAC ¶325. As the opening brief made clear, Everbridge did *not* lower guidance on December 9, 2021; that was its *initial guidance for 2022*.[11]  Mem. at 1 n.1.

That the Company conducted a "comprehensive review" of its strategy in the months *following* his departure (thus logically divorced from his reasons for leaving) also does not support an inference of scienter.  *Zucco*, 552 F.3d at 1001–02 ("bare fact of [CFO's] retirement . . . just prior to the disclosure of improper accounting . . . cannot support [the] allegations of scienter").  Plaintiffs' cases confirm as much.  In *PPG Indus.*, Judge Klausner observed that "[a] resignation or termination provides evidence of scienter *only when it is accompanied by additional evidence of the defendant's wrongdoing.*"  2018 WL 6787351, at *7 (C.D. Cal. Dec. 21, 2018). There, plaintiffs *did* supply such "additional evidence": namely, the defendant was placed on leave at the same time the Company began investigating accounting violations and it later announced his termination upon completion of that investigation.  *Id.*  Similarly, in *WageWorks*, the court inferred scienter because of specific indications that the "defendant corporation forced certain employees to resign from its knowledge of the employee's role in the fraudulent representations."[12] 2020 WL 2896547, at *6 (N.D. Cal. June 1, 2020).  No such allegations exist here.

Plaintiffs suggest that Meredith's stock-based compensation "is indicative of scienter" because "[t]he fact that he left a significant portion of that on the table when he left suggests Meredith knew that the Company's growth rate was declining."  Opp. at 33.  This is, to put it mildly, not a compelling argument because stock-based compensation is the norm for public company executives, and "ha[s] limited probative value as to scienter."  *In re Syncor Int'l Corp. Sec. Litig.*, 239 F. App'x

---

[11] Notably, in that press release the Company also reiterated its guidance for Q4 and FY2021, both of which it eventually *exceeded*, as it disclosed on February 24, 2022.
[12] The court focused on defendant's resignation announcement in the same release announcing need for a restatement and the release's explicit reference to "tone at the top," "inadequate [communication] *from senior management*," and "management's failure to timely communicate."  *WageWorks*, 2020 WL 2896547, at *6.

COOLEY LLP
ATTORNEYS AT LAW

318, 321 (9th Cir. 2007). This argument would require a finding of scienter *every time* an executive compensated on stock performance resigned their position.[13]

### 4. *Even "holistically," the scienter allegations are insufficient.*

The FAC's allegations, even when considered "holistically," do not add up to the required "strong inference" of scienter. Plausible (and nonculpable) alternative explanations for Defendants' statements and conduct abound—highlighted by the inherent difficulties of measuring and expressing integration efforts and revenue forecasts, distinguishing between organic and inorganic revenue, and explaining the nuances of acquisition strategies. At bottom, no "reasonable person would deem the inference of *scienter cogent* and *at least as compelling* as any opposing inference." *Brady*, 2022 WL 3643659, at *7. The FAC should accordingly be dismissed.

### B.    No Actionable False or Misleading Statements Are Alleged.

### 1. The Integration-Related Theory Should Be Rejected.

The Opposition offers no coherent theory regarding what about defendants' integration-related statements was allegedly false or misleading. Plaintiffs suggest that the statements were misleading <u>either</u> because ***no integration*** was occurring, <u>or</u> because integration efforts ***were merely not going well***.[14] The Opposition dismisses this contradiction as a reflection of their "nuanced and deliberate" drafting approach. Opp. at 20 n.10. But this explanation is belied by the very allegations in the FAC; the issue is not that some were integrated poorly and others not at all, but that plaintiffs make contradictory claims regarding the ***same companies***, requiring

---

[13] The suggestion underlying this theory—that Meredith exited voluntarily ahead of anticipated lower revenue and compensation—is also contrary to plaintiffs' *other* speculative and unsupported theory—that Meredith resigned in connection with some imaginary "internal investigation." As these conflicting and equally baseless narratives make clear, plaintiffs have—and allege—no viable theory of scienter.

[14] *Compare, e.g.*, FAC ¶97 (alleging statement "led investors to believe that the Company was integrating NC4 into its business when it was not") *with* ¶98 ("statement about integrating NC4 . . . led investors to believe that the integration was going smoothly when it was not"); ¶120 ("no effort to integrate RedSky into the Company's CEM Suite") *with* ¶121 (characterizing RedSky "integration process" as "difficult"); ¶103 ("no effort to integrate Connexient into its CEM suite") *with* ¶105 (describing "problems" encountered in "integrating Connexient").

dismissal. *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) (if "pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true"). Fraud accusations are serious and defendants are entitled to know what they are accused of; here, plaintiffs cannot even decide whether integration was problematic or did not happen at all. *See Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1016 n.11 (S.D. Cal. 2005) (purpose of strict pleading standards to guard against "serious injury to reputation for which our legal system . . . offers no redress").

### a. *The challenged statements are non-actionable puffery.*

Each of the supposedly misleading integration-related statements alleged in the FAC is a prime example of nonactionable corporate puffery—a statement that is "[in]capable of objective verification," *Retail Wholesale v. Hewlett Packard Co.*, 845 F.3d 1268, 1275–76 (9th Cir. 2017), and which "professional investors, and most amateur investors as well, know how to devalue," *Macomb Cnty. Empl. Ret. Savings v. Align Tech., Inc.*, 39 F.4th 1092, 1099 (9th Cir. 2022); Mem. at 17–18.[15]

The Opposition offers no viable counter-argument. First, it incorrectly argues that the issue of puffery is "ordinarily left to the trier of fact." Opp. at 26. To the contrary, it "is a question of law," entirely appropriate for decision at this stage. *Grouse River Outfitters Ltd. v. NetSuite, Inc.*, 2017 WL 6539854, at *3 (N.D. Cal. Dec. 21, 2017); *accord Garcia v. Gen. Motors LLC*, 2019 WL 247227, at *7 (C.D. Cal. Jan. 17, 2019).[16]   Second, plaintiffs suggest that of the numerous integration-

---

[15] *Compare, e.g.*, FAC ¶¶191 ("well down the path of rightsizing and integrating"), 196 ("really integrated"), 232 (integration . . . going great"), 248 ("seamless integration") *with In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1158 (S.D. Cal. 2008) (statement that integration was "on schedule," "continuing smoothly," and "already a success" held corporate puffery); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1340 (10th Cir. 2012) (statement that integration was "progressing well" held puffery); *Jui-Yang Hong v. Extreme Networks, Inc.*, 2017 WL 1508991, at *12 (N.D. Cal. Apr. 27, 2017) (statements describing merger as "exceed[ing] ... expectations," "going very well," "moving in the right direction," and "that the Company had made dramatic progress towards finalizing the integration" held nonactionable (quotation marks omitted)).

[16] Further, the standard that plaintiffs attribute to *Mulligan v. Impax Lab, Inc.*, 36 F. Supp. 3d 942, 967 (N.D. Cal. 2014)—under which a statement cannot be dismissed

related alleged misrepresentations, three should survive because they suggest that the Company had "already integrated" xMatters. Opp. at 26. This admission that the *other* statements are not "specific representations of the fact about the current status of integration," *id.* at 26, requires their dismissal. *Pac Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) (failure to contest an argument results in waiver). As for the other three statements, each specifically disclosed that far from being complete, the integration of xMatters was ongoing.[17]  FAC ¶¶239 ("[W]e are probably ahead of schedule on getting them integrated with the organization. . . . We are integrating."), 244 ("And we're already doing integrations, right?"); 246 ("[W]e've begun that technological integration."). This is confirmed by the ***unedited*** transcripts, which include conspicuously omitted text. *See* Supp. RJN, Ex. 19 [8/9/21 Tr.] at 6 ("[I]ntegration plans ***are on schedule***."); *id.* at 18 ("[W]e've ***been integrating*** the businesses practically since before the acquisition began."); Ex. 20 [Credit Suisse] at 10 ("We've locked up key hires, and we're retaining them. And so, so far, so good. ***We've got a long way to go***."). It goes without saying that it is improper to "cherry-pick[] portions of . . . statements and ignor[e] other[s]." *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1276 (N.D. Cal. 2019).

### b. *The FAC cannot demonstrate falsity.*

Even assuming *arguendo* that one of the integration-related statements is not mere puffery, the FAC is devoid of well-pleaded allegations establishing falsity. Mem. at 18–22. <u>First</u>, the recognition in February 2022 of integration-related challenges hardly establishes that generally positive statements made months or years

---

as puffery unless "[it is] so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of [its] unimportance"—comes from a Sixth Circuit decision never adopted or endorsed by the Ninth Circuit. *Cf. Police Ret. System of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) ("in determining whether a statement is mere puffing [the court] should [not] consider the mindset of the public"). That this is the wrong standard is confirmed by its absence in *Align Technology* or any of the Ninth Circuit's other recent puffing cases. *See generally*, *In re Cutera Sec. Litig.*, 610 F.3d 1103 (9th Cir. 2010); *Retail Wholesale v. Hewlett Packard Co.*, 845 F.3d 1268 (9th Cir. 2017).

[17] Plaintiffs' citation to *In re Cooper Sec. Litig.*, 691 F. Supp. 2d 1105, 1117 (C.D. Cal. 2010) is therefore inapposite.

prior were false at the time made. *City of Roseville Ret. Sys. v. Sterling Corp.*, 963 F. Supp. 2d 1092, 1109 (E.D. Wash. 2013) ("Without evidence of contemporaneous falsity, an allegation . . . which entirely rests on later contradictory statements, [is] an impermissible attempt to plead fraud by hindsight."); *accord In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010). To be clear, these later statements did not "directly contradict," Opp. at 23, the earlier challenged statements. The February 2022 release and earnings call did not report, for instance, that integration efforts were *never* "seamless" or "going great,"[18] or that the difficulties were apparent months earlier. This attempt to plead fraud by hindsight should be rejected.

Second, the assorted CW statements lack the reliability and specificity necessary to establish falsity. Defendants included a detailed table in their opening memorandum listing each CW's particular shortcomings. Mem. at 21–22. Not a single CW satisfies the required two-step test for reliability under *Zucco*.[19] For CW2, plaintiffs essentially concede that her job description and responsibilities are insufficiently detailed in the FAC,[20] citing as an excuse a vague, unsubstantiated, and ultimately unavailing fear of "retaliat[ion]." Opp. at 29–30. Plaintiffs' rejoinders regarding the remaining CWs' descriptions are similarly unavailing. *Id.* at 30 (asserting summarily, "[T]he Complaint pleads enough details[.]"). Even for those CWs for whom job titles and/or descriptions are provided, no indication is given as to how they would be in a position to opine on the topics at issue. The FAC cites a string of statements attributed to alleged former employees in sales, accounts, business development, and marketing, without explaining what about each CW's role would position them to opine or provide insights regarding the success of the integration efforts. Mem. at 21–22. Plaintiffs also do not explain how employees of

---

[18] The FAC does not plausibly allege that defendants represented integration efforts as having already been "complete[d]." Opp. at 23–24.

[19] It is well established that *Zucco*'s test applies equally to falsity. *See In re LexinFintech Sec. Litig.*, 2021 WL 5530949, at *7 (D. Or. Nov. 24, 2021).

[20] CW2 is described as follows: "CW 2 was employed by xMatters prior to the Class Period and remained at Everbridge in the months following the acquisition. CW 2 had knowledge of the integration team during the xMatters acquisition." FAC ¶49.

Cooley LLP
Attorneys at Law

REPLY MEMORANDUM ISO MOTION TO DISMISS
CASE NO. 2:22-CV-2249-FWS-RAO

the *acquired* companies would have been in any position to evaluate how integration efforts were proceeding *relative to the Company's expectations*.

Moreover, the hodgepodge of integration-related CW statements, even if the CWs themselves were accompanied by sufficient indicia of reliability (and they are not), simply do not establish falsity. As detailed in defendants' table, Mem. at 20–21, numerous statements speak in terms too conclusory and/or vague to be relied upon. *See, e.g.*, FAC ¶¶98 ("issues with integration"), 99 ("problems integrating"), 165 (integration "sloppy," "disaster," a "cluster [expletive]"), 173 (integration "put stress" on team). *See Lomingkit v. Apollo Ed. Group Inc.*, 275 F. Supp. 3d 1139, 1156 (D. Ariz. 2017) (CW's "conclusory" and "broad phrasing" insufficient to meet Reform Act's requirements). Rather than defend these allegations, the Opposition backpedals, suggesting that many were included "to add context or [because they] relate to the Complaint's other theories of fraud."[21] Opp. at 22. The only CW statements that plaintiffs stand by to support falsity concern the integration of xMatters. *See id.* However, as explained *supra* Section II.B.1.a, each of these statements, when read in context, makes clear that the integration of xMatters was an ongoing process. *See, e.g.*, Supp. RJN, Ex. 20 [Credit Suisse Tr.] at 10 ("We've got a long way to go."). That some xMatters employees departed the Company, without any understanding of the Company's retention targets, also does not establish falsity.

### c. *The statements fall under the Reform Act's Safe Harbor.*

Many of the challenged integration-related statements are forward-looking, either on their face or because they concern something that "cannot be discerned until some later point in time after the statement is made."[22] *Zee v. Green Dot Corp.*, 2013 WL 12133841, at *6 (C.D. Cal. May 2, 2013); FAC ¶¶191–92, 205, 232, 239, 242–44, 246. For example, several statements concern the progress of various integrations relative to the Company's expectations or plan. FAC ¶¶191 ("well down the path"),

---

[21] This confusing assertion once again forces defendants to attempt to fit together the FAC's voluminous and disconnected puzzle-piece allegations.

[22] Defendants were not required to list every single allegation in this category.

232 ("already going great"), 239 ("probably ahead of schedule"), 244. As the Ninth Circuit explained in *Wochos v. Tesla, Inc.*, "statements that [a company is] 'on track' to achieve [a] goal . . . [are] forward-looking statements." 985 F.3d 1180, 1192 (9th Cir. 2021). Several others concern the Company's "intent" regarding integrations, FAC ¶¶103-04, 205-06, 223, another category of inherently forward-looking statements. *In re Restoration Robotics Sec. Litig.*, 417 F. Supp. 3d 1242, 1256 (N.D. Cal. 2019) ("[a]n 'intention' to do something is forward-looking"); 15 U.S.C. § 78u-5(i)(1) ("statement[s] of the plans and objectives of management" forward-looking). And plaintiffs do not contest that these statements were each accompanied by meaningful cautionary language, bringing them within the Reform Act's safe harbor.

### d. *Any misstatements were immaterial.*

Even if any of the statements could reasonably be construed as assuring investors that the Company had encountered *no issues whatsoever* in integrating its acquisitions (and they cannot), no reasonable investor would regard minor integration challenges as material. *Keeney v. Larkin*, 102 F. App'x 787, 789 (4th Cir. 2004) (dismissing integration claims on ground that "alleged misrepresentations and omissions were not material because RailWorks clearly disclosed to investors . . . that the integration of the acquired companies was an ongoing process and that there were substantial business risks associated with [it]").[23]

### 2. Allegations of a "Change in Strategy" Are Non-Actionable.

Plaintiffs accuse defendants of failing to disclose what they characterize as a shift in strategy away from "small . . . strategic [acquisitions that] fit within the Company's mission," in favor of a strategy "to grow through acquisitions and use the acquired revenue to mask Everbridge's increasingly stagnant organic growth." FAC

---

[23] The departure of some xMatters employees, without some reliable allegation to establish their importance, is not material. *Cutera*, 610 F.3d at 1111 ("many employees were already on their way out the door" not a viable basis for a securities fraud claim). No such allegations are present in the FAC, and the unsupported attorney argument that "Everbridge, like all companies, depends on its salespeople to sell its products and grow its revenue," Opp. at 25, overlooks that Everbridge *still employed* salespeople (including from xMatters) following the alleged departures.

¶¶74, 78.[24]  Unable to identify any freestanding duty to disclose M&A strategy or any changes thereto,[25] plaintiffs insist that the Company's strategy during the Class Period somehow conflicted with earlier statements, in particular, a 2019 statement by Ellertson that Everbridge "did not 'buy revenue.'"  Opp. at 12.  Although expedient, this version of events simply does not match up with reality.  In his description of Everbridge's "typical[]" approach to M&A, Ellertson specifically referenced "buying into a market, a new market or a geography, . . . and *not only captur[ing] that revenue on our platform but then doubl[ing] or tripl[ing] that revenue*."  FAC ¶73.  It is clear that Everbridge's M&A strategy *always* had as one component the acquisition of customers and associated revenue, and there is no indication in the FAC of *any* change in strategy, much less an "undisclosed" or "concealed" one.  As discussed, *infra* at 16, n.34, this is confirmed by the *consistent* proportion of revenue made up by acquisitions both before and throughout the putative class period.

Moreover, even if plaintiffs' "strategy" allegations could be construed in some way to avoid this hurdle, the FAC lacks any reliable allegations suggesting that any change in strategy occurred.[26]  The CW statements are not accompanied by anything approaching the required detail to establish reliability, either with respect to their positions or supposed recollections.  CW1's shortcomings are well-documented.  For the three other CWs offered to support these allegations, there is no indication how they would have access to information on the supposed change in M&A strategy.  FAC ¶¶18 (CW3: employee *at RedSky*), 53 (CW6: "Senior Financial Analyst . . . not

---

[24] *Id.* ¶¶14 ("under Meredith's leadership, the Company" changed its strategy and began to "buy revenue"), 85 ("Unbeknownst to investors, . . . the Company's M&A strategy changed under Meredith . . . [to] growth-through-acquisition."); 103-07, 112-17, 120-21, 127, 149-50, 197, 201, 204, 207-12, 225, 228-30, 235, 335 (similar).

[25] *See, e.g., Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 980 (9th Cir. 1999) (no duty to disclose aspects of "tax strategy"); *In re FoxHollow Techs. Sec. Litig.*, 2008 WL 2220600, at *23 (N.D. Cal. May 27, 2008) ("[A] company is not obligated to disclose every detail of its internal financial plans or business strategy.").

[26] Plaintiffs suggest that some statements are misleading to the extent they describe particular acquisitions as "strategic" or to "enhance" its business.  Opp. at 12, 14.  As previously explained, Mem. at 27 n.22, such terms are nonactionable puffery and/or fall within the Reform Act's safe harbor for forward-looking statements.

directly involved in managing the budgets . . . [or] analyzing revenue"), 54 (CW7: "providing technical assistance," and "solutioning" to account executives).  The statements too are problematic, consisting of unreliable "vague hearsay" attributed to conversations with other unidentified employees, FAC ¶¶86, 135, as well as the proverbial "view around the watercooler," *id*. ¶87; Mem. at 28.  Further, CW6's supposed attendance at meetings discussing potential acquisitions does not come close to establishing a strategy of "us[ing] acquired revenue to mask Everbridge's increasingly stagnant organic growth and overall performance."[27]  FAC ¶78.

### 3. Allegations Regarding Disclosure of "Acquired" Revenue.

#### a. *Revenue from acquired companies was publicly disclosed.*

Despite alleging that Everbridge "had a duty to disclose information concerning source of the Company's success"—i.e., the revenue from acquired companies—but did not do so (FAC ¶¶19),[28] the FAC contains no facts to suggest that defendants were required to differentiate between so-called "organic" and "acquired" revenues in their statements.[29]  Additionally, judicially noticeable SEC filings reveal revenue contributions from these acquired companies **were nevertheless disclosed** on an annual basis.  RJN, Ex. 2 [2018 10-K] at 75 (disclosing 9% of annual net revenue from recently acquired companies); Ex. 3 [2019 10-K] at 74 (4%); Ex. 6 [2020 10-K] at 85 (8%); Ex. 10 [2021 10-K] at 86 (<10%).

Unable to contradict these undisputed disclosures, plaintiffs instead suggest that considering these undisputed public filings is "improper." Opp. at 16.  But courts routinely take judicial notice of statements in SEC filings when determining the

---

[27] That attendees discussed "five to six acquisitions per year," Opp. at 31, says nothing about a strategy to conceal revenue.  If it did, plaintiffs could hardly claim that strategy was "concealed" when each acquisition and its price was announced.

[28] *See also* FAC ¶¶7; 22 ("investors had *no transparency* as to [revenue contribution of acquired companies]"); Opp. at 15 ("Defendants also misled investors about the extent to which Everbridge used and allocated the revenue obtained from th[e] acquired companies.") FAC ¶¶90, 137. 216, 218,.

[29] The Act and Rule 10b-5 "prohibit only misleading and untrue statements, not statements that are incomplete." *Brody v. Transitional*, 280 F.3d 997, 1006 (9th Cir. 2002) ("To be misleading, an omission "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists.").

sufficiency of the pleadings.[30]  *See* RJN at 3.  This is not a "truth on the market defense" as the Opposition asserts: The FAC alleges that defendants failed to disclose certain information—that such information was, in fact, disclosed in public filings is entirely appropriate for the Court to consider in determining whether the FAC alleges any actionable omission.  *See, e.g.*, *Or. Pub. Empl. Ret. Fund v. Apollo Group Inc.*, 774 F.3d 598, 607 (9th Cir. 2014) ("Plaintiffs' omissions theory fails to state a claim because the Defendants clearly disclosed material information to investors[,] . . . [including in p]ublic filings."; no mention of "truth on the market" defense); *Par Investment v. Aruba Network*, 681 F. App'x 618, 620 (9th Cir. 2017) (similar).[31] Likewise, the fact that *one* of the relevant filings—the 2021 Form 10-K—was not filed until after the plaintiffs' self-selected "Class Period" is of no moment.  If it were, any plaintiff could run into court by defining the class period so as to "cut off" relevant disclosures, including those made in connection with year-end reports.[32]  *Cf. Smith v. Circuit City Stores*, 286 F. Supp. 2d 707, 719 (E.D. Va. Feb. 10, 2003) (interim disclosures required in limited circumstances).  Finally, plaintiffs now suggest that what they ***actually meant*** is that defendants did not disclose the revenue contributions of ***particular*** companies.  Opp. at 16.  But, even if Everbridge had an obligation to disclose such particularized contributions—and it did not, *see supra,* n.29—this "spin" finds no support in the FAC, which describes the undisclosed revenue in terms of ***overall*** revenue from multiple companies.  *See, e.g.*, FAC ¶¶1 ("Defendants used the acquired revenue from those target compan***ies*** to create the

---

[30] That these disclosures were located in the Company's discussion of internal controls, Opp. at 16-17, does nothing to diminish or change their significance.  *See Valley Nat. Bank of Arizona v. Tr. for Westgate*, 609 F.2d 1274, 1282 (9th Cir. 1979) (rejecting similar argument and observing, "Every fact cannot be contained in the beginning [of a filing].").  And—contrary to plaintiffs' assertion—they clearly disclose the revenue attributable to the listed "*Acquisitions*" for each period.

[31] That a third party—in this case activist investor Ancora—may have made a similar error as plaintiffs, Opp. at 17, does not move the needle.

[32] Plaintiffs offer no explanation as to how the 2021 Form 10-K's disclosure of <10% net revenue attributable to recently acquired companies would have meaningfully altered the overall mix of information, which already included similar attributions for the putative class period 2019 (4%) and 2020 (8%), and even before in 2018 (9%).

Cooley LLP
Attorneys at Law

17

false appearance of organic revenue growth."), 189 (alleging misrepresentations regarding "extent to which the revenues . . . obtained from those acquired compan*ies* were being used to hide increasingly lower organic revenue"); 3, 16, 42, 44-5 (same).

### b. *The statements are protected under the Reform Act's safe harbor.*

With no viable omission theory, plaintiffs offer only the allegation that the information that *was disclosed* in connection with the xMatters acquisition was itself false or misleading.[33]   But each of these challenged statements, which discuss "expectations" and what was "anticipate[d]," are clearly forward-looking and therefore are protected under the Reform Act's safe harbor provision.  *See* 15 U.S.C. §78u-5 ("statement[s] containing a projection of revenues" forward-looking). Plaintiffs' suggestion that these statements are not forward-looking because they convey "Defendants' then-current view" about the future, Opp. at 18, misunderstands the nature of the safe harbor.  *See, e.g.*, *Fosbre v. Las Vegas Sands Corp.*, 2013 WL 5970250, at *4 (D. Nev. Nov. 7, 2013) ("Courts have routinely held that statements of expectations . . . are forward-looking *even if those statements are prefaced by present tense phrasing such as 'we expect.'*").  And the accompanying cautionary statements were not "boilerplate," Opp. at 18, but rather, *directly addressed* risk factors related specifically to "the financial impact from the acquisition of xMatters, including impact on [the Company's] revenue."  RJN, Ex. 13 [4/6/21 Press Release] at 2; Ex. 7 [4/6/21 Form 8-K] at 5 (same).[34]  And because the challenged statements are forward-looking, identified as such, and accompanied by cautionary language, it is immaterial whether "they were made with actual knowledge of information establishing falsity." Opp. at 18; 15 U.S.C. § 78u-5(c)(1); *Cutera*, 610 F.3d at 1112.

---

[33] FAC ¶¶217–18 (alleging April 6, 2021 press release statement that "Everbridge anticipates the partial year contribution to 2021 revenue will be approximately $9-11 million . . . was false and misleading because the revenue contribution from xMatters . . . was actually $20-25 million"), 226–27, 235, 238–41 (all similar).

[34] During each earnings call and presentation, defendants identified their statements as forward-looking and directed investors to the detailed discussion of risk factors appearing in the Company's SEC filings.  *See* RJN, Ex. 14 at 4; Supp. RJN, Ex. 19 at 2.  This cross-referencing is specifically authorized.  *See* 15 U.S.C. § 78u-5(c)(2).

COOLEY LLP
ATTORNEYS AT LAW

### c. *The FAC does not allege any false statement.*

Even if the revenue-related allegations could somehow survive both (1) the actual disclosure of "acquired revenue"; and (2) the Reform Act's safe harbor, they should be dismissed for the separate reason that they do not establish falsity. Indeed, the only allegations that even *suggest* any inaccuracy regarding xMatters' anticipated revenue are those attributed to CW1, whose highly unreliable statements should be disregarded. In addition to the lack of detail regarding her job and responsibilities, her interactions with defendants—including her supposed recollection of Meredith's "buffer" statement—are unaccompanied by any indicia of reliability.[35] The FAC offers no indication as to where, when, how, or to whom Meredith supposedly made the statement. FAC ¶¶4, 24, 133, 221, 341. Plaintiffs now insist that "Meredith told CW1 *directly* that the discrepancy was to 'buffer' the declines in Everbridge's organic revenue." Opp. at 19. But no such "direct" communication is alleged in the FAC, *see generally* FAC ¶¶4, 24, 133, 221, 341 (referring vaguely to "rationale Meredith provided"), and even if it were, that still would not be sufficient. *See Kipling*, 2020 WL 7261314, at *11; *City of Sunrise v. Oracle Corp.*, 2019 WL 6877195, at *14 (N.D. Cal. Dec. 17, 2019) (CW statements insufficiently detailed).

### C. The December Press Release Is Unconnected to the Alleged Fraud.

Everbridge's December 9, 2021 press release announced two things: Meredith was departing, and the Company was projecting revenue growth of between 20-23% in 2022. RJN, Ex. 16 at 1. It gave no explanation for either, except that "Meredith's resignation [was] not related to . . . the Company's financial condition." *Id*. Plaintiffs contend this was a "partial corrective disclosure/materialization of the risk." FAC at 97. But as the Ninth Circuit recently held, although it "need not precisely mirror the earlier misrepresentation," a corrective disclosure must "reveal[] new facts that, taken as true, render some aspect of defendant's prior statements false or misleading."

---

[35] Plaintiffs misunderstand defendants' reference to a "security guard." Mem. at 32. Defendants were not suggesting CW1 *is* a security guard; the point is that more detail is needed to assess whether CW1 would have access to the claimed information.

*In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020). The December release contained no such "new facts" bearing on any of the three categories of alleged misrepresentations, so it cannot be considered a corrective disclosure. Plaintiffs also suggest that the December release establishes loss causation under a "materialization of the risk theory." Opp. at 35. But the Ninth Circuit has "not yet ruled on the merits of that test," *Cutler v. Kirchner*, 696 F. App'x 809, 812 (9th Cir. 2017) and, in any event, its requirements are not met here, as plaintiffs cannot "show that it was the very facts about which defendants [allegedly] lied which caused its injuries." *Nuveen Mun. Fund v. City of Alameda*, 730 F.3d 1111, 1120 (9th Cir. 2013). Rather than linking the *specific* misrepresentations alleged to a drop in stock price, plaintiffs instead gloss over these details, arguing, "Defendants failed to disclose that the Company's growth-through-acquisition strategy was unsustainable and detrimental to long term growth." Opp. at 35. This bears no relation to any of the three misrepresentation categories actually alleged, and courts have rejected similarly vague attempts to establish loss causation. *See Children's Hosp. & Med. Ctr. v. Countrywide Fin.*, 2011 WL 13220509, at *7 (C.D. Cal. Aug. 22, 2011) (no materialization of the risk absent "explicit causal linkage between misrepresentation and loss"); *Ferraro Fam. Found., Inc. v. Corcept Ther. Inc.*, 2021 WL 3748325, at *27 (N.D. Cal. Aug. 24, 2021) (dismissing causal link as "little more than conjecture" where disclosure "offer[ed] no guidance as to the cause of the revenue forecast").[36]

**III.    THE SECTION 20(a) CLAIMS MUST BE DISMISSED.**

Without "a primary violation [of Rule 10(b)]," the Section 20(a) claim must also be dismissed. *Paracor Fin. Inc. v. GE Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).

---

[36] Plaintiffs attempt to distinguish *Ferraro* on the ground that "analyst commentary [following the December release] confirm[ed] that the market was responding to the fraud." Opp. at 35. But the analyst commentary noted only questions regarding the reason for Meredith's departure, FAC ¶295-96; as in *Ferraro*, "there are no facts alleged in the [FAC] to support the allegation that the market understood the [December] Press Release to be a revelation of [defendants'] allegedly fraudulent conduct." 2021 WL 3748325, at *27. Plaintiffs' citation to *In re Daou*, 411 F.3d 1006, 1026 (9th Cir. 2005) is inapposite for the same reason. *See* Opp. at 35 (acknowledging that *Daou*'s result was based on "analyst commentary confirm[ing] that market was responding to fraud").

## IV.   CONCLUSION

For the foregoing reasons, the FAC should be dismissed.

Dated:  January 17, 2022

Respectfully Submitted,

COOLEY LLP

By:   */s/ Michael C. Tu*
      Michael C. Tu

Attorneys for Defendants
Everbridge, Inc., Patrick Brickley, Jaime
Ellertson, and David Meredith