_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                  Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

|  Melissa H. Kunig  |  N/A  |
| --- | --- |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| --- | --- |
| Not Present | Not Present |

**PROCEEDINGS: ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [58]**

Before the court is Defendants David Meredith ("Meredith"), Patrick Brickley ("Brickley"), Jamie Ellertson ("Ellertson"; together with Meredith and Brickley, "Individual Defendants"), and Everbridge, Inc.'s ("Everbridge") (all four collectively, "Defendants") Motion to Dismiss ("Motion") Plaintiffs' Sylebra Capital Partners Master Fund Ltd, Sylebra Capital Parc Master Fund, and Sylebra Capital Menlo Master Fund (collectively, "Plaintiffs") First Amended Complaint ("FAC"). (Dkt. 58.) The Motion and Defendants' accompanying requests for judicial notice are opposed and briefing is complete. (Dkts. 59, 61, 62, 65.) Based on the state of the record, as applied to the applicable law, the court **GRANTS** Defendants' Motion and **DISMISSES** the FAC **WITH LEAVE TO AMEND**.

## I.     Background

### A.     Requests for Judicial Notice

Defendants request judicial notice of several SEC filings, press releases, and earnings call transcripts. (Dkts. 59, 67.) Plaintiffs oppose the court considering the materials submitted by Defendants to the extent they are offered for the truth of the factual assertions in them, (Dkt. 62), but as Defendants note, do not object to the court judicially noticing SEC filings for the purpose of determining what information was disclosed to investors, (*see* Dkt. 66 (citing Dkt. 62 at 5 n.2).) The court rules as follows:

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                          Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

1.  The court **GRANTS** Defendants' requests as to Exhibits 1-10 for the limited purpose that these disclosures were made to the market in Everbridge's routine SEC filings, but not for the truth of their contents.  *See* Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) (courts may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, but may not take notice of disputed facts); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (SEC filings are proper subjects for judicial notice).

2.  The court **GRANTS** Defendants' requests as to Exhibits 11, 12, 14, 15, and 18 for the limited purpose that Everbridge and the Individual Defendants made the referenced statements to the market during investor conference calls at the times reflected in the transcripts, but not for the truth of those statements.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999-1002 (9th Cir. 2018) (discussing that earnings call transcripts may be proper subjects for judicial notice but facts contained therein are not if those facts are subject to reasonable dispute).

3.  The court **GRANTS** Defendants' requests as to Exhibit 13 for the limited purpose that certain information regarding Everbridge's acquisition of xMatters was disclosed to the market in this press release, but the court does not assume that information is necessarily true.  *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'") (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)).

4.  The court **DENIES** Defendants' requests as to Exhibits 19 and 20, because they pertain to arguments that could have been raised in the Motion, (*See* Dkt. 53 ¶¶ 238-241, 246), but were first submitted in connection Defendants' Reply.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.") (citation omitted); *cf. Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                    Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

5.  The court **DENIES** Defendants' requests as to Exhibits 16 and 17 because they are not relevant to the court's analysis for a judicially noticeable purpose. *See, e.g.*, *U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1382 (C.D. Cal. 2014) (declining to take judicial notice of facts contained in documents properly subject to judicial notice of documents irrelevant to the court's analysis), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017); *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1030 (C.D. Cal. 2015) (same).

6.  The court declines to incorporate any materials by reference. The veracity of the factual assertions made in these materials is disputed by Plaintiffs and, to the extent Defendants seek to admit undisputed facts contained in documents mentioned in passing in the FAC, Plaintiffs' claims do not "necessarily rely" on those documents. *See Khoja*, 899 F.3d at 1002-03 (discussing limitations of the incorporation by reference doctrine); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document.") (citing *United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003)).

        B.     Summary of Allegations[1]

Everbridge was founded in 2002 as a software provider. (Dkt. 53 ¶ 8.) Ellertson was Everbridge's Chief Executive Officer ("CEO") from September 2011 to July 2019, after which he transitioned to his current post as Executive Chairman of Everbridge's Board of Directors. (*Id.* ¶¶ 13, 45, 79.) Meredith took over as CEO in July 2019 until he resigned in December 2021. (*Id.* ¶¶ 13, 79, 176.) Brickley served as Everbridge's Chief Financial Officer ("CFO") beginning in March 2019, and began a stint as interim Co-CEO after Meredith's departure. (*Id.* ¶ 44.)

_____

[1] For purposes of the Motion, the court accepts the FAC's allegations as true and construes them in the light most favorable to Plaintiffs. *See, e.g.*, *In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784, 793 (9th Cir. 2017).

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                  Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

Everbridge's software was originally designed to send phone, text, and email messages to users of those platforms during an emergency event via mass notification.  (*Id.* ¶¶ 8, 60, 62.)  Everbridge has since expanded its offerings to an enterprise suite comprised of three segments: (1) applications sending mass notifications to individuals in the event of an emergency; (2) information technology and "Internet of Things" population "alerting"; and (3) Critical Event Management ("CEM") software designed to assist governments and other large organizations with "critical events," such as cyber-attacks, internet service interruption, threat assessments, crisis management.  (*Id.* ¶¶ 59, 61-64.)  In Everbridge's 2019 10-K, Defendants stated Everbridge was the only company that provided a "full, integrated CEM solution," the implementation of which "can improvement management control and visibility and lower costs."  (*Id.* ¶¶ 65, 68; Dkt. 58, Exh. 3.)

Everbridge became a publicly traded company after its initial public offering ("IPO") in September 2016.  (Dkt. 53 ¶ 70.)  Over the next three years, Everbridge's revenue grew to $104 million by the end of fiscal year 2017, $147.1 million by the end of 2018, and $200.9 million by the end of 2019, corresponding to year-over-year growth rates of 36%, 41%, and 37%, respectively.  (*Id.*)  Ellertson explained in a presentation in February 2019 that Everbridge sought to expand its platform and customer base through "strategic" acquisitions by "either buying into a market, a new market or a geography," or "acquire a team . . . and a customer base," noting Everbridge didn't "buy revenue typically."  (*Id.* ¶ 73; Dkt. 58, Exh. 11.)

After the September 2016 IPO but before Ellertson stepped down as CEO in June 2019, Everbridge acquired six companies while continuing to develop its own products.  (Dkt. 53 ¶ 74.)  After succeeding Ellertson as CEO, Meredith stated Everbridge would retain its focus on "organic" growth and continue to avoid "buy[ing] revenue."[2]  (*Id.* ¶ 81.)  During Meredith's tenure, Everbridge acquired nine companies.  (*Id.* ¶¶ 85, 89.)  The FAC cites statements in

_____

[2] Per the FAC, a company grows "organically" by increasing its revenue through its own operations and product development.  (*Id.* ¶ 71.)  Conversely, "buying revenue" denotes a company growing by recognizing additional revenue from the preexisting operations and product lines of acquired companies that are separate from the company's in-house businesses.  (*Id.*)

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                  Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

Everbridge's SEC filings stating it made these acquisitions "to enhance the Company's CEM suite of solutions." (*E.g.*, *id.* ¶¶ 102, 106, 109, 114, 116, 120, 127; Dkt. 58, Exhs. 3, 4, 5.)  The FAC also references similar pronouncements made by Meredith and Brickley in connection with these acquisitions.  As a relevant example, the FAC excerpts Meredith's colloquy with an analyst during an earnings call in November 2019, in which Meredith described Everbridge's position on "rightsizing" by "focus[ing] on the strategic value" of an acquisition as Everbridge "unpack[ed]" and "integrate[d]" the new company, noting "rightsizing" refers to "optimizing for the strategic value of the business." (*See, e.g.*, Dkt. 53 ¶ 95.)  Another relevant instance is a passage from a May 2020 conference call in which Brickley stated that Everbridge recently acquired a technology company not "to drive near-term revenue contribution, but rather for [its] longer-term strategic potential." (*See, e.g.*, *id.* ¶ 111.)

However, the FAC contends this rationale was false, and the acquisitions were pursued to maximize short-term revenue instead.  The FAC asserts that Defendants therefore spurned their earlier proclamations that Everbridge sought to grow "organically" and avoid "buying revenue." As discussed further below, the FAC relies significantly on statements sourced from confidential witnesses ("CWs") in support.  (*See, e.g.*, Dkt. 53 ¶¶ 104, 121.)

As previewed, on December 9, 2021, Everbridge announced Meredith would step down as CEO, which was described by a market analyst as "abrupt and unexpected" given Everbridge continued to "work through" a recent acquisition.  (*Id.* ¶¶ 176, 251, 255; Dkt. 58, Exh. 15.)  On the same day, Everbridge also lowered its forecast to 20-23% year-over-year growth for 2022, down from earlier forecasts of approximately 30%.  (Dkt. 53 ¶¶ 176, 253.)  On February 24, 2022, Everbridge issued a press release revising its estimate to year-over-year growth to 15-17% for the same period.  (*Id.* ¶¶ 180, 261.)  In it, Everbridge noted the company was "taking decisive actions to streamline, integrate, and reduce complexity in [Everbridge's key offerings, which [the company] expect[ed] to drive sustainable growth in the years ahead." (*Id.* ¶¶ 181, 262.)  During an earnings call on that same day, Co-CEOs Vernon Irvin ("Irvin") and Brickley attributed the slowdown to challenges in "increasing complexity and incomplete integrations" stemming from acquisitions completed in 2020 and 2021.  (*Id.* ¶¶ 182-84; 262-64; Dkt. 58, Exh. 18.)  Irvin indicated the company would accordingly "paus[e] material new M&A and instead

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                    Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

prioritiz[e] development efforts to focus on accelerating product integrations across [Everbridge's] existing acquired assets."  (Dkt. 53 ¶¶ 185, 266; Dkt. 58, Exh. 18.)

## II.    Legal Standard

### A.    Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).  To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level."  *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  "A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'"  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).  "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).  "Second, the factual allegations

_____

**CIVIL MINUTES – GENERAL**                                                          **6**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                     Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681.

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652 F.3d at 1216). But, on the other, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 at U.S. 678). Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

In *Sprewell v. Golden State Warriors*, the Ninth Circuit described legal standards for motions to dismiss made pursuant to Rule 12(b)(6):

> Review is limited to the contents of the complaint. All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.

266 F.3d 979, 988 (9th Cir. 2001) (citations omitted).

    B.    Rule 9(b) Pleading Standard

_____

**CIVIL MINUTES – GENERAL**                                                    7

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                      Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

"Securities fraud class actions must meet the higher, exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA)." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires "that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (cleaned up). The allegations of fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct alleged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (stating claims subject to Rule 9(b) must allege the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations") (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). The plaintiff must also "set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as recognized by Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001). Rule 9(b) "does not allow a complaint to lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (cleaned up); *see also Swartz*, 476 F.3d at 764-65 (holding that, under Rule 9(b), plaintiffs must "inform each defendant separately of the allegations surrounding [their] alleged participation in the fraud") (citation and internal quotation marks omitted). However, Rule 9(b)'s heightened standard does not apply to allegations related to a defendant's state of mind, instead permitting "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b).

## III.    Discussion

### A.    Section 10(b) Claims

To state a claim under Section 10(b) or Rule 10b-5, a plaintiff "must adequately plead six elements: (1) a material misrepresentation or omission; (2) made with scienter; (3) in

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                        Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

connection with the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 786 (9th Cir. 2020) (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)). Rule 9(b)'s pleading standard "applies to all elements of a securities fraud action" brought under Section 10(b) or Rule 10b-5. *Apollo*, 774 F.3d at 605; *see also* Fed. R. Civ. P. 9(b).

> 1.      *Material Misstatement or Omission (Falsity)*

>    i.      *Legal Standard*

A statement is false if it "directly contradict[s] what the defendant knew at that time" and misleading if it "omits material information." *Khoja*, 899 F.3d at 1008-09. Courts "apply the objective standard of a 'reasonable investor' to determine whether a statement is misleading." *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 699 (9th Cir. 2021) (citation omitted). A misrepresentation or omission is material where there is "'a substantial likelihood that [it] would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available' for the purpose of decisionmaking by stockholders concerning their investments." *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)). Materiality is a "fact-specific" inquiry, *In re Alphabet*, 1 F.4th at 700 (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 43 (2011)), but may be resolved as a matter of law "if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds could not differ," *id.* (quoting *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995)) (citation omitted). Section 10(b) and Rule 10b-5(b) "do not create an affirmative duty to disclose any and all material information"; disclosure is required "when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Matrixx*, 563 U.S. at 44 (quoting 17 C.F.R. § 240.10b-5(b)); *see also Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 706 (9th Cir. 2016) ("'[O]nce defendants choose to tout' positive information to the market, 'they are bound to do so in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                    Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

against the positive information.") (alterations adopted) (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008)).

The PSLRA requires private securities fraud complaints to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." *Tellabs*, 551 U.S. at 321 (quoting 15 U.S.C. § 78u-4(b)(1)). "In setting forth the reasons why they contend that each challenged statement is misleading, securities plaintiffs may rely on either an affirmative misrepresentation theory or an omission theory." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1188 (9th Cir. 2021) (citing 17 C.F.R. § 240.10b-5(b)). When predicated on an opinion statement—"a belief, a view, or a sentiment which the mind forms of persons or things"—there are three standards for pleading falsity. *Omnicare, Inc. v. Laborers Dist. Council Const. Ind. Pension Fund*, 575 U.S. 175, 183 (2015) (cleaned up); *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-17 (9th Cir. 2017) (applying *Omnicare*'s standards to Section 10(b) and Rule 10b-5 claims). These standards depend on the plaintiff's underlying theory of falsity:

> First, when a plaintiff relies on a theory of material misrepresentation, the plaintiff must allege both that the speaker did not hold the belief she professed and that the belief is objectively untrue. Second, when a plaintiff relies on a theory that a statement of fact contained within an opinion statement is materially misleading, the plaintiff must allege that the supporting fact the speaker supplied is untrue. Third, when a plaintiff relies on a theory of omission, the plaintiff must allege facts going to the basis for the issuer's opinion whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context.

*Dearborn Heights*, 856 F.3d at 615-16 (cleaned up).

      ii.    *Analysis*

Defendants argue that the FAC's allegations of misstatements related to Everbridge's trouble "integrating" newly acquired companies, its asserted change in strategy, and "acquired"

_____

**CIVIL MINUTES – GENERAL**

10

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                          Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

revenues are not adequately pleaded because, among other reasons, those statements are either inactionable puffery, fall within the PSLRA's safe harbor, or are not demonstrably false as alleged.  (Dkts. 58 at 16-33; 65 at 9-19.)  Plaintiffs maintain these statements are false and misleading, are statements of existing circumstances that are not covered by the PSLRA's safe harbor, and sufficiently concrete in context to preclude a finding they are mere puffery.[3]  (Dkt. 61 at 10-26.)

For the reasons discussed below, the court agrees with Defendants that the FAC does not plead an actionable misstatement or omission.  Many of the challenged statements are covered by the PSLRA's safe harbor for forward looking statements and are otherwise vague, positive assertions of optimism that are not actionable under Section 10(b) and Rule 10b-5.  Others specifically concerning the asserted change in Everbridge's growth strategy are not plausibly false or misleading, and Plaintiffs' reliance of later revised disclosures of decreases in revenue boils down to assertions of "fraud by hindsight."

a.  *The PSLRA's Safe Harbor for Forward Looking Statements*

The PSLRA's safe harbor provision "exempts, under certain circumstances, a forward-looking statement, which is any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions underlying or related to any of these issues."  *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014) (citation and internal quotation

_____

[3] Plaintiffs also contend the FAC's CW allegations demonstrate the falsity of certain statements. The court discusses these allegations in its discussion of scienter, *infra* Section III.A.2.ii.a. Because the court ultimately concludes CW1's statements regarding the valuation of the xMatters acquisition lack the requisite corroboration and the FAC otherwise insufficiently establishes CW1's foundation for making that statement, the court does not address those allegations in the context of its discussion on falsity.  The remaining CW statements relate to scienter, to the extent they too do not lack foundation or corroboration, rather than the truth or falsity of an objective statement, and therefore does not address those allegations in this context.

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                           Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

marks omitted).  The safe harbor applies if "the forward-looking statement is '(i) identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement,' or (ii) if it is not identified as a forward-looking statement and not accompanied by cautionary language, unless the statement was 'made with actual knowledge . . . that the statement was false or misleading.'"  *Id.* (quoting 15 U.S.C. § 78u-5(c)(1)) (citation omitted).  "Adequate cautionary language under the PSLRA must identify 'important factors that could cause actual results to differ materially from those in the forward-looking statement.'"  *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1148 (9th Cir. 2017) (citing 15 U.S.C. § 78u-5(c)(1)(A)(i)).

The FAC's allegations relying on Everbridge's asserted lack of intent to "integrate" companies they sought to acquire are inactionable under the PSLRA's safe harbor.  As Defendants note, Everbridge's SEC filings stated acquisitions could impact its "operating results, including the levels of [its] revenue, renewal rates, cash flows, deferred revenues and gross margins," which could vary based on several named factors, including Everbridge's successfully ability to "manage" and "integrate" companies it had acquired.  (Dkt. 58, Exh. 4 at 50; *see also, e.g.*, Dkt. 58, Exhs., 8 at 56 (naming potential difficulties in integrating specific companies acquired by Everbridge among risk factors); 9 at 59 (same).)  The investor call transcripts, including the November 9, 2021, investor call, indicate Defendants disclosed to the market matters to be discussed included "forward-looking statements regarding future events or the financial performance of the company that involve risks and uncertainties," based on "factors" that "include, but are not limited to, those discussed in [Everbridge's] 10-Q and 10-Ks as well as other subsequent filings with the SEC."  (Dkt. 58, Exh. 12 at 4; *see also, e.g.*, Dkt. 58, Exhs. 13 at 2; 14 at 4; 15 at 4; 18 at 2.)  While Plaintiffs take issue with the fact that several of these statements were made after an acquisition was completed, (*see* Dkt. 61 at 24), the "integration" of those companies is not an instantaneous process, and various statements regarding Everbridge's progress "down the path" of "integration" are insufficiently "beyond the mere declaration" of a long-term goal "in a way that includes a non-forward-looking statement."  *Compare Wochos*, 985 F.3d at 1192 (holding defendant's "various statements that it was 'on track' to achieve [production] goal and that 'there are no issues' that 'would prevent'

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

[defendant] from achieving the goal" were forward-looking statements because they "declar[ed] or reaffirm[ed] the objective itself"), *with Quality Sys.*, 865 F.3d at 1143-44, 1148 (holding statements that the "current state" of defendant's sales pipeline as "consistent with, or better than" the state of the pipeline in "previous quarters" was a non-forward-looking statement where the company "provided a concrete description of the past and present state of the pipeline").  Moreover, projections of Everbridge's growth and future revenues are classic examples of statements protected under the PSLRA's safe harbor.  *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108, 1111 (9th Cir. 2010) (forward looking statements include "statement[s] containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items") (quoting 15 U.S.C. § 78u-5(i)(1)).

### b. *Puffery*

"Corporate 'puffing' involves 'expressing an opinion' that is not 'capable of objective verification'" and is accordingly not actionable under Section 10(b) or Rule 10b-5.  *See Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1097-98 (9th Cir. 2022) (quoting *Retail Wholesale*, 845 F.3d at 1275).  While "mildly optimistic, subjective assessment[s]" such as "vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers" are generally inactionable puffery, *see Apollo*, 774 F.3d at 606 (quoting *In re Cutera*, 610 F.3d at 1111), "[s]tatements by a company that are capable of objective verification are not 'puffery' and can constitute material misrepresentations," *id.* (citing *S.E.C. v. Todd*, 642 F.3d 1207, 1216-17 (9th Cir. 2011)).  In some circumstances, however, "general statements of optimism, when taken in context, may form a basis for a securities fraud claim."  *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 770 (9th Cir. 2023) (quoting *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996)).  Because "professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives," *In re Alphabet*, 1 F.4th at 700 (quoting *Intuitive Surgical*, 759 F.3d at 1060), such statements "rise to the level of materially misleading statements only if they provide 'concrete description of the past and present' that affirmatively create[s] a plausibly misleading impression of a 'state of

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                              Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

affairs that differed in a material way from the one that actually existed,'" *id.* (quoting *Quality Sys.*, 865 F.3d at 1144).

The bulk of the challenged statements—particularly those related to "integration" "going great," being "seamless," the status of being "well down the path" of "integrating," and similar general statements concerning the progress Everbridge was making in "integrating" acquired companies—are inactionable puffery. These statements are general professions of optimism that are incapable of objective verification. *See Macomb*, 39 F.4th at 1099 (statements that market was "a great growth market," "a huge market opportunity," "a market that's growing significantly for [defendant]," possessed "really good" "dynamics," and that defendant's performance in it was "tremendous" or "great" were inactionable puffery); *In re Alphabet*, 1 F.4th at 708 (statements regarding defendant's "longstanding commitment" to user privacy, that it had "been very, very engaged on" working on compliance with privacy regulations, it took "great pains to make sure that people have great control and notice over their data" and it had a "very robust and strong privacy program" were "vague and generalized corporate commitments, aspirations, or puffery that cannot support statement liability under Section 10(b) and Rule 10b-5(b)" despite defendant "allegedly [choosing] a strategy of concealment over disclosure"); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1207 (9th Cir. 2016) (statements that the "overall credit quality of the loan portfolio is sound," defendant's "credit metrics are superior" to its peers', a "strong credit culture and underwriting integrity remain paramount" at defendant, and defendant's culture "limited its exposure to problem credits" were inactionable puffery); *see also Apollo*, 774 F.3d at 606 (distinguishing inactionable "general terms" that provide "nothing concrete" upon which plaintiffs could rely from actionable "statements that can be true of false on an objective standard").

To be sure, as Plaintiffs note, it is an "uncontroversial proposition that 'general statements of optimism, when taken in context, may form a basis for a securities fraud claim,'" *Intuitive Surgical*, 759 F.3d at 1060 (quoting *Warshaw*, 74 F.3d at 959), and "the context in which the statements were made is key," *id.* But here, the challenged statements did not "affirmatively create[] an impression of a state of affairs that differed in a material way from the one that actually existed." *See Quality Systems*, 865 F.3d at 1144 (alterations adopted) (quoting

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                    Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

*Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).  When the challenged statements were made, Everbridge was "*still growing*," "albeit at a diminished rate, so these feel-good descriptions" stop short of the line of creating an impression of a state of affairs materially differing from the one that existed at the time.  *See Macomb*, 39 F.4th at 1099.

> c.  *Defendants' Statements Regarding Growth Strategy and "Acquired" vs "Organic" Revenue*

The FAC also relies on the theory that Defendants pitched Everbridge as growing "organically," but after Meredith took over as CEO in 2019, Everbridge's strategy changed to "buying revenue" through acquisitions.  However, "[i]n order to allege falsity, a plaintiff must set forth facts explaining why the difference between two statements 'is not merely the difference between two permissible judgments, but rather the result of a falsehood.'"  *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012) (quoting *In re GlenFed*, 42 F.3d at 1549)).  At base, the FAC insufficiently plausibly alleges a statements regarding disclosures of "acquired" or "inorganic" revenue as opposed to "organic" revenue that constitutes a falsehood under the applicable pleading standards.

As Defendants note, Everbridge's yearly 10-K filings disclosed revenue attributable to its acquisitions.[4]  (*See* Dkt. 58, Exhs. 3 at 74; 6 at 85; 10 at 86.)  It is also noteworthy that Meredith embarked on nine acquisitions while helming Everbridge as CEO compared to Ellertson's six acquisition despite each serving as CEO for similar periods of approximately thirty and thirty-four months, respectively.  (*See* Dkt. 53 ¶¶ 74, 89.)  Further, as discussed, statements related to Everbridge's projections of growth and revenue attributable to its expectations of future performance post-acquisitions are the types of financial projections protected by the PSLRA's safe harbor where, as here, they are accompanied by adequate cautionary disclosures.  *See supra*

_____

[4] As previously noted, the court discusses Confidential Witness allegations separately in its analysis of scienter, and because it finds those statements inadequately supported—including, as relevant here, CW1's projections of the revenue that should have been recognized as attributable to the xMatters acquisition in 2021—the court does not consider them here.

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                      Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

Section III.A.1.ii.c; *In re Cutera*, 610 F.3d at 1108, 1111; 15 U.S.C. § 78u-5(c)(1)(A)(i).  To the extent Plaintiffs contend that Everbridge had an obligation to disclose the split between "organic" and "inorganic" or "acquired" revenue between the companies, the court does not find a plausible basis alleged in the FAC for imposing such a requirement, *see In re Rigel Pharms.*, 697 F.3d at 880-81; *cf. Berson*, 527 F.3d at 985-87, and, regardless, it only alleges "conclusory facts to show that integration delays existed as of [the date of the acquisitions], that those integration delays were inconsistent with" Defendants' statements that they did not "buy revenue" and the like, *see Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1135-36 (S.D. Cal. 2012), *aff'd sub nom. Fresno Cnty. Emps. Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015).

> d. *Defendants' Specific Statements Regarding Challenges with "Integrating" Acquired Companies*

As discussed, the FAC's core theory also encompasses Defendants' statements regarding the "integration" of companies Everbridge acquired.  While the court finds the vast majority of these statements constitute inactionable puffery, even if they were not, the statements Plaintiffs point to either do not demonstrate a false statement or attempt to plead fraud by hindsight.  For example, Plaintiffs argue Meredith's March 2020 statement that Everbridge then "'ha[d] over 225 out-of-the-box-integrations' and '[s]o [Everbridge] now truly can be that unified enterprise-wide operating system,'" is "false and misleading because it created an impression that [Everbridge] had integrated the acquired companies, . . . when [it] had not" and "created an impression that the CEM platform was a 'unified' system, consisting of hundreds of integrations, when in reality such a complete integration had never occurred."  (*See* Dkt. 61 at 21 (citing Dkt. 53 ¶¶ 103-05, 107-08, 199, 200, 202).)  But the FAC does not plausibly allege that the demonstrably provable aspect of this statement—i.e. the *number* of "out-of-the-box integrations"—was itself false.  The FAC instead criticizes the later reduction in Everbridge's revenue owing to Everbridge's post-hoc difficulties "integrating" those companies because these statements assertedly gave a false impression that Everbridge was able to capitalize on its acquisitions without issues.  But the mere "fact that [a] prediction proves to be wrong in hindsight does not render the statement untrue when made," *see In re VeriFone Sec. Litig.*, 11

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                              Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

F.3d 865, 871 (9th Cir. 1993) (citation omitted), and "without more, temporal proximity alone does not satisfy the particularity requirements of Rule 9(b)," *see Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 622 (9th Cir. 2022) (citation omitted). As alleged, the FAC does not go farther. Absent more, Everbridge later encountering difficulty in utilizing acquired companies and technologies does not transform statements of corporate optimism into securities fraud and negate Defendants' professed efforts to smoothen the company's post-acquisition road. *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999) ("It is clearly insufficient for plaintiffs to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood.") (alterations adopted) (citation omitted). Accordingly, the court concludes the FAC's allegations of assertedly false statements regarding the challenges of "integrating" acquired companies, to the extent they are not puffery, seek to plead inactionable fraud by hindsight. *See Ronconi*, 253 F.3d at 430 n.12.

### e.  *Conclusion Regarding Falsity*

For the reasons set forth above, the court finds the FAC's allegations do not sufficiently plead a materially false or misleading statement. Ultimately, the FAC's theory of falsity relies on Defendants' decrease in projected growth due to challenges in harmonizing Everbridge's then-present operations with its later acquired assets. But it does not plausibly allege the reasons why Everbridge's statements of optimism and its efforts in "integrating" those companies were false or misleading at the time they were made as opposed to growing pains or management decisions that proved less wise than anticipated in hindsight. In this respect, the FAC falls short.

### 2.  *Scienter*

#### i.  *Legal Standard*

Scienter is a "a mental state embracing intent to deceive, manipulate, or defraud." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) (quoting *Tellabs*, 551 U.S. at 319). "To satisfy the requisite state of mind element, a complaint must allege that the defendant

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                   Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

made false or misleading statements either intentionally or with deliberate recklessness." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012) (cleaned up); *see also* 15 U.S.C. § 78u-4(b)(2). "[D]eliberate recklessness is an extreme departure from the standards of ordinary care which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Schueneman*, 840 F.3d at 705 (cleaned up). That is, recklessness "only satisfies scienter under § 10(b) to the extent that it reflects some degree of intentional or conscious misconduct." *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999)).

The PSLRA requires a plaintiff to plead facts supporting a "strong inference" of scienter. *See Tellabs*, 551 U.S. at 323-324; 15 U.S.C. § 78u-4(b)(2)(A). The court considers "plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs*, 551 U.S. at 324. A complaint "survive[s]" a defendant's motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *See id.*

Where a plaintiff "seek[s] to hold individuals and a company liable on a securities fraud theory," the plaintiff must "allege scienter with respect to each of the individual defendants." *Apollo*, 774 F.3d at 607. However, courts may "impute scienter to individual defendants in some situations." *Id.* For instance, "there could be circumstances in which a company's public statements were so important and so dramatically false that they would create a strong inference that at least *some* corporate officials knew of the falsity upon publication." *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 744 (9th Cir. 2008) (citation omitted).

Where no "individual allegation" establishes a strong inference of scienter, a complaint sufficiently pleads scienter only if "the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness" under a "holistic" review. *Curry v. Yelp Inc.*, 875 F.3d 1219, 1226 (9th Cir. 2017) (quoting *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011)).

_____

**CIVIL MINUTES – GENERAL**

18

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                    Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

           ii.     *Analysis*

Defendants assert that, even if the FAC pleads a materially false or misleading misstatement or omission, its allegations are insufficient to support a finding that any were made with scienter. (Dkts. 58 at 9-16; 65 at 2-9.) Plaintiffs contend that the FAC's CW allegations, the timing and circumstances of Meredith's departure, the core operations inference, and other statements cited in the FAC meet the PSLRA's pleading requirement. (Dkt. 61 at 26-35.) For the reasons discussed below, the court agrees with Defendants that the FAC does not sufficiently allege facts permitting the court to draw a strong inference of scienter.

          a.  *Reliance on Confidential Witnesses*

"The PSLRA does not necessarily require that a plaintiff name [their] confidential witnesses" but requires a plaintiff to "reveal with particularity the sources of their information." *Forescout Techs., Inc.*, 63 F.4th at 767 (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005)). "[A] complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009). "First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge." *Id.* (citing *Daou*, 411 F.3d at 1015-16). "Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter." *Id.* (citing *Daou*, 411 F.3d at 1022). A confidential witness need not name their sources if other facts in the complaint provide an adequate basis for believing the defendants' statements were false; otherwise, the complaint must describe the confidential witness with "sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Forescout Techs.*, 63 F.4th at 767 (quoting *Zucco Partners*, 552 F.3d at 955). In evaluating whether the complaint has provided an adequate basis to determine a witness has personal knowledge of the events they report, the court looks to the level of detail provided by the confidential witness, the plausibility of the complaint's allegations, the number of sources and

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                    Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

their reliability, corroborating facts, and "similar indicia of reliability."  *Id.*; *see also Zucco Partners*, 552 F.3d at 995.

Here, the FAC relies on statements from eleven confidential witnesses identified as "CWs" to support its allegations of securities fraud.  The court addresses the CWs in turn below.

CW1 is described as an employee of Everbridge during the xMatters acquisition completed on April 6, 2021, and was "two levels removed from the CEO." (Dkt. 53 ¶ 48.) However, the FAC does not detail the scope of her business duties.  CW1 provides the most relevant and detailed statement of the CWs, and the parties devote significant time to discussing it.  CW1 asserts Everbridge's attribution of approximately $11 million in revenue to xMatters for 2021 should have been closer to $20 or $25 million based on "forecasts." (*See, e.g., id.* ¶¶ 131; 134-35, 150, 219.)  Per the FAC, CW1 raised this discrepancy to Meredith and Brickley, to which Meredith replied it was a "buffer," ostensibly to offset declines in "organic" revenue. (*See, e.g., id.* ¶¶ 132-33, 221, 223; *see also id.* ¶ 167.)  However, it is not clear how CW1 came to believe that their valuation was incorrect, the position or duties CW1 held that lends credibility to their conclusion, or the general methodology by which CW1 calculated the projected revenue should have been closer to $20 or $25 million.  Accordingly, the court finds the FAC inadequately demonstrates CW1's foundation to challenge the revenue reporting attributable to the xMatters acquisition.

CW2 worked at xMatters before the acquisition and remained at Everbridge "in the months following" but the contours of their responsibilities are not described in the FAC. (*Id.* ¶ 49.)  CW11 also worked at xMatters, and was later promoted after it was acquired by Everbridge, but consistently held roles relating to business development or accounts.  (*Id.* ¶ 58.) As an initial matter, CW2 is cited as making statements regarding Everbridge's asserted incapability at "integrating" xMatters, but the FAC does not adequately lay a foundation for CW2 to make those statements, and it is similarly unclear how CW11's role provided them access to sufficient information to challenge Defendants' motives in acquiring xMatters.  Even if credited, these statements indicate "integration" of xMatters' technology was more complex

_____

**CIVIL MINUTES – GENERAL**

20

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                    Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

than expected, but not that the acquisition itself was consummated for an improper reason. (*See, e.g.*, *id.* ¶¶ 165-66, 168-69, 172-73.)

CW3 worked for a company acquired by Everbridge as a business development manager and remained at Everbridge until April 2021.  (*Id.* ¶ 50.)  CW3 was involved in the vetting of the target company while employed there.  (*Id.*)  CW3's statement regarding *Everbridge's* understanding of the company during the acquisition, rather than the target company for which CW3 worked, however, is vague and predicated on hearsay statements of unclear reliability. The FAC references CW3's experience from the opposite side of the acquisition and does not adequately explain how CW3 then came to know there was "no effort" at "integrating" the target company for the time they stayed at Everbridge or the degree of CW3's involvement in matters related to the "integration" of technology as opposed to other routine due diligence tasks.  (*See id.* ¶¶ 50, 121, 150.)

CWs 4, 5, 6, 7, 8, 9 and 10 all worked for periods of time of varying length at Everbridge between 2015 and 2022 in nonexecutive roles.  (*Id.* ¶¶ 51-57.)  However, the FAC does not adequately allege the responsibilities and duties of these individuals such that they would possess information probative of scienter.  Even if credited, aside from one statement from CW5, these CWs'[5] reports all indicate Everbridge suffered difficulty in "integrating" recent acquisitions that negatively impacted its operational performance and maintained some capital on-hand for acquisitions.  (*See, e.g.*, *id.* ¶¶ 151, 165, 168-69, 171, 173-75, 192-94, 198, 200, 202, 206, 213.)  Nothing indicates, however, that the acquisitions were undertaken in an absence of good faith.  The only allegation arguably bearing on scienter relates to the core operations inference, in which CW5 alleges the declining performance of Everbridge's sales staff was viewable in Salesforce by Meredith and Irvin.  (Dkt. 53 ¶ 170.)  However, this statement suffers from a foundational issue in that it is not apparent how CW5, an Account Executive focused on "enterprise clients" who reported to a Vice President of Sales not named as an executive or Defendant in this action, (*see id.* ¶ 52), would be able to verify the Individual Defendants had that access.  Even so, as noted below, it is not clear how the Individual

_____

[5] Some of these statements were sourced from CW1.

_____

**CIVIL MINUTES – GENERAL**

21

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                    Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

Defendants' access to the performance of Everbridge's sales staff bore on the difficulties Everbridge experienced in "integrating" newly acquired companies.

In sum, the CWs' statements that could lend credence to an inference of scienter are not credible because they are attributable to individuals described with insufficient detail to indicate those CWs are able to support their assertions that Defendants acted deceitfully, the statements are conclusory, or they recite unattributed or unreliable hearsay. *See Zucco Partners*, 552 F.3d at 996 (confidential witness allegations "are not sufficient to raise a strong inference of scienter because they demonstrate that the confidential witnesses are not reliable" where "the confidential witnesses were simply not positioned to know the information alleged," "report only unreliable hearsay," or "allege conclusory assertions of scienter"). The CWs' statements that are sufficiently reliable, among several that are not, do not support a strong inference of scienter or demonstrate the falsity of Defendants' statements regarding their acquisitions of other companies. Construed liberally under the applicable pleading standards, these allegations assume the Individual Defendants must have acted with an improper motive because the challenges they faced in successfully "integrating" acquired companies proved to be more difficult than originally anticipated. But that is insufficient. *See In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 837 (9th Cir. 2022) (holding confidential witness's "vague and hyperbolic assertions" that document was "'misleading,' 'deceitful,' and 'lacking scientific integrity'" were insufficient to "meet the PSLRA's heightened pleading requirements").

### b. *Meredith's Departure*

Where sufficiently "numerous or suspicious," "resignations, terminations, and other allegations of corporate reshuffling may in some circumstances be indicative of scienter." *Zucco Partners*, 552 F.3d at 1002. "Absent allegations that the resignation at issue was uncharacteristic when compared to the defendant's typical hiring and termination patterns or was accompanied by suspicious circumstances, the inference that the defendant corporation forced certain employees to resign because of its knowledge of the employee's role in the fraudulent representations will never be as cogent or as compelling as the inference that the employees resigned or were terminated for unrelated personal or business reasons." *Id.*

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                      Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

Here, the FAC relies on one departure to support scienter, Meredith's in 2021, but alleges it was suspicious based on the lack of a clear succession plan and the subsequent "comprehensive review" of Everbridge's strategy that concluded acquired companies were not properly "integrated."  (*See* Dkt. 61 at 33 (citing Dkt. 53 ¶¶ 263-65, 324).)  However, the timing of Meredith's departure close-in-time with Everbridge's review discovering inefficient "integration" of acquired companies is insufficient to support a strong inference of scienter by itself.  *See Dearborn Heights*, 856 F.3d at 622 (resignation accompanied by company's announcement it was recording goodwill impairment charge of $11.9 million amounted to a "mere conclusory allegation that a financial manager resigns or retires shortly before the corporation issues its restatement, which without more, cannot support a strong inference of scienter") (cleaned up); *Zucco Partners*, 552 F.3d at 1002 ("Where a resignation occurs slightly before or after the defendant corporation issues a restatement, a plaintiff must plead facts refuting the reasonable assumption that the resignation occurred as a result of restatement's issuance itself in order for a resignation to be strongly indicative of scienter.") (citation omitted).  Neither is the lack of a clear successor supportive of fraudulent intent in this circumstance; whether Meredith "resigned (or was forced to resign)" due to asserted missteps in Everbridge's "integration" of acquired companies is insufficient to conclude his resignation raises a strong inference of scienter absent additional allegations plausibly suggesting the reason for his resignation was suspicious.  *See Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1367-68 (C.D. Cal. 2014).  Ultimately, the circumstances surrounding Meredith's departure are not so uncharacteristic or accompanied by suspicious circumstances that they support a cogent inference he resigned on account of purportedly fraudulent representations.  *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1062-63 (9th Cir. 2014) (resignations of three executives after company disclosed defective products to market, two of which remained at the company "in some type of advisory role," did not "add[] to the inference of scienter" where plaintiffs did not "provide any facts to connect these departures with the problems at issue in this lawsuit").

c. *The Core Operations Inference*

_____

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                              Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

"The core operations theory of scienter relies on the principle that corporate officers have knowledge of the critical core operation of their companies." *Intuitive Surgical*, 759 F.3d at 1062 (citation and internal quotation marks omitted). "[A]bsent some additional allegation of specific information conveyed to management and related to the fraud or other allegations supporting scienter, the core operations inference will generally fall short of a strong inference of scienter." *In re NVIDIA*, 768 F.3d at 1063 (citation and internal quotation marks omitted). That is because "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud." *Metzler*, 540 F.3d at 1068 (citations omitted). In some "unusual circumstances," the core operations inference, "without more, may raise the strong inference required by the PSLRA." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008). Where those circumstances are absent, the core operations inference may still be considered "when weighing a complaint's allegations of scienter holistically." *In re NVIDIA*, 768 F.3d at 1063 (citation omitted). Core operations allegations may support a strong inference of scienter in three situations:

> (1) when they, along with other allegations, support a cogent and compelling inference of scienter, (2) when they are themselves particular and suggest that the defendants had actual access to the disputed information, and (3) in the rare circumstances when they are not particularized, but the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter.

*Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1111 (9th Cir. 2021) (citations and internal quotation marks omitted).

Here, the FAC relies on Meredith and Brickley's access to sales information and their statements that Everbridge "track[s] internally [and] watch[es] the products per customer go up" to invoke the core operations inference. (Dkt. 53 ¶ 320; *see also* Dkt. 61 at 32-33 (citing Dkt. 53 ¶¶ 170, 320-21).) The court does not find these allegations sufficiently demonstrate Meredith and Brickley *themselves* frequently accessed and tracked Everbridge's sales data, but

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                    Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

assuming they did, the FAC does not clearly connect that data to the asserted false statements regarding Everbridge's acquisitions. *See Webb v. Solarcity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018) ("[P]roof under the core operations doctrine is not easy, and requires either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations, such as data monitoring, or witness accounts demonstrating that executives had actual involvement in creating false reports.") (cleaned up).  It is not explained how a "dismal third quarter from an xMatters perspective," (Dkt. 53 ¶ 322), absent more, is plausibly inversely correlated with an increase in Everbridge's aggregate "products per customer" or "cross [sales]" to which the allegations related to access ostensibly relate, (*see id.* ¶¶ 320-21).  *See also Ronconi*, 253 F.3d at 434 ("A company could experience 'serious operational problems,' 'substantial difficulties,' and 'difficult problems' and still have increasing revenues.") (alteration adopted).  Accordingly, even assuming Meredith and Brickley had access to Everbridge's sales data, that fact alone is insufficient to support a strong inference of scienter on the FAC's allegations.  *See Prodanova*, 993 F.3d at 1109, 1112 (allegations that compliance personnel reported to defendant who held executive position alone do "not provide any particularized facts supporting an inference of scienter" and are insufficient to invoke core operations theory where predicate fact is not "of such prominence that it would be 'absurd' to suggest that management did not know about it").

d.  *Wholistic Evaluation of Scienter*

Ultimately, a wholistic evaluation of the FAC's allegations falls short of supporting a strong inference of scienter.  The FAC's allegations are at least as consistent with Everbridge, under Meredith's leadership, acquiring companies at a slightly faster rate than it did under Ellertson and experiencing difficulty in "integrating" its acquired companies within its product suite.  Though those acquisitions proved more difficult to harmonize with the company's existing lines of business than initially anticipated, the FAC's allegations do not support a finding that Defendants acted with the sort of "deliberate recklessness" necessary to sustain a finding they acted with scienter in undertaking those transactions.  Its allegations are more consistent with a slowdown in growth caused by a miscalculation of the speed at which Everbridge could "integrate" acquired businesses into its Everbridge's software offerings, a

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                           Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

growth strategy Everbridge consistently pitched to the market. Even if Everbridge overestimated its ability to smoothly "integrate" acquired companies at a rapid pace and Meredith's exit was linked to Everbridge finding his acquisition strategy was more aggressive than optimal in hindsight does not compellingly demonstrate Defendants acted with a fraudulent intent in making optimistic statements to investors. *See Zucco Partners*, 552 F.3d at 1007 (allegations were insufficient to plead specific intent to fabricate accounting misstatements at issue where the facts alleged "point[ed] towards the conclusion that [defendant] was simply overwhelmed with integrating a large new division into its existing business"); *Sakkal v. Anaplan Inc.*, 557 F. Supp. 3d 988, 999 (N.D. Cal. 2021) (allegations were insufficient to plead strong inference of scienter where the plaintiff "offers no theory that outweighs the inference 'management believed in its ability to close existing deals'") (quoting *In re SunPower Corp. Sec. Litig.*, 2018 WL 4904904, at *5 (N.D. Cal. Oct. 9, 2018)); *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1166 (9th Cir. 2009) ("[M]otive and opportunity, [are] not enough to create a strong inference of scienter.") (citation and internal quotation marks omitted).

3.    *Conclusion as to Section 10(b) and Rule 10b-5 Claims*

Because the court concludes the FAC does not adequately plead the necessary elements of scienter or falsity, the court **DISMISSES** Plaintiffs' claims under Section 10(b) and Rule 10b-5.[6]

B.    Section 20(a) Claims

The parties support their respective positions on the sufficiency of the FAC's Section 20(a) claims by reference to its Section 10(b) and Rule 10b-5 claims; they part company on whether the latter are adequately plead such that they sustain the former. (*See* Dkts. 58 at 35; 61 at 35; 65 at 20.)

_____

[6] Given the FAC does not sufficiently plead these necessary elements, the court need not reach the parties' remaining arguments regarding loss causation. *See, e.g.*, *In re NVIDIA*, 768 F.3d at 1048, 1065 (affirming dismissal based on complaint's failure to adequately allege scienter).

_____

**CIVIL MINUTES – GENERAL**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                  Date: May 9, 2023
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

A prima facie case under Section 20(a) consists of "(1) a primary violation of federal securities law and (2) that the defendant exercised actual power or control over the primary violator." *Webb v. Solarcity Corp.*, 884 F.3d 844, 858 (9th Cir. 2018) (citation and internal quotation marks omitted). The defendant "is entitled to a good faith defense if [they] can show no scienter and an effective lack of participation." *Todd*, 642 F.3d at 1223 (quoting *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000)). "Section 20(a) claims may be dismissed summarily, however, if a plaintiff fails to adequately plead a primary violation of section 10(b)." *Zucco Partners*, 552 F.3d at 990. That is the case here. Because the FAC does not sufficiently plead its Section 10(b) and Rule 10b-5 claims, the court dismisses the FAC's Section 20(a) claims against the Individual Defendants. *See, e.g.*, *Nguyen*, 962 F.3d at 419 (Section 20(a) claims "necessarily fail" in the absence of a violation of Section 10(b) or Rule 10b-5) (citations omitted).

## IV.   Disposition

For the reasons set forth above, the court **GRANTS** Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** the FAC. Because Rule 15 generally "advises the court that leave shall be freely given when justice so requires," a policy "applied with extreme liberality" absent considerations not implicated here, *see, e.g.*, *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (citation and internal quotation marks omitted), the court **GRANTS LEAVE TO AMEND** the claims dismissed by this order. Should Plaintiffs wish to file an amended complaint, Plaintiffs shall do so within **thirty (30) days** of this Order.

**IT IS SO ORDERED.**

Initials of Deputy Clerk:  mku

---

**CIVIL MINUTES – GENERAL**