UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                  Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

  Melissa H. Kunig                            N/A
Deputy Clerk                            Court Reporter

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                         Not Present

**PROCEEDINGS: ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [85]**

Before the court is Defendants David Meredith ("Meredith"), Patrick Brickley ("Brickley"), Jamie Ellertson ("Ellertson"; together with Meredith and Brickley, "Individual Defendants"), and Everbridge, Inc.'s ("Everbridge") (collectively, "Defendants") Motion to Dismiss ("Motion") Plaintiffs' Sylebra Capital Partners Master Fund Ltd, Sylebra Capital Parc Master Fund, and Sylebra Capital Menlo Master Fund's (collectively, "Plaintiffs") Second Amended Complaint ("SAC"). (Dkt. 85.) The Motion is opposed and briefing is complete. (Dkts. 86, 90, 94-95.) Based on the state of the record, as applied to the applicable law, the court **GRANTS** Defendants' Motion and **DISMISSES** the SAC **WITH LEAVE TO AMEND**.

I.     **Background**

     A.    <u>Requests for Judicial Notice</u>

Defendants request judicial notice of, or that the court incorporate by reference several SEC filings, press releases, and conference call transcripts. (Dkt. 86; *see also* Dkt. 95.) Plaintiffs oppose the court considering these materials for the truth of the facts stated in them, but do not object to the court considering materials relevant to the court's analysis for the purpose of determining the time at which certain information was disclosed to investors. (Dkt. 90 at 8.) The court notes it previously considered similar requests in connection with

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.: 2:22-cv-02249-FWS-RAO | Date: March 18, 2024 |

Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

Defendants' earlier Motion to Dismiss the First Amended Complaint ("FAC"), (*see* Dkt. 79 at 1-3), and rules on the instant requests comparably. Specifically, the court rules as follows:

1. The court **GRANTS** Defendants' requests as to Everbridge's Forms 10-K and 10-Q filed with the Securities and Exchange Commission ("SEC") (Exhibits 1-2, 6, and 9-10) for the limited purpose that Everbridge made the disclosures stated in the Forms 10-K and 10-Q to the market in these SEC filings, but not that those disclosures are necessarily true as a factual matter. *See* Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) (courts may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, but cannot take notice of disputed facts); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (SEC filings are proper subjects for judicial notice).

2. The court **GRANTS** Defendants' request as to Everbridge's earnings and conference call transcripts (Exhibit 12) for the limited purpose that Everbridge and the Individual Defendants made the statements in these transcripts to the market during the investor conference calls listed in Exhibit 12, but not for the truth of those statements. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999-1002 (9th Cir. 2018) (earnings call transcripts may be proper subjects for judicial notice but courts may not take judicial notice of facts in them that are subject to reasonable dispute).

3. The court **GRANTS** Defendants' request as to the December 13, 2021, press release (Exhibit 17) for the limited purpose that certain information regarding Meredith's transition from CEO of Everbridge to an executive at Boomi was disclosed to the market in this press release, but the court does not assume that the information stated in this press release is factually true. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'") (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                    Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

4.  The court **DENIES** Defendants' request to incorporate by reference several of
    Everbridge's SEC filings, press releases, and call transcripts (Exhibits 3-5, 7-8, 11, 13-16,
    and 18-21).  As the court stated in its previous order declining to apply the incorporation
    by reference doctrine, (Dkt. 3), the truth of the factual assertions made in these materials
    is disputed by Plaintiffs, and the court does not find that Plaintiffs' claims "necessarily
    rely" on these documents.  *See Khoja*, 899 F.3d at 1002 ("[I]f the document merely
    creates a defense to the well-pled allegations in the complaint, then that document did not
    necessarily form the basis of the complaint."); *id.* at 1003 ("[I]t is improper to assume the
    truth of an incorporated document if such assumptions only serve to dispute facts stated
    in a well-pleaded complaint.").

    However, the court **GRANTS** Defendants' alternative request that the court take judicial
    notice of these documents as follows.  The court takes judicial notice of Exhibits 3-5 and
    7-8[1] for the limited purpose that Everbridge made the statements in these forms to the
    market in these SEC filings, but does not assume the truth of those statements.  *See Lee*,
    250 F.3d at 689-90; *Metzler*, 540 F.3d at 1064 n.7.  The court takes judicial notice of
    Exhibits 11, 14-15, and 18-21[2] for the limited purpose of that the statements in these
    transcripts were made to the market during the calls, but not for the truth of those
    statements.  *See Khoja*, 899 F.3d at 999-1002.  The court takes judicial notice of Exhibits
    13 and 16[3] for the limited purpose that information was disclosed to the market in these
    press releases, but the court does not assume that the information is factually true.  *See
    Von Saher*, 592 F.3d at 960.

---

[1] Exhibits 3-5 and 7-8 are Everbridge's Forms 10-K, 10-Q, and 8-K as filed with the SEC.
[2] Exhibits 11, 14-15, and 18-21 are transcripts of investor earnings and conference calls held by
Everbridge.
[3] Exhibits 13 and 16 are publicly available press releases announcing Everbridge's acquisition
of xMatters and Meredith's departure as CEO, respectively.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                          Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

      B.     Summary of Allegations[4]

Everbridge is a software provider in which the Individual Defendants held executive positions at certain times. (Dkt. 84 ¶ 8.) Ellertson was Everbridge's CEO from September 2011 to July 2019, and currently serves as Executive Chairman of its Board of Directors. (*Id.* ¶¶ 13, 49, 90.) Meredith took over for Ellertson as CEO in July 2019 until his resignation in December 2021. (*Id.* ¶¶ 13, 90, 213.) Brickley held the position of Chief Financial Officer ("CFO") beginning in March 2019, and was appointed interim Co-CEO after Meredith's departure. (*Id.* ¶ 48.)

Everbridge's software platform began as a mass notification system that would send phone, email, and text messages to users in response to an emergency event. (*Id.* ¶¶ 8, 70, 72.) Today, Everbridge's software offerings are split into three segments: (1) applications sending mass notifications to individuals in the event of an emergency; (2) information technology and "Internet of Things" population "alerting"; and (3) Critical Event Management ("CEM") software designed to assist governments and other large organizations with "critical events" like cyber-attacks and threats, internet service interruptions, and crisis management. (*Id.* ¶¶ 69, 71-74.) As stated in Everbridge's 2019 10-K, Everbridge viewed itself as the only company that provided a "full, integrated CEM solution" at the time, which benefits its customers by "improv[ing] management control and visibility and lower[ing] costs." (*Id.* ¶¶ 75, 78.)

After an initial public offering ("IPO") in September 2016, Everbridge became a publicly traded company. (*Id.* ¶ 80.) Everbridge disclosed revenue of $104 million by the end of fiscal year 2017, $147.1 million by the end of 2018, and $200.9 million by the end of 2019, corresponding to year-over-year growth rates of 36%, 41%, and 37%, respectively. (*Id.*)

Part of Everbridge's expansion strategy, and a key focus of the case, is Everbridge's series of acquisitions. In a February 2019 presentation, Ellertson explained Everbridge focused

---

[4] For purposes of the Motion, the court accepts the SAC's allegations as true and construes them in the light most favorable to Plaintiffs. *See, e.g.*, *In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784, 793 (9th Cir. 2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                    Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

on "strategic" acquisitions through "either buying into a market, a new market or a geography," or "acquir[ing] a team . . . and a customer base," and that Everbridge did not "buy revenue typically" pursuant to its strategy.  (*Id.* ¶ 83.)

After the September 2016 IPO, but before Ellertson stepped down as CEO in June 2019, Everbridge acquired six companies while continuing to develop its own products.  (*Id.* ¶ 84.) After Meredith took over, Meredith informed investors that Everbridge would retain its focus on "organic" growth and continue to avoid "buy[ing] revenue."[5]  (*Id.* ¶ 92.)  Between March 2019 and December 2021, Everbridge acquired nine companies with Meredith at the helm.  (*Id.* ¶¶ 96, 100.)

The SAC, like the FAC, refers to several statements Everbridge and the Individual Defendants made to investors describing these acquisitions.  By way of relevant examples, Everbridge's SEC filings state Everbridge acquired companies "to enhance the Company's CEM suite of solutions."  (*E.g.*, *id.* ¶¶ 119, 123, 127, 132, 134, 139, 146.)  Of note is also an excerpt from Meredith's discussion an earnings call in November 2019 in which he described Everbridge's "rightsizing," or "optimizing for the strategic value of the business" by "focus[ing] on the strategic value" of an acquisition as Everbridge "unpack[ed]" and "integrate[d]" the new company, noting "rightsizing" refers to "optimizing for the strategic value of the business." (*See, e.g.*, *id.* ¶ 106.)  And another relevant example is a statement from Brickley during a May 2020 conference call that Everbridge recently acquired a technology company not "to drive near-term revenue contribution, but rather for [its] longer-term strategic potential."  (*See, e.g.*, *id.* ¶ 129.)  The unifying thread between the statements to investors cited in the SAC from Everbridge and the individual Defendants is that Everbridge sought to acquire companies for "strategic" potential over the long-term, which the SAC connects to Everbridge's "strategy" of focusing on acquisitions that would yield "organic" instead of "bought" or "acquired" revenue. (*See id.* ¶¶ 81, 83.)

---

[5] The SAC defines "organic" growth as increasing revenue through a company's own operations and developing its own products.  (*Id.* ¶ 81.)  "Inorganic growth," or "buying" or "acquiring" revenue, on the other hand, is used in the SAC to refer to a company increasing its revenue by acquiring preexisting operations and product lines from other companies.  (*See id.*)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                    Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

_____

But, according to the SAC, Everbridge did not truly adhere to that strategy. The SAC contends that, in fact, Everbridge acquired companies to maximize its revenue in the short-term, which it accomplished by "buying" revenue. (*See, e.g.*, *id.* ¶¶ 81.) In support of these assertions, the SAC, like the FAC, relies on statements from several confidential witnesses ("CWs"), which are discussed in further detail below. (*See, e.g.*, *id.* ¶¶ 52-68.)

The SAC also references Meredith's departure in December 2021. Everbridge announced Meredith would step down on December 9, 2021, to join Boomi, a private company, as CEO. (*Id.* ¶¶ 176, 305.) An analyst described the departure as "abrupt and unexpected" given Everbridge continued to "work through" a "large and transformative acquisition." (*Id.* ¶ 299.)

On the same day, Everbridge also lowered its forecast year-over-year growth for 2022 from of approximately 30% to 20-23%. (*Id.* ¶¶ 213, 297.) A few months later, on February 24, 2022, Everbridge revised its estimate to 15-17%. (*Id.* ¶¶ 218, 307.) In the accompanying press release, Everbridge noted the company was "taking decisive actions to streamline, integrate, and reduce complexity in [Everbridge's key offerings, which [the company] expect[ed] to drive sustainable growth in the years ahead." (*Id.* ¶¶ 219, 308.) On an earnings call on that same day, Co-CEOs Vernon Irvin ("Irvin") and Brickley attributed the lowered growth estimates to challenges Everbridge faced in "increasing complexity and incomplete integrations" from acquisitions completed in 2020 and 2021. (*Id.* ¶¶ 220-22; 308-10.) Irvin indicated the company would accordingly "paus[e] material new M&A and instead prioritiz[e] development efforts to focus on accelerating product integrations across [Everbridge's] existing acquired assets." (*Id.* ¶¶ 223, 312.)

In this case, Plaintiffs bring a putative class action against Everbridge and the Individual Defendants for violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5, as well as a claim for violation of Section 20(a) against the Individual Defendants. (Dkt. ¶¶ 417-427.) Previously, the court granted Defendants' Motion to Dismiss the FAC and dismissed the FAC with leave to amend after finding the FAC did not plausibly allege a materially false statement or scienter. (Dkt. 79.) Plaintiffs have since filed the SAC, which Defendants contend fares no

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                    Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

better than the FAC in alleging these necessary elements and also fails to allege loss causation. (Dkt. 84; Dkt. 90 at 10-20.)  Opposing dismissal, Plaintiffs maintain the SAC remedies the FAC's deficiencies, highlighting in particular the SAC's inclusion of additional CW allegations. Defendants emphasize their position that these additional allegations do not salvage Plaintiffs' claims and that the remainder of the SAC is insufficient to state the asserted violations of the securities laws.  (Dkt. 90; Dkt. 84 at 11-17.)

## II.    Legal Standard

### A.    Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).  To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  "A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                    Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

(9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be entitled to the presumption of
truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to
give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 996
(quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Second, the factual allegations
that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to
require the opposing party to be subjected to the expense of discovery and continued litigation."
*Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681.

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,
550 U.S. at 556). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both
the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff
survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory
(DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652
F.3d at 1216). But, on the other, "[w]here a complaint pleads facts that are merely consistent
with a defendant's liability, it stops short of the line between possibility and plausibility of
entitlement to relief." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 at U.S. 678).
Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is liable for the misconduct
alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556); *accord Wilson v. Hewlett-
Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

In *Sprewell v. Golden State Warriors*, the Ninth Circuit described legal standards for
motions to dismiss made pursuant to Rule 12(b)(6):

Review is limited to the contents of the complaint. All allegations of material fact
are taken as true and construed in the light most favorable to the nonmoving party.
The court need not, however, accept as true allegations that contradict matters
properly subject to judicial notice or by exhibit. Nor is the court required to accept
as true allegations that are merely conclusory, unwarranted deductions of fact, or
unreasonable inferences.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                    Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

266 F.3d 979, 988 (9th Cir. 2001) (citations omitted).

     B.    <u>Rule 9(b) Pleading Standard</u>

     "Securities fraud class actions must meet the higher, exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA)." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires "that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (cleaned up). The allegations of fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct alleged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (stating claims subject to Rule 9(b) must allege the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations") (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). The plaintiff must also "set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as recognized by Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001). Rule 9(b) "does not allow a complaint to lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (cleaned up). However, Rule 9(b) permits "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b).

**III.   Discussion**

     A.    <u>Section 10(b) Claims</u>

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                      Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*
═══════════════════════════════════════════════════════════════════

To state a claim under Section 10(b) or Rule 10b-5, a plaintiff "must adequately plead six elements: (1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 786 (9th Cir. 2020) (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)). Rule 9(b)'s pleading standard "applies to all elements of a securities fraud action" brought under Section 10(b) or Rule 10b-5. *Apollo*, 774 F.3d at 605.

### 1. *Scienter*

Defendants argue that the SAC does not plead a strong inference of scienter, particularly because the SAC's new allegations do not (1) establish the foundation for the CW allegations on which it relies or tie them to plausible allegations that Defendants acted with scienter; (2) sufficiently establish the core operations inference; (3) show Meredith's departure supports a finding of scienter; and (4) plausibly plead scienter when considered wholistically. (Dkt. 85 at 11-17, 26-34; Dkt. 94 at 2-10, 15-19.) Highlighting the SAC's new allegations focusing on additional and previously-alleged CWs, Plaintiffs dispute each point. (Dkt. 90 at 8-13, 24-32.)

#### i. *Legal Standard*

Scienter is a "a mental state embracing intent to deceive, manipulate, or defraud." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) (quoting *Tellabs*, 551 U.S. at 319). "To satisfy the requisite state of mind element, a complaint must allege that the defendant made false or misleading statements either intentionally or with deliberate recklessness." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012) (cleaned up); *see also* 15 U.S.C. § 78u-4(b)(2). "[D]eliberate recklessness is an extreme departure from the standards of ordinary care which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Schueneman*, 840 F.3d at 705 (cleaned up). That is, recklessness "only satisfies scienter under § 10(b) to the extent that it reflects some degree of intentional or conscious misconduct." *Nursing Home Pension Fund,*

_____

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                    Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

*Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999)).

    The PSLRA requires a plaintiff to plead facts supporting a "strong inference" of scienter. *See Tellabs*, 551 U.S. at 323-324; 15 U.S.C. § 78u-4(b)(2)(A).  The court considers "plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff."  *Tellabs*, 551 U.S. at 324.  A complaint "survive[s]" a defendant's motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *See id.*

    "[W]hen determining whether plaintiffs have shown a strong inference of scienter, the court must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs."  *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).  "District courts should consider all the allegations in their entirety, together with any reasonable inferences that can be drawn therefrom, in concluding whether, on balance, the plaintiffs' complaint gives rise to the requisite inference of scienter."  *Id.*  "However, the inference that the defendant acted with scienter need not be irrefutable, i.e., of the smoking-gun' genre, or even the most plausible of competing inferences . . . .  [T]he inference of scienter must be more than merely reasonable or permissible—it must be cogent and compelling, thus strong in light of other explanations."  *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1179 (C.D. Cal. 2007) (citation and internal quotation marks omitted).  "Thus, a complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and *at least as compelling* as any opposing inference one could draw from the facts alleged."  *Id.* (emphasis added in original).

    Where a plaintiff "seek[s] to hold individuals and a company liable on a securities fraud theory," the plaintiff must "allege scienter with respect to each of the individual defendants." *Apollo*, 774 F.3d at 607.  However, courts may "impute scienter to individual defendants in some situations."  *Id.*  For instance, "there could be circumstances in which a company's public statements were so important and so dramatically false that they would create a strong inference

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                              Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

that at least *some* corporate officials knew of the falsity upon publication." *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 744 (9th Cir. 2008) (citation omitted).

Where no "individual allegation" establishes a strong inference of scienter, a complaint sufficiently pleads scienter only if "the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness" under a "holistic" review. *Curry v. Yelp Inc.*, 875 F.3d 1219, 1226 (9th Cir. 2017) (quoting *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011)).

        ii.    *Analysis*

        a.  *Reliance on Confidential Witnesses*

"The PSLRA does not necessarily require that a plaintiff name [their] confidential witnesses" but requires a plaintiff to "reveal with particularity the sources of their information." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 767 (9th Cir. 2023) (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005)). "[A] complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009). "First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge." *Id.* (citing *Daou*, 411 F.3d at 1015-16). "Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter." *Id.* (citing *Daou*, 411 F.3d at 1022).

In evaluating whether the complaint has provided an adequate basis to determine a witness has personal knowledge of the events they report, the court looks to the level of detail provided by the confidential witness, the plausibility of the complaint's allegations, the number of sources and their reliability, corroborating facts, and "similar indicia of reliability." *Id.*; *see also Zucco Partners*, 552 F.3d at 995. "In essence, [the court] ask[s] whether the complaint describes [confidential witnesses] 'with sufficient particularity to support the probability that a

_____

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                          Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

person in the position occupied by the source would possess the information alleged.'" *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 938 (9th Cir. 2023) (quoting *Daou*, 411 F.3d at 1015).

The SAC, like the FAC, relies on statements from several individuals listed as CWs and identified as former employees of Everbridge or the companies Everbridge acquired.  The court has previously addressed several of these witnesses, CWs 4, 5, 6, 7, 8, 9, 10, and 11, and the court notes the SAC's allegations as to these witnesses are materially identical to the ones the court previously found insufficient and too conclusory to support a strong inference of scienter in its earlier order.[6]  (*See* Dkt. 79 at 19-22.)  However, the SAC also includes—and overall principally differs from the FAC in respect to—new individuals identified as CWs 12, 13, 14, 15, and 16, and additional allegations pertaining to CWs 1, 2, and 3.  (*See* Dkt. 84 ¶¶ 17-22, 25, 52-54, 63-68, 87, 109, 111-13, 115-16, 120, 126, 137, 156, 185, 188, 194, 196-97, 200-12, 217, 233-34, 238, 248, 255, 289, 300-01, 373-74, 390-96.)

CWs 1, 2, and 3 are described with more detail in the SAC than in the FAC, but the court finds these allegations are still inadequate.  The court finds CW1's foundation for their assertion that projected revenue for the xMatters acquisition should have been "$20-25 million for the rest of 2021" instead of the disclosed $9-11 million remains too conclusory and thus is insufficient.  (*See* Dkt. 84 ¶¶ 147-150; *see also* Dkt. 79 at 20.)  Additionally, CW1 was not closely involved with the Individual Defendants in this case; CW1 reported to a Vice President of Financial Planning in analysis, "who, according to CW1, reported to Brickley, who reported to Meredith."  (Dkt. 84 ¶ 52.)  The court finds CW2 and CW3 are still alleged to be involved in "integrations" of certain companies on a conclusory basis and the SAC does not adequately demonstrate to whom they report or on what they base their assertions that, in their view, Everbridge failed to "integrate" the companies at which they worked.  (*See* Dkt. 84 ¶¶ 53-54; *see also* Dkt. 79 at 20-21.)

---

[6] The court accordingly refers to its previous analysis, (Dkt. 79 at 19-22), and does not analyze these individuals separately in this order.

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                    Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

The court finds the statements of CWs 12, 13, 14, 15, and 16 suffer from similar issues. To be sure, the SAC alleges each of these individuals' performed certain functions—a "strategic account manager" engaged in "cross-selling and up-selling services to major accounts" and "helping [their] accounts maximize the use of Everbridge's tools"; a "senior account manager" in charge of "maintaining relationships with customers"; a "strategic account executive" involved in "targeting Enterprise-level customers" in the southeastern United States; a "senior director of business" that "helped cross-sell and integrate Everbridge's products" and "develop[ed] partnerships or alliances" with "global system integrators" and "consultants"; and a "director of operations" working at Everbridge's risk intelligence center "supervising a team of risk analysts" and "indirectly" with "product development and client relations." (Dkt. 84 ¶¶ 63-68.) But the court agrees with Defendants that the SAC does not sufficiently explain how these CWs can attribute the operational difficulties they allegedly encountered to the Individual Defendants and other decisionmakers at Everbridge's assertedly fraudulent intent to conceal post-acquisition challenges, or how such concealment was accomplished. At most, the newly alleged CWs in the SAC indicate these CWs disagreed with Everbridge's management's acquisition strategy which did not pan out as planned, and not that Everbridge's management directed the company to acquire other companies with extreme recklessness as to the company's ability to "integrate" them into "organic" revenue streams. (*See, e.g.*, Dkt. 84 ¶¶ 248, 300, 373.) To summarize, "while [the CWs] reference[] a 'stream of complaints,'" "general concern[s]," and use several "alarming adjectives," "the complaint does not plead [sufficient] details about these [allegations sourced to the CWs] that would demonstrate a strong inference of scienter in [Defendants'] later statements." *See Nguyen*, 962 F.3d at 416-17; *see also Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) ("Missing are allegations linking specific reports and their contents to the executives, not to mention the link between the witnesses and the executives.") (citation omitted).

Ultimately, the court finds that the SAC, like the FAC, does not sufficiently establish the CWs' allegations evince a strong inference of scienter because the SAC lacks sufficient details to support their assertions, particularly given the allegations' conclusory nature without sufficient foundation. *See Zucco Partners*, 552 F.3d at 996 (confidential witness allegations "are not sufficient to raise a strong inference of scienter because they demonstrate that the

---

**CIVIL MINUTES – GENERAL**

14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                    Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

confidential witnesses are not reliable" where "the confidential witnesses were simply not positioned to know the information alleged," "report only unreliable hearsay," or "allege conclusory assertions of scienter"); *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 837 (9th Cir. 2022) (holding confidential witness's "vague and hyperbolic assertions" that document was "'misleading,' 'deceitful,' and 'lacking scientific integrity'" were insufficient to "meet the PSLRA's heightened pleading requirements"); *see also E. Ohman J:or Fonder*, 81 F.4th at 925-26, 940 (holding allegations that demonstrated defendant reviewed "detailed sale reports" prepared for the defendant, access to detailed segment-specific data on demand and usage of certain products showing products were used in "extremely volatile" sector, "admitted to closely monitoring" sales data, supported a strong inference of scienter, but that allegations of access to contradictory information in sales database and ability to direct employees to send data to other employee did not).

       b.  *Meredith's Departure and the Core Operations Inference*

      The SAC's relevant allegations are materially similar to those the court previously found insufficient in the FAC to plead a compelling inference of scienter as to these matters. In sum, the circumstances surrounding Meredith's departure as CEO are not sufficiently suspicious as alleged to support a strong inference of scienter. (*See* Dkt. 79 at 22-23); *Zucco Partners*, 552 F.3d at 1002 ("Absent allegations that the resignation at issue was uncharacteristic when compared to the defendant's typical hiring and termination patterns or was accompanied by suspicious circumstances, the inference that the defendant corporation forced certain employees to resign because of its knowledge of the employee's role in the fraudulent representations will never be as cogent or as compelling as the inference that the employees resigned or were terminated for unrelated personal or business reasons."); *Dearborn Heights*, 856 F.3d at 622 (resignation accompanied by company's announcement it was recording goodwill impairment charge of $11.9 million amounted to a "mere conclusory allegation that a financial manager resigns or retires shortly before the corporation issues its restatement, which without more, cannot support a strong inference of scienter") (cleaned up); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1062-63 (9th Cir. 2014) (resignations of three executives after company disclosed defective products to market, two of which remained at the company "in some type of advisory

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                                     Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

role," did not "add[] to the inference of scienter" where plaintiffs did not "provide any facts to connect these departures with the problems at issue in this lawsuit"). And the SAC allegations are likewise too unspecific to permit use of the core operations inference to bolster a strong inference of scienter. (*See* Dkt. 79 at 24-25); *In re NVIDIA*, 768 F.3d at 1063 ("[A]bsent some additional allegation of specific information conveyed to management and related to the fraud or other allegations supporting scienter, the core operations inference will generally fall short of a strong inference of scienter."); *Ronconi*, 253 F.3d at 434 ("A company could experience 'serious operational problems,' 'substantial difficulties,' and 'difficult problems' and still have increasing revenues.") (alteration adopted); *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1112 (9th Cir. 2021) (allegations that compliance personnel reported to defendant who held executive position alone do "not provide any particularized facts supporting an inference of scienter" and are insufficient to invoke core operations theory where predicate fact is not "of such prominence that it would be 'absurd' to suggest that management did not know about it").

c. *Wholistic Evaluation of Scienter*

In sum, the court finds the SAC, like the FAC, insufficiently establishes a cogent inference that Defendants' actions amounted to more than "the conclusion that [Everbridge] was simply overwhelmed with integrating [newly acquired companies] into its existing business." *See Zucco Partners*, 552 F.3d at 1007. I. But those allegations do not alter the court's conclusion that the more compelling inference to draw from the SAC's allegations is that Everbridge's slowdown in growth was attributable to acquisitions that later proved more challenging to harmonize with its operations, rather than a conscious effort by Defendants to trick the market into believing Everbridge's revenues were attributable to unsustainable sources with the extreme recklessness necessary to sustain a finding of scienter. *See Prodanova*, 993 F.3d at 1103 ("Mere negligence — even head-scratching mistakes — does not amount to [securities] fraud."). The court finds the SAC lacks a sufficiently "plausible motive" and "particularized facts showing any individual's knowledge or deliberate recklessness," absent which the "innocent explanation" in this case is more plausible. *See id.* at 1113. Accordingly, the court concludes the SAC does not adequately allege scienter—"a bedrock requirement of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                          Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

Rule 10b-5 [and Section 10(b)]," *see In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 474 (9th Cir. 2015)—and on that basis its claim under Section 10(b) and Rule 10b-5 against Defendants is subject to dismissal. *See In re Nektar Therapeutics*, 34 F.4th at 835 (each element of a claim brought under Section 10(b) and Rule 10b-5 "must be independently satisfied") (citation omitted).

          2.    *Falsity*

      Because the court finds the SAC does not plausibly allege a Defendant acted with the requisite scienter in this case, the SAC is subject to dismissal on that basis alone.[7]  *See In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 953 (9th Cir. 2023) ("In light of the absence of scienter, [the court] need not assess the alleged falsity of the statements.").  However, the court briefly notes it previously found that certain statements in the FAC were not plausibly alleged to be false on several bases, in particular that (1) the PSLRA's safe harbor applied to certain statements regarding "integration" and revenue projections; (2) certain statements were general expressions of optimism and thus constituted nonactionable puffery; (3) Defendants did not have an affirmative obligation to delineate between "organic" and "inorganic" revenue, and Defendants' statements regarding "buying revenue" did not contradict the "integration" challenges Everbridge faced; and (4) reliance on Defendants' challenges with post-acquisition "integration" was, by itself, insufficient to establish falsity because it amounted to pleading fraud by hindsight.  (*See* Dkt. 79 at 9-17.)  The SAC relies on essentially the same statements as the FAC, (*compare* Dkt. 79, *with* Dkt. 53), and accordingly the court's previous analysis still holds in light of the foregoing discussion on scienter.

          B.    <u>Section 20(a) Claims</u>

      A prima facie case under Section 20(a) consists of "(1) a primary violation of federal securities law and (2) that the defendant exercised actual power or control over the primary

---

[7] Consequently, the court need not separately address Defendants' argument the SAC fails to plead loss causation.  (*See* Dkt. 79 at 26 n.6 (citing *In re NVIDIA*, 768 F.3d at 1048, 1065).)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                    Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*
═══════════════════════════════════════════════════════════════

violator." *Webb v. Solarcity Corp.*, 884 F.3d 844, 858 (9th Cir. 2018) (citation and internal quotation marks omitted). The defendant "is entitled to a good faith defense if [they] can show no scienter and an effective lack of participation." *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011) (quoting *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000)). "Section 20(a) claims may be dismissed summarily, however, if a plaintiff fails to adequately plead a primary violation of section 10(b)." *Zucco Partners*, 552 F.3d at 990. Because the court finds the SAC, like the FAC, does not sufficiently plead its Section 10(b) and Rule 10b-5 claims, the court dismisses the FAC's Section 20(a) claims against the Individual Defendants. *See, e.g., id.*; *Nguyen*, 962 F.3d at 419; *In re VeriFone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993).

C.    Leave to Amend

Under Rule 15, the court "freely give[s] leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts in the Ninth Circuit apply this policy with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (citations and internal quotation marks omitted). However, courts may decline leave to amend if "there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Accordingly, courts "may deny a plaintiff leave to amend if it determines that "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (internal quotation marks omitted) (citing, *inter alia*, *Foman*, 317 U.S. at 182).

While, as noted, the SAC is similar to the FAC in several respects and the court finds it still does not sufficiently allege a violation of Section 10(b) or Rule 10b-5, "[a]dherence to liberal grants of leave to amend is 'especially important in the context of the PSLRA.'" *In re*

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-02249-FWS-RAO                          Date: March 18, 2024
Title: Sylebra Capital Partners Master Fund Ltd, *et al.* v. Everbridge, Inc., *et al.*

*Saxton, Inc. Sec. Litig.*, 156 F. App'x 917, 921 (9th Cir. 2005) (quoting *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).  In light of the circumstances of this case and the PSLRA's "formidable pleading requirements to properly state a claim and avoid dismissal under Rule 12(b)(6)," *Forescout Techs.*, 63 F.4th at 765 (citation and internal quotation marks omitted), the court **GRANTS** Plaintiffs leave to amend the SAC.

## IV.    Disposition

        For the reasons stated, the Motion is **GRANTED** and the SAC is **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND** the claims dismissed by this order.  Plaintiffs are directed to file an amended complaint[8] **within thirty (30) days of this order**.  Failure to file an amended complaint on or before the deadline set by the court will result in this order operating as a dismissal of this case with prejudice and without further notice.  *See Lynch v. City of Alhambra*, 880 F.2d 1122, 1124 (9th Cir. 1989) (dismissal without prejudice "was converted to a final order of dismissal with prejudice" because the plaintiff "failed to cure the deficiency perceived by the district court within the period provided by the district court").


        **IT IS SO ORDERED.**

_____

[8] Given the length of the complaint in this case, Plaintiffs **are instructed to include as an attachment or concurrently file a redline or similar document identifying the differences between the SAC's and third amended complaint's allegations** should Plaintiffs choose to file a third amended complaint.  Noncompliance with this requirement may result in the court striking the amended complaint based on the court's inherent powers and/or for failure to comply with a court order.  *See Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404-05 (9th Cir. 2010) (holding a district court's inherent power to "manage its own affairs" and "control [its] docket" include "striking documents from the docket to address litigation conduct") (citations and internal quotation marks omitted); Fed. R. Civ. P. 41(b).

_____

**CIVIL MINUTES – GENERAL**