**KIRKLAND & ELLIS LLP**
Nathaniel E. Haas (CA#324305)
nathaniel.haas@kirkland.com
2049 Century Park East, 37th Floor
Los Angeles, CA 90067
Tel:    (213) 680-8250

Mark McKane, P.C. (CA #230552)
mark.mckane@kirkland.com
555 California Street
San Francisco, CA 94104
Tel:    (415) 439-1400

Jordan D. Peterson, P.C. (*pro hac vice*)
jordan.peterson@kirkland.com
601 Lexington Avenue
New York, NY 10022
Tel:    (212) 446-4800

Jules H. Cantor (*pro hac vice*)
jules.cantor@kirkland.com
333 West Wolf Point Plaza
Chicago, IL 60654
Tel:    (312) 862-2000

*Attorneys for Defendants Everbridge, Inc., David Meredith, and Patrick Brickley*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLEBRA CAPITAL PARTNERS MASTER FUND LTD, SYLEBRA CAPITAL PARC MASTER FUND, AND SYLEBRA CAPITAL MENLO MASTER FUND, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> EVERBRIDGE, INC., DAVID MEREDITH, PATRICK BRICKLEY, and JAIME ELLERTSON, <br><br> Defendants. | Case No. 2:22-cv-02249-FWS-RAO <br><br> DEFENDANTS EVERBRIDGE INC., DAVID MEREDITH, AND PATRICK BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS <br><br> **JUDGE: Hon. Fred W. Slaughter** <br> **CTRM: 10D (Santa Ana)** <br><br> Complaint Filed: April 4, 2022 <br> Second Amended Complaint Filed: October 15, 2025 |

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE
OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

1

Defendants Everbridge, Inc. ("Everbridge" or the "Company"), David Meredith, and Patrick Brickley hereby submit their answer to the Operative Amended Complaint, dated October 15, 2025 (Dkt. #152, the "Complaint"), filed by plaintiffs Sylebra Capital Partners Master Fund Ltd, Sylebra Capital Parc Master Fund, and Sylebra Capital Menlo Master Fund (collectively, "Plaintiffs") as follows:

### **GENERAL DENIAL**

Defendants Everbridge, Meredith, and Brickley deny each and every allegation contained in the Complaint, except as otherwise expressly admitted in Paragraphs 1 through 270 below.  Any factual averment admitted herein is admitted only as to the specific facts and not as to any conclusions, characterizations, implications, innuendos, or speculation contained in any averment or in the Complaint as a whole.  Moreover, Defendants Everbridge, Meredith, and Brickley specifically deny any allegations contained in the introductory matter preceding Paragraph 1 of the Complaint, and in headings, footnotes, or unnumbered paragraphs in the Complaint.  Defendants Everbridge, Meredith, and Brickley specifically deny liability to Plaintiffs and deny that Plaintiffs have suffered any legally cognizable damages for which Defendants are responsible.  Pursuant to Rule 8(b)(6) of the Federal Rules of Civil Procedure, allegations contained in the Complaint to which no responsive pleading is required shall be deemed denied.  Defendants expressly reserve the right to amend and supplement their answer and expressly reserve any and all defenses that may be available.  Answers

to each paragraph of the Complaint are made by Defendants Everbridge, Meredith, and Brickley without waiving, but expressly reserving, all rights they may have to seek relief by appropriate motions directed to the allegations in the Complaint.

With respect to all paragraphs in the Complaint in which Plaintiffs pray for damages or other relief, including, but not limited to, Paragraphs A through D following the title "Prayer for Relief," Defendants Everbridge, Meredith, and Brickley deny that Plaintiffs are entitled to that relief under the law.

By responding to any allegation in the Complaint, Defendants Everbridge, Meredith, and Brickley make no admission that such allegation is relevant to Plaintiffs' claims or is an appropriate subject of discovery and expressly reserve all rights in this regard.

## SPECIFIC RESPONSES

### I.    NATURE OF THE ACTION

1.    This case is about Defendants' fraudulent misrepresentations, material omissions, and course of conduct surrounding Everbridge's nine acquisitions between 2019 and 2021. Specifically, Defendants used the *acquired revenue* from a target company to create the false appearance of *organic revenue* growth in the minds of the investors comprising the Class.

**ANSWER 1:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 1 of the Complaint.

2.    Moreover, throughout the Class Period, Everbridge and the Individual Defendants also consistently misled the investing public. In stark opposition to what

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

3

Defendants knew (and in which they were actively engaging), however, they instead disseminated false and misleading statements and omissions of material fact in an attempt to cover up the significant problems Everbridge encountered as a result of Defendants' failure to integrate these acquisitions.

**ANSWER 2:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 2 of the Complaint.

3.      Indeed, Defendants made materially false and misleading statements and omissions of material fact about the extent to which Everbridge was using and allocating the revenue obtained from an acquired company in order to disguise *stagnating organic revenue*.  During the Class Period, Defendants lied to investors about how much *revenue Everbridge acquired* from xMatters, a $242.6 million acquisition of an IT service platform that, *if properly integrated*, would allow Everbridge more effectively to sell its single platform suite of products, which in turn, would enhance the Company's long-term growth.

**ANSWER 3:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge purchased all of the issued and outstanding shares of stock of xMatters for a base consideration of $242.6 million.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 3 of the Complaint.

4.      Although Defendants knew xMatters would contribute $20-25 million to Everbridge's 2021 revenue, they instead told investors that xMatters would contribute only $9-11 million. According to Confidential Witness ("CW") 1, who was a member of the finance team, Global Financial Planning and Analysis and who worked at Everbridge during the xMatters acquisition, *the rationale Meredith provided was that the discrepancy in figures was to "buffer" the declines in Everbridge's organic revenue.* Defendants' falsehoods led investors to believe that the Company's organic revenue was growing more than it actually was.

**ANSWER 4:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on April 6, 2021 and refer the Court to that document for a complete and accurate statement of its contents.  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 4.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 4 of the Complaint.

5.    As a result, investors remained completely unaware of the Company's slowing organic revenue until the truth was revealed. As a result, investors were left holding the bag to the tune of billions of dollars in losses when Defendants admitted that during the Class Period had been unsustainable and harmful to long term profitability.

**ANSWER 5:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 5 of the Complaint.

6.    Specifically, on December 9, 2021, the Company lowered 2022 revenue guidance to levels well below Everbridge's demonstrated and consistent 30% plus revenue growth, and also announced that Defendant Meredith abruptly resigned as CEO. On this news, Everbridge's share price plummeted more than *45%* in a single day. Even at that moment, however, Defendants continued their misleading narrative by claiming that Meredith's sudden departure was unrelated to the Company's financial position.

**ANSWER 6:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on December 9, 2021, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Defendants Everbridge, Meredith, and Brickley further refer the Court to the public record for the price of Everbridge common stock for the relevant period

referenced in Paragraph 6 of the Complaint. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 6 of the Complaint.

7.    On February 24, 2022, investors finally learned the full truth about Everbridge's slowing revenue growth, when Everbridge announced that it had determined that the flurry of acquisitions during the Class Period created obstacles to sales growth due to incomplete integrations and increased complexity of its offerings, and as a result, the Company was going to focus on integrating the acquired companies (which Defendants previously said they already did). On this news, Everbridge's common stock cratered an additional *34%*.

**ANSWER 7:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on February 24, 2022, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents. Defendants Everbridge, Meredith, and Brickley further refer the Court to the public record for the price of Everbridge common stock for the relevant period referenced in Paragraph 7 of the Complaint. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 7 of the Complaint.

### A.    Everbridge's Pre-Class Period

8.    Everbridge was founded in 2002. Initially, the Company had a single product, its Mass Notification software, which sent messages via telephone, text, and email to an entire defined population in the event of a threat or emergency. Though it was originally the Company's only product, Defendants understood that Everbridge needed to expand its offerings beyond Mass Notification to continue growing. As Defendant Brickley explained during the Company Conference on March 5, 2020 in his capacity as CFO, "we knew pre-IPO, that you can't really go public and sustain on just the mass notification opportunity" as it was "not growing super quickly."

---

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE                6
OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

**ANSWER 8:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge was founded in 2002.  Defendants Everbridge, Meredith, and Brickley further admit that Everbridge offers a Mass Notification application.  Defendants Everbridge, Meredith, and Brickley further admit that the Morgan Stanley Technology, Media, and Telecom Conference was held on March 5, 2020, and refer the Court to the transcript of that conference for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 8 of the Complaint.

9.      To generate long-term growth, the Company developed a Critical Event Management ("CEM") suite, which it described as a collection of various products that enable organizations to assess, manage, and respond to distinct threats and emergencies, *all on a single platform*. The Company told investors this CEM suite would drive future growth, as the market for CEM was more than five times larger than the market for Mass Notification.

**ANSWER 9:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge offers a Critical Event Management ("CEM") platform.  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the allegations in the last sentence of Paragraph 9.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 9 of the Complaint.

10.      And that early growth strategy translated well to earnings, as Everbridge reported 35% to 41% revenue growth every year between 2016 and 2018. Indeed, Everbridge's revenue growth from 2016 to 2018 was largely organic. Organic growth refers only to that which is achieved entirely through a Company's own resources, in contrast to inorganic growth, which may be attributable to any number of external sources and activities such as mergers and acquisitions ("M&A"). Prior to the Class

Period, then CEO Ellertson explained that since going public (in 2016), Everbridge's growth rate consisted of mid-30% organic growth, plus an additional 3% to 7% inorganic growth from acquisitions.

**ANSWER 10:** Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the last sentence of Paragraph 10. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 10 of the Complaint.

11. Ellertson explained that the Company's acquisitions were "thoughtful product decision[s] that [are] strategic" and meant to "create new growth drivers or sustain current drivers."

**ANSWER 11:** Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the allegations in Paragraph 11 of the Complaint.

**B. Meredith Took Over as CEO and Everbridge Acquired Numerous Companies to Enhance Everbridge's CEM Suite**

12. From the beginning of the Class Period to its end, the Company engaged in a flurry of acquisitions, purchasing nine new companies.

**ANSWER 12:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge engaged in multiple acquisitions during the Class Period. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 12 of the Complaint.

13. Throughout the Class Period, Defendants misled investors about the Company's organic revenue growth.

**ANSWER 13:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 13 of the Complaint.

14.    In fact, Defendants made little or no effort whatsoever to integrate the vast majority of those companies into Everbridge's CEM suite at all.

**ANSWER 14:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 14 of the Complaint.

15.    The Company also failed to integrate CNL Software and RedSky into its CEM suite. According to CW 3—former Everbridge Vice President, Business Development and employed by RedSky before and Everbridge after acquisition (in January 2021)—stated she believed RedSky would be incorporated into Everbridge's CEM, but Everbridge showed "no effort" in performing an integration.

**ANSWER 15:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 3 and whether CW 3 made the statements or held the opinions described in Paragraph 15.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 15 of the Complaint.

16.    Additionally, as reported by multiple former Everbridge employees, Everbridge failed to adequately plan the integration of its acquired companies.

**ANSWER 16:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individuals identified as former Everbridge employees and whether the former Everbridge employees made the statements or held the opinions described in Paragraph 16.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 16 of the Complaint.

**C.    Defendants' Failure to Integrate the Acquisitions Undermined Everbridge's Long-Term Growth**

17.    Everbridge's failure to integrate the acquired companies hampered its salespeople's ability to sell the CEM suite, as it was not truly the "singular, integrated product" Everbridge claimed it was.

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

9

**ANSWER 17:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 17 of the Complaint.

18.    Defendants' failure to integrate the Class Period acquisitions overly complicated the Company's internal systems, which also hampered sales efforts. For example, according to CW 2, after the xMatters acquisition in May 2021, Everbridge was now operating four different instances of Salesforce[2] used by all different sales representatives. CW 2 added that in addition to Salesforce, Everbridge was also using two instances of NetSuite[3] in addition to all their European systems. CW 2 explained that the convoluted nature of the systems "really slowed down sales."

**ANSWER 18:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 2 and whether CW 2 made the statements or held the opinions described in Paragraph 18.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 18 of the Complaint.

### D.    Defendants Purposefully Downplay Revenue Contribution from xMatters to Hide Slowing Organic Growth

19.    Because Everbridge's publicly available financial statements did not disclose the revenue contribution from each acquired company, investors had no transparency as to the precise extent (if at all, from their perspective) organic growth was lagging. Given this lack of transparency, analysts consistently asked Defendants to provide a revenue contribution from the acquired company, so analysts could determine how much revenue growth was organic and how much revenue was acquired.  Despite these questions, Defendants misled investors about the extent to which the revenues it

---

[2]    Based on Lead Plaintiff's review of publicly available sources, Salesforce is a client relationship management ("CRM") database used for support, sales, and marketing activities. Salesforce allows businesses to track sales and customer activity, market to customers, and many other services.

[3]    Based on Lead Plaintiff's review of publicly available information, NetSuite is a technology vendor with applications for customer relationship management (CRM), enterprise resource planning (ERP), financial management, and many others.

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

10

obtained from the acquired company were being used to mask increasingly stagnant revenue growth.

**ANSWER 19:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 19 of the Complaint.

20.    On April 6, 2021, the Company announced it would acquire xMatters for $242.6 million, by far the Company's largest acquisition to date. For context, the Company's total revenue for the previous year (2020) was $271.1 million— only $27.8 million more than the Company paid for xMatters.  Despite the size of the deal, Everbridge told investors that it expected xMatters to contribute only $9 million to $11 million in revenue for the rest of 2021.

**ANSWER 20:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on April 6, 2021, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Defendants Everbridge, Meredith, and Brickley further admit that Everbridge generated revenue of $271.1 million in 2020.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 20 of the Complaint.

21.    But this was false. In truth, the revenue contribution from xMatters for the rest of 2021 was actually $20-25 million—***more than double*** the $9-11 million figure Defendants presented to the public. According to CW 1, a former Everbridge employee who had knowledge about Everbridge's M&A process and transactions, the projected revenue figures relayed to Wall Street for xMatters were an additional approximately $11 million for Everbridge in 2021, however, realistically, the forecasts were presenting figures closer to $20 - $25 million. CW 1 stated that she raised concerns regarding these discrepancies to her immediate superior, which were then passed on to Meredith and Brickley. CW 1 added that she expressed concerns directly to Meredith and Brickley as

well, in the form of presentations and emails regarding the deal. According to CW 1, the rationale Meredith provided *was that the discrepancy in figures was to "buffer" the declines in Everbridge's organic revenue*.

**ANSWER 21:** Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 21. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 21 of the Complaint.

22. Indeed, by telling investors that xMatters would contribute only $9-11 million to Everbridge's 2021 revenue, when according to CW 1, the xMatters deal would actually contribute *$20-25 million* to 2021 revenue, Defendants effectively hid from the market an extra $11-16 million in "revenue" from xMatters that would be added to the Company's total revenue. In so doing, of course, Defendants created the false impression that Everbridge's revenue was growing organically more than it actually was. And because Everbridge's financial statements did not break out revenue from each acquired company, it was impossible for investors to figure out how much revenue came from xMatters and calculate organic revenue on their own. As a result of this misconduct, investors believed that the Company's organic revenue was continuing its strong momentum.

**ANSWER 22:** Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 22. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 22 of the Complaint.

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

12

## E.    Defendants Mislead Investors About the xMatters Integration

23.    In addition to misleading investors about xMatters' revenue contribution and the Company's organic revenue growth, Defendants also falsely assured investors that the Company was successfully integrating xMatters without any hint of problems. This was not the case. As detailed by multiple former employees, the xMatters integration was a disaster and caused the departure of more than half of the xMatters sales staff after the acquisition. With less than half of xMatters' experienced sales staff remaining at Everbridge after the acquisition, Everbridge could not effectively sell xMatters' products, which caused a significant drop off in sales—and therefore, in organically-generated revenue—in the second and third quarters of 2021.

**ANSWER 10:**    Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individuals identified as former employees and whether those individuals made the statements or held the opinions described in Paragraph 23.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 23 of the Complaint.

24.    Despite losing more than half of xMatters' sales staff, Defendants continuously touted the Company's integration efforts, making it appear as though Everbridge had integrated xMatters' technology into Everbridge's CEM and had integrated xMatters' employees into Everbridge. For example, Defendants described the integration as "***the seamless integration of the Everbridge and xMatters.***" Defendants also falsely assured investors that "***[w]e've locked up key hires, and we're retaining them.***"

**ANSWER 24:**    Defendants Everbridge, Meredith, and Brickley admit that Everbridge issued a press release on November 30, 2021 containing the language quoted in Paragraph 24 and refer the Court to that document for a complete and accurate statement

of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 24 of the Complaint.

25.    This was nevertheless false. In stark contrast to what Defendants told the market and their investors, most of the xMatters sales staff, including the global sales leader, left the Company within three months of the acquisition. Because Everbridge, like all companies, depends on its salespeople to sell its products and grow its revenue, the loss of most of xMatters' sales staff caused a significant decline in sales midway through 2021.

**ANSWER 25:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 25 of the Complaint.

26.    The poor integration of xMatters' sales staff caused a "dismal" third quarter for xMatters, as xMatters did not come close to achieving their targets.  Despite this, Defendants falsely told investors that "based on our internal expectations, what we thought we'd do on sales, [] we're doing better." Defendants' misstatements led investors to believe that Everbridge had successfully integrated xMatters and was poised to continue its growth trajectory as it further strengthened its CEM suite. This was false, which investors first started learning on December 9, 2021.

**ANSWER 26:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on August 9, 2021 and the transcript contains the quote alleged in the second sentence of Paragraph 26 and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Defendants Everbridge, Meredith, and Brickley further admit that Everbridge filed a Form 8-K with the SEC on December 9, 2021, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 26 of the Complaint.

**F.** **The Truth is Gradually Revealed**

27. On December 9, 2021, Defendants partially revealed the truth through a press release containing two announcements. First, Everbridge announced, out of nowhere, that Meredith had resigned as CEO and member of the Board of Directors, effective January 30, 2022. The Company immediately established an Office of the CEO and began transition leadership to Brickley and Chief Revenue Officer, Vernon Irvin, who would serve as Co-CEOs until the Company found a permanent replacement CEO. Second, Everbridge reduced revenue guidance for 2022 to 20-23%, well below the Company's historical forecasts of 30% plus revenue growth. Nevertheless, at the same time, Defendants continued misleading investors by claiming that the two announcements were unrelated, stating that "Meredith's resignation [wa]s not related to any matter regarding the Company's financial condition [or] reported financial results."

**ANSWER 27:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on December 9, 2021, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 27 of the Complaint.

28. Investors were shocked by this news, as Everbridge's stock price plummeted ***by more than 45%***, as investors slowly began to understand that the Company's revenue growth was likely not sustainable. However, analysts still questioned how Meredith's departure could be related to the revenue growth concerns. For example, in an analyst report on December 13, 2021, J.P. Morgan asked "[w]hy is the CEO really leaving" and "does the timing of the CEO departure actually indicate concerns about growth potential over the next year?" For more than two months, no answers were forthcoming to those queries and concerns.

---

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE
OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

15

**ANSWER 28:** Defendants Everbridge, Meredith, and Brickley admit that J.P. Morgan authored a report titled "Evaluating the 45% Sell-Off and Reasons for CEO Departure," dated December 13, 2021, and refer the Court to that document for a complete and accurate statement of its contents. Defendants Everbridge, Meredith, and Brickley further refer the Court to the public record for the price of Everbridge common stock for the relevant period referenced in Paragraph 28 of the Complaint. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 28 of the Complaint.

29. On February 24, 2022, however, investors finally learned the full truth about the Company's lack of organic revenue growth. On that day, the Company issued a press release that, once again, lowered 2022 revenue guidance, this time to 15-17% growth—well below the historical 30% or more growth rate and a significant reduction from the initial forecast provided on December 9, 2021. The press release also explained that the Company was "taking decisive actions to streamline, integrate and reduce complexity in our key offerings, which we expect to drive sustainable growth in the years ahead."

**ANSWER 29:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K on February 24, 2022, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 29 of the Complaint.

30. During the related earnings call, Co-CEO Vernon Irvin explained that following Meredith's departure, management reviewed the Company's strategy during the Class Period and concluded that the flurry of acquisitions created a "***barrier to upsell and cross-sell from increased complexity, and incomplete integrations***." Similarly, Brickley said that the acquisitions "created complexity for the business seen in the

product, back office and go-to-market headwinds *that are obstacles to sales growth.*" Brickley further explained that "we were well down a path of selling dozens of solutions that *were not always tightly integrated.* We were selling them to multiple buyers. And as [Irvin] said, *that was confusing to customers and to our sellers.*"

**ANSWER 30:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 24, 2022, and refer the Court to the transcript of that earnings call, which contains the language quoted in the Paragraph 30, for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 30 of the Complaint.

31.  Investors were once again shocked by this revelation. On this news, Everbridge's stock price fell more than *33%*, closing at $30.61 per share on February 25, 2022, as investors finally learned the undisclosed facts about Everbridge under Meredith's leadership.

**ANSWER 31:** Defendants Everbridge, Meredith, and Brickley refer the Court to the public record for the price of Everbridge common stock for the relevant period referenced in Paragraph 31 of the Complaint.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 31 of the Complaint.

32.  For the first time, investors learned that the rapid pace of acquisitions and incomplete integrations caused a disjointed, confusing CEM suite—which was contrary to Defendants' repeated statements touting its CEM suite as the only fully integrated CEM solution—and led to a drop off of sales to such an extent that Defendants no longer could camouflage their inability to generate and sustain organic revenues from additional acquisitions.

**ANSWER 32:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 32 of the Complaint.

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

17

33.     Less than a month later, on March 17, 2022, activist investor Ancora Holdings Group ("Ancora"), who beneficially owned approximately 4% of the Company's outstanding common stock, issued a letter calling for the sale of Everbridge. Ancora stated, among other things, that "we are puzzled by why Everbridge is only now recognizing the need to integrate products after so many years, when a well-disciplined management team and Board would understand the advantages to executing on this as soon as possible." Ancora also recognized that because "Everbridge does not disclose contributions from M&A," it has "seemingly obscure[ed] that the Company has been paying higher prices to acquire growth."

**ANSWER 33:**  Defendants Everbridge, Meredith, and Brickley admit that Ancora Holdings Group, LLC issued a letter to Everbridge's Board of Directors dated March 17, 2022.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 33 of the Complaint.

## II.     JURISDICTION AND VENUE

34.     These claims asserted herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

**ANSWER 34:**  Defendants Everbridge, Meredith, and Brickley admit that Plaintiffs allege claims that purport to arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Defendants Everbridge, Meredith, and Brickley deny that they are liable to Plaintiffs and deny that Plaintiffs are entitled to any relief.

35.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

**ANSWER 35:** The allegations in Paragraph 35 of the Complaint contain characterizations or conclusions of law that do not require a response.

36. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Everbridge transacts business in California, including in this District, and the Company's West Coast headquarters are located within this District at 155 North Lake Avenue, Suite 900, Pasadena, California 91101. Further, Everbridge's securities trade on the NASDAQ stock market under the ticker symbol "EVBG." In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**ANSWER 36:** The allegations in Paragraph 36 of the Complaint contain characterizations or conclusions of law that do not require a response. To the extent a response is required, Defendants Everbridge, Meredith, and Brickley admit that venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Defendants Everbridge, Meredith, and Brickley further admit Everbridge has a principal executive office at 155 North Lake Avenue, Suite 900, Pasadena, California 91101. Defendants Everbridge, Meredith, and Brickley further admit that, during the Class Period, Everbridge's securities traded on the NASDAQ stock market under the ticker symbol "EVBG." Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 36 of the Complaint.

## III. PARTIES

### A. Lead Plaintiff

37. Lead Plaintiff Sylebra Funds are hedge funds managed by Sylebra Capital Limited, an investment adviser that targets mid-sized technology, media, and

telecommunications companies. Together, the Sylebra Funds have over $6.6 billion in assets under management. Lead Plaintiff purchased Everbridge common stock during the Class Period and was damaged as the result of Defendants' fraud.

**ANSWER 37:**  Defendants Everbridge, Meredith, and Brickley deny that Lead Plaintiff was damaged and deny that any fraud occurred.  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the remaining allegations in Paragraph 37 of the Complaint.

### B.    Defendants

38.    Defendant Everbridge is a Delaware corporation, based in Burlington, Massachusetts with its West Coast headquarters located at 155 North Lake Avenue, Suite 900, Pasadena, California 91101. The Company's common stock is listed on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "EVBG."

**ANSWER 38:**  Defendants Everbridge, Meredith, and Brickley admit the allegations in the first sentence of Paragraph 38 of the Complaint.  Defendants Everbridge, Meredith, and Brickley further admit that, during the Class Period, Everbridge's securities traded on the NASDAQ stock market under the ticker symbol "EVBG." Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 38 of the Complaint.

39.    Defendant Meredith served as Everbridge's Chief Executive Officer ("CEO") as of July 15, 2019 and during all relevant times prior to December 9, 2021, on which date he unexpectedly and abruptly resigned from that post. In his role as CEO of Everbridge, Meredith participated in earnings calls and conferences with securities analysts, during which he made false and misleading statements and omissions of material fact relating to the significant problems Everbridge was encountering as a result of its multiple acquisitions and the extent to which the revenues it obtained from the acquired company were being used to mask increasingly stagnant organic growth.

Defendant Meredith also signed Everbridge's SEC Form 10-Qs filed on May 10, 2021 and August 9, 2021, which contained materially false and misleading facts as detailed below.

**ANSWER 39:**  Defendants Everbridge, Meredith, and Brickley admit that Meredith served as Everbridge's Chief Executive Officer CEO from July 15, 2019 until December 9, 2021.  Defendants Everbridge, Meredith, and Brickley further admit that Meredith participated in earnings calls and conferences with securities analysts from July 15, 2019 to December 9, 2021.  Defendants Everbridge, Meredith, and Brickley further admit that Everbridge filed Forms 10-Q with the SEC on May 10, 2021 and August 9, 2021, and refer the Court to those documents for a complete and accurate statement of their contents.  Defendants Everbridge, Meredith, and Brickley further admit that Meredith signed Everbridge's Forms 10-Q filed on May 10, 2021 and August 9, 2021.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 39 of the Complaint.

40.   As part of Meredith's employment agreement, the Company granted Meredith 100,000 performance stock units (the "PSU Grant"), with up to 62.5% of the PSU Grant becoming eligible to vest on September 30, 2021, based on the compound annual growth rate ("CAGR") achieved by the Company during the eight fiscal quarters preceding such date, and up to an additional 62.5% of the PSU Grant becoming eligible to vest on September 30, 2022, based on the CAGR achieved during the 12 fiscal quarters preceding such date. The vesting of the PSU Grant was subject to Meredith's continued service to the Company through each applicable vesting date or event.

**ANSWER 40:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on June 18, 2019, with Meredith's employment agreement attached as an exhibit, and refer the Court to that document for a complete

and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 40 of the Complaint.

41.    Defendant Brickley served as the Senior Vice President and Chief Financial Officer ("CFO") of Everbridge as of March 1, 2019, including during the Class Period. After December 9, 2021, he also served as interim Co-CEO. In his role as CFO of Everbridge, Brickley participated in earnings calls and conferences with securities analysts, during which he made false and misleading statements and omissions of material fact relating to the significant problems Everbridge was encountering as a result of its multiple acquisitions and the extent to which the revenues it obtained from the acquired company were being used to mask increasingly stagnant organic growth.  Defendant Brickley also signed Everbridge's SEC Form 10-Q for the quarter ended May 10, 2021 and August 9, 2021, which contained materially false and misleading facts.

**ANSWER 41:**  Defendants Everbridge, Meredith, and Brickley admit that Brickley served as the Senior Vice President and Chief Financial Officer ("CFO") of Everbridge beginning March 1, 2019.  Defendants Everbridge, Meredith, and Brickley further admit that, during the Class Period, Brickley participated in earnings calls and conferences with securities analysts.  Defendants Everbridge, Meredith, and Brickley further admit that Brickley signed Everbridge's Forms 10-Q filed on May 10, 2021 and August 9, 2021.  Defendants Everbridge, Meredith, and Brickley further admit that Everbridge filed a Form 8-K with the SEC on December 9, 2021, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 41 of the Complaint.

42.    Defendant Ellertson preceded Meredith as the CEO of Everbridge, serving in that position from September 2011 to July 2019, when Meredith succeeded him as

CEO. During the Class Period, Ellertson served as Executive Chairman of the Board of Directors of Everbridge during all relevant times. In his role as Executive Chairman, Ellertson participated in earnings calls and conferences with securities analysts, during which he made false and misleading statements and omissions of material fact relating to the significant problems Everbridge was encountering as a result of its multiple acquisitions and the extent to which the revenues it obtained from the acquired company were being used to mask increasingly stagnant organic growth. Moreover, in his role as Executive Chairman, Ellertson was responsible for the Company's M&A. During the Class Period, an analyst asked Ellertson about his "day-to-day role in helping support David [Meredith], Patrick [Brickley] and the team," and Ellertson responded that his "day job is M&A" and that he is "just doing the M&A stuff."

**ANSWER 42:**  Defendants Everbridge, Meredith, and Brickley admit that Meredith succeeded Ellertson as CEO of Everbridge in 2019.  Defendants Everbridge, Meredith, and Brickley further admit that Ellertson served as CEO from September 2011 to July 2019.  Defendants Everbridge, Meredith, and Brickley further admit that Ellertson, during his time as CEO, participated in earnings calls and conferences with securities analysts.  Defendants Everbridge, Meredith, and Brickley further admit that Ellertson served as Executive Chairman of the Board from July 2019 to December 2020.  Defendants Everbridge, Meredith, and Brickley further admit that an Everbridge Conference occurred December 4, 2019, and refer the Court to the transcript of that conference, which contains the language quoted in the last sentence of Paragraph 42, for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 42 of the Complaint.

43.    Defendants Meredith, Brickley, and Ellertson are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, by virtue of

their high-level positions at Everbridge, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels, and were privy to confidential proprietary information about the Company, its business, operations, internal controls, growth, financial statements, and financial condition, as alleged herein.

**ANSWER 43:** Defendants Everbridge, Meredith, and Brickley admit that the Complaint uses the term "Individual Defendants" to collectively refer to Meredith, Brickley, and Ellertson. Defendants Everbridge, Meredith, and Brickley further admit that they held high-level positions at Everbridge but deny that Plaintiffs' characterization of their job responsibilities is complete and accurate. Defendants Everbridge, Meredith, and Brickley deny any remaining allegations in Paragraph 43 of the Complaint.

44. Everbridge and the Individual Defendants are collectively referred to herein as "Defendants."

**ANSWER 44:** Defendants Everbridge, Meredith, and Brickley admit that the Complaint uses the term "Defendants" to collectively refer to Everbridge and the Individual Defendants.

### C. Relevant Third Parties[4]

45. CW 1 was employed by Everbridge from early 2019 until summer 2021. CW 1 was a member of the finance team, Global Financial Planning and Analysis ("FP&A"), holding various titles during her tenure at the Company, and her responsibilities included work related to Everbridge's mergers and acquisition ("M&A") process. CW 1 reported to the Vice President of FP&A, who, according to CW 1, reported to Brickley, who reported to Meredith. In her role, CW 1 regularly communicated with Meredith and Brickley through presentations or email

---

[4] All CWs are described in the feminine to protect their identity.

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

24

correspondence, particularly in the lead-up to an acquisition. With respect to the xMatters acquisition, CW 1 explained that she sent weekly or bi-weekly emails to Brickley and Meredith with modeling in the lead-up to the acquisition.

**ANSWER 45:** Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 45. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 45 of the Complaint.

46. CW 2 was employed in the Finance Group at xMatters from prior to the Class Period until May 2021, when Everbridge acquired xMatters. Following the acquisition, CW 2 stayed on at the Company in the same Finance role, from May 2021 until late 2021. CW 2 explained that she worked as part of the integration team during the xMatters acquisition, and primarily spoke with direct managers and Everbridge's "integration office," which was a group that pre-dated the xMatters acquisition. According to CW 2, the integration office include her Everbridge equivalent and was "heavily involved" in the process.

**ANSWER 46:** Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 2 and whether CW 2 made the statements or held the opinions described in Paragraph 46. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 46 of the Complaint.

47. CW 3 was a Business Development Manager at RedSky Technologies from July 2007 until the acquisition by Everbridge, at which point she was employed by Everbridge as the Vice President, Business Development from January 2021 until April 2021. CW 3 was involved in the vetting of RedSky during the Winter of 2020 (shortly before the acquisition) as a member of the executive team. During this process,

CW 3 recalled Everbridge did a "deep dive" into all the departments at RedSky, but Everbridge still did not understand RedSky's go-to- market strategy.

**ANSWER 47:** Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 3 and whether CW 3 made the statements or held the opinions described in Paragraph 47. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 47 of the Complaint.

## IV. SUBSTANTIVE ALLEGATIONS OF FRAUD

### A. Overview of Everbridge's Business

48. Everbridge is incorporated in Delaware and maintains a West Coast headquarter in Pasadena, California. The Company is a global software company that provides enterprise software applications designed to automate and accelerate organizations' operational response to "critical events." Critical events include public safety threats such as severe weather conditions, active shooter situations, and terrorist attacks, as well as business events like Information Technology ("IT") outages, cyber-attacks, product recalls, or supply-chain interruptions.

**ANSWER 48:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge is incorporated in Delaware. Defendants Everbridge, Meredith, and Brickley further admit that Everbridge has a principal executive office at 155 North Lake Avenue, Suite 900, Pasadena, California 91101. Defendants Everbridge, Meredith, and Brickley further admit that Everbridge is a global software company that empowers resilience by leveraging intelligent automation technology to enable customers to anticipate, mitigate, respond to, and recover from critical events to keep people safe and organizations running. Defendants Everbridge, Meredith, and Brickley further admit that public safety threats include severe weather conditions, active shooter situations, terrorist attacks or a pandemic, as well as critical business events such as IT outages,

---

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE
OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

cyber-attacks, product recalls or supply-chain interruptions. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 48 of the Complaint.

49. The Company was founded in 2002 in response to the September 11 terrorist attacks with the mission of helping keep people safe amid critical situations. The Company initially focused on one product—its Mass Notification software, which is designed to send messages via telephone, text, and email to an entire defined population in the event of a threat or emergency.

**ANSWER 49:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge was founded in 2002. Defendants Everbridge, Meredith, and Brickley further admit that Everbridge was founded in the aftermath of 9/11. Defendants Everbridge, Meredith, and Brickley further admit that Everbridge offers a Mass Notification application. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 49 of the Complaint.

50. Though the Company's first product was its Mass Notification software, Defendant Brickley stated at a March 5, 2020 Company conference presentation that "we knew pre-IPO, that you can't really go public and sustain on just the mass notification opportunity" as it was "not growing super quickly." As a result, the Company has since expanded its product offerings, using its Mass Notification platform to build adjacent applications.

**ANSWER 50:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge offers a Mass Notification application. Defendants Everbridge, Meredith, and Brickley further admit that the Morgan Stanley Technology, Media, and Telecom Conference was held on March 5, 2020, and refer the Court to the transcript of that conference for a complete and accurate statement of its contents. Except as admitted, Defendants

Everbridge, Meredith, and Brickley deny the allegations in Paragraph 50 of the Complaint.

51.    Throughout the Class Period and before, the Company's product offerings have been organized into three product segments: (i) Mass Notification applications designed to communicate to an entire defined population in the event of a threat or emergency; (ii) IT and IoT alerting; and (iii) Critical Event Management ("CEM"), which is a collection of the Company's applications designed to allow its customers to assess threats, locate impacted people and assets, and manage and respond to critical events, ***all from one single platform***.

**ANSWER 51:**    Defendants Everbridge, Meredith, and Brickley admit that Everbridge offers Mass Notification applications, IT and IoT alerting, and CEM.    Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 51 of the Complaint.

52.    Of these three categories, during the Class Period, the CEM segment had ***by far*** the largest Total Addressable Market ("TAM"). TAM is a term that is used to reference the revenue opportunity available for a product or service. Assessing the TAM is crucial for business because it helps prioritize business opportunities by serving as a metric of a given opportunity's underlying potential. According to a slide from the Company's Analyst Day 2020 meeting presentation on March 23, 2020, the TAM for CEM was $25.9 billion, whereas the TAM for Mass Notification was $4.8 billion and $10.4 billion for IT and IoT Alerting.

**ANSWER 52:**    Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on March 23, 2020, attaching the meeting presentation from the Company's Analyst Day 2020 and refer the Court to that document for a complete and accurate statement of its contents.    Except as admitted, Defendants

Everbridge, Meredith, and Brickley deny the allegations in Paragraph 52 of the Complaint.

53.     Therefore, the CEM segment provided the greatest growth opportunity, and Everbridge understood that in order to continue growing, it needed to build out Everbridge's CEM suite and further penetrate the CEM market since it was much larger than the Mass Notification—i.e., population alerting—market.

**ANSWER 53:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 53 of the Complaint.

54.     The Company consistently explained that its CEM platform was integral to the Company's growth plan. As explained in the Company's 2019 10- K, one of the "[k]ey elements of [its] growth strategy" was maintaining Everbridge's leadership in the CEM market since Everbridge was the only fully integrated CEM solution in the market. Specifically, the 2019 10-K stated:

> ***Maintain Our Technology and Thought Leadership***.[5] We will continue to invest in our core CEM platform and our applications to maintain our technology leadership position. For example, we believe that ***we are the only company today that provides a full, integrated CEM solution*** and that we provide the first solution to offer dynamic versus static location awareness integrated with analysis and communications for the0020employee safety and security marketplace. Further, we believe we have a competitive advantage through our commitment to innovation and thought leadership that has enabled us to take market share from our competitors and accelerate our growth.

**ANSWER 54:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 10-K with the SEC on February 28, 2020, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted,

---

[5]    Emphasis in original.

Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 54 of the Complaint.

55. The investing public understood the importance of the CEM suite to Everbridge's future growth. For example, on June 19, 2019, SunTrust Robinson Humphrey issued an analyst report stating, "we believe the Critical Event Management (CEM) platform is important in sustaining high growth and supported by an estimated ~$26B TAM." SunTrust Robinson Humphrey further stated that they "anticipate CEM to represent one of the highest growth segments of the overall business." Given the importance of the CEM suite to the Company's future growth, investors were extremely interested in the Company's plans for building and growing its CEM platform.

**ANSWER 55:** Defendants Everbridge, Meredith, and Brickley admit that SunTrust Robinson Humphrey authored a report titled "Becoming the ERP for Critical Event Mgmt; Lots of Catalysts; Reiterate Buy and Raising PT" dated June 19, 2019, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 55 of the Complaint.

56. In the years before the Class Period, the Company focused on growing organically with some consolidation of adjacent technologies via targeted and strategic "tuck-in" acquisitions. These helped develop the CEM platform into a singular, integrated product designed to assess threats, located impacted people and assets, and manage and respond to critical events.

**ANSWER 56:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 56 of the Complaint.

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

30

57.    This integrated response separated Everbridge from its competitors, as other solutions relied on fragmented, unintegrated tools from numerous vendors. The Company's 2019 10-K explained this competitive advantage as follows:

> Organizations today typically manage critical events across the organization in silos that use disparate data sources and unintegrated tools, making it difficult to achieve a common operational view of threats and of the status of response. Utilizing a common contact base, consistent rules engines, threat databases that are integrated with information on the location of an organization's people, assets and suppliers, and a common visualization platform, ***CEM solutions can provide a more integrated solution which can improve management control and visibility and lower costs. The ability to cohesively and rapidly share information and collaborate across the organization underlies creating a common operational approach***.

**ANSWER 57:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 10-K with the SEC on February 28, 2020, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 57 of the Complaint.

58.    The Company established a dominant CEM platform that obviated the need for customers to contract with multiple point solution providers. Investors also responded favorably to this approach, as the Company consistently beat its financial guidance and reported 35% to 41% year-over-year revenue growth every year between 2016 and 2018 and Everbridge's share price increased by approximately 244% between its first day of trading and December 31, 2018.

**ANSWER 58:**  Defendants Everbridge, Meredith, and Brickley refer the Court to the public record for the price of Everbridge common stock for the relevant period referenced in Paragraph 58 of the Complaint.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 58 of the Complaint.

**B.    Everbridge Goes Public**

59.    Since completing its Initial Public Offering ("IPO") in September 2016, the Company has repeatedly touted its revenue growth and ability to beat financial guidance every quarter. The Company's total revenue for full year 2017 was $104 million, an increase of 36% compared to 2016; its total revenue for full year 2018 was $147.1 million, an increase of 41% compared to 2017; and its total revenue for 2019 was $200.9 million, an increase of 37% compared to 2018.

**ANSWER 59:**    Defendants Everbridge, Meredith, and Brickley admit that the Company completed its initial public offering in September 2016.  Defendants Everbridge, Meredith, and Brickley further admit that the Company's total revenue for full year 2017 was $104.352 million, an increase of 35.8% compared to 2016. Defendants Everbridge, Meredith, and Brickley further admit that the Company's total revenue for full year 2018 was $147.1 million, an increase of 41.0% compared to 2017. Defendants Everbridge, Meredith, and Brickley further admit that the Company's total revenue for full year 2019 was $200.9 million, an increase of 36.6% compared to 2018. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 59 of the Complaint.

60.    Everbridge maintained that this revenue growth was almost entirely organic. Organic revenue growth is the growth of a company by increasing output and enhancing sales internally through the Company's own resources. Organic growth stands in contrast to inorganic growth, which is growth related to activities outside a business's own operations, such as growth attributable to mergers and acquisitions. Organic growth is often seen as superior and a better indicator of a company's performance. While inorganic growth can provide a short-term boost, there are disadvantages in that implementation of technology or integration of new employees

can be costly and time consuming. Therefore, the Company's organic growth numbers were extremely important to investors.

**ANSWER 60:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 60 of the Complaint.

61. Since going public, Defendants consistently explained that Everbridge's revenue growth was almost entirely organic, with a small percentage of revenue growth coming from acquisitions. Prior to the Class Period, when Defendant Ellertson was still CEO, he told investors that Everbridge "continue[s] to grow at kind of 30%, mid-30% numbers, which we have quoted continuously as our target since we went public, and then we add onto that anywhere from 3% to 7% with M&A in a given year." In other words, since going public, the Company was growing around 30% organically year-over-year, plus an additional 3-7% inorganic growth from acquisitions, for a total growth rate in mid to high 30% range.

**ANSWER 61:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 61 of the Complaint.

62. Prior to the Class Period, Everbridge acquired only six companies in the nearly three years between the Company's September 2016 IPO and Meredith's succession of Ellertson as CEO in July 2019.

**ANSWER 62:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge acquired six companies between the Company's September 2016 IPO and Meredith's succession of Ellertson as CEO in July 2019.

### C. Meredith Takes Over as CEO

63. On June 18, 2019, Everbridge announced that Meredith had been appointed as CEO and a member of the Board of Directors of the Company, to be

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

33

effective July 15, 2019. Meredith succeeded Ellertson, who transitioned to the role of Executive Chairman of the Board of Directors.

**ANSWER 63:** Defendants Everbridge, Meredith, and Brickley admit the allegations in Paragraph 63 of the Complaint.

64. As part of Meredith's employment agreement, the Company granted Meredith 100,000 performance stock units (the "PSU Grant"), with up to 62.5% of the PSU Grant becoming eligible to vest on September 30, 2021, based on the compound annual growth rate ("CAGR") achieved by the Company during the eight fiscal quarters preceding such date, and up to an additional 62.5% of the PSU Grant becoming eligible to vest on September 30, 2022, based on the CAGR achieved during the 12 fiscal quarters preceding such date. The vesting of the PSU Grant was subject to Meredith's continued service to the Company through each applicable vesting date or event.

**ANSWER 64:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on June 18, 2019, with Meredith's employment agreement attached as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 64 of the Complaint.

### D. Defendants Engaged in a Series of Acquisitions

65. Under Meredith's leadership, from the beginning of the Class Period to its end, Defendants engaged in a flurry of acquisitions, purchasing nine new companies.

**ANSWER 65:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge engaged in multiple acquisitions during the Class Period. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 65 of the Complaint.

66.     As explained below, starting with the acquisition of NC4 and continuing throughout the Class Period, Everbridge engaged in a buying spree, purchasing nine separate companies.

**ANSWER 66:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge engaged in multiple acquisitions during the Class Period.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 66 of the Complaint.

67.     However, Defendants misled investors about the Company's organic growth by downplaying the revenue contribution from the acquired company, making it appear that the Company's organic revenue was growing more than it actually was. Because Everbridge's publicly available financial statements did not break out revenue from each acquired company, there was a lack of transparency as to the extent to which organic growth was lagging. Despite several analyst questions about the legitimacy of the Company's organic growth numbers, Defendants misled investors about the extent to which the revenues it obtained from the acquired company were being used to mask increasingly stagnant growth.

**ANSWER 67:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 67 of the Complaint.

68.     Moreover, Defendants mislead investors when they were specifically asked whether in fact the Company was experiencing any integration problems with respect to its acquisition of numerous companies during the Class Period. For example, as to the xMatters acquisition, Defendants claimed that Everbridge had "locked up key hires" and was "retaining" xMatters employees. But in fact, Everbridge was unable to effect complete integration of the acquired companies as their products required multiple, different systems, running on different internal databases, with dedicated

legacy sales staffs trained and operating differently than those originally with Everbridge, leading many to leave the Company.

**ANSWER 68:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge issued a press release on November 30, 2021 containing the language quoted in Paragraph 68 and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 68 of the Complaint.

### 1. Everbridge Acquires NC4, its Largest Acquisition to Date, and Misleads Investors About Integrating NC4

69. Shortly after Meredith took over as CEO, the Company made its largest acquisition ever to that point. On August 1, 2019, Everbridge entered into a purchase agreement with NC4 Inc., NC4 Public Sector LLC, and Celerium Group Inc., pursuant to which Everbridge purchased all the outstanding membership interests of NC4 Inc. and NC4 Public Sector LLC (collectively, "NC4") for total consideration of approximately $84.5 million. The Company paid approximately $51.7 million in cash at closing and paid the remaining purchase price with 320,998 newly issued shares of our common stock.

**ANSWER 69:** Defendants Everbridge, Meredith, and Brickley admit that, on or about August 1, 2019, the Company entered into a Purchase Agreement with NC4 Inc., NC4 Public Sector LLC, and Celerium Group Inc. and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 69 of the Complaint.

70. NC4 offers threat intelligence solutions that empower businesses, government organizations, and communities to assess and disseminate risk data and information to manage and mitigate the impact of critical events. According to the Form

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

36

10-Q filed on November 8, 2019, the "Company's acquisition of NC4 was made primarily to expand the Company's customer base and to a lesser extent to complement some of the existing facets of NC4's business with the Company's existing products."

**ANSWER 70:** Defendants Everbridge, Meredith, and Brickley admit that NC4 was a leading global provider of threat intelligence solutions. Defendants Everbridge, Meredith, and Brickley further admit that Everbridge filed a Form 10-Q with the SEC on November 8, 2019, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 70 of the Complaint.

71.     Moreover, CW 1 stated that Everbridge was "struggling with attrition" and integration of its acquisitions. CW 1 explained that there were too many new people being integrated into Everbridge after numerous acquisitions beginning in 2019. CW 1 added that these employees were spread across all different time zones, which made it difficult to get everyone on the same page and then, once progress was being made, another company would be acquired and Everbridge would have to go through the process all over again. CW 1 also cited problems integrating the acquired companies themselves into Everbridge's business.

**ANSWER 71:** Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 71. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 71 of the Complaint.

72.     After the NC4 acquisition, the Company engaged in a flurry of acquisitions without fully integrating them into Everbridge. With each new acquisition, the integration problems intensified, leading to a boiling point after the xMatters acquisition.

**ANSWER 72:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 72 of the Complaint.

### 2.    Defendants Acquire Five Companies in 2020 But Do Not Integrate them into Everbridge's CEM Suite

73.    The Company engaged in five acquisitions in the first eight months of 2020. The Company repeatedly claimed that their CEM suite was superior to competitors because Everbridge is "the only company today that provides a full, *integrated CEM solution.*" Therefore, investors paid close attention to these acquisitions and how they were integrated into Everbridge's CEM solution.

**ANSWER 73:**    Defendants Everbridge, Meredith, and Brickley admit that the Company engaged in five acquisitions in the first eight months of the 2020.  Defendants Everbridge, Meredith, and Brickley further admit that Everbridge filed a Form 10-K with the SEC on February 28, 2020 containing the language quoted in Paragraph 73 and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 73 of the Complaint.

74.    The first acquisition of 2020 occurred on February 7, 2020, when the Company entered into a Stock Purchase Agreement with Connexient, Inc. ("Connexient") pursuant to which the Company purchased all issued and outstanding shares of stock of Connexient for a base consideration of $20.2 million. The Company paid $11.5 million in cash at closing and paid the remaining purchase price with 96,611 newly issued shares of the Company's common stock.

**ANSWER 74:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge acquired Connexient on February 7, 2020.  Defendants Everbridge, Meredith, and Brickley further admit that Connexient was the first company Everbridge acquired in 2020.  Defendants Everbridge, Meredith, and Brickley further admit that Everbridge

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

38

entered into a Stock Purchase Agreement with Connexient, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 74 of the Complaint.

75.    The second acquisition of 2020 took place on February 25, 2020, when Everbridge acquired CNL Software Limited ("CNL Software") for a base consideration of approximately $35.6 million. The Company paid approximately $19.6 million in cash at closing and paid the remaining purchase price with 153,217 newly issued shares of the Company's common stock.

**ANSWER 75:**    Defendants Everbridge, Meredith, and Brickley admit that CNL Software was the second company Everbridge acquired in 2020.    Defendants Everbridge, Meredith, and Brickley further admit that on February 25, 2020 Everbridge entered into a Stock Purchase Agreement with CNL Software, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 75 of the Complaint.

76.    The third acquisition of 2020 occurred on March 19, 2020, when the Company acquired One2Many Group B.V. ("one2many") for a base consideration of $13.0 million. The Company paid $5.5 million in cash at closing, acquired purchase liabilities of $2.0 million, and paid the remaining purchase price with 52,113 newly issued shares of the Company's common stock. According to the Company's Form 10-Q filed on May 2, 2020, Everbridge "acquired one2many to expand the Company's customer base and for its cell broadcast technology to enhance the Company's public warning applications."

**ANSWER 76:**    Defendants Everbridge, Meredith, and Brickley admit that one2many was the third company Everbridge acquired in 2020. Defendants Everbridge, Meredith,

and Brickley further admit that on March 19, 2020, Everbridge entered into a Stock Purchase Agreement with one2many, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 76 of the Complaint.

77. The fifth and final acquisition of 2020 occurred on August 4, 2020, when Company acquired SnapComms Limited ("SnapComms") for a base consideration of $34.2 million. Everbridge paid $13.2 million in cash and issued 121,858 newly issued shares of the Company's common stock at closing.

**ANSWER 77:** Defendants Everbridge, Meredith, and Brickley admit that SnapComms was the fifth and final company Everbridge acquired in 2020. Defendants Everbridge, Meredith, and Brickley further admit that on August 4, 2020 Everbridge entered into a Stock Purchase Agreement with SnapComms, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 77 of the Complaint.

### 3. Everbridge Acquires RedSky in January 2021 but Does Not Integrate it into Everbridge's CEM Suite

78. On January 15, 2021, Everbridge acquired Red Sky Technologies Inc. ("RedSky") for a base consideration of $55.4 million, net of cash acquired. The Company paid $32.4 million in cash, net of cash acquired, and issued 162,820 newly issued shares of the Company's common stock at closing. The Company did not disclose historical financial statements or pro forma financial information about Red Sky, nor did it disclose expected revenue contribution from RedSky.

**ANSWER 78:** Defendants Everbridge, Meredith, and Brickley admit that on January 15, 2021 Everbridge entered into a Stock Purchase Agreement with RedSky,

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

40

and refer the Court to that document for a complete and accurate statement of its contents. Defendants Everbridge, Meredith, and Brickley further admit that on May 10, 2021, Everbridge filed a Form 10-K with the SEC containing information about the RedSky acquisition and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 78 of the Complaint.

79. CW 3 was employed by RedSky and then Everbridge after acquisition and was involved in the vetting of RedSky during the Winter of 2020 (shortly before the acquisition) as a member of the executive team. According to CW 3, she believed RedSky would be incorporated into Everbridge's CEM, but Everbridge showed "no effort" in performing an integration. According to CW 3, Everbridge just wanted RedSky's customers and revenue. Following the acquisition, CW 3 recalled colleagues saying to one another, "why did they buy us?" CW 3 stated that it appeared that Everbridge "did not know what [to] do with us [RedSky]." This, according to CW 3, contributed to the integration process being difficult.

**ANSWER 79:** Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 3 and whether CW 3 made the statements or held the opinions described in Paragraph 79. Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 79 of the Complaint.

### 4. Without Knowledge of the Integration Issues, the Market Believed that the Company Had Strengthened its CEM Suite

80. As explained in ¶¶ 69-79, Defendants did not integrate the above acquisitions into Everbridge's CEM suite.

**ANSWER 80:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 80 of the Complaint.

81. Defendants led investors to believe that Everbridge was poised to continue its growth trajectory as it penetrated the large and growing CEM market. For example, on February 19, 2021, Stephens issued an analyst report stating that improving the Company's CEM suite highlighted Everbridge's strong fourth quarter 2020. Specifically, Stephens stated that:

> Overall, a strong finish to 2020 for EVBG and we like the catalysts ahead as Everbridge capitalizes on the EU Directive opportunity and uses its top-down sales approach to win additional CEM deals. Additionally, we expect Everbridge to continue to execute on its long runway for Mass Notification wins, grow the CEM pipeline, and expand internationally.

**ANSWER 81:** Defendants Everbridge, Meredith, and Brickley admit that Stephens authored a report titled "Improving ASP/CEM/Public Warning Wins Highlight EVBG's Seasonally Strong 4Q" and dated February 19, 2021, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 81 of the Complaint.

82. Also on February 19, 2021, William Blair issued an analyst report reiterating it's outperform rating on Everbridge stock and highlighting the Company's CEM opportunity. Specifically, William Blair noted that "Everbridge also saw continued strength in CEM customer additions and multiproduct deals." William Blair noted that "[w]hile we view this progress positively, we note that this result still represents very low penetration of the company's overall installed base and we continue to see a large up-sell opportunity ahead."

**ANSWER 82:** Defendants Everbridge, Meredith, and Brickley admit that William Blair authored a report titled "Everbridge, Inc. Closes Out With Solid Results Driven by Large Deal Momentum; Initial 2021 Revenue Guidance Above Expectations" and dated February 19, 2021, and refer the Court to that document for a complete and

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

42

accurate statement of its contents.   Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 82 of the Complaint.

### 5.   Everbridge Acquires xMatters, the Company's Largest Acquisition Ever

83.   On April 6, 2021, Everbridge filed a Form 8-K announcing a definitive agreement for the acquisition of xMatters Holdings, Inc. ("xMatters") and the private placement of approximately $80.0 million in shares of Everbridge's common stock to certain stockholders of xMatters as partial consideration for the Acquisition. The closing of the xMatters acquisition took place on May 7, 2021. On that day, the Company filed an amendment to the Form 8-K to provide the total number of shares of common stock issued in connection with the acquisition. At closing, the Company acquired xMatters for a base consideration of $242.6 million, consisting of $178.1 million in cash and 555,332 newly issued shares of the Company's common stock.

**ANSWER 83:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on April 6, 2021, and refer the Court to that document for a complete and accurate statement of its contents.  Defendants Everbridge, Meredith, and Brickley further admit that Everbridge filed an amended Form 8-K with the SEC on May 7, 2021, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 83 of the Complaint.

84.   xMatters is an IT service reliability platform that helps rapidly deliver products at scale by automating workflows and ensuring digital infrastructure and applications are always working.

**ANSWER 84:**  Defendants Everbridge, Meredith, and Brickley admit that xMatters was an IT service reliability platform.

a.    **Defendants Purposefully Downplay the Revenue Contribution from xMatters in Order to Hide Increasingly Stagnant Organic Revenue Growth**

85.    After the Company announced the xMatters acquisition, Defendants misled investors about how much revenue xMatters would contribute to Everbridge's overall revenue for the rest of 2021. The April 6, 2021 Form 8-K disclosed that the Company "anticipates *the partial year contribution to 2021 revenue will be approximately $9-11 million*." Brickley confirmed this figure a month later, during the May 10, 2021 earnings call, when he said that "[o]ur expectations for the financial contribution from xMatters for the remainder of the year *have not changed from the view we provided about a month ago*."

**ANSWER 85:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on April 6, 2021, and refer the Court to that document for a complete and accurate statement of its contents.  Defendants Everbridge, Meredith, and Brickley further admit that Everbridge held an earnings call on May 10, 2021, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 85 of the Complaint.

86.    These statements were false and misleading because xMatters was going to contribute much more than $9-11 million to the Company's 2021 revenue. The true revenue contribution from xMatters for the rest of 2021 was *$20-25 million—more than double* the $9-11 million figure Defendants presented to the public.

**ANSWER 86:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 86 of the Complaint.

87.    As explained below, Defendants *knew* that the Company's internal forecasting models showed that xMatters would contribute *$20-25 million for the rest*

*of 2021*, but Defendants nonetheless told investors that it would ***contribute only $9-11 million***. Defendants did this so they would have an extra $11-16 million in "hidden," undisclosed revenue from xMatters to add to the Company's overall revenue, making it appear as though the Company's organic revenue was growing more than it actually was.

**ANSWER 87:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 87 of the Complaint.

88.    CW 1, an Everbridge employee since before the Class Period who had knowledge of Everbridge's M&A process and transactions, recalled that the projected revenue figures relayed to Wall Street for xMatters were an additional approximately $11 million for Everbridge in 2021. According to CW 1, however, realistically, the forecasts were presenting figures closer to ***$20 - $25 million***.

**ANSWER 88:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 88.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 88 of the Complaint.

89.    CW 1 stated that she raised concerns regarding these discrepancies to her immediate superior, which were then passed on to Meredith and Brickley. CW 1 added that she expressed concerns ***directly*** to Meredith and Brickley as well, in the form of presentations and emails regarding the deal. CW 1 explained that she sent Meredith and Brickley emails in the lead up to the acquisition. CW 1 added that she was not the only person to express concerns about the xMatters acquisition.

**ANSWER 89:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-cv-02249-FWS-RAO

45

individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 89. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 89 of the Complaint.

90. According to CW 1, the rationale Meredith provided *was that the discrepancy in figures was to "buffer" the declines in Everbridge's organic revenue*. According to CW 1, the difference in revenue reported versus what was projected was to allow Everbridge to use the discrepancy to cover up for their overall performance.

**ANSWER 90:** Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 90. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 90 of the Complaint.

91. CW 1 added that based on the actual forecasts, it was "clear" that xMatters was not necessarily going to grow, which was contrary to what was being presented to the public.

**ANSWER 91:** Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 91. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 91 of the Complaint.

92. Defendants were able to mislead investors about revenue contributions from xMatters because Everbridge's financial statements do not break out revenue from its acquisitions. Thus, it was impossible for investors to determine how much revenue came from xMatters in the Company's annual and quarterly reports.

**ANSWER 92:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 92 of the Complaint.

93.     Moreover, at the time of the acquisition, Everbridge did not disclose historical financial statements or pro forma financial information for xMatters because, according to the Company, the acquisition was "not material and neither the investment in the assets nor the results of operations of th[is] acquisition[] w[as] significant to the Company's consolidated financial position or results of operations." Thus, there was no transparency into xMatters' historical yearly revenue such that an investor could forecast xMatters' future revenue on their own.

**ANSWER 93:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 10-Q with the SEC on May 10, 2021 containing the language quoted in Paragraph 93 and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 93 of the Complaint.

94.     Given the size and importance of the acquisition to the Company's growth, several analysts tried to get an update on the revenue contribution. For example, during the Company's May 10, 2021 earnings call, an analyst from J.P. Morgan Chase & Co. asked for clarification, stating:

> Can you remind us more specifically, what was the expectation that you gave about a month ago for xMatters? Because if I take the beat and kind of add it to kind of the midpoint of what you had, it looks like you're including about $9 million for xMatters. Is that the right way to think about it? And that the guidance was really taking the beat, flowing it through to the full year and then adding xMatters to it?

**ANSWER 94:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on May 10, 2021, and refer the Court to the transcript of that

earnings call for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 94 of the Complaint.

95. Brickley responded by avoiding the question and highlighting other parts of the business that Defendants were "excited" about. Specifically, Brickley's "answer" to the question was:

> So as David said, we did have a little bit of pull in. Our guidance for Q2 and for the full year, we're doing our usual, we're factoring in uncertainties that impact both revenue and profitability. And we were happy to see implementation success at certain Public Warning projects that results in some additional revenue in Q1. But really, the strength of Q1 and what we're excited about for the rest of the year reflects a reacceleration of non-COVID-related CEM and Public Warning activity, the increasing number of large deals that you saw. And in fact, subscription revenue grew more than 30%, both at Q end and on a trailing 12-month basis. And our current RPO grew 34%.

> So these, on top of the existing backlog, which I referenced of signed-but-not-yet-invoiced contracts, which is still measured in the mid-teens of millions of dollars, and which we hope to recognize each revenue into upcoming quarters. These give us a lot of momentum as we look out towards the rest of the year. But as usual, when we're providing guidance as we've been doing for the past many quarters now, we're just – we're trying to provide a prudent outlook, and we hope to be able to continue our track record of outperforming expectations.

**ANSWER 95:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on May 10, 2021, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 95 of the Complaint.

96. Shortly after this cryptic response, a separate analyst followed up on the J.P. Morgan Chase analyst's question and tried to get a straight answer from Brickley regarding the revenue contribution from xMatters. Specifically, the analyst asked, "Could you just help parse out the impact from the acquisition and the deferred revenue haircut versus just increasing growth investments?"

**ANSWER 96:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on May 10, 2021, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 96 of the Complaint.

97. Brickley responded in vague terms again, stating that:

> Well, it's hard to do. We just closed the deal last Friday. We're certainly giving ourselves a wide birth here in the first quarter post-acquisition on the bottom line. And – but you did see that for the full year, we raised a little bit. We do think that net-net, this acquisition is going to be accretive – squarely accretive to adjusted EBITDA in 2022.
>
> So we just want to be prudent as we put the acquired company's financials through public accounting and—but we're optimistic that we're going to do this year what we said we were going to do, which is continue to make incremental improvements on the bottom line, whether that's adjusted EBITDA or non-GAAP net income or free cash flow. We anticipate gradual improvement versus last year, despite any purchase accounting impact to this acquisition.

**ANSWER 97:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on May 10, 2021, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 97 of the Complaint.

98.    Similarly, at the Company's next earnings call, on August 9, 2021, one analyst asked about how the acquired revenue from xMatters would impact the Company's total revenue for 2021. Specifically, the analyst asked:

> Got it. And just one follow-up, if I may. On the xMatters acquisition, is it possible to get the xMatters contribution to the revenue for the quarter? And really given the positive commentary throughout the call, I mean, I guess, ***are you expecting much more than the $9 million to $11 million in total revenue that you guided for xMatters earlier this year***.

**<u>ANSWER 98</u>:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on August 9, 2021, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 98 of the Complaint.

99.    Meredith refused to directly answer the analyst's questions, thereby falsely maintaining the misimpression that the prior $9-11 million estimate remained intact, and instead touted the smooth integration of xMatters and the strong sales of its products:

> Yes, Koji, it's a great question. So let me just give an update on what's going on with xMatters. One is, we are probably ahead of schedule on getting them integrated with the organization and we acquired a really tremendous team. They understand our space and the strategic fit of digital plus physical is resonating well with customers. And so based on our internal expectations, what we thought we'd do on sales, like we're doing better. And so we certainly are going to try to continue that.
>
> ***We are integrating***. We did have an ITA business previously. ***So we're integrating those teams. <u>They've already been integrated</u>***. So it is interesting in terms of which deals were already in the funnel, would we have won them anyway, not won them. So we're really not – ***and it's probably impossible to kind of break out***

*going forward because we're putting the teams together*. But our overall guidance reflects our view of the consolidated view going forward. And overall, we're very bullish on the acquisition and the results exceeded what we thought prior to having gone through Sarbanes-Oxley and closing the deal and all that.

**ANSWER 99:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on August 9, 2021, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 99 of the Complaint.

100.   The above statements were false and misleading because they failed to correct the prior material misstatement that revenue contribution from xMatters for the remainder of the year would be $9-11 million. *See* ¶¶ 85-91, *supra*. The statements about the xMatters integration were false and misleading because, unbeknownst to investors, Everbridge was experiencing significant integration problems in connection with the xMatters acquisition, including losing a "tremendous" number of xMatters legacy employees. *See* ¶¶ 115-123, *infra*.

**ANSWER 100:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 100 of the Complaint.

101.   Under Meredith's leadership, Everbridge engaged in a flurry of acquisitions. According to CW 1, the xMatters deal was "forced through" to "boost" revenue figures.

**ANSWER 101:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge engaged in multiple acquisitions during the Class Period.  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 101.  Defendants

Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 101 of the Complaint.

102. Armed with an additional $9-16 million in "hidden" revenue from xMatters, Defendants raised guidance for the full year 2021. Defendants had previously projected 2021 revenue at $342.1 million to 344.1 million. But after the xMatters acquisition, Defendants raised full year guidance to $358 million to $359.6 million, which would represent revenue growth of 32% to 33%. Thus, after the xMatters acquisition, the Company raised overall revenue guidance by approximately $15 million, of which they claimed only $9-11 million could be attributed to xMatters, meaning the Company claimed it was projecting an additional $4-6 million in organic revenue after the xMatters acquisition.

**ANSWER 102:** Defendants Everbridge, Meredith, and Brickley admit that on February 18, 2021, Everbridge disclosed projected 2021 revenue at $342.1 million to $344.1 million. Defendants Everbridge, Meredith, and Brickley further admit that on May 10, 2021, Defendants raised full year guidance to $358 million to $359.6 million, which would represent revenue growth of 32% to 33%. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 102 of the Complaint.

103. What investors did not know, however, is that xMatters was going to contribute $20-25 million in revenue—meaning *organic revenue actually was decreasing*, not increasing by $4-6 million. Had investors known the true xMatters revenue contribution number, they would have understood that the Company's organic revenue growth was decreasing, not increasing.

**ANSWER 103:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 103 of the Complaint.

104.    But without this knowledge, analysts were comforted by Defendants' updated guidance, specifically its organic revenue guidance, and believed Everbridge's updated guidance reflected an increase in organic revenue. For example, on May 11, 2021, William Blair issued an analyst report which stated:

> Everbridge guided revenue for 2021 in the range of $358.0 million to $359.6 million, representing an increase of 32.3% year-over-year at the midpoint. The updated guidance was above the Street mean estimate of $345.0 million, or 27.2% growth, and represents a raise relative to management's prior outlook of $342.1 million to $344.1 million. ***At the midpoint, this revised guidance reflects the upside generated in the first quarter as well as expected contribution from the recently closed xMatters acquisition, which is expected to generate between $9 million and $11 million in revenue in 2021. Excluding xMatters, the updated guidance implies roughly 29% organic growth at the midpoint compared to the midpoint of the company's prior outlook at 26.6% growth***.

**ANSWER 104:**    Defendants Everbridge, Meredith, and Brickley admit that William Blair authored a report titled "Everbridge, Inc. First Quarter Features Accelerating Growth in Revenue and Billings as Large Deal Strength Continues; Full-Year Outlook Raised" and dated May 11, 2021, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 104 of the Complaint.

105.    Analysts were also comforted by Defendants' false assurances regarding how well the xMatters acquisition was going. For example, on August 10, 2021, Stephens issued an analyst report titled "2Q Beat & Raise; Record CEM Winds Highlight Increasing Enterprise Momentum." The report reiterated Stephen's overweight rating—meaning Stephens expected the stock's total return to be greater than the total return of the company's industry sector, on a risk adjusted basis, over the next 12 months—based on "a strong 2Q beat across the board and increased 2021 guidance."

**ANSWER 105:**  Defendants Everbridge, Meredith, and Brickley admit that Stephens authored a report titled "2Q Beat & Raise; Record CEM Wins Highlight Increasing Enterprise Momentum" and dated August 10, 2021, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 105 of the Complaint.

106.  Stephens explained that they "were encouraged to hear that *xMatters is exceeding expectations* and resonating well w[ith] customers. Looking ahead, *we expect CEM momentum to continue into [second half of 2021]/2022* and see potential upside from xMatters/Public Warning activity." As a result, Stephens increased their price target for Everbridge's stock from $165 to $180 per share. Similarly, William Blair issued an analyst report on the same day stating that Everbridge's "strong revenue performance was driven by solid net adds, strong international performance, and *another quarter of records strength in CEM* and large deal wins."

**ANSWER 106:**  Defendants Everbridge, Meredith, and Brickley admit that Stephens authored a report titled "2Q Beat & Raise; Record CEM Wins Highlight Increasing Enterprise Momentum" and dated August 10, 2021, and refer the Court to that document for a complete and accurate statement of its contents.  Defendants Everbridge, Meredith, and Brickley further admit that William Blair authored a report titled "Record CEM Deals Helps Drive Strong Second-Quarter Results; Full-Year Guidance Raised Further" and dated August 10, 2021, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 106 of the Complaint.

107.  However, as explained in ¶¶ 115-23 *infra*, Everbridge was experiencing significant integration challenges that caused sales to drop off by mid- 2021.

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

54

**ANSWER 107:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 107 of the Complaint.

### b.    Defendants Mislead Investors About Significant Problems Integrating xMatters into Everbridge

108.    Defendants also misled investors about the Company's efforts to integrate xMatters into Everbridge. Despite significant integration challenges described below, Defendants continuously touted the Company's integration efforts, making it appear as though the Company had not experienced any issues when they had.

**ANSWER 108:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 108 of the Complaint.

109.    During the Company's August 9, 2021 earnings call, Meredith provided more details on how well the xMatters integration was going:

> So let me just give an update on what's going on with xMatters. One is, we are probably ahead of schedule on getting them integrated with the organization and we acquired a really tremendous team. They understand our space and the strategic fit of digital plus physical is resonating well with customers. And so based on our internal expectations, what we thought we'd do on sales, like we're doing better. And so we certainly are going to try to continue that.
>
> *We are integrating*. We did have an ITA business previously. *So we're integrating those teams. They've already been integrated*.

**ANSWER 109:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on August 9, 2021, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 109 of the Complaint.

110.    During the Company's November 9, 2021 earnings call, Meredith once again touted the xMatters integration, stating:

Obviously, with the xMatters platform, it was many years of development, really nice system, interface, functionality use cases, digital operations. It's – it really adds a lot of capability to what we were doing with our IT Alerting. And we're already doing integrations, right? ***So we've got that integrated now with our crisis management module, we've got it integrated with our employee communications module, integrated with our Visual Command Center***. So people are seeing the value of it coming together over time and giving us really positive feedback.

**ANSWER 110:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on November 9, 2021, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 110 of the Complaint.

111.   Brickley also touted the xMatters integration during the November 9, 2021 earnings call. During the earnings call, Brickley reiterated that the xMatters integration went well, stating, "it's performing as expected. ***We've integrated the people. We've integrated the sales. We've integrated the funnels. We're integrating the technology***. So we don't break it out. But so far, so good."

**ANSWER 111:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on November 9, 2021, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 111 of the Complaint.

112.   On November 30, 2021, Brickley attended the Credit Suisse Technology, Media & Telecom Conference. During the conference, Brickley responded to a question as to the status of the xMatters integration using similar language to what he had said during the November 9, 2021 Earnings Call, claiming that "[w]e've begun that

technological integration. ***We've locked up key hires, and we're retaining them. And so, so far, so good***."

**ANSWER 112:** Defendants Everbridge, Meredith, and Brickley admit that the Credit Suisse Technology, Media & Telecom Conference occurred November 30, 2021, and refer the Court to the transcript of that conference for a complete and accurate statement of its contents. Defendants Everbridge, Meredith, and Brickley further admit that Brickley attended the Credit Suisse Technology, Media & Telecom Conference on November 30, 2021. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 112 of the Complaint.

113. On November 30, 2021, the Company issued a press release "announc[ing] the launch of [Everbridge's] new Digital Operations Platform, helping organizations to save time and money, deliver continuous service uptime and maintain revenue streams. The new platform extends Everbridge's market- leading CEM for Digital solution to further support customers' digital transformation efforts." According to the press release, "Everbridge's new Digital Operations Platform represents ***the seamless integration of the Everbridge and xMatters enterprise IT and cyber resilience solutions (following Everbridge's acquisition of xMatters in May 2021***)."

**ANSWER 113:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge issued a press release on November 30, 2021, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 113 of the Complaint.

114. Meredith and Brickley's statements about the xMatters integration were false and misleading because, unbeknownst to investors, Everbridge was experiencing significant integration problems in connection with the xMatters acquisition, including losing a "tremendous" number of xMatters' legacy employees. Moreover, because

Defendants spoke about the xMatters integration, including the retention of xMatters' employees, they had a duty to disclose information about the Company's integration challenges and reasonable investors would find that losing most of xMatters sales' staff would significantly alter the mix of available information about the Company.

**ANSWER 114:**    The allegations in Paragraph 114 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 114 of the Complaint.

115.    A former employee described the xMatters integration as a disaster. CW 2—who worked at xMatters before the acquisition and remained at Everbridge after it, and who had knowledge of the integration team during the xMatters acquisition—described the integration of xMatters by Everbridge as a "[expletive] show."

**ANSWER 115:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 2 and whether CW 2 made the statements or held the opinions described in Paragraph 115.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 115 of the Complaint.

116.    CW 2 further explained that xMatters was Everbridge's largest acquisition to date and Everbridge failed to account for or consider how sophisticated a company of xMatters' size could be. CW 2 added that this contributed to the poor integration and redundant systems, [and] not only slowed down sales, but visibility became a "huge challenge," and it was necessary to manually consolidate reports.

**ANSWER 116:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 2 and whether CW 2 made the statements or held the

opinions described in Paragraph 116. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 116 of the Complaint.

117. The xMatters integration was a disaster for several reasons. According to CW 1, the xMatters deal was "forced through" to "boost" revenue figures.

**ANSWER 117:** Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 117. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 117 of the Complaint.

118. Moreover, Defendants' failure to integrate xMatters, along with the other Class Period acquisitions, overly complicated the Company's internal operating systems. According to CW 2, after the xMatters acquisition, Everbridge was now operating four different instances of Salesforce used by all different sales representatives. CW 2 added that in addition to Salesforce, Everbridge was also using two instances of NetSuite in addition to all their European systems.

**ANSWER 118:** Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 2 and whether CW 2 made the statements or held the opinions described in Paragraph 118. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 118 of the Complaint.

119. CW 2 explained that the convoluted nature of the systems "really slowed down sales."

**ANSWER 119:** Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 2 and whether CW 2 made the statements or held the

opinions described in Paragraph 119.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 119 of the Complaint.

120.   Another factor contributing to the Company's poor sales performance was the fact that Everbridge failed to integrate xMatters' teams and people—most importantly, xMatters' sales staff. Indeed, Everbridge made no effort to integrate xMatters' salespeople into Everbridge. CW 2 added that certain groups and teams at Everbridge were "not amenable" and did not care to observe best practices and elected to use a "my way or the highway" approach.

**ANSWER 120:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 2 and whether CW 2 made the statements or held the opinions described in Paragraph 120.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 120 of the Complaint.

121.   As a result, most of xMatters' sales staff left after the acquisition. According to CW 2, who worked at both xMatters and Everbridge, Everbridge lost a "*tremendous*" number of legacy xMatters sales representatives, including the global sales leader.[6] CW 2 had heard that the legacy xMatters staff was treated "poorly" and that some of the conduct resulted in lawsuits. CW 2 continued to say that xMatters was a "very familial" organization, a sentiment that Everbridge did not share.

**ANSWER 121:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 2 and whether CW 2 made the statements or held the

---

[6]    Based on Lead Plaintiff's investigation, this may refer to former Senior Vice President of Sales David Reardon, who departed in July 2021.

opinions described in Paragraph 121.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 121 of the Complaint.

122.   According to CW 2, there was "attrition" from the xMatters side following the acquisition as a result, and the quarter ending in September 2021 was "dismal" from an xMatters perspective. CW 2 added that xMatters' "didn't come close" to achieving their targets that quarter. Because the attrition caused a dismal third quarter, the majority xMatters' sales staff had already left Everbridge by September 30, 2021 (the last day of the third quarter).

**ANSWER 122:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 2 and whether CW 2 made the statements or held the opinions described in Paragraph 122.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 122 of the Complaint.

123.   Although the xMatters integration issues were severe, Everbridge had been experiencing similar integration challenges since the start of the Class Period. For example, CW 1 described Everbridge as "struggling with attrition" and integration of acquisitions. CW 1 explained that there were too many new people being integrated into Everbridge after numerous acquisitions beginning in 2019.

**ANSWER 123:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 123.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 123 of the Complaint.

**E.    The Relevant Truth Regarding the Company's Slowing Organic Growth Slowly Emerges**

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

61

124.    On December 9, 2021, Defendants partially revealed the true state of Everbridge through a press release containing two equally unexpected announcements. First, Everbridge announced that Defendant Meredith had resigned from his position as CEO and member of the Board of Directors. Second, Everbridge reduced revenue guidance for 2022 to 20-23%, well below the Company's history forecasts of 30% plus revenue growth.

**ANSWER 124:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on December 9, 2021, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 124 of the Complaint.

125.    At the same time, however, Defendants insisted that the two announcements were unrelated, stating that "Meredith's resignation *[wa]s not related to any matter regarding the Company's financial condition* [or] reported financial results."

**ANSWER 125:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on December 9, 2021, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 125 of the Complaint.

126.    On this news, Everbridge's stock price plummeted by more than *45%*, as investors began to understand the Company's revenue growth was unsustainable. Indeed, multiple analysts subsequently downgraded their rating of Everbridge stock, with Northland Capital Markets, for example, noting that the revenue guidance was "a *notable change*" from "the company's historic guidance . . . that they should grow *30%+ organically*." Similarly, Barclays explained that they had "less confidence in

growth visibility ahead" and noted that "[i]nvestors *will focus even more on organic growth going forward*, and are *unlikely to give EVBG the benefit of the doubt on future acquisitions*."

**ANSWER 126:**  Defendants Everbridge, Meredith, and Brickley refer the Court to the public record for the price of Everbridge common stock for the relevant period referenced in Paragraph 126 of the Complaint.  Defendants Everbridge, Meredith, and Brickley admit that Northland Capital Markets authored a report titled "Everbridge, Inc. Downgrading on CEO Change & Outlook" and dated December 10, 2021, and refer the Court to that document for a complete and accurate statement of its contents. Defendants Everbridge, Meredith, and Brickley further admit that Barclays authored an analyst report titled "CEO Resignation Casts Doubt on Growth Opportunity; Downgrade to EW" and dated December 10, 2021, and refer the Court to that document for a complete and accurate statement of its contents.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 126 of the Complaint.

127.   However, Defendants did not disclose the full truth, and investors were left to wonder about Meredith's abrupt departure and its possible relation to the Company's slowing, unexpected, and therefore worrisome organic revenue growth. For example, on December 13, 2021, J.P. Morgan issued an analyst report stating, "there remain a lot more questions than answers at the moment." Chief among those questions was "[w]hy is the CEO really leaving," and "does the timing of the CEO departure actually indicate concerns about growth potential over the next year?"

**ANSWER 127:**  Defendants Everbridge, Meredith, and Brickley admit that J.P. Morgan authored a report titled "Everbridge Evaluating the 45% Sell-Off and Reasons for CEO Departure" and dated December 13, 2021, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants

Everbridge, Meredith, and Brickley deny the allegations in Paragraph 127 of the Complaint.

128.    After two more months of "more questions than answers," on February 24, 2022, investors finally learned the full truth about the Company's slowing revenue growth. On that date, Defendants issued a press release announcing Everbridge was lowering its full year 2022 guidance once again, this time to 15-17%, nearly half the usual 30% plus revenue growth.

**ANSWER 128:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on February 24, 2022, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 128 of the Complaint.

129.    Moreover, the press release also explained that Defendants were "taking decisive actions to streamline, integrate and reduce complexity in [Everbridge's] key offerings, which we expect to drive sustainable growth in the years ahead."

**ANSWER 129:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on February 24, 2022, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 129 of the Complaint.

130.    Co-CEO Vernon Irvin clarified this statement during the Company's earnings call on the same day, stating that "beginning in December," i.e., when the Company announced Meredith's abrupt departure as CEO, "our management team, together with the Board, conducted a comprehensive review of our strategy and

operations" which looked at "the number of acquisitions completed in 2020 and 2021" and how those acquisitions were integrated into Everbridge.

**ANSWER 130:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 24, 2022, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 130 of the Complaint.

131. Indeed, according to Irvin, that comprehensive Everbridge management review concluded that "certain *acquired technologies*" created a "barrier to upsell and cross-sell *from increased complexity, and incomplete integrations*." He further stated that "the number of *acquisitions completed in 2020 and 2021*," along with their products and businesses, "created incremental product line *complexity that produce integration challenges* and have complicated our go- to-market efforts."

**ANSWER 131:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 24, 2022, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 131 of the Complaint.

132. Based on this incomplete integration, Irvin explained that it was "harder for . . . [Everbridge's] enterprise sales organization to execute on [its] land, adopt and expand sales strategies." Similarly, Brickley stated during the earnings call that the flurry of acquisitions "created complexity for the business seen in the product, back office and go-to-market headwinds *that are obstacles to sales growth*." Brickley further explained that "we were well down a path of selling dozens of solutions that *were not always tightly integrated*. We were selling them to multiple buyers. And as [Irvin] said, *that was confusing to customers and to our sellers*."

**ANSWER 132:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 24, 2022, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 132 of the Complaint.

133.   As a result, Irvin explained that the Company was taking immediate action to "paus[e] material new M&A and instead prioritiz[e] development efforts to *focus on accelerating product integrations across our existing acquired assets*."

**ANSWER 133:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 24, 2022, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 133 of the Complaint.

134.   On this news, Everbridge's stock price fell more than *33%,* closing at $30.61 per share on February 25, 2022, as investors finally understood that, the Company failed to integrate them, causing a drop off of organic sales to such an extent that it could no longer be camouflaged with the revenues from additional acquisitions.

**ANSWER 134:**  Defendants Everbridge, Meredith, and Brickley refer the Court to the public record for the price of Everbridge common stock for the relevant period referenced in Paragraph 134 of the Complaint.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 134 of the Complaint.

135.   Shortly after the full truth was revealed, Barclays noted that "*some investors were holding out hope that the CEO departure was separate from growth concerns*." But this could no longer be denied. Indeed, as William Blair noted, the

"*__incomplete integrations__* and the accumulated portfolio of somewhat disjointed point solutions that *__resulted from this rapid pace of M&A__* was creating difficulties in the company's land-and-expand motion from the perspective of both sellers and buyers."

**ANSWER 135:**  Defendants Everbridge, Meredith, and Brickley admit that Barclays authored a report titled "4Q21: EVBG Faces a Tough Road Ahead While Integrating Past Acquisitions" and dated February 25, 2022, and refer the Court to that document for a complete and accurate statement of its contents.  Defendants Everbridge, Meredith, and Brickley further admit that William Blair authored a report titled "Everbridge, Inc. Posts Upside in Fourth-Quarter Results; Lowers 2022 Revenue Guidance Due to a Shift in Strategic Priorities" and dated February 25, 2022, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 135 of the Complaint.

## V.   DEFENDANTS' FALSE AND MISLEADING STATEMENTS

136.   Lead Plaintiff alleges that Defendants' statements highlighted in bold and italics within this section were knowingly and materially false and misleading and/or omitted to disclose material information of which Defendants were aware or were reckless in not knowing. As alleged herein, such statements artificially inflated or maintained the price of Everbridge's publicly trade common stock and operated as a fraud or deceit on all persons and entities that purchased common stock during the Class Period.

**ANSWER 136:**   The allegations in Paragraph 136 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 136 of the Complaint.

137. Throughout the Class Period, Defendants made a series of false and misleading statements regarding: (i) the extent to which the revenues it obtained from those acquired companies were being used to hide increasingly lower organic revenue growth; and (ii) the significant problems Everbridge was facing as a result of Defendants' failure to integrate the acquired companies. At the same time, Defendants omitted material facts indicating that the Company's revenue growth was unsustainable and would be short-lived due to incomplete integrations and increased complexity.

**ANSWER 137:** The allegations in Paragraph 137 of the Complaint contain characterizations or conclusions of law that do not require a response. To the extent a response is required, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 137 of the Complaint.

### A. February 18, 2020 Earnings Call

138. On February 18, 2020, Everbridge held an earnings call to discuss the Company's fourth quarter and full year ended December 31, 2019 (the "Fourth Quarter and Full Year 2019 Earnings Call"). During that call, one analyst expressed uncertainty about the Company's organic revenue growth, asking Ellertson the following question:

> But if I look at your revenue guidance, it seems like you're guiding below the 30% mark organically, which will be below the commentary that Jaime spoke about earlier for sustainable 30% growth with M&A in addition to that. Are there any one- timers that we should be thinking about or just timing of revenue recognition that are impacting fiscal '20?

**ANSWER 138:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 18, 2020, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 138 of the Complaint.

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

68

139. Ellertson stated that the Company had already integrated NC4 into its product offering. Specifically, Ellertson stated:

> And as I said earlier, as we head into 2020, *we've **really** **integrated NC4 and Risk Center into our entire product offering.*** And so it's difficult to break that out.

**ANSWER 139:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 18, 2020, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 139 of the Complaint.

140. Ellertson's statement about integrating NC4 into Everbridge's product offering was false and misleading because starting with NC4, during Meredith's tenure, Defendants' failure to integrate the acquisitions, caused significant integration challenges throughout the Class Period. For example, CW 1 explained that there were too many new people being integrated into Everbridge after numerous acquisitions beginning in 2019. CW 1 added that these employees were spread across all different time zones, which made it difficult to get everyone on the same page and then, once progress was being made, another company would be acquired and Everbridge would have to go through the process all over again. CW 1 also cited problems integrating the acquired companies themselves into Everbridge's business.

**ANSWER 140:** Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 140. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 140 of the Complaint.

**B.    March 23, 2020 Corporate Analyst and Investor Meeting**

141.   On March 23, 2020, Everbridge hosted its Corporate Analyst and Investor Meeting, which was attended by several Everbridge officers and employees, including the Individual Defendants. During the conference, Meredith touted the growth of the Company's CEM platform with the addition of the recent Connexient and CNL Software acquisitions. Meredith stated:

> Secondly, we're continuing to innovate around Critical Event Management with significant new capabilities in CEM, specifically related to IoT. *And if you look at the acquisitions that we have done with Connexient, one2many and others, we now have over 225 out-of-the-box integrations.* So we *now truly can be that <u>unified enterprise-wide operating system</u>* to allow you to operate across your business, your organization globally, and that's very powerful and that's very sticky.

**<u>ANSWER 141</u>:**   Defendants Everbridge, Meredith, and Brickley admit that the Corporate Analyst and Investor Meeting occurred March 23, 2020, and refer the Court to the transcript of that conference for a complete and accurate statement of its contents. Defendants Everbridge, Meredith, and Brickley further admit that Brickley, Meredith, and Ellertson attended the Corporate Analyst and Investor Meeting on March 23, 2020. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 141 of the Complaint.

142.   Meredith's statement was false and misleading because it created an impression that the Company had integrated the acquired companies, including Connexient, into the Company's CEM platform when they had not.

**<u>ANSWER 142</u>:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 142 of the Complaint.

143.   During the Class Period, Defendants engaged in a flurry of acquisition but failed to integrate these acquisitions. Thus, contrary to Meredith's statements, the recent acquisitions did not make Everbridge a "unified enterprise-wide operating system."

 **ANSWER 143:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 143 of the Complaint.

### C.    The April 6, 2021 xMatters Acquisition Press Release

144.   On April 6, 2021, the Company issued a press release on Form 8-K announcing that Everbridge had acquired xMatters for a purchase price of approximately $240 million in cash and stock. The press release stated:

> ***Everbridge anticipates the partial year contribution to 2021 revenue will be approximately $9-11 million***, after considering the material impact of purchase accounting and the associated deferred revenue haircut. Everbridge expects that the xMatters acquisition will have minimal impact to the company's adjusted EBITDA in 2021 and will become accretive to the company's adjusted EBITDA in 2022. The company will provide an update to its full-year guidance on its next earnings call.

**ANSWER 144:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on April 6, 2021, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 144 of the Complaint.

145.   This statement was false and misleading because the revenue contribution from xMatters for the rest of 2021 was actually $20-25 million—the high end of which was ***nearly triple*** the $9-11 million figure Defendants presented to the public. Defendants knew that xMatters would contribute $20-25 million for the rest of 2021, but purposefully downplayed the revenue contribution from xMatters to mask the Company's slowing organic revenue. By claiming xMatters would contribute $9-11

million, when it would actually contribute $20-25 million, Defendants had an extra $11-16 million in "hidden," undisclosed revenue from xMatters that they could add to the Company's overall revenue, making it appear as though the Company's revenue was growing organically far more than it actually was.

**ANSWER 145:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 145 of the Complaint.

146.   CW 1, who had knowledge of Everbridge's M&A process and transactions, stated that Everbridge ended up paying 4.0 – 4.5x the revenue for xMatters, in a deal that *was "forced through" to "boost" revenue figures*. Specifically, CW 1 recalled that the projected revenue figures relayed to Wall Street for xMatters were an additional approximately $11 million for Everbridge in 2021. According to CW 1, however, realistically, the forecasts were presenting figures closer to *$20 - $25 million*. CW 1 added that based on the actual forecasts, it was "clear" that xMatters was not necessarily going to grow, which was contrary to what was being presented to the public.

**ANSWER 146:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 146.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 146 of the Complaint.

147.   CW 1 stated that she raised concerns regarding these discrepancies to her immediate superior, which were then passed on to Meredith and Brickley. CW 1 added that she expressed concerns *directly* to Meredith and Brickley as well, in the form of presentations and emails regarding the deal. CW 1 explained that she sent Meredith and Brickley emails in the lead up to the acquisition. CW 1 added that she was not the only person to express concerns about the xMatters acquisition.

**ANSWER 147:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 147.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 147 of the Complaint.

148.  According to CW 1, the rationale Meredith provided ***was that the discrepancy in figures was to "buffer" the declines in Everbridge's organic revenue***.  According to CW 1, the difference in revenue reported versus what was projected was to allow Everbridge to use the discrepancy to cover up for their overall performance.

**ANSWER 148:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 148.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 148 of the Complaint.

### D.    The May 10, 2021 Earnings Call

149.  On May 10, 2021, the Company filed its Form 10-Q for the quarterly period ended March 31, 2021 (the "2021 First Quarter Form 10-Q").

**ANSWER 149:**  Defendants Everbridge, Meredith, and Brickley admit the allegations in Paragraph 149 of the Complaint.

150.  During the May 10, 2021 Earnings Call, Brickley provided updated guidance for the rest of 2021 based on the recent xMatters acquisition. The updated guidance raised the Company's full year revenue estimate to represent growth of 32% to 33%. Specifically, Brickley explained:

> Our updated guidance for 2021 considers the impact of our acquisition of xMatters. Having just completed the transaction on Friday, ***Our*** [*sic*] **expectations** *for the financial contribution from*

*xMatters for the remainder of the year have not changed from the view we provided about a month ago* . .

. .

For the second quarter, we anticipate revenue of between $83.7 million and $84.1 million, representing growth of 28% to 29% .

. . .

"For the full year, we now expect revenue to be in the range of $358 million to $359.6 million, representing growth of 32% to 33%."

**ANSWER 150:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on May 10, 2021, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 150 of the Complaint.

151.  This statement was false and misleading because it failed to correct the prior material misstatement that revenue contribution from xMatters for the remainder of the year would be $9-11 million. *See* ¶¶ 144-148, *supra*.

**ANSWER 151:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 151 of the Complaint.

152.  Analysts were comforted by Defendants' updated guidance, specifically its organic revenue guidance, and believed that the Company could continue its strong trajectory. For example, on May 11, 2021, William Blair issued an analyst report reiterating its outperform rating on Everbridge's stock. In the report, William Blair noted that, "[e]xcluding xMatters, the updated guidance implies roughly 29% organic growth at the midpoint compared to the midpoint of the company's prior outlook at 26.6% growth." On June 3, 2021, William Blair issued another analyst report stating

"[t]he Company has been putting up strong numbers post-pandemic and we believe this trajectory will continue in the coming quarters."

**ANSWER 152:** Defendants Everbridge, Meredith, and Brickley admit that William Blair authored a report titled "Everbridge, Inc. First Quarter Features Accelerating Growth in Revenue and Billings as Large Deal Strength Continues; Full-Year Outlook Raised" and dated May 11, 2021, and refer the Court to that document for a complete and accurate statement of its contents. Defendants Everbridge, Meredith, and Brickley further admit that William Blair authored a report titled "Highlights From William Blair's 41st Annual Growth Stock Conference" and dated June 3, 2021, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 152 of the Complaint.

### E.    The August 9, 2021 Earnings Call

153.   On August 9, 2021, the Company held an earnings call discussing the Company's second quarter 2021 financial results (the "August 9, 2021 Earnings Call"). During the call, an analyst asked about the xMatters acquisition and how the acquired revenue would impact the Company's total revenue moving forward. Specifically, the analyst asked:

> Got it. And just one follow-up, if I may. On the xMatters acquisition, is it possible to get the xMatters contribution to the revenue for the quarter? And really given the positive commentary throughout the call, I mean, I guess, are you expecting much more than the $9 million to $11 million in total revenue that you guided for xMatters earlier this year.

**ANSWER 153:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on August 9, 2021, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents. Except as admitted,

---

Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 153 of the Complaint.

154.   In response, Meredith refused to give a revenue contribution number from xMatters, but instead touted the integration of xMatters and the strong sales of its products:

> Yes, Koji, it's a great question. So let me just give an update on what's going on with xMatters. One is, we are probably ahead of schedule on getting them integrated with the organization and *we acquired a really tremendous team*. They understand our space and the strategic fit of digital plus physical is resonating well with customers. And so based on our internal expectations, what we thought we'd do on sales, like we're doing better. And so we certainly are going to try to continue that.
>
> *We are integrating*. We did have an ITA business previously.
>
> *So we're integrating those teams. **They've already been integrated**.* So it is interesting in terms of which deals were already in the funnel, would we have won them anyway, not won them. So we're really not – and it's probably impossible to kind of break out going forward because we're putting the teams together. But our overall guidance reflects our view of the consolidated view going forward. And overall, we're very bullish on the acquisition and the results exceeded what we thought prior to having gone through Sarbanes-Oxley and closing the deal and all that.

**ANSWER 154:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on August 9, 2021, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 154 of the Complaint.

155.   The statements in ¶ 154 were false and misleading because they led investors to believe that the xMatters integration was going well and that Everbridge

had already integrated xMatters' teams and employees, when in reality, the xMatters integration was not going well and Everbridge had lost a "tremendous" number of xMatters employees. Contrary to Meredith's statement that the xMatters teams had "already been integrated," most xMatters employees left Everbridge after the acquisition. According to CW 2, who worked at both xMatters and Everbridge, Everbridge lost a "*tremendous*" number of legacy xMatters sales representatives, including the global sales leader.

**ANSWER 155:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 2 and whether CW 2 made the statements or held the opinions described in Paragraph 155.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 155 of the Complaint.

156.   The statements in ¶ 154 were false and misleading for the additional reason that they led investors to believe that the Company was already integrating xMatters when they were not.

**ANSWER 156:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 156 of the Complaint.

### F.     The November 9, 2021 Earnings Call

157.   On November 9, 2021, the Company held an earnings call discussing the Company's third quarter 2021 financial results (the "November 9, 2021 Earnings Call"). During the call, Meredith represented that, "[t]here's an increased awareness of the importance of CEM. And we're doing a better job of bundling together our different CEM capabilities into deals, and that's manifesting itself in the ASPs [average selling prices] and the large deals."

**ANSWER 157:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on November 9, 2021, and refer the Court to the transcript of that

earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 157 of the Complaint.

158.  Specifically addressing the xMatters acquisition, Meredith further represented:

> Obviously, with the xMatters platform, it was many years of development, really nice system, interface, functionality use cases, digital operations. It's – it really adds a lot of capability to what we were doing with our IT Alerting. And we're already doing integrations, right? ***So we've got that integrated now with our crisis management module, we've got it integrated with our employee communications module, integrated with our Visual Command Center***. So people are seeing the value of it coming together over time and giving us really positive feedback.

**ANSWER 158:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on November 9, 2021, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 158 of the Complaint.

159.  During the November 9, 2021 Earnings Call, Brickley reiterated that the xMatters integration went well, stating, "it's performing as expected. ***We've integrated the people. We've integrated the sales. We've integrated the funnels. We're integrating the technology***. So we don't break it out. But so far, so good."

**ANSWER 159:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on November 9, 2021, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 159 of the Complaint.

160.    Meredith and Brickley's statements in ¶¶ 158-59 about the xMatters integration were false and misleading because, unbeknownst to investors, Everbridge was experiencing significant integration problems in connection with the xMatters acquisition, including losing a "tremendous" number of xMatters legacy employees by August 2021. *See ¶¶ 115-123, supra.* Moreover, because Defendants spoke about the xMatters integration, including the retention of xMatters employees, they had a duty to disclose information about the Company's integration challenges and reasonable investors would find that losing most of xMatters' sales staff would significantly alter the mix of available information about the Company.

**ANSWER 160:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 160 of the Complaint.

### G.    The November 30, 2021 Credit Suisse Conference

161.    On November 30, 2021, Brickley attended the Credit Suisse Technology, Media & Telecom Conference. During the conference, Brickley responded to a question as to the status of the xMatters integration using similar language to what he had said during the November 9, 2021 Earnings Call, claiming that "[w]e've begun that technological integration. *We've locked up key hires, and we're retaining them.* And so, so far, so good."

**ANSWER 161:**  Defendants Everbridge, Meredith, and Brickley admit that the Credit Suisse Technology, Media & Telecom Conference occurred on November 30, 2021, and refer the Court to the transcript of that conference for a complete and accurate statement of its contents.  Defendants Everbridge, Meredith, and Brickley further admit that Brickley attended the Credit Suisse Technology, Media & Telecom Conference on November 30, 2021.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 161 of the Complaint.

162. This statement was false and misleading because for the reasons set forth in ¶¶ 155-56, 160, *supra*.

**ANSWER 162:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 162 of the Complaint.

### H. The November 30, 2021 Press Release

163. On November 30, 2021, the Company issued a press release "announc[ing] the launch of [Everbridge's] new Digital Operations Platform, helping organizations to save time and money, deliver continuous service uptime and maintain revenue streams. The new platform extends Everbridge's market- leading CEM for Digital solution to further support customers' digital transformation efforts." According to the press release, "Everbridge's new Digital Operations Platform represents ***the seamless integration of the Everbridge and xMatters enterprise IT and cyber resilience solutions (following Everbridge's acquisition of xMatters in May 2021***)."

**ANSWER 163:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge issued a press release on November 30, 2021, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 163 of the Complaint.

164. This statement was false and misleading because the xMatters integration was not "seamless" as set forth in ¶¶ 155-56, 160, *supra*.

**ANSWER 164:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 164 of the Complaint.

### VI. THE TRUTH EMERGES

165. The truth and foreseeable risks concealed by Defendants' misconduct, misleading statements, and omissions during the Class Period were partially revealed

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-cv-02249-FWS-RAO

80

and/or partially materialized on December 9, 2021. However, the truth and foreseeable risks were not fully revealed and/or fully materialized until February 24, 2022.

**ANSWER 165:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 165 of the Complaint.

**A.   The Truth is Partially Revealed on December 9, 2021 When Defendants Disclose Meredith's Abrupt Departure and Lower Revenue Guidance, But Investors Still Question How the Two are Related**

166.  The truth and foreseeable risks concealed by Defendants' misconduct, misleading statements, and omissions during the Class Period were partially revealed and/or partially materialized after the markets closed on December 9, 2021, when Defendants issued a press release that contained two unexpected announcements.

**ANSWER 166:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on December 9, 2021, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 166 of the Complaint.

167.  First, Everbridge announced that Meredith had resigned effective immediately from his position as CEO and member of the Board of Directors. However, the Company provided no explanation for his decision. The Company announced that it would immediately establish an Office of the CEO and begin to transition leadership to Defendant Brickley and Irvin, Everbridge's Executive Vice President and Chief Revenue Officer, as interim Co-CEOs pending the appointment of a permanent CEO.

**ANSWER 167:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on December 9, 2021, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement

of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 167 of the Complaint.

168.   The second announcement from the same press release was Everbridge's reduction of revenue guidance for 2022 to 20%-23% growth, well below its historic forecasts of 30% plus revenue growth.

**ANSWER 168:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on December 9, 2021, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 168 of the Complaint.

169.   As a direct and proximate result of this partial corrective disclosure, the price of Everbridge's common stock fell $52.37 per share, or more than 45.4%, to close at $63.00 per share on December 10, 2021.

**ANSWER 169:**   The allegations in Paragraph 169 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley refer the Court to the public record for the price of Everbridge common stock for the relevant period referenced in Paragraph 169 of the Complaint and deny the remaining allegations in Paragraph 169 of the Complaint.

170.   Indeed, analysts were shocked by Meredith's "abrupt" resignation. For example, on December 10, 2021, Bank of America Securities issued an analyst report stating: "We find the resignation of David Meredith as CEO and a board member as ***abrupt and unexpected***, particularly given the business is still working through the large and transformative acquisition of xMatters from earlier this year and the relatively good results in 2021 thus far." Similarly, on the same day, Northland Capital Markets

issued an analyst report stating the resignation "was fairly abrupt and without a transition plan."

**ANSWER 170:** Defendants Everbridge, Meredith, and Brickley admit that Bank of America Securities authored an analyst report titled "Announces CEO transition, guides C22 revs below Street; downgrade to U/P, $100 PO" and dated December 10, 2021, and refer the Court to that document for a complete and accurate statement of its contents. Defendants Everbridge, Meredith, and Brickley further admit that Northland Capital Markets authored an analyst report titled "Downgrading on CEO Change & Outlook" and dated December 10, 2021, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 170 of the Complaint.

171. Analysts were also shocked by the lower revenue guidance for 2022. For example, in their December 10, 2021 analyst report, Bank of America went on to say, "[m]ore concerning to us is the 2022 prelim[inary] revenue guidance ***that suggests a sharp revenue growth deceleration*** in 2022 from 2021 (+20-23% vs. our +36% 2021 forecast)." Northland Capital Markets commented that the revenue guidance was "a ***notable change***" from "the company's historic guidance . . . that they should grow 30%+ organically." Northland Capital Markets also stated that the lower revenue guidance "seems a little at odds with macro trends" that would be expected to benefit Everbridge, "such as a continued barrage of critical events, the uncertainty remaining around Covid, strong public safety investments in other areas, digital transformation plans, and the rise of the CSO within companies."

**ANSWER 171:** Defendants Everbridge, Meredith, and Brickley admit that Bank of America Securities authored an analyst report titled "Announces CEO transition, guides C22 revs below Street; downgrade to U/P, $100 PO" and dated December 10, 2021, and refer the Court to that document for a complete and accurate statement of its contents.

Defendants Everbridge, Meredith, and Brickley further admit that Northland Capital Markets authored an analyst report titled "Downgrading on CEO Change & Outlook" and dated December 10, 2021, and refer the Court to that document for a complete and accurate statement of its contents.   Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 171 of the Complaint.

172.   However, the Company did not disclose the full truth regarding the Company's slowing revenue growth. The Company's December 9, 2021 press release misled investors by claiming that "Meredith's resignation [wa]s not related to any matter regarding the Company's financial condition [or] reported financial results." This statement was false and misleading because it led investors to believe that Meredith's departure was not related to the Company's growth deceleration in 2022. In reality, Meredith's resignation was directly related to the Company's slowing growth, as under Meredith's leadership, the Company had chased acquisitions to bolster its growth numbers but failed to integrate them, causing a drop off in sales to such an extent that it could no longer be camouflaged with the revenues from additional acquisitions, leading to a significant growth deceleration in 2022.

**ANSWER 172:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on December 9, 2021, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 172 of the Complaint.

173.   As a result of Defendants' false assurances that Meredith's departure was unrelated to lower revenue guidance, investors did not yet understand what caused Everbridge's slowing revenue growth. As Raymond James explained in their December 16, 2021 analyst report, "investors are still trying to dissect what's driving the organic deceleration in 2022." J.P. Morgan also questioned whether Meredith's abrupt

departure was related to the Company's slowing revenue growth. On December 13, 2021, J.P. Morgan issued an analyst report stating, "there remain a lot more questions than answers at the moment." Most importantly, J.P. Morgan asked "[w]hy is the CEO really leaving" and "does the timing of the CEO departure actually indicate concerns about growth potential over the next year?"

**ANSWER 173:**  Defendants Everbridge, Meredith, and Brickley admit that Raymond James authored a report titled "Revising Model & Addressing Debate Points Post Share Reset" and dated December 16, 2021, and refer the Court to that document for a complete and accurate statement of its contents.  Defendants Everbridge, Meredith, and Brickley further admit that J.P. Morgan authored an analyst report titled "Evaluating the 45% Sell-Off and Reasons for CEO Departure" and dated December 13, 2021, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 173 of the Complaint.

174.   J.P. Morgan noted that Meredith's abrupt departure was at odds with the continued positive gloss that he and the other Defendants had put on Everbridge's growth potential throughout the Class Period. Moreover, by resigning as CEO, Meredith left on the table approximately 55% of the remaining unvested performance-based compensation. This performance-based compensation was tied to the Company's annual growth rate over the 12 quarters ended on September 30, 2022. Meredith's departure raises the question of whether he left the compensation on the table because he knew that revenue was declining dramatically and could no longer be propped up with further acquisitions, thereby diminishing the value of the performance-based compensation. JP Morgan made the cogent observation that, "[w]hat we found is that [Meredith] is leaving a decent amount on the table with his departure. If the decision was solely his to make, it does raise the question on whether he was lacking confidence

in earning the remaining performance-based incentive." That Meredith later took the position of CEO of privately held Boomi, an intelligent connectivity and automation company, does not lessen the saliency of that question.

**ANSWER 174:**    Defendants Everbridge, Meredith, and Brickley admit that J.P. Morgan authored an analyst report titled "Evaluating the 45% Sell-Off and Reasons for CEO Departure" and dated December 13, 2021, and refer the Court to that document for a complete and accurate statement of its contents.  Defendants Everbridge, Meredith, and Brickley admit that, on January 31 2022, Meredith took the position of CEO of Boomi.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 174 of the Complaint.

> **B.    The Full Truth is Fully Revealed on February 24, 2022 When Defendants Lower Revenue Guidance Even Further and Admit the Company had not Integrated its Acquisitions During Meredith's Tenure as CEO**

175.    Investors finally got answers to their questions on February 24, 2022, when the truth and foreseeable risks concealed by Defendants' misconduct, misleading statements, and omissions during the Class Period were fully revealed and/or fully materialized. After the market closed on that day, Everbridge revealed the full truth to investors about its slowing organic growth.

**ANSWER 175:**    Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 175 of the Complaint.

176.    On February 24, 2022, the Company issued a press release which once again lowered 2022 revenue guidance, this time forecasting full year revenue growth at 15% to 17%. The press release also contained a statement from Co-CEO Irvin, stating "[w]e are taking decisive actions to streamline, integrate and reduce complexity in our key offerings, which we expect to drive sustainable growth in the years ahead."

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

86

**ANSWER 176:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on February 24, 2022, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 176 of the Complaint.

177. On the same day, Everbridge held the February 24, 2022 Earnings Call, during which Everbridge officers further explained why these "decisive actions" were being taken, including disclosing for the first time material facts that were completely in opposition with Defendants' representations throughout the Class Period.

**ANSWER 177:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 24, 2022, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 177 of the Complaint.

178. Irvin began by saying that "beginning in December," i.e., when Meredith resigned as CEO, "our management team, together with the Board, conducted a comprehensive review of our strategy and operations." The review, however, was apparently focused on matters that, during the Class Period, Defendants had discussed extensively with investors and analysts, independently and in answer to questions posed to them, and as to which they were already intimately familiar. For example, the review looked at "the number of acquisitions completed in 2020 and 2021" and how those acquisitions were integrated into Everbridge.

**ANSWER 178:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 24, 2022, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents. Except as admitted,

Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 178 of the Complaint.

179. Irvin stated that this review resulted in the conclusion that "certain acquired technologies" had created a "***barrier to upsell and cross-sell from increased complexity, and incomplete integrations*** and pushed out demand for travel-related solutions, as well as smaller deal size for international public warning wins that are having adverse impacts on business, our go-to-market strategy and sales organization." He further stated that "the number of acquisitions completed in 2020 and 2021," along with their products and businesses "have created ***incremental product line complexity that produce integration challenges and have complicated our go-to-market efforts***." With incomplete integration, Irvin explained that it was "harder for . . . [Everbridge's] enterprise sales organization to execute on [its] land, adopt and expand sales strategies."

**ANSWER 179:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 24, 2022, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 179 of the Complaint.

180. Defendant Brickley expanded upon these revelations, stating that the acquisitions in 2020 and 2021 "have created complexity for the business seen in product, back office and go-to-market headwinds ***that are obstacles to sales growth***. Removing these headwinds by accelerating integration work will be our focus in the first half of this year." He further elaborated on that complexity caused by the flurry of acquisitions in 2020 and 2021, explaining that "we were well down a path of selling dozens of solutions that ***were not always tightly integrated***. We were selling them to multiple buyers. And as Vernon said, ***that was confusing to customers and to our sellers***."

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

88

**ANSWER 180:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 24, 2022, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 180 of the Complaint.

181.   As a result, Irvin explained that the Company was taking immediate action to "paus[e] material new M&A and instead prioritiz[e] development efforts to ***focus on accelerating product integrations across our existing acquired assets***."  In addition, Everbridge stated that it intends to "simplif[y] our product offerings, moving from several dozen individual product–point products to focus on 4 strategic CEM solutions."  In particular, the Company will "deemphasize certain smaller, nonstrategic products that don't fit cleanly into our CEM and public warning focus areas. ***While these products do deliver some stand-alone revenue, they are a distraction to our primary focus and negatively impact our sellers' overall productivity***."

**ANSWER 181:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 24, 2022, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 181 of the Complaint.

182.   On this news, Everbridge's common stock price fell an additional $15.68 per share, or approximately 34%, to close at $30.61 per share on February 25, 2022.

**ANSWER 182:**  Defendants Everbridge, Meredith, and Brickley refer the Court to the public record for the price of Everbridge common stock for the relevant period referenced in Paragraph 182 of the Complaint.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 182 of the Complaint.

183. Analysts were once again shocked by Everbridge's lower guidance, which was substantially lower than the guidance provided on December 9, 2021. On February 25, 2022, William Blair published an analyst report stating that "Everbridge provided updated full year 2022 guidance, with lower-than-expected revenue" which William Blair explained was "below the Street mean estimate of . . . 21.8% growth" and "*notably below* the initial outlook provided in December 2021." William Blair further explained that Everbridge's "*incomplete integrations and the accumulated portfolio of somewhat disjointed point solutions that resulted from this rapid pace of M&A was creating difficulties in the company's land-and-expand motion from the perspective of both sellers and buyers*."

**ANSWER 183:** Defendants Everbridge, Meredith, and Brickley admit that William Blair authored an analyst report titled "Posts Upside in Fourth-Quarter Results; Lowers 2022 Revenue Guidance Due to a Shift in Strategic Priorities" and dated February 25, 2022, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 183 of the Complaint.

184. Moreover, investors finally understood that Meredith's departure was connected to the growth concerns. Barclays issued an analyst report on February 25, 2022, stating that Everbridge "guided FY22 revenues below expectations again, as we believe some investors were holding out hope that the CEO departure was separate from growth concerns." These investors could no longer hold out hope— it was clear that Meredith's departure was connected to the growth concerns. Barclays explained that "[w]e are disappointed these activities around past M&A have such a significant impact on revenues ($17 mil. of headwinds in FY22), and we believe xMatters in particular could be holding growth back."

**ANSWER 184:**  Defendants Everbridge, Meredith, and Brickley admit that Barclays authored an analyst report titled "4Q21: EVBG Faces a Tough Road Ahead While Integrating Past Acquisitions" and dated February 25, 2022, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 184 of the Complaint.

185.  On March 17, 2022, activist investor Ancora, who beneficially owned approximately 4% of the Company's outstanding common stock, issued a letter calling for the sale of Everbridge. The Ancora letter explained that Ancora was first attracted to Everbridge because it is the market leader in CEM. Ancora praised the Company for its early vision and strategy, stating:

> Having pioneered the market for critical communications solutions, Everbridge should be commended for its early vision in helping protect people around the world by powering mass notification for both public sector and corporate entities. Building on this leadership position, Everbridge has successfully evolved from a single-product business into a diversified and robust platform selling a portfolio of solutions to address varied needs. In this context, the Company's early strategy of consolidating adjacent technologies via tuck-in acquisitions made enormous sense. Through this approach, Everbridge established a dominant CEM offering by creating a platform that obviates the need for customers to contract with multiple point solution providers. As the markets for managing response to risks converge, we believe Everbridge is in an excellent position to continue winning market share.

**ANSWER 185:**  Defendants Everbridge, Meredith, and Brickley admit that Ancora Holdings Group, LLC issued a letter to Everbridge's Board of Directors dated March 17, 2022, where it purported to own approximately 4% of the Company's outstanding common stock, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 185 of the Complaint.

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

91

186.   Ancora also touched on how the Company had misled investors about its growth by failing to disclose revenue contributions from its acquisitions. Ancora explained, "Everbridge does not disclose contributions from M&A, *seemingly obscuring that the Company has been paying higher prices to acquire growth*."

**ANSWER 186:**  Defendants Everbridge, Meredith, and Brickley admit that Ancora Holdings Group, LLC issued a letter to Everbridge's Board of Directors dated March 17, 2022, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 186 of the Complaint.

187.   With respect to the Company's failure to integrate its acquisitions, Ancora questioned why the Company had not previously realized the need to integrate its acquisitions. Ancora stated:

> While Everbridge has invested in developing some products organically, *the vast majority of product growth over the years has come through acquisitions.* On the Company's Q4 2021 earnings call, Everbridge called out the need to focus on integrating its acquired technologies. While this initiative makes sense, *we are puzzled by why Everbridge is only now recognizing the need to integrate products after so many years, when a well-disciplined management team and Board would understand the advantages to executing on this as soon as possible*.

**ANSWER 187:**  Defendants Everbridge, Meredith, and Brickley admit that Ancora Holdings Group, LLC issued a letter to Everbridge's Board of Directors dated March 17, 2022, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 187 of the Complaint.

188.   Ancora also explained how the Company's Board of Directors enriched Brickley and Irvin at the expense of shareholders:

> According to an 8-K filed on December 9, 2021, co-CEOs Brickley and Irvin were to receive $5 million worth of restricted stock units ("RSUs") "on or about January 1, 2022." Instead, the Board seemingly withheld these share grants for another 60 days, only issuing the grants on March 2, 2022. In our conversation with co-CEO Brickley, he explained this delay was due to the Company being restricted from issuing awards during a blackout period. However, this explanation appears suspicious, considering the Board was nonetheless able to issue RSUs to newly appointed director David Henshall in a Form 4 filing dated January 11, 2022. By delaying the co-CEO grants until after the Company issued disappointing results and guidance, it appears the Board only served to further dilute shareholders by requiring more share grants at lower prices. The optics of this information asymmetry are troubling and suggest the Board has chosen to prioritize enriching company executives at the expense of shareholders.

**ANSWER 188:** Defendants Everbridge, Meredith, and Brickley admit that Ancora Holdings Group, LLC issued a letter to Everbridge's Board of Directors dated March 17, 2022, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 188 of the Complaint.

## VII.  LOSS CAUSATION

189.   During the Class Period, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Everbridge common stock and operated as a fraud or deceit on Class Period purchasers of Everbridge common stock by failing to disclose and misrepresenting the adverse facts detailed herein.

**ANSWER 189:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 189 of the Complaint.

190.   Class members unknowingly and in reliance upon Defendants' materially false or misleading statements and/or omissions purchased Everbridge common stock

at artificially inflated prices. But for Defendants' misrepresentations, omissions, and fraudulent scheme, Lead Plaintiff and other Class members would not have purchased Everbridge stock at the artificially inflated prices at which it traded during the Class Period.

**ANSWER 190:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 190 of the Complaint.

191. The relevant truth regarding Defendants' fraud was revealed in two corrective disclosures and/or materializations of concealed risk that occurred on December 9, 2021 and February 24, 2022. During this period, Everbridge's stock fell precipitously as the artificial inflation caused by Defendants' unlawful conduct exited Everbridge's stock price. It was not until the final partial corrective disclosure and/or materialization of concealed risk on February 24, 2022, that the full truth was known to the market, such that there was no longer any artificial inflation in Everbridge's stock price attributable to the fraud.

**ANSWER 191:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 191 of the Complaint.

192. The declines in Everbridge's stock price during this period, including the declines summarized below, are directly attributable to the market absorbing information that corrected and/or reflected the materialization of risks concealed by the Defendants' material misrepresentations or omissions.

**ANSWER 192:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 192 of the Complaint.

193. As a result of their purchases of Everbridge common stock during the Class Period, Lead Plaintiff and the other Class members suffered economic loss (i.e., damages) under the federal securities laws. Defendants' materially false and misleading

statements had the intended effect and caused Everbridge common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $166.36 per share on August 30, 2021.

**ANSWER 193:**  Defendants Everbridge, Meredith, and Brickley refer the Court to the public record for the price of Everbridge common stock for the relevant period referenced in Paragraph 193 of the Complaint.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 193 of the Complaint.

194.  By concealing from investors, the adverse facts detailed herein, Defendants presented a misleading picture of Everbridge's business. As the truth about the Company and the extent of the fraud was revealed to the market, the price of Everbridge common stock fell significantly. These declines removed the inflation from the price of Everbridge common stock, causing real economic loss to investors who had purchased Everbridge common stock during the Class Period.

**ANSWER 194:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 194 of the Complaint.

195.   Each decline in the price of Everbridge common stock, as detailed below, was a direct and proximate result of the nature and extent of Defendants' fraudulent misrepresentations and/or omissions being revealed to investors and the market.

**ANSWER 195:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 195 of the Complaint.

196.   The economic loss, i.e., damages, suffered by Lead Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of Everbridge common stock and the subsequent decline in the value of Everbridge common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

**ANSWER 196:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 196 of the Complaint.

197. The market for Everbridge common stock was open, well-developed, and efficient at all relevant times, with average daily trading volume of approximately 583,652 shares during the Class Period. As a result of Defendants' misstatements and material omissions, as alleged herein, Everbridge's common stock traded at artificially inflated prices. Lead Plaintiff and other Class members purchased Everbridge common stock relying upon the integrity of the market relating to Everbridge common stock and suffered economic losses as a result thereof.

**ANSWER 197:** Defendants Everbridge, Meredith, and Brickley refer the Court to the public record for the average daily trading volume of Everbridge common stock for the relevant period referenced in Paragraph 197 of the Complaint. Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 197 of the Complaint.

198. The declines in Everbridge's common stock price on December 10, 2021 and February 25, 2022 were a direct and foreseeable result of the nature and extent of Defendants' prior misstatements and omissions being revealed to investors after the market close on December 9, 2022 and February 24, 2022. The timing and magnitude of Everbridge's stock price declines evidence the impact of Defendants' statements had on the Company's stock price during the Class Period and negate any inference that the loss suffered by Lead Plaintiff and other Class members were caused by changed market conditions or macroeconomic, industry, or Company- specific facts unrelated to Defendants' fraudulent conduct.

**ANSWER 198:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 198 of the Complaint.

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

96

**A.**     **December 9, 2021 – First Partial Corrective Disclosure/ Materialization of the Risk**

199.   On December 9, 2021, Defendants partially revealed the true state of its business through a press release that contained two announcements.

**ANSWER 199:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on December 9, 2021, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 199 of the Complaint.

200.   First, Everbridge announced that Meredith had resigned from his position as CEO and member of the Board of Directors. However, the Company provided no explanation for his decision. The Company announced that it would immediately establish an Office of the CEO and begin to transition leadership to Defendant Brickley and Irvin, Everbridge's Executive Vice President and Chief Revenue Officer, as interim Co-CEOs pending the appointment of a permanent CEO.

**ANSWER 200:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on December 9, 2021, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 200 of the Complaint.

201.   The second shocking announcement from the press release was the fact that Everbridge reduced revenue guidance for 2022 to 20%-23% growth, well below its historic forecasts of 30% plus revenue growth. However, the Company claimed that the two announcements were unrelated, stating that "Meredith's resignation [wa]s not related to any matter regarding the Company's financial condition [or] reported financial results."

**ANSWER 201:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on December 9, 2021, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 201 of the Complaint.

202.   As a direct and proximate result of this partial corrective disclosure, the price of Everbridge's common stock fell $52.37 per share, or more than 45.4%, to close at $63.00 per share on December 10, 2021.

**ANSWER 202:**  Defendants Everbridge, Meredith, and Brickley refer the Court to the public record for the price of Everbridge common stock for the relevant period referenced in Paragraph 202 of the Complaint.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 202 of the Complaint.

203.   Analysts were shocked by Meredith's "abrupt" resignation. *See* ¶ 170, *supra*.

**ANSWER 203:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 203 of the Complaint.

204.   Analysts were also shocked by the lower revenue guidance for 2022. *See* ¶ 171, *supra*.

**ANSWER 204:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 204 of the Complaint.

205.   However, the Company did not disclose the full truth regarding the Company's slowing revenue growth. The Company's December 9, 2021 press release misled investors by claiming that "Meredith's resignation [wa]s not related to any matter regarding the Company's financial condition [or] reported financial results."

This statement was false and misleading because it led investors to believe that Meredith's departure was not related to the Company's growth deceleration in 2022. In reality, Meredith's resignation was directly related to the Company's slowing growth, as under Meredith's leadership, the Company had failed to integrate acquired companies, causing a drop off in sales to such an extent that it could no longer be camouflaged with the revenues from additional acquisitions, leading to a significant growth deceleration in 2022.

**ANSWER 205:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on December 9, 2021, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 205 of the Complaint.

206. Indeed, analysts questioned whether Meredith's abrupt departure was related to the Company's slowing revenue growth. *See* ¶¶ 173-74, *supra*. For example, J.P. Morgan asked "[w]hy is the CEO really leaving" and "does the timing of the CEO departure actually indicate concerns about growth potential over the next year?"

**ANSWER 206:** Defendants Everbridge, Meredith, and Brickley admit that J.P. Morgan authored an analyst report titled "Evaluating the 45% Sell-Off and Reasons for CEO Departure" and dated December 13, 2021, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 206 of the Complaint.

207. As explained in ¶ 174, *supra*, J.P. Morgan noted that, "[w]hat we found is that [Meredith] is leaving a decent amount [of performance based compensation] on the table with his departure. If the decision was solely his to make, it does raise the question

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

99

on whether he was lacking confidence in earning the remaining performance-based incentive.”

**ANSWER 207:**    Defendants Everbridge, Meredith, and Brickley admit that J.P. Morgan authored an analyst report titled “Evaluating the 45% Sell-Off and Reasons for CEO Departure” and dated December 13, 2021, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 207 of the Complaint.

> **B.    February 24, 2022 – Final Corrective Disclosure/Materialization of the Risk**

208.    On February 24, 2022, Everbridge revealed the full truth to investors about its slowing organic growth. On that date, the Company issued a press release which once again lowered 2022 revenue guidance, this time forecasting full year revenue growth at 15% to 17%. The press release also contained a statement from Co-CEO Irvin, stating “[w]e are taking decisive actions to streamline, integrate and reduce complexity in our key offerings, which we expect to drive sustainable growth in the years ahead.”

**ANSWER 208:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on February 24, 2022, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 208 of the Complaint.

209.    On the same day, Everbridge held the February 24, 2022 Earnings Call, during which Everbridge officers further explained why these “decisive actions” were being taken, including disclosing for the first time material facts that were completely in opposition with Defendants’ representations throughout the Class Period.

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY’S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

100

**ANSWER 209:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 24, 2022, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 209 of the Complaint.

210. Irvin began by saying that "beginning in December," i.e., when Meredith resigned as CEO, "our management team, together with the Board, conducted a comprehensive review of our strategy and operations." The review, however, was apparently focused on matters that, during the Class Period, Defendants had discussed extensively with investors and analysts, independently and in answer to questions posed to them, and as to which they were already intimately familiar. For example, the review looked at "the number of acquisitions completed in 2020 and 2021" and how those acquisitions were integrated into Everbridge.

**ANSWER 210:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 24, 2022, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 210 of the Complaint.

211. Irvin stated that this review resulted in the conclusion that "certain acquired technologies" had created a "***barrier to upsell and cross-sell from increased complexity, and incomplete integrations*** and pushed out demand for travel-related solutions, as well as smaller deal size for international public warning wins that are having adverse impacts on business, our go-to-market strategy and sales organization." He further stated that "the number of acquisitions completed in 2020 and 2021," along with their products and businesses "have created ***incremental product line complexity that produce integration challenges and have complicated our go-to-market efforts***."

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

101

With incomplete integration, Irvin explained that it was "harder for . . . [Everbridge's] enterprise sales organization to execute on [its] land, adopt and expand sales strategies."

**ANSWER 211:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 24, 2022, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 211 of the Complaint.

212.   Defendant Brickley expanded upon these revelations, stating that the acquisitions in 2020 and 2021 "have created complexity for the business seen in product, back office and go-to-market headwinds *that are obstacles to sales growth*. Removing these headwinds by accelerating integration work will be our focus in the first half of this year." He further elaborated on that complexity caused by the flurry of acquisitions in 2020 and 2021, explaining that "we were well down a path of selling dozens of solutions that *were not always tightly integrated*. We were selling them to multiple buyers. And as Vernon said, *that was confusing to customers and to our sellers*."

**ANSWER 212:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 24, 2022, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 212 of the Complaint.

213.   As a result, Irvin explained that the Company was taking immediate action to "paus[e] material new M&A and instead prioritiz[e] development efforts to *focus on accelerating product integrations across our existing acquired assets*." In addition, Everbridge stated that it intends to "simplif[y] our product offerings, moving from several dozen individual product–point products to focus on 4 strategic CEM solutions."

In particular, the Company will "deemphasize certain smaller, nonstrategic products that don't fit cleanly into our CEM and public warning focus areas. ***While these products do deliver some standalone revenue, they are a distraction to our primary focus and negatively impact our sellers' overall productivity***."

**ANSWER 213:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 24, 2022, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 213 of the Complaint.

214.   On this news, Everbridge's common stock price fell an additional $15.68 per share, or approximately 34%, to close at $30.61 per share on February 25, 2022.

**ANSWER 214:**  Defendants Everbridge, Meredith, and Brickley refer the Court to the public record for the price of Everbridge common stock for the relevant period referenced in Paragraph 214 of the Complaint.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 214 of the Complaint.

215.   Analysts were once again shocked by Everbridge's lower guidance, which was substantially lower than the guidance provided on December 9, 2021. *See* ¶ 183, *supra*.

**ANSWER 215:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 215 of the Complaint.

216.   Moreover, investors finally understood that Meredith's departure was connected to the growth concerns. Barclays issued an analyst report on February 25, 2022, stating that Everbridge "guided FY22 revenues below expectations again, as we believe some investors were holding out hope that the CEO departure was separate from growth concerns." These investors could no longer hold out hope— it was clear that

Meredith's departure was connected to the growth concerns. Barclays explained that "[w]e are disappointed these activities around past M&A have such a significant impact on revenues ($17 mil. of headwinds in FY22), and we believe xMatters in particular could be holding growth back."

**ANSWER 216:**  Defendants Everbridge, Meredith, and Brickley admit that Barclays authored an analyst report titled "4Q21: EVBG Faces a Tough Road Ahead While Integrating Past Acquisitions" and dated February 25, 2022, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 216 of the Complaint.

217.   On March 17, 2022, activist investor Ancora, who beneficially owned approximately 4% of the Company's outstanding common stock, issued a letter calling for the sale of Everbridge. The Ancora letter explained that Ancora was first attracted to Everbridge because it is the market leader in CEM. Ancora praised the Company for its early vision and strategy, stating:

> Having pioneered the market for critical communications solutions, Everbridge should be commended for its early vision in helping protect people around the world by powering mass notification for both public sector and corporate entities. Building on this leadership position, Everbridge has successfully evolved from a single-product business into a diversified and robust platform selling a portfolio of solutions to address varied needs. In this context, the Company's early strategy of consolidating adjacent technologies via tuck-in acquisitions made enormous sense. Through this approach, Everbridge established a dominant CEM offering by creating a platform that obviates the need for customers to contract with multiple point solution providers. As the markets for managing response to risks converge, we believe Everbridge is in an excellent position to continue winning market share.

**ANSWER 217:**   Defendants Everbridge, Meredith, and Brickley admit that Ancora Holdings Group, LLC issued a letter to Everbridge's Board of Directors dated March 17, 2022, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 217 of the Complaint.

218.   Ancora also touched on how the Company had misled investors about its growth by failing to disclose revenue contributions from its acquisitions. Ancora explained, "Everbridge does not disclose contributions from M&A, *seemingly obscuring that the Company has been paying higher prices to acquire growth*."

**ANSWER 218:**   Defendants Everbridge, Meredith, and Brickley admit that Ancora Holdings Group, LLC issued a letter to Everbridge's Board of Directors dated March 17, 2022, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 218 of the Complaint.

219.   With respect to the Company's failure to integrate its acquisitions, Ancora questioned why the Company had not previously realized the need to integrate its acquisitions. Ancora stated:

> While Everbridge has invested in developing some products organically, *the vast majority of product growth over the years has come through acquisitions.* On the Company's Q4 2021 earnings call, Everbridge called out the need to focus on integrating its acquired technologies. While this initiative makes sense, *we are puzzled by why Everbridge is only now recognizing the need to integrate products after so many years, when a well-disciplined management team and Board would understand the advantages to executing on this as soon as possible*.

**ANSWER 219:**   Defendants Everbridge, Meredith, and Brickley admit that Ancora Holdings Group, LLC issued a letter to Everbridge's Board of Directors dated March

17, 2022, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 219 of the Complaint.

220. Ancora also explained how the Company's Board of Directors enriched Brickley and Irvin at the expense of shareholders:

> According to an 8-K filed on December 9, 2021, co-CEOs Brickley and Irvin were to receive $5 million worth of restricted stock units ("RSUs") "on or about January 1, 2022." Instead, the Board seemingly withheld these share grants for another 60 days, only issuing the grants on March 2, 2022. In our conversation with co-CEO Brickley, he explained this delay was due to the Company being restricted from issuing awards during a blackout period. However, this explanation appears suspicious, considering the Board was nonetheless able to issue RSUs to newly appointed director David Henshall in a Form 4 filing dated January 11, 2022. ***By delaying the co-CEO grants until after the Company issued disappointing results and guidance, it appears the Board only served to further dilute shareholders by requiring more share grants at lower prices. The optics of this information asymmetry are troubling and suggest the Board has chosen to prioritize enriching company executives at the expense of shareholders***.

**ANSWER 220:** Defendants Everbridge, Meredith, and Brickley admit that Ancora Holdings Group, LLC issued a letter to Everbridge's Board of Directors dated March 17, 2022, and refer the Court to that document for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 220 of the Complaint.

## VIII. ADDITIONAL INDICIA OF SCIENTER

221. Defendants were active and culpable participants in the fraud, as evidenced by their knowing and reckless issuance and/or ultimate authority over Everbridge's and their materially false or misleading statements and omissions. The Individual Defendants acted with scienter in that they knew or recklessly disregarded that the

public statements more specifically set forth in § V, *infra*, were materially false or misleading when made, and knowingly or recklessly participated or acquiesced in the issuance or dissemination of such statements as primary violator of the federal securities laws. In addition to the specific facts alleged above, Defendants' scienter is further evidenced by the following facts.

**ANSWER 221:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 221 of the Complaint.

> **A.    Core Operations Allegations: Everbridge's CEM Platform Was Critical to the Company's Growth Plan and Integrating the Acquired Companies was Necessary for CEM's Success**

222.    The Individual Defendants' knowledge of the integration problems can be inferred from the fact that the Company's CEM suite—which Defendants consistently touted as a market leader because it was the only "fully integrated" CEM—was critically important to the Company's growth strategy moving forward. *See* § IV.A, *supra*. During the Class Period, the Company claimed that its TAM was approximately $41 billion, and that CEM's TAM was approximately $25.9 billion, meaning CEM represented ***63% of the Company's potential revenue and growth***. Because the CEM suite was so important to the Company's future growth, Defendants knew or were reckless in not knowing that they did not properly integrate the Class Period acquisitions into Everbridge's CEM suite.

**ANSWER 222:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on March 23, 2020, attaching the meeting presentation from the Company's Analyst Day 2020 and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 222 of the Complaint.

223.    Defendants also knew or were reckless in not knowing about the xMatters integration in particular problems because xMatters was Everbridge's largest acquisition ever and critical to the Company's CEM platform moving forward. The Company acquired xMatters' outstanding stock for a total consideration of $242.6 million. The previous year, 2020, the Company's total revenue was only $271.1 million. Thus, the xMatters acquisition cost the Company nearly as much as the Company's entire 2020 revenue.

**ANSWER 223:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge purchased all of the issued and outstanding shares of stock of xMatters for a base consideration of $242.6 million.  Defendants Everbridge, Meredith, and Brickley further admit that Everbridge generated revenue of $271.1 million in 2020.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 223 of the Complaint.

224.    The xMatters acquisition was also critical to the Company's CEM. Defendants claimed that Everbridge "acquired xMatters for its service reliability platforms ***to enhance the Company's CEM suite of solutions*** as well as market penetration and customer reach." Thus, Defendant knew or should have known about the challenges the Company faced in integrating xMatters into Everbridge's CEM suite. As described above in ¶¶ 115-123, multiple former employees described the integration a disaster and detailed integration problems.

**ANSWER 224:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 10-Q with the SEC on August 9, 2021 containing the language quoted in Paragraph 224 and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 224 of the Complaint.

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

108

225. Further evidence that Defendants knew of the significant integration problems is the fact that most of xMatters' salespeople left after the acquisition, which caused a "dismal" third quarter from an xMatters perspective. See ¶¶ 115-123, *supra*. Defendants knew or should have known about the "dismal" third quarter 2021 because they had access to the Company's Leadership Dashboard.

**ANSWER 225:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 225 of the Complaint.

226. Defendants themselves admitted that they closely monitored the Company's upselling and cross-selling. For example, on January 14, 2021, Meredith and Brickley participated in the Needham Virtual Growth Conference (the "January 14, 2021 Conference"). During that conference, an analyst asked Meredith and Brickley about the average number of products customers buy from Everbridge. Brickley responded:

> No, we've been talking a lot about it internally. And with COVID, we've really had an opportunity to focus on upsell with our customers because they've been using – our existing base has been using us more and more and more. They've been buying more products, more contacts, more usage. And so we've been learning a lot during 2020. And as we look at our penetration of the Fortune 1000, and it's only about 35%, but half of that 35% is just mass notification.

> I mean we think of that as a huge opportunity. And so we'll have more intentional focus on that existing base to sell more products in. It's a huge uplift per product for us. So that's going to be more and more intentional for us. ***And we'll be tracking internally, certainly, watching the products per customer go up.*** In particular, for that base. We have to – we want to grow efficiently. We can't spray and pray and try to do everything under the sun at once. But we've got these – we've got this penetration of the Fortune 1000. We think they should all be CEM customers.

---

**ANSWER 226:**   Defendants Everbridge, Meredith, and Brickley admit that the Needham Virtual Growth Conference occurred on January 14, 2021, and refer the Court to the transcript of that conference for a complete and accurate statement of its contents. Defendants Everbridge, Meredith, and Brickley further admit that Meredith and Brickley participated in the January 14, 2021 Conference.   Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 226 of the Complaint.

227.   Similarly, on March 2, 2021, Meredith explained that "we have an internal metric around what we call growth bookings, which is basically cross sell, upsell. And we really consistently beat our internal growth target – growth bookings targets every quarter last year."

**ANSWER 227:**   Defendants Everbridge, Meredith, and Brickley admit that the Raymond James Institutional Investor Conference occurred on March 2, 2021, and refer the Court to the transcript of that conference, which contains the language quoted in Paragraph 227, for a complete and accurate statement of its contents.   Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 227 of the Complaint.

228.   Therefore, in 2021, both Meredith and Brickley monitored the Company's sales and thus knew or should have known of the dismal third quarter from an xMatters perspective, which was caused by significant loss of talented xMatters salespeople.

**ANSWER 228:**   Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 228 of the Complaint.

**B.    The Abrupt Departure of Meredith Supports Scienter**

229.   The timing and circumstances of the resignation of Meredith, the key executive responsible for overseeing the numerous acquisitions at issue in this case, is

highly suspicious. The fact that this resignation is connected to the alleged corrective disclosures of the Company's fraud further supports that inference.

**ANSWER 229:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 229 of the Complaint.

230.   Specifically, on December 9, 2021, the Company announced that Meredith had resigned as CEO *without any succession plan in place*, prompting the Company to temporarily appoint Brickley and Irvin as Co-CEO while the Company searched for a replacement CEO. Adding to this suspicious departure is the fact that Meredith left on the table approximately one-third of the restricted stock units that were awarded to him that remained unvested, and approximately 55% of the remaining unvested performance-based compensation. As J.P. Morgan observed, "[i]f the decision was solely his to make, it does raise the question on whether he was lacking confidence in earning the remaining performance-based incentive."

**ANSWER 230:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on December 9, 2021, with a press release furnished as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Defendants Everbridge, Meredith, and Brickley further admit that J.P. Morgan authored an analyst report titled "Evaluating the 45% Sell-Off and Reasons for CEO Departure" and dated December 13, 2021, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 230 of the Complaint.

231.   As discussed above, Meredith's departure, which was announced on the same day the Company reduced 2022 revenue guidance to a historically low figure, was highly suspicious and adds to a strong inference of scienter.

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

111

**ANSWER 231:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 231 of the Complaint.

232.   This inference is even stronger based on the final corrective disclosure on February 24, 2022, when the Company revealed that after Meredith's departure, management conducted a thorough review of the Company's strategy under Meredith, and concluded the numerous acquisitions created integration challenges and created obstacles to the Company's sales growth. As a result, the Company was pausing all new M&A to focus on integrating the previously acquired technologies. At this point, it was clear that Meredith's departure was connected to the Company's growth concerns, which further adds to a strong inference of scienter.

**ANSWER 232:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on February 24, 2022, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 232 of the Complaint.

### C.   Defendants' Statements Themselves Support Scienter

233.   As discussed above, the Individual Defendants continuously touted the Company's revenue growth throughout the Class Period, claiming it was mostly organic and the result of legitimate and lawful factors such as "continued strong performance."

**ANSWER 233:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 233 of the Complaint.

234.   Similarly, Defendants continuously dispelled investor concerns about the revenue contribution from xMatters. For example, during the Company's May 10, 2021 earnings call, multiple analysts asked Brickley for an update on the xMatters revenue contribution numbers. However, Brickley refused to provide an update. *See* ¶¶ 94-97,

DEFENDANTS EVERBRIDGE, MEREDITH, AND BRICKLEY'S ANSWER TO THE OPERATIVE AMENDED COMPLAINT – CASE NO. 2:22-CV-02249-FWS-RAO

112

*supra*. Similarly, during the Company's August 9, 2021 earnings call, an analyst asked for an update on the $9-11 million in revenue that Defendants previously guided for xMatters, but Meredith refused to give an update and instead touted the integration of xMatters and the Company's strong sales. *See ¶¶ 98-99. supra.* Meredith's refusal to provide an update, despite several questions from analysts, further supports a strong inference of scienter.

**ANSWER 234:** Defendants Everbridge, Meredith, and Brickley admit that Everbridge held an earnings call on May 10, 2021, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents. Defendants Everbridge, Meredith, and Brickley further admit that Everbridge held an earnings call on August 9, 2021, and refer the Court to the transcript of that earnings call for a complete and accurate statement of its contents. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 234 of the Complaint.

235. By dispelling investor concerns about the Company's organic revenue growth, Defendants either: (1) knew that the Company was using acquired revenue to hide slowing organic revenue growth, and that this strategy was unsustainable as it relied on acquiring companies without properly integrating them into Everbridge; or (2) were reckless in not knowing that this was the case. Under either scenario, there is a strong inference that Defendants made these statements with scienter.

**ANSWER 235:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 235 of the Complaint.

### D.    Meredith's Employment Agreement Further Supports Scienter

236. The structure of Meredith's employment agreement further supports a strong inference of scienter. As part of Meredith's employment agreement, the Company granted Meredith 100,000 performance stock units (the "PSU Grant"), with

up to 62.5% of the PSU Grant becoming eligible to vest on September 30, 2021, based on the compound annual growth rate ("CAGR") achieved by the Company during the eight fiscal quarters preceding such date, and up to an additional 62.5% of the PSU Grant becoming eligible to vest on September 30, 2022, based on the CAGR achieved during the 12 fiscal quarters preceding such date. The vesting of the PSU Grant was subject to Meredith's continued service to the Company through each applicable vesting date or event.

**ANSWER 236:**  Defendants Everbridge, Meredith, and Brickley admit that Everbridge filed a Form 8-K with the SEC on June 18, 2019, with Meredith's employment agreement attached as an exhibit, and refer the Court to that document for a complete and accurate statement of its contents.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 236 of the Complaint.

237.   Therefore, Meredith's employment agreement included bonuses based on the Company's growth rate.

**ANSWER 237:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 237 of the Complaint.

**E.    Statements by Former Everbridge Employees Corroborate that Defendants Knowingly Downplayed the Revenue Contribution from xMatters to Mask Slowing Organic Growth**

238.   The CWs make clear that it was not simply a mistake, or a reasonable estimate based on available data, but that the Defendants knew that xMatters would contribute much more than $9-11 million in revenue for the rest of 2021 and purposefully downplayed xMatters' revenue contribution to mask the Company's slowing organic growth and cover up for its overall performance.

**ANSWER 238:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the

individuals identified as the CWs and whether the CWs made the statements or held the opinions described in Paragraph 238.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 238 of the Complaint.

239.   Both Meredith and Brickley were made aware of the discrepancy in xMatters' revenue contribution numbers. Specifically, CW 1 recalled that the projected revenue figures relayed to Wall Street for xMatters were an additional approximately $11 million for Everbridge in 2021. According to CW 1, however, realistically, the forecasts were presenting figures closer to *$20 - $25 million*. CW 1 added that based on the actual forecasts, it was "clear" that xMatters was not necessarily going to grow, which was contrary to what was being presented to the public. According to CW 1, she raised concerns regarding these discrepancies to her immediate superior, which were then passed on to Meredith and Brickley. CW 1 continued to say that she expressed concerns *directly* to Meredith and Brickley as well, in the form of presentations and e-mails regarding the deal. CW 1 explained that she sent e-mails with Meredith and Brickley in the lead up to the acquisition. CW 1 added that she was not the only person to express concerns about the xMatters acquisition. According to CW 1, the rationale Meredith provided was that the discrepancy in figures was to "buffer" the declines in Everbridge's organic revenue.

**ANSWER 239:**  Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the identity of the individual identified as CW 1 and whether CW 1 made the statements or held the opinions described in Paragraph 239.  Defendants Everbridge, Meredith, and Brickley deny the remaining allegations in Paragraph 239 of the Complaint.

## IX.    CONTROL PERSON ALLEGATIONS

240.   The Individual Defendants, by virtue of their high-level and controlling positions at Everbridge, directly participated in the management of the Company, were

directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information about the Company, its business, operations, internal controls, growth, financial statements, and financial condition as alleged herein. As set forth below, the materially misstated information conveyed to the public was the result of the collective actions of these individuals.

**ANSWER 240:**    The allegations in Paragraph 240 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 240 of the Complaint.

241.   Defendants Meredith, Brickley, and Ellertson, as senior executives and directors of Everbridge—a publicly-held company whose common stock was, and is, traded on the NASDAQ, and governed by the federal securities laws—had a duty to disseminate prompt, accurate, and truthful information with respect to the Company's business, operations, internal controls, growth, financial statements, and financial condition, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Everbridge's publicly traded common stock would be based on accurate information. Each of the Individual Defendants violated these requirements and obligations during the Class Period.

**ANSWER 241:**    The allegations in Paragraph 241 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley admit that, during the Class Period, Meredith and Brickley were senior executives of Everbridge. Defendants Everbridge, Meredith, and Brickley further admit that, during the Class Period, Everbridge was a publicly-held company whose common stock was traded on the NASDAQ.  Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 241 of the Complaint.

242.    Defendants Meredith, Brickley, and Ellertson because of their positions of control and authority as senior executive officers and directors of Everbridge, were able to and did control the content of Everbridge's SEC filings, press releases, and other public statements issued by or on behalf of Everbridge during the Class Period. Each would have been provided with copies of the statements made in the SEC filings at issue in this action before they were issued to the public and would have had the ability to prevent their issuance or cause them to be corrected. Accordingly, the Individual Defendants were responsible for the accuracy of the public statements alleged herein.

**ANSWER 242:**    The allegations in Paragraph 242 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 242 of the Complaint.

243.    The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Everbridge common stock by disseminating materially false and misleading information and concealing and omitting material adverse facts. The scheme deceived the investing public regarding Everbridge's business, operations, and management, and the intrinsic value of Everbridge's common stock, and caused Lead Plaintiff and members of the Class to purchase Everbridge common stock at artificially inflated prices.

**ANSWER 243:**    The allegations in Paragraph 243 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 243 of the Complaint.

## X.    CLASS ACTION ALLEGATIONS

244.    Lead Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities who or which

purchased or otherwise acquired the publicly traded common stock of Everbridge during the Class Period and were damaged thereby. Excluded from the Class are: (i) Defendants; (ii) members of the immediate family of any Defendant who is an individual; (iii) any person who was an officer or director of Everbridge during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) Everbridge's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person.

**ANSWER 244:**    The allegations in Paragraph 244 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley admit that the Complaint purports to be a class action as described in Paragraph 244 of the Complaint. Except as admitted, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 244 of the Complaint.

245.    The members of the Class are so numerous that joinder of all members is impracticable. According to public reports file with the SEC, during the Class Period, Everbridge had over 34 million shares of common stock and was actively trade on the NASDAQ under the ticker symbol "EVBG." While the exact number of Class members is unknown to Lead Plaintiff at this time, and such number can only be ascertained through appropriate discovery, Lead Plaintiff believes that the proposed Class has thousands of members and is widely dispersed geographically. Record owners and other members of the Class may be identified from records maintained by Everbridge and/or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

**ANSWER 245:**    The allegations in Paragraph 245 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley refer the Court to the public record for the quantity of Everbridge common stock for the relevant period referenced in Paragraph 245 of the Complaint.  Defendants Everbridge, Meredith, and Brickley deny the allegations in the first sentence of Paragraph 245. Defendants Everbridge, Meredith, and Brickley state that they lack knowledge and information sufficient to form a belief regarding the remaining allegations in Paragraph 245 of the Complaint.

246.    Lead Plaintiff's claims are typical of the claims of the members of the Class. All members of the Class were similarly affected by Defendants' allegedly wrongful conduct in violation of the Exchange Act as complained of herein.

**ANSWER 246:**    The allegations in Paragraph 246 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 246 of the Complaint.

247.    Lead Plaintiff will fairly and adequately protect the interests of the members of the Class. Lead Plaintiff has retained counsel competent and experienced in class and securities litigation.

**ANSWER 247:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 247 of the Complaint.

248.    Common questions of law and fact exist as to all members of the Class and predominate over questions solely affecting individual members of the Class. The questions of law and fact common to the Class include, but are not necessarily limited to, the following:

    (a)    Whether Defendants violated the federal securities laws by their acts and omissions alleged herein;

    (b)    Whether the statements Defendants made to the investing public during the Class Period contained material misrepresentations or omitted to state material information;

    (c)    Whether, and to what extent, the market price of Everbridge common stock was artificially inflated during the Class Period because of the material misstatements alleged herein;

    (d)    Whether Defendants acted with the requisite level of scienter;

    (e)    Whether the Individual Defendants were controlling persons of Everbridge; and

    (f)    Whether the members of the Class have sustained damages as a result of the conduct complained of herein, and if so, the proper measure of such damages.

**ANSWER 248:**    The allegations in Paragraph 248 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 248 of the Complaint.

249.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, among other things, joinder of all members of the Class is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**ANSWER 249:**    The allegations in Paragraph 249 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 249 of the Complaint.

## XI.    APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

250.   To the extent that Lead Plaintiff alleges that Defendants made affirmative misstatements, Lead Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    The omission and misrepresentations were material;

(c)    The Company's securities traded in an efficient market;

(d)    The misrepresentations alleged would tend to induce a reasonable investor misjudge the value of the Company's securities;

(e)    Lead Plaintiff and other members of the Class purchased Everbridge's securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts;

(f)    Everbridge's common stock met the requirements for listing and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(g)    As a regulated issuer, Everbridge filed periodic public reports with the SEC and NASDAQ;

      (h)    Everbridge regularly communicated with public investors via established market mechanisms, including regular dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

      (i)    Everbridge was followed by numerous securities analysts employed by major brokerage firms including, but not limited to, William Blair & Co., Bank of America Global Research, Wells Fargo Securities, LLC, Stephens Inc., Truist Securities, Cannaccord Genuity, and Barclays, all of which wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace.

**ANSWER 250:**   The allegations in Paragraph 250 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 250 of the Complaint.

251.   As a result of the foregoing, the market for Everbridge common stock promptly digested current information regarding Everbridge from publicly available sources and reflected such information in Everbridge's common stock price(s). Under these circumstances, all purchasers of Everbridge common stock during the Class Period suffered similar injury through their purchase of Everbridge common stock at artificially inflated prices and the presumption of reliance applies.

**ANSWER 251:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 251 of the Complaint.

252.  The material misrepresentations and omissions alleged herein would induce a reasonable investor to misjudge the value of Everbridge's common stock.

**ANSWER 252:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 252 of the Complaint.

253.  Without knowledge of the misrepresented or omitted material facts alleged herein, Lead Plaintiff and other members of the Class purchased shares of Everbridge common stock between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed.

**ANSWER 253:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 253 of the Complaint.

254.  To the extent that the Defendants concealed or improperly failed to disclose material facts with respect to Everbridge's business, Lead Plaintiff is entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972).

**ANSWER 254:**  The allegations in Paragraph 254 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 254 of the Complaint.

## XII.  NO SAFE HARBOR

255.  The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the materially false and misleading statements alleged in this pleading. First, many of the statements alleged to be false and misleading relate to historical facts or existing conditions. Second, to the extent any of the allegedly false and misleading statements may be characterized as forward-looking, they were not adequately identified as "forward- looking" statements when made.

Third, any purported forward-looking statements were not accompanied by meaningful cautionary language because, among other reasons, the risks that Defendants warned of had already come to pass.

**ANSWER 255:**   The allegations in Paragraph 256 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 255 of the Complaint.

256.   To the extent any statements alleged to be false and misleading may be construed to discuss future intent, they are mixed statements of present or historical facts and future intent and are not entitled to PSLRA safe-harbor protection—at least with respect to the part of the statement that refers to the present.

**ANSWER 256:**   The allegations in Paragraph 256 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 256 of the Complaint.

257.   In addition, the PSLRA imposes an additional burden on oral forward-looking statements, requiring Defendants to include a cautionary statement that the particular oral statement is a forward-looking statement, and that "actual results might differ materially from those projected in the forward-looking statement." 15 U.S.C. § 78u-5(c)(2)(A)(i)-(ii). Defendants failed to both identify certain oral statements as forward-looking and include the cautionary language required by the PSLRA.

**ANSWER 257:**   The allegations in Paragraph 257 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 257 of the Complaint.

258. Furthermore, Defendants did not accompany their statements with meaningful cautionary language identifying important factors that could cause actual results to differ materially from any results projected. To the extent Defendants included any cautionary language, that language was not meaningful because, among other reasons, any potential risks identified by Defendants had already passed or manifested. As detailed herein, Defendants failed to disclose to the market that, throughout the Class Period, Defendants did not properly integrate them into Everbridge, thus leading to a drop off in sales to such an extent that it could no longer be camouflaged with the revenues from additional acquisitions.

**ANSWER 258:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 258 of the Complaint.

259. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, or the forward- looking statement was authorized or approved by an executive officer of Everbridge who knew that the statement was false when made.

**ANSWER 259:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 259 of the Complaint.

## XIII. CAUSES OF ACTION

### COUNT I

For Violations of Section 10(b) of the Exchange Act and

SEC Rule 10b-5 Promulgated Thereunder Against Everbridge and the Individual

Defendants

260.   Lead Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

**ANSWER 260:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 260 of the Complaint, and incorporate herein by reference each response set forth above.

261.   As alleged herein, throughout the Class Period, Everbridge and the Individual Defendants, individually and in concert, directly and indirectly, by the use of the means or instrumentalities of interstate commerce, the mails and/or the facilities of national securities exchanges, made untrue statements of material fact and/or omitted to state material facts necessary to make their statements not misleading and carried out a plan, scheme and course of conduct, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. Everbridge and the Individual Defendants intended to and did, as alleged herein, (i) deceive the investing public, including Lead Plaintiff and members of the Class; (ii) artificially inflate and maintain the price of Everbridge common stock; and (iii) cause Lead Plaintiff and members of the Class to purchase Everbridge common stock at artificially inflated prices.

**ANSWER 261:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 261 of the Complaint.

262.   The Individual Defendants were individually and collectively responsible for making the false and misleading statements and omissions alleged herein and having engaged in a plan, scheme, and course of conduct designed to deceive Lead Plaintiff

and members of the Class, by virtue of having made public statements and prepared, approved, signed, and/or disseminated documents that contained untrue statements of material fact and/or omitted facts necessary to make the statements therein not misleading.

**ANSWER 262:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 262 of the Complaint.

263. As set forth above, Everbridge and the Individual Defendants made their false and misleading statements and omissions and engaged in the fraudulent activity described herein knowingly and intentionally, or in such a deliberately reckless manner as to constitute willful deceit and fraud upon Lead Plaintiff and the other members of the Class who purchased Everbridge common stock during the Class Period.

**ANSWER 263:** Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 263 of the Complaint.

264. In ignorance of the false and misleading nature of Everbridge's and the Individual Defendants' statements and omissions, and relying directly or indirectly on those statements or upon the integrity of the market price for Everbridge common stock, Lead Plaintiff and other members of the Class purchased Everbridge common stock at artificially inflated prices during the Class Period. But for the fraud, Lead Plaintiff and members of the Class would not have purchased Everbridge common stock at such artificially inflated prices. As set forth herein, when the true facts were subsequently disclosed, the price of Everbridge common stock declined precipitously, and Lead Plaintiff and members of the Class were damaged and harmed as a direct and proximate result of their purchases of Everbridge common stock at artificially inflated priced and the subsequent decline in the price of that security when the truth was disclosed.

**ANSWER 264:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 264 of the Complaint.

265.   By virtue of the foregoing, Everbridge and the Individual Defendants are liable to Lead Plaintiff and members of the Class for violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**ANSWER 265:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 265 of the Complaint.

## COUNT II

### For Violation of Section 20(a) of the Exchange Act

### Against the Individual Defendants

266.   Lead Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

**ANSWER 266:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 266 of the Complaint, and incorporate herein by reference each response set forth above.

267.   This Count is asserted pursuant to Section 20(a) of the Exchange Act against the Individual Defendants.

**ANSWER 267:**    The allegations in Paragraph 267 of the Complaint contain characterizations or conclusions of law that do not require a response.  To the extent a response is required, Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 267 of the Complaint.

268.   The Individual Defendants had control over Everbridge and made the materially false and misleading statements and omissions on behalf of Everbridge within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue

of their executive leadership positions, as alleged above, the Individual Defendants had the power to influence and control and did, directly or indirectly, influence and control the decision making of the Company, including the content and dissemination of the various statements which Lead Plaintiff contends were false and misleading. The Individual Defendants were provided with or had unlimited access to the Company's internal reports, press releases, public filings, and other statements alleged by Lead Plaintiff to be misleading prior to or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause them to be corrected.

**ANSWER 268:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 268 of the Complaint.

269.   In particular, the Individual Defendants had direct involvement in and responsibility over the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein.

**ANSWER 269:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 269 of the Complaint.

270.   By virtue of such wrongful conduct, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' wrongful conduct, Lead Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's shares during the Class Period.

**ANSWER 270:**  Defendants Everbridge, Meredith, and Brickley deny the allegations in Paragraph 270 of the Complaint.

**AFFIRMATIVE AND OTHER DEFENSES**

Defendants Everbridge, Meredith, and Brickley assert the following affirmative and other defenses.  Except where expressly noted, each defense is asserted by each of Defendants Everbridge, Meredith, and Brickley against each of Plaintiffs' claims.  In asserting these defenses, Defendants Everbridge, Meredith, and Brickley do not assume the burden of establishing any fact or proposition where that burden is properly imposed on Plaintiffs.  Defendants Everbridge, Meredith, and Brickley expressly reserve the right to supplement, amend, or delete any or all of the following defenses, as warranted by discovery or other investigation, or as justice may require.  Defendants Everbridge, Meredith, and Brickley reserve all separate or affirmative defenses or rights that they may have against the putative class and its members.  It is not necessary at this time for Defendants Everbridge, Meredith, and Brickley to delineate such defenses because no class has been certified and the putative class members are not parties to the litigation.

First Defense

The Complaint, and each and every claim stated therein, fails to state a claim upon which relief can be granted.

Second Defense

The action is barred, in whole or in part, because Plaintiffs have not suffered any injury or damage or, in the alternative, because any injury or damage that Plaintiffs claim to have sustained was not caused by Defendants Everbridge, Meredith, and Brickley.

Third Defense

Defendants Everbridge, Meredith, and Brickley are not liable because they did not make a false or misleading statement of material fact or omission of material fact, and complied with all applicable disclosure requirements.

Fourth Defense

Plaintiffs' claims are barred, in whole or in part, because the alleged misstatements and omissions alleged in the Complaint were forward-looking and satisfied the safe harbor provisions of the Private Securities Litigation Reform Act of 1995, federal securities laws, or the "bespeaks caution" doctrine.

Fifth Defense

Defendants Everbridge, Meredith, and Brickley are not liable because Plaintiffs' claims are barred, in whole or in part, because, assuming there was any untruth or omission as alleged in the Complaint (and Defendants Everbridge, Meredith, and Brickley deny there was any), Plaintiffs knew or should have known of such untruth or omission.

Sixth Defense

Defendants Everbridge, Meredith, and Brickley are not liable because Plaintiffs' claims are barred, in whole or in part, because Plaintiffs purchased Everbridge securities with actual or constructive knowledge of the risks involved in an investment in Everbridge securities and thus voluntarily assumed the risk of the losses alleged in the Complaint.

Seventh Defense

Defendants Everbridge, Meredith, and Brickley are not liable because they acted in good faith and in reasonable reliance upon the work, opinions, information, representations, and advice of others, upon whom Defendants Everbridge, Meredith, and Brickley were entitled to rely.

## Eighth Defense

Defendants Everbridge, Meredith, and Brickley are not liable because they did not act with scienter and did not act knowingly or recklessly as to any alleged misstatement or omission.

## Ninth Defense

Defendants Everbridge, Meredith, and Brickley are not liable because they, at all times, and with respect to all matters contained herein, acted in good faith, including by acting in conformity with the law and rules and regulations of the SEC, exercised reasonable care, and did not know, and in the exercise of reasonable care could not have known, of the purported untruths, misstatements, or omissions alleged in the Complaint.

## Tenth Defense

This action may not properly be maintained as a class action.

## Eleventh Defense

Plaintiffs' claims are barred, in whole or in part, because any allegedly untrue statements of material fact, omissions of material fact, misleading statements, or other actions allegedly taken by Defendants Everbridge, Meredith, and Brickley were not material, or were not material to the investment decisions of Plaintiffs.

## Twelfth Defense

Plaintiffs' claims are barred, in whole or in part, because the purported misrepresentations and omissions alleged in the Complaint did not affect the market price of Everbridge securities.

## Thirteenth Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not pleaded, and cannot prove, loss causation, or have not pleaded, and cannot prove, that Plaintiffs suffered damages that can be attributed or causally related to the alleged misrepresentations or omissions. Without limiting the foregoing, Plaintiffs' claims are barred, in whole or in part, because any depreciation in the market price of Everbridge

stock resulted from factors other than the purported misrepresentations and omissions alleged in the Complaint.

### Fourteenth Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs were not entitled to, and did not reasonably or justifiably rely, or did not in fact rely, on any of the statements or omissions alleged in the Complaint in deciding to purchase Everbridge securities.

### Fifteenth Defense

Plaintiffs' claims are barred, in whole or in part, because the "fraud on the market" theory of reliance is unavailable, and they will be otherwise unable to establish that they relied upon the purported misstatements and omissions alleged in the Complaint.

### Sixteenth Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs will be unable to establish that the purported misstatements and omissions alleged in the Complaint were the cause of Plaintiffs' decisions to purchase Everbridge securities on the terms of their investments.

### Seventeenth Defense

Plaintiffs' claims are barred, in whole or in part, because the losses, if any, sustained by Plaintiffs were not actually or proximately caused by, and resulted from causes other than, the acts and occurrences alleged in the Complaint.

### Eighteenth Defense

Plaintiffs' claims are barred, in whole or in part, because the injuries alleged by Plaintiffs, to the extent any exist, were caused, in whole or in part, by intervening or superseding causes unrelated to the alleged conduct of Defendants Everbridge, Meredith, and Brickley, by the conduct of third parties for whom Defendants Everbridge, Meredith, and Brickley were not responsible, or through forces in the

marketplace over which Defendants Everbridge, Meredith, and Brickley have no control.

Nineteenth Defense

Defendants Everbridge, Meredith, and Brickley are not liable because, to the extent that Plaintiffs have been damaged, if at all, their failure to mitigate their damages bars recovery.

Twentieth Defense

Any damage, loss or liability sustained by Plaintiffs must be reduced or eliminated in proportion to the wrongful or negligent conduct of entities or individuals other than Defendants Everbridge, Meredith, and Brickley under the principles of equitable allocation, recoupment, set-off, proportionate responsibility, and comparative fault, including under the proportionate liability provisions of the federal securities laws.

Twenty-First Defense

To the extent Plaintiffs suffered damages, if at all, such damages must be offset by Plaintiffs' gains, including subsequent gains in Everbridge's stock price, including gains arising after the putative class periods.

Twenty-Second Defense

To the extent Plaintiffs suffered damages, if at all, such damages must be capped pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(e)(1), and the damages limitations of the Securities and Exchange Act of 1934.

Twenty-Third Defense

If and to the extent that Defendants Everbridge, Meredith, and Brickley are found to have made any false or misleading statements or omissions (which Defendants Everbridge, Meredith, and Brickley deny), the actual facts which Plaintiffs allege to have been misrepresented or omitted were in fact known to and entered the securities market through credible sources. Plaintiffs are not entitled to any recovery from

Defendants Everbridge, Meredith, and Brickley because the substance of the allegedly material information that Plaintiffs allege to have been omitted or misrepresented was in fact disclosed in the public disclosures of other parties and third parties, in Everbridge's own public filings and announcements, and from other sources that were otherwise publicly available or widely known to the market and to the investing community.

## Twenty-Fourth Defense

Defendants Meredith and Brickley are not liable because they did not participate in a violation of the Securities and Exchange Act or Rule 10b-5 promulgated thereunder, because they acted at all times in good faith and did not directly or indirectly induce the alleged wrongful act or acts nor were they culpable participants in any of the alleged wrongdoing.

## Twenty-Fifth Defense

Defendants Meredith and Brickley are not liable because they did not control, or have the ability to control, Everbridge or any other Defendant.

## Twenty-Sixth Defense

Defendants Everbridge, Meredith, and Brickley deny that Plaintiffs are entitled to recover attorneys' fees, costs, or expenses and, to the extent Plaintiffs seek injunctive relief, any such claim is barred because Plaintiffs have an adequate remedy at law.

## Twenty-Seventh Defense

Defendants Everbridge, Meredith, and Brickley are entitled to recover contribution from others for any liability they incur as a result of any of the purported misrepresentations, omissions, and conduct alleged in the claims against Defendants Everbridge, Meredith, and Brickley.

## Twenty-Eighth Defense

Plaintiffs' claims predicated on statements of opinion or belief fail because these statements were not objectively false when made, and because Defendants Everbridge,

Meredith, and Brickley honestly, and upon reasonable basis, believed them to be true at the time the alleged statements were made.

### Twenty-Ninth Defense

Plaintiffs' claims are barred, in whole or in part, under the doctrines of acquiescence, estoppel, res judicata, waiver, ratification, laches and other related doctrines and principles, or any one of them.

### Thirtieth Defense

Plaintiffs' claims are barred, in whole or in part, on the grounds that at all times alleged in the Complaint, Plaintiffs expressly or impliedly assented to, ratified, or concurred with the conduct alleged to be unlawful.

### Thirty-First Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs would have acquired Everbridge common stock even if, when acquired, Plaintiff had known of the allegedly untrue statements of material fact, omissions of material fact, misleading statements, or other wrongful conduct upon which Defendants' Everbridge, Meredith, and Brickley' purported liability rests.

### Thirty-Second Defense

Plaintiffs' claims are barred, in whole or in part, because, pursuant to Section 21D(f) of the Securities Exchange Act of 1934, Defendants Everbridge, Meredith, and Brickley are covered persons who did not knowingly commit a violation of the securities laws.

### Thirty-Third Defense

Plaintiffs' claims are barred, in whole or in part, because Defendants Everbridge, Meredith, and Brickley had no duty to disclose any facts allegedly not disclosed.

Thirty-Fourth Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs relied exclusively upon their own independent investigations, their own decisions, and the advice of their professional investment advisors.

Thirty-Fifth Defense

Plaintiffs' claims are barred, in whole or in part, because the damages sought are too speculative or remote.

Thirty-Sixth Defense

Plaintiffs' claims are barred, in whole or in part, because some or all of the purported misstatements or omissions alleged in the Complaint reflect or pertain to non-actionable statements of corporate optimism or puffery.

Thirty-Seventh Defense

Certain Defendants are not liable because they did not "make," "issue," or "speak" any of the alleged statements within the meaning of *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011). These Defendants neither had ultimate authority over the content of the alleged statements nor controlled their communication to the public.

DATED:  November 10, 2025

Respectfully submitted,

/s/ *Mark McKane*

**KIRKLAND & ELLIS LLP**
Nathaniel E. Haas (CA #324305)
2049 Century Park East, 37th Floor
Los Angeles, CA 90067
Telephone: (213) 680-8250
Fax: (213) 680-8500
nathaniel.haas@kirkland.com

Mark McKane (CA #230552)
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Fax: (415) 439-1500
mark.mckane@kirkland.com

Jordan D. Peterson (*pro hac vice*)
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Fax: (212) 446-4900
jordan.peterson@kirkland.com

Jules H. Cantor (*pro hac vice*)
333 W. Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Fax: (312) 862-2200
jules.cantor@kirkland.com

*Counsel for Defendants Everbridge, Inc., David Meredith, and Patrick Brickley*