SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Virginia F. Milstead (234578)
virginia.milstead@skadden.com
2000 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (213) 687-5000
Fax: (213) 687-5600
virginia.milstead@skadden.com

James R. Carroll (*pro hac vice*)
Michael S. Hines (*pro hac vice*)
Rene H. DuBois (*pro hac vice*)
500 Boylston Street
Boston, MA 02116
Telephone: (617) 573-4800
Fax: (617) 573-4822
james.carroll@skadden.com
michael.hines@skadden.com
rene.dubois@skadden.com

*Counsel for Defendant*
JAIME ELLERTSON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| SYLEBRA CAPITAL PARTNERS MASTER FUND LTD, SYLEBRA CAPITAL PARC MASTER FUND, AND SYLEBRA CAPITAL MENLO MASTER FUND, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> EVERBRIDGE, INC., DAVID MEREDITH, PATRICK BRICKLEY, and JAIME ELLERTSON, <br><br> Defendants. | CASE NO.: 2:22-cv-02249-FWS-RAO <br><br> **DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> **JUDGE: Hon. Fred W. Slaughter** <br> **CTRM: 10D (Santa Ana)** <br><br> Complaint Filed: April 4, 2022 <br> Second Amended Complaint Filed: October 15, 2025 |

Defendant Jaime Ellertson ("Defendant" or "Ellertson") hereby submits his answer to the operative Second Amended Complaint, dated October 15, 2025 (ECF No. 152, the "Complaint"), filed by plaintiffs Sylebra Capital Partners Master Fund Ltd, Sylebra Capital Parc Master Fund, and Sylebra Capital Menlo Master Fund (collectively, "Lead Plaintiff") as follows:

Ellertson denies all allegations unless expressly admitted herein. The first non-numbered paragraphs reflect Lead Plaintiff's characterization of its own allegations for which no response is required. To the extent a response is required, Ellertson denies those allegations, except states that Lead Plaintiff purports to bring this action as a putative securities class action on behalf of all persons and entities who purchased the publicly traded common stock of Everbridge, Inc. ("Everbridge"), between February 18, 2020, through February 24, 2022 (the "Class Period."). Ellertson denies that he has violated any law or that Lead Plaintiff has suffered any damages. To the extent any headings, footnotes or numbered paragraphs in the Complaint contain any factual allegations or legal conclusions, Ellertson denies those allegations or legal conclusions.

Ellertson expressly reserves the right to amend and supplement his answer and expressly reserves any and all defenses that may be available. Answers to each paragraph of the Complaint are made by Ellertson without waiving, and expressly reserving, all rights he may have to seek relief by appropriate motions directed to the allegations in the Complaint.

## I.     **NATURE OF THE ACTION**

**1.     This case is about Defendants' fraudulent misrepresentations, material omissions, and course of conduct surrounding Everbridge's nine acquisitions between 2019 and 2021. Specifically, Defendants used the *acquired revenue* from a target company to create the false appearance of *organic revenue* growth in the minds of the investors comprising the Class.**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

1.    The allegations in paragraph 1 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 1.

**2.    Moreover, throughout the Class Period, Everbridge and the Individual Defendants also consistently misled the investing public. In stark opposition to what Defendants knew (and in which they were actively engaging), however, they instead disseminated false and misleading statements and omissions of material fact in an attempt to cover up the significant problems Everbridge encountered as a result of Defendants' failure to integrate these acquisitions.**

2.    The allegations in paragraph 2 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 2.

**3.    Indeed, Defendants made materially false and misleading statements and omissions of material fact about the extent to which Everbridge was using and allocating the revenue obtained from an acquired company in order to disguise *stagnating organic revenue*. During the Class Period, Defendants lied to investors about how much *revenue Everbridge acquired* from xMatters, a $242.6 million acquisition of an IT service platform that, *if properly integrated*, would allow Everbridge more effectively to sell its single platform suite of products, which in turn, would enhance the Company's long-term growth.**

3.    The allegations in paragraph 3 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 3 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 3, except he admits that Everbridge purchased all of the issued and outstanding shares of stock of xMatters for a base consideration of $242.6 million.

2

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**4.      Although Defendants knew xMatters would contribute $20-25 million to Everbridge's 2021 revenue, they instead told investors that xMatters would contribute only $9-11 million. According to Confidential Witness ("CW") 1, who was a member of the finance team, Global Financial Planning and Analysis and who worked at Everbridge during the xMatters acquisition,** *the rationale Meredith provided was that the discrepancy in figures was to "buffer" the declines in Everbridge's organic revenue.* **Defendants' falsehoods led investors to believe that the Company's organic revenue was growing more than it actually was.**

4.      The allegations in paragraph 4 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the alleged statements of CW 1. Ellertson otherwise denies the allegations in paragraph 4.

**5.      As a result, investors remained completely unaware of the Company's slowing organic revenue until the truth was revealed. As a result, investors were left holding the bag to the tune of billions of dollars in losses when Defendants admitted that during the Class Period had been unsustainable and harmful to long term profitability.**

5.      The allegations in paragraph 5 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 5.

**6.      Specifically, on December 9, 2021, the Company lowered 2022 revenue guidance to levels well below Everbridge's demonstrated and consistent 30% plus revenue growth, and also announced that Defendant Meredith abruptly resigned as CEO. On this news, Everbridge's share price plummeted more than** *45% in a single day. Even at that moment, however, Defendants continued their*

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**misleading narrative by claiming that Meredith's sudden departure was unrelated to the Company's financial position.**

6.    The allegations in paragraph 6 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 6, refers to Everbridge's Form 8-K filed on December 9, 2021, for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Form 8-K filed on December 9, 2021, and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings. Ellertson further refers to the public record for the price of Everbridge common stock for the relevant period referenced in paragraph 6.

**7.    On February 24, 2022, investors finally learned the full truth about Everbridge's slowing revenue growth, when Everbridge announced that it had determined that the flurry of acquisitions during the Class Period created obstacles to sales growth due to incomplete integrations and increased complexity of its offerings, and as a result, the Company was going to focus on integrating the acquired companies (which Defendants previously said they already did). On this news, Everbridge's common stock cratered an additional _34%_.**

7.    The allegations in paragraph 7 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 7, refers to Everbridge's Form 8-K filed on February 24, 2022, for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Form 8-K filed on February 24, 2022, and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings. Ellertson further refers to the public record for the price of Everbridge common stock for the relevant period referenced in paragraph 7.

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**A.    Everbridge's Pre-Class Period**

**8.    Everbridge was founded in 2002. Initially, the Company had a single product, its Mass Notification software, which sent messages via telephone, text, and email to an entire defined population in the event of a threat or emergency. Though it was originally the Company's only product, Defendants understood that Everbridge needed to expand its offerings beyond Mass Notification to continue growing. As Defendant Brickley explained during the Company Conference on March 5, 2020 in his capacity as CFO, "we knew pre-IPO, that you can't really go public and sustain on just the mass notification opportunity" as it was "not growing super quickly."**

8.    Ellertson admits that Everbridge was founded in 2002 and offers a Mass Notification application. Ellertson denies the remaining allegations in paragraph 8 to the extent they relate to him and otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 8, except he admits that Everbridge made a Company Conference presentation on March 5, 2020. Ellertson refers to the transcript of the March 5, 2020 Company Conference presentation for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the March 5, 2020 Conference Call transcript, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**9.    To generate long-term growth, the Company developed a Critical Event Management ("CEM") suite, which it described as a collection of various products that enable organizations to assess, manage, and respond to distinct threats and emergencies, *all on a single platform*. The Company told investors this CEM suite would drive future growth, as the market for CEM was more than five times larger than the market for Mass Notification.**

9.    The allegations in paragraph 9 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 9, except he admits that Everbridge offers a Critical Event Management ("CEM") platform.

**10.    And that early growth strategy translated well to earnings, as Everbridge reported 35% to 41% revenue growth every year between 2016 and 2018. Indeed, Everbridge's revenue growth from 2016 to 2018 was largely organic. Organic growth refers only to that which is achieved entirely through a Company's own resources, in contrast to inorganic growth, which may be attributable to any number of external sources and activities such as mergers and acquisitions ("M&A"). Prior to the Class Period, then CEO Ellertson explained that since going public (in 2016), Everbridge's growth rate consisted of mid-30% organic growth, plus an additional 3% to 7% inorganic growth from acquisitions.**

10.    The allegations in the first three sentences of paragraph 10 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in the first three sentences of paragraph 10. Ellertson denies the allegations in the fourth sentence of paragraph 10, and further denies any paraphrasing, summarizing, or characterization of statements purportedly made by him prior to the Class Period, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**11.    Ellertson explained that the Company's acquisitions were "thoughtful product decision[s] that [are] strategic" and meant to "create new growth drivers or sustain current drivers."**

11.    Ellertson denies the allegations in paragraph 11, which purport to characterize and selectively quote contents of a February 28, 2019 Everbridge conference presentation. Ellertson refers to the transcript of Everbridge's February 28, 2019 conference presentation for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of statements purportedly made

6

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

by him prior to the Class Period, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**B.** **Meredith Took Over as CEO and Everbridge Acquired Numerous Companies to Enhance Everbridge's CEM Suite**

**12. From the beginning of the Class Period to its end, the Company engaged in a flurry of acquisitions, purchasing nine new companies.**

12. The allegations in paragraph 12 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 12, except he admits that Everbridge acquired multiple companies during the Class Period.

**13. Throughout the Class Period, Defendants misled investors about the Company's organic revenue growth.**

13. The allegations in paragraph 13 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 13.

**14. In fact, Defendants made little or no effort whatsoever to integrate the vast majority of those companies into Everbridge's CEM suite at all.**

14. Ellertson denies the allegations in paragraph 14.

**15. The Company also failed to integrate CNL Software and RedSky into its CEM suite. According to CW 3—former Everbridge Vice President, Business Development and employed by RedSky before and Everbridge after acquisition (in January 2021)—stated she believed RedSky would be incorporated into Everbridge's CEM, but Everbridge showed "no effort" in performing an integration.**

15. The allegations in the first sentence of paragraph 15 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in the first sentence of paragraph 15. Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the

7

allegations regarding the alleged statements of CW 3 in the second sentence of paragraph 15 and otherwise denies the allegations.

**16.    Additionally, as reported by multiple former Everbridge employees, Everbridge failed to adequately plan the integration of its acquired companies.**

16.    The allegations in paragraph 16 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 16, except Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the alleged reports made by multiple former Everbridge employees in paragraph 16.

**C.    <u>Defendants' Failure to Integrate the Acquisitions Undermined Everbridge's Long-Term Growth</u>**

**17.    Everbridge's failure to integrate the acquired companies hampered its salespeople's ability to sell the CEM suite, as it was not truly the "singular, integrated product" Everbridge claimed it was.**

17.    The allegations in paragraph 17 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 17.

**18.    Defendants' failure to integrate the Class Period acquisitions overly complicated the Company's internal systems, which also hampered sales efforts. For example, according to CW 2, after the xMatters acquisition in May 2021, Everbridge was now operating four different instances of Salesforce2 used by all different sales representatives. CW 2 added that in addition to Salesforce, Everbridge was also using two instances of NetSuite3 in addition to all their European systems. CW 2 explained that the convoluted nature of the systems "really slowed down sales."**

18.    The allegations in the first sentence of paragraph 18 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in the first sentence of paragraph 18. Ellertson lacks

8

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the alleged statements of CW 2 and otherwise denies the allegations.

### D.    Defendants Purposefully Downplay Revenue Contribution from xMatters to Hide Slowing Organic Growth

**19.    Because Everbridge's publicly available financial statements did not disclose the revenue contribution from each acquired company, investors had no transparency as to the precise extent (if at all, from their perspective) organic growth was lagging. Given this lack of transparency, analysts consistently asked Defendants to provide a revenue contribution from the acquired company, so analysts could determine how much revenue growth was organic and how much revenue was acquired. Despite these questions, Defendants misled investors about the extent to which the revenues it obtained from the acquired company were being used to mask increasingly stagnant revenue growth.**

19.    The allegations in paragraph 19 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 19 to the extent they relate to him or purported perceptions of investors and otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 19. Ellertson denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 19, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**20.    On April 6, 2021, the Company announced it would acquire xMatters for $242.6 million, by far the Company's largest acquisition to date. For context, the Company's total revenue for the previous year (2020) was $271.1 million— only $27.8 million more than the Company paid for xMatters. Despite the size of**

9

the deal, **Everbridge told investors that it expected xMatters to contribute only $9 million to $11 million in revenue for the rest of 2021.**

20. The allegations in paragraph 20 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 20, except he admits that Everbridge generated revenue of $271.1 million in 2020. Ellertson refers to the Form 8-K filed on April 6, 2021, for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Form 8-K and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings.

**21. But this was false. In truth, the revenue contribution from xMatters for the rest of 2021 was actually $20-25 million—*more than double* the $9-11 million figure Defendants presented to the public. According to CW 1, a former Everbridge employee who had knowledge about Everbridge's M&A process and transactions, the projected revenue figures relayed to Wall Street for xMatters were an additional approximately $11 million for Everbridge in 2021, however, realistically, the forecasts were presenting figures closer to $20 - $25 million. CW 1 stated that she raised concerns regarding these discrepancies to her immediate superior, which were then passed on to Meredith and Brickley. CW 1 added that she expressed concerns *directly* to Meredith and Brickley as well, in the form of presentations and emails regarding the deal. According to CW 1, the rationale Meredith provided *was that the discrepancy in figures was to "buffer" the declines in Everbridge's organic revenue.***

21. The allegations in the first and second sentences of paragraph 21 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in the first and second sentences of paragraph 21. Ellertson lacks knowledge or information sufficient to form a belief as to the truth

10

or falsity of the allegations regarding the alleged statements of CW 1 in the remainder of paragraph 21 and otherwise denies the allegations.

**22.    Indeed, by telling investors that xMatters would contribute only $9-11 million to Everbridge's 2021 revenue, when according to CW 1, the xMatters deal would actually contribute *$20-25 million* to 2021 revenue, Defendants effectively hid from the market an extra $11-16 million in "revenue" from xMatters that would be added to the Company's total revenue. In so doing, of course, Defendants created the false impression that Everbridge's revenue was growing organically more than it actually was. And because Everbridge's financial statements did not break out revenue from each acquired company, it was impossible for investors to figure out how much revenue came from xMatters and calculate organic revenue on their own. As a result of this misconduct, investors believed that the Company's organic revenue was continuing its strong momentum.**

22.    The allegations in paragraph 22 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 22 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 22, except Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the alleged statements of CW 1 and otherwise denies the allegations.

**E.    Defendants Mislead Investors About the xMatters Integration**

**23.    In addition to misleading investors about xMatters' revenue contribution and the Company's organic revenue growth, Defendants also falsely assured investors that the Company was successfully integrating xMatters without any hint of problems. This was not the case. As detailed by multiple former employees, the xMatters integration was a disaster and caused the departure of more than half of the xMatters sales staff after the acquisition. With less than half of xMatters' experienced sales staff remaining at Everbridge after**

11

**the acquisition, Everbridge could not effectively sell xMatters' products, which caused a significant drop off in sales—and therefore, in organically-generated revenue—in the second and third quarters of 2021.**

23. The allegations in paragraph 23 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 23 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 23, except Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the alleged statements of multiple former employees.

**24. Despite losing more than half of xMatters' sales staff, Defendants continuously touted the Company's integration efforts, making it appear as though Everbridge had integrated xMatters' technology into Everbridge's CEM and had integrated xMatters' employees into Everbridge. For example, Defendants described the integration as "*the seamless integration of the Everbridge and xMatters.*" Defendants also falsely assured investors that "*[w]e've locked up key hires, and we're retaining them.*"**

24. The allegations in paragraph 24 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 24. Ellertson refers to Everbridge's November 9, 2021 Earnings Call transcript and the Press Release issued on November 30, 2021, for their complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the November 9, 2021 Earnings Call transcript and the November 30, 2021 Press Release, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**25. This was nevertheless false. In stark contrast to what Defendants told the market and their investors, most of the xMatters sales staff, including the global sales leader, left the Company within three months of the acquisition. Because Everbridge, like all companies, depends on its salespeople to sell its**

**products and grow its revenue, the loss of most of xMatters' sales staff caused a significant decline in sales midway through 2021.**

25.    The allegations in paragraph 25 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 25 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 25.

**26.    The poor integration of xMatters' sales staff caused a "dismal" third quarter for xMatters, as xMatters did not come close to achieving their targets. Despite this, Defendants falsely told investors that "based on our internal expectations, what we thought we'd do on sales, [] we're doing better." Defendants' misstatements led investors to believe that Everbridge had successfully integrated xMatters and was poised to continue its growth trajectory as it further strengthened its CEM suite. This was false, which investors first started learning on December 9, 2021.**

26.    The allegations in paragraph 26 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 26, except he admits that Everbridge filed a Form 8-K on December 9, 2021. Ellertson refers to the December 9, 2021 Form 8-K for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the December 9, 2021 Form 8-K, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements. Ellertson further refers to the August 9, 2021 Earnings Call transcript for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the August 9, 2021 Earnings Call, and any factual inferences or legal conclusions made Lead Plaintiff makes based on those statements.

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**F.    The Truth is Gradually Revealed**

**27.    On December 9, 2021, Defendants partially revealed the truth through a press release containing two announcements. First, Everbridge announced, out of nowhere, that Meredith had resigned as CEO and member of the Board of Directors, effective January 30, 2022. The Company immediately established an Office of the CEO and began transition leadership to Brickley and Chief Revenue Officer, Vernon Irvin, who would serve as Co-CEOs until the Company found a permanent replacement CEO. Second, Everbridge reduced revenue guidance for 2022 to 20-23%, well below the Company's historical forecasts of 30% plus revenue growth. Nevertheless, at the same time, Defendants continued misleading investors by claiming that the two announcements were unrelated, stating that "Meredith's resignation [wa]s not related to any matter regarding the Company's financial condition [or] reported financial results."**

27.    Ellertson denies the allegations in paragraph 27, except he admits that Everbridge filed a Form 8-K on December 9, 2021. Ellertson refers to the December 9, 2021 Form 8-K for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the December 9, 2021 Form 8-K, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**28.    Investors were shocked by this news, as Everbridge's stock price plummeted *by more than 45%*, as investors slowly began to understand that the Company's revenue growth was likely not sustainable. However, analysts still questioned how Meredith's departure could be related to the revenue growth concerns. For example, in an analyst report on December 13, 2021, J.P. Morgan asked "[w]hy is the CEO really leaving" and "does the timing of the CEO departure actually indicate concerns about growth potential over the next year?" For more than two months, no answers were forthcoming to those queries and concerns.**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

28.    The allegations in paragraph 28 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 28. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 28, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents. Ellertson further refers to the public record for the price of Everbridge common stock for the relevant period referenced in paragraph 28.

**29.    On February 24, 2022, however, investors finally learned the full truth about the Company's lack of organic revenue growth. On that day, the Company issued a press release that, once again, lowered 2022 revenue guidance, this time to 15-17% growth—well below the historical 30% or more growth rate and a significant reduction from the initial forecast provided on December 9, 2021. The press release also explained that the Company was "taking decisive actions to streamline, integrate and reduce complexity in our key offerings, which we expect to drive sustainable growth in the years ahead."**

29.    The allegations in paragraph 29 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 29, except he admits that Everbridge filed a press release on February 24, 2022. Ellertson refers to Everbridge's press release filed on February 24, 2022, for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the press release filed on February 24, 2022, and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings.

**30.    During the related earnings call, Co-CEO Vernon Irvin explained that following Meredith's departure, management reviewed the Company's strategy during the Class Period and concluded that the flurry of acquisitions created a "*barrier to upsell and cross-sell from increased complexity, and***

15

*incomplete integrations.***" Similarly, Brickley said that the acquisitions "created complexity for the business seen in the product, back office and go-to-market headwinds** *that are obstacles to sales growth.***" Brickley further explained that "we were well down a path of selling dozens of solutions that** *were not always tightly integrated.* **We were selling them to multiple buyers. And as [Irvin] said,** *that was confusing to customers and to our sellers.***"

30.     The allegations in paragraph 30 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 30, except he admits that Everbridge hosted an Earnings Call on February 24, 2022. Ellertson refers to the February 24, 2022 Earnings Call transcript for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the Earnings Call transcript, and any factual inferences or legal conclusions Lead Plaintiff makes based on that transcript.

**31.     Investors were once again shocked by this revelation. On this news, Everbridge's stock price fell more than** *33%,* **closing at $30.61 per share on February 25, 2022, as investors finally learned the undisclosed facts about Everbridge under Meredith's leadership.**

31.     The allegations in paragraph 31 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 31. Ellertson further refers to the public record for the price of Everbridge common stock for the relevant period referenced in paragraph 31.

**32.     For the first time, investors learned that the rapid pace of acquisitions and incomplete integrations caused a disjointed, confusing CEM suite—which was contrary to Defendants' repeated statements touting its CEM suite as the only fully integrated CEM solution— and led to a drop off of sales to such an extent that Defendants no longer could camouflage their inability to generate and sustain organic revenues from additional acquisitions.**

16

32.    Ellertson denies the allegations in paragraph 32.

**33.    Less than a month later, on March 17, 2022, activist investor Ancora Holdings Group ("Ancora"), who beneficially owned approximately 4% of the Company's outstanding common stock, issued a letter calling for the sale of Everbridge. Ancora stated, among other things, that "we are puzzled by why Everbridge is only now recognizing the need to integrate products after so many years, when a well-disciplined management team and Board would understand the advantages to executing on this as soon as possible." Ancora also recognized that because "Everbridge does not disclose contributions from M&A," it has "seemingly obscure[ed] that the Company has been paying higher prices to acquire growth."**

33.    The allegations in paragraph 33 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 33, and further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 33, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

## II.    JURISDICTION AND VENUE

**34.    These claims asserted herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.**

34.    The allegations in paragraph 34 state legal conclusions for which no response is required. To the extent a response is required, Ellertson admits that the Complaint purports to assert claims under Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder by the SEC but denies that such claims have any merit.

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**35.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.**

35.    The allegations in paragraph 35 state legal conclusions for which no response is required. To the extent a response is required, Ellertson admits that the Court has jurisdiction over this action pursuant to the referenced statutes.

**36.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Everbridge transacts business in California, including in this District, and the Company's West Coast headquarters are located within this District at 155 North Lake Avenue, Suite 900, Pasadena, California 91101. Further, Everbridge's securities trade on the NASDAQ stock market under the ticker symbol "EVBG." In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.**

36.    The allegations in paragraph 36 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies such allegations, except he admits that venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b); that Everbridge has a principal executive office at 155 North Lake Avenue, Suite 900, Pasadena, California 91101; and that, during the Class Period, Everbridge's securities traded on the NASDAQ stock market under the ticker symbol "EVBG."

## III.    <u>PARTIES</u>

### A.    <u>Lead Plaintiff</u>

**37.    Lead Plaintiff Sylebra Funds are hedge funds managed by Sylebra Capital Limited, an investment adviser that targets mid-sized technology, media, and telecommunications companies. Together, the Sylebra Funds have over $6.6**

18

**billion in assets under management. Lead Plaintiff purchased Everbridge common stock during the Class Period and was damaged as the result of Defendants' fraud.**

37.    The allegations in paragraph 37 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies that he has committed any fraud or that Lead Plaintiff has suffered any damages. Ellertson otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37.

**B.    Defendants**

**38.    Defendant Everbridge is a Delaware corporation, based in Burlington, Massachusetts with its West Coast headquarters located at 155 North Lake Avenue, Suite 900, Pasadena, California 91101. The Company's common stock is listed on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "EVBG."**

38.    The allegations in paragraph 38 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 38, except he admits that Everbridge is a Delaware corporation, based in Burlington, Massachusetts with its West Coast headquarters located at 155 North Lake Avenue, Suite 900, Pasadena, California 91101 and that, during the Class Period, Everbridge's securities traded on the NASDAQ stock market under the ticker symbol "EVBG.".

**39.    Defendant Meredith served as Everbridge's Chief Executive Officer ("CEO") as of July 15, 2019 and during all relevant times prior to December 9, 2021, on which date he unexpectedly and abruptly resigned from that post. In his role as CEO of Everbridge, Meredith participated in earnings calls and conferences with securities analysts, during which he made false and misleading statements and omissions of material fact relating to the significant problems Everbridge was encountering as a result of its multiple acquisitions and the extent**

19

**to which the revenues it obtained from the acquired company were being used to mask increasingly stagnant organic growth. Defendant Meredith also signed Everbridge's SEC Form 10-Qs filed on May 10, 2021 and August 9, 2021, which contained materially false and misleading facts as detailed below.**

39.    The allegations in paragraph 39 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 39 except he admits that Defendant Meredith served as Everbridge's Chief Executive Officer ("CEO") from July 15, 2019, until December 9, 2021; that Defendant Meredith participated in earnings calls and conferences with securities analysts from July 15, 2019, to December 9, 2021; and that Defendant Meredith signed Everbridge's SEC Form 10-Qs filed on May 10, 2021 and August 9, 2021.

**40.    As part of Meredith's employment agreement, the Company granted Meredith 100,000 performance stock units (the "PSU Grant"), with up to 62.5% of the PSU Grant becoming eligible to vest on September 30, 2021, based on the compound annual growth rate ("CAGR") achieved by the Company during the eight fiscal quarters preceding such date, and up to an additional 62.5% of the PSU Grant becoming eligible to vest on September 30, 2022, based on the CAGR achieved during the 12 fiscal quarters preceding such date. The vesting of the PSU Grant was subject to Meredith's continued service to the Company through each applicable vesting date or event.**

40.    The allegations in paragraph 40 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 40.

**41.    Defendant Brickley served as the Senior Vice President and Chief Financial Officer ("CFO") of Everbridge as of March 1, 2019, including during the Class Period. After December 9, 2021, he also served as interim Co-CEO. In**

20

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**his role as CFO of Everbridge, Brickley participated in earnings calls and conferences with securities analysts, during which he made false and misleading statements and omissions of material fact relating to the significant problems Everbridge was encountering as a result of its multiple acquisitions and the extent to which the revenues it obtained from the acquired company were being used to mask increasingly stagnant organic growth. Defendant Brickley also signed Everbridge's SEC Form 10-Q for the quarter ended May 10, 2021 and August 9, 2021, which contained materially false and misleading facts.**

41. The allegations in paragraph 41 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 41, except he admits that Defendant Brickley served as Everbridge's Senior Vice President and Chief Financial Officer ("CFO") as of March 1, 2019; that, during the Class Period, Defendant Brickley participated in earnings calls and conferences with securities analysts; and that Defendant Brickley signed Everbridge's SEC Form 10-Qs filed on May 10, 2021 and August 9, 2021.

**42. Defendant Ellertson preceded Meredith as the CEO of Everbridge, serving in that position from September 2011 to July 2019, when Meredith succeeded him as CEO. During the Class Period, Ellertson served as Executive Chairman of the Board of Directors of Everbridge during all relevant times. In his role as Executive Chairman, Ellertson participated in earnings calls and conferences with securities analysts, during which he made false and misleading statements and omissions of material fact relating to the significant problems Everbridge was encountering as a result of its multiple acquisitions and the extent to which the revenues it obtained from the acquired company were being used to mask increasingly stagnant organic growth. Moreover, in his role as Executive Chairman, Ellertson was responsible for the Company's M&A. During the Class Period, an analyst asked Ellertson about his "day-to-day role in helping support**

21

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**David [Meredith], Patrick [Brickley] and the team," and Ellertson responded that his "day job is M&A" and that he is "just doing the M&A stuff."**

42.     Ellertson denies the allegations in paragraph 42, except he admits that he preceded Defendant Meredith as the CEO of Everbridge; that he served as CEO from September 2011 to July 2019; that he served as Executive Chairman of the Board from July 2019 to December 2020; and that during those times he participated in some earnings calls and conferences with securities analysts. Ellertson denies any paraphrasing, summarizing or characterization of any purported statement by Ellertson or any third-party, analyses, reports, or other documents referenced in paragraph 42, and further denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analysis, reports or documents.

**43.     Defendants Meredith, Brickley, and Ellertson are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, by virtue of their high-level positions at Everbridge, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels, and were privy to confidential proprietary information about the Company, its business, operations, internal controls, growth, financial statements, and financial condition, as alleged herein.**

43.     Paragraph 43 reflects Lead Plaintiff's characterization of its own allegations for which no response is required. To the extent a response is required, Ellertson denies those allegations, except he admits that Defendants Meredith and Brickley held high-level positions at Everbridge.

**44.     Everbridge and the Individual Defendants are collectively referred to herein as "Defendants."**

44.     Paragraph 44 reflects Lead Plaintiff's characterization of its own allegations for which no response is required. To the extent a response is required, Ellertson denies those allegations.

22

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**45.    CW 1 was employed by Everbridge from early 2019 until summer 2021. CW 1 was a member of the finance team, Global Financial Planning and Analysis ("FP&A"), holding various titles during her tenure at the Company, and her responsibilities included work related to Everbridge's mergers and acquisition ("M&A") process. CW 1 reported to the Vice President of FP&A, who, according to CW 1, reported to Brickley, who reported to Meredith. In her role, CW 1 regularly communicated with Meredith and Brickley through presentations or email correspondence, particularly in the lead-up to an acquisition. With respect to the xMatters acquisition, CW 1 explained that she sent weekly or bi-weekly emails to Brickley and Meredith with modeling in the lead-up to the acquisition.**

45.    The allegations in paragraph 45 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 45.

**46.    CW 2 was employed in the Finance Group at xMatters from prior to the Class Period until May 2021, when Everbridge acquired xMatters. Following the acquisition, CW 2 stayed on at the Company in the same Finance role, from May 2021 until late 2021. CW 2 explained that she worked as part of the integration team during the xMatters acquisition, and primarily spoke with direct managers and Everbridge's "integration office," which was a group that pre-dated the xMatters acquisition. According to CW 2, the integration office include her Everbridge equivalent and was "heavily involved" in the process.**

46.    The allegations in paragraph 46 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 46.

23

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**47.    CW 3 was a Business Development Manager at RedSky Technologies from July 2007 until the acquisition by Everbridge, at which point she was employed by Everbridge as the Vice President, Business Development from January 2021 until April 2021. CW 3 was involved in the vetting of RedSky during the Winter of 2020 (shortly before the acquisition) as a member of the executive team. During this process, CW 3 recalled Everbridge did a "deep dive" into all the departments at RedSky, but Everbridge still did not understand RedSky's go-to- market strategy.**

47.    The allegations in paragraph 47 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 47.

## IV.    SUBSTANTIVE ALLEGATIONS OF FRAUD

### A.    Overview of Everbridge's Business

**48.    Everbridge is incorporated in Delaware and maintains a West Coast headquarter in Pasadena, California. The Company is a global software company that provides enterprise software applications designed to automate and accelerate organizations' operational response to "critical events." Critical events include public safety threats such as severe weather conditions, active shooter situations, and terrorist attacks, as well as business events like Information Technology ("IT") outages, cyber-attacks, product recalls, or supply-chain interruptions.**

48.    The allegations in paragraph 48 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 48, except he admits that Everbridge is incorporated in Delaware; that Everbridge has a principal executive office at 155 North Lake Avenue, Suite 900, Pasadena, California 91101; that Everbridge is a global software company that empowers resilience by leveraging intelligent automation technology to enable

24

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

customers to anticipate, mitigate, respond to, and recover from critical events to keep people safe and organizations running; and that public safety threats include severe weather conditions, active shooter situations, terrorist attacks or a pandemic, as well as critical business events such as IT outages, cyber-attacks, product recalls or supply-chain interruptions.

**49.    The Company was founded in 2002 in response to the September 11 terrorist attacks with the mission of helping keep people safe amid critical situations. The Company initially focused on one product—its Mass Notification software, which is designed to send messages via telephone, text, and email to an entire defined population in the event of a threat or emergency.**

49.    The allegations in paragraph 49 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 49, except he admits that Everbridge was founded in 2002 in the aftermath of 9/11 and offers a Mass Notification application.

**50.    Though the Company's first product was its Mass Notification software, Defendant Brickley stated at a March 5, 2020 Company conference presentation that "we knew pre-IPO, that you can't really go public and sustain on just the mass notification opportunity" as it was "not growing super quickly." As a result, the Company has since expanded its product offerings, using its Mass Notification platform to build adjacent applications.**

50.    The allegations in paragraph 50 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 50, except he admits that Everbridge offers a Mass Notification application and that Everbridge presented a Company Conference presentation on March 5, 2020. Ellertson refers to the transcript of the March 5, 2020 Company Conference presentation for its complete and accurate contents. Ellertson

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the March 5, 2020 conference call, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**51. Throughout the Class Period and before, the Company's product offerings have been organized into three product segments: (i) Mass Notification applications designed to communicate to an entire defined population in the event of a threat or emergency; (ii) IT and IoT alerting; and (iii) Critical Event Management ("CEM"), which is a collection of the Company's applications designed to allow its customers to assess threats, locate impacted people and assets, and manage and respond to critical events,** *all from one single platform***.**

51. The allegations in paragraph 51 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 51, except he admits that Everbridge offers Mass Notification applications, IT and IoT alerting, and CEM.

**52. Of these three categories, during the Class Period, the CEM segment had** *by far* **the largest Total Addressable Market ("TAM"). TAM is a term that is used to reference the revenue opportunity available for a product or service. Assessing the TAM is crucial for business because it helps prioritize business opportunities by serving as a metric of a given opportunity's underlying potential. According to a slide from the Company's Analyst Day 2020 meeting presentation on March 23, 2020, the TAM for CEM was $25.9 billion, whereas the TAM for Mass Notification was $4.8 billion and $10.4 billion for IT and IoT Alerting:**

52. The allegations in paragraph 52 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 52, except he admits that on March 23, 2020, Everbridge

26

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

shared an Everbridge Analyst Day Presentation. Ellertson refers to the presentation shared on March 23, 2020, for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of the contents of the presentation shared on March 23, 2020, and any factual inferences or legal conclusions Lead Plaintiff makes based on those contents.

**53.    Therefore, the CEM segment provided the greatest growth opportunity, and Everbridge understood that in order to continue growing, it needed to build out Everbridge's CEM suite and further penetrate the CEM market since it was much larger than the Mass Notification— i.e., population alerting—market.**

53.    The allegations in paragraph 53 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 53.

**54.    The Company consistently explained that its CEM platform was integral to the Company's growth plan. As explained in the Company's 2019 10-K, one of the "[k]ey elements of [its] growth strategy" was maintaining Everbridge's leadership in the CEM market since Everbridge was the only fully integrated CEM solution in the market. Specifically, the 2019 10-K stated:**

> ***Maintain Our Technology and Thought Leadership*. We will continue to invest in our core CEM platform and our applications to maintain our technology leadership position. For example, we believe that *we are the only company today that provides a full, integrated CEM solution* and that we provide the first solution to offer dynamic versus static location awareness integrated with analysis and communications for the0020employee safety and security marketplace. Further, we believe we have a competitive advantage through our commitment to innovation and thought leadership that has enabled us to take market share from our competitors and accelerate our growth.**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

54.     The allegations in paragraph 54 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 54, except he admits that Everbridge filed a Form 10-K on February 28, 2020. Ellertson refers to the Form 10-K filed on February 28, 2020, for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Form 10-K and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings.

**55.     The investing public understood the importance of the CEM suite to Everbridge's future growth. For example, on June 19, 2019, SunTrust Robinson Humphrey issued an analyst report stating, "we believe the Critical Event Management (CEM) platform is important in sustaining high growth and supported by an estimated ~$26B TAM." SunTrust Robinson Humphrey further stated that they "anticipate CEM to represent one of the highest growth segments of the overall business." Given the importance of the CEM suite to the Company's future growth, investors were extremely interested in the Company's plans for building and growing its CEM platform.**

55.     The allegations in paragraph 55 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 55, except Ellertson denies the allegations regarding the alleged perceptions of investors. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 55, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**56.     In the years before the Class Period, the Company focused on growing organically with some consolidation of adjacent technologies via**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**targeted and strategic "tuck-in" acquisitions. These helped develop the CEM platform into a singular, integrated product designed to assess threats, located impacted people and assets, and manage and respond to critical events.**

56.    The allegations in paragraph 56 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 56.

**57.    This integrated response separated Everbridge from its competitors, as other solutions relied on fragmented, unintegrated tools from numerous vendors. The Company's 2019 10-K explained this competitive advantage as follows:**

> **Organizations today typically manage critical events across the organization in silos that use disparate data sources and unintegrated tools, making it difficult to achieve a common operational view of threats and of the status of response. Utilizing a common contact base, consistent rules engines, threat databases that are integrated with information on the location of an organization's people, assets and suppliers, and a common visualization platform, *CEM solutions can provide a more integrated solution which can improve management control and visibility and lower costs. The ability to cohesively and rapidly share information and collaborate across the organization underlies creating a common operational approach*.**

57.    The allegations in paragraph 57 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 57, except he admits that Everbridge filed a Form 10-K on February 28, 2020. Ellertson refers to the Form 10-K filed on February 28, 2020, for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Form 10-K and other public filings,

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings.

**58.    The Company established a dominant CEM platform that obviated the need for customers to contract with multiple point solution providers. Investors also responded favorably to this approach, as the Company consistently beat its financial guidance and reported 35% to 41% year-over-year revenue growth every year between 2016 and 2018 and Everbridge's share price increased by approximately 244% between its first day of trading and December 31, 2018.**

58.    The allegations in paragraph 58 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 58. Ellertson refers to the public record for the price of Everbridge common stock for the relevant period referenced in Paragraph 58 of the Complaint.

**B.    Everbridge Goes Public**

**59.    Since completing its Initial Public Offering ("IPO") in September 2016, the Company has repeatedly touted its revenue growth and ability to beat financial guidance every quarter. The Company's total revenue for full year 2017 was $104 million, an increase of 36% compared to 2016; its total revenue for full year 2018 was $147.1 million, an increase of 41% compared to 2017; and its total revenue for 2019 was $200.9 million, an increase of 37% compared to 2018.**

59.    The allegations in paragraph 59 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 59, except admits that the Everbridge completed its initial public offering in September 2016; that Everbridge's total revenue for full year 2017 was $104.352 million, an increase of 35.8% compared to 2016; that Everbridge's total revenue for full year 2018 was $147.1 million, an increase of 41% compared to 2017;

30

and that Everbridge's total revenue for full year 2019 was $200.9 million, an increase of 36.6% compared to 2018.

**60.    Everbridge maintained that this revenue growth was almost entirely organic. Organic revenue growth is the growth of a company by increasing output and enhancing sales internally through the Company's own resources. Organic growth stands in contrast to inorganic growth, which is growth related to activities outside a business's own operations, such as growth attributable to mergers and acquisitions. Organic growth is often seen as superior and a better indicator of a company's performance. While inorganic growth can provide a short-term boost, there are disadvantages in that implementation of technology or integration of new employees can be costly and time consuming. Therefore, the Company's organic growth numbers were extremely important to investors.**

60.    The allegations in paragraph 60 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 60, except Ellertson denies the allegations regarding the alleged perceptions of investors.

**61.    Since going public, Defendants consistently explained that Everbridge's revenue growth was almost entirely organic, with a small percentage of revenue growth coming from acquisitions. Prior to the Class Period, when Defendant Ellertson was still CEO, he told investors that Everbridge "continue[s] to grow at kind of 30%, mid-30% numbers, which we have quoted continuously as our target since we went public, and then we add onto that anywhere from 3% to 7% with M&A in a given year." In other words, since going public, the Company was growing around 30% organically year-over-year, plus an additional 3-7% inorganic growth from acquisitions, for a total growth rate in mid to high 30% range.**

31

61. Ellertson denies the allegations in paragraph 61, which purports to characterize and selectively quote contents of Everbridge's Shareholder & Analyst Call hosted on June 19, 2019. Ellertson refers to the transcript of Everbridge's Shareholder & Analyst Call hosted on June 19, 2019, for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of statements purportedly made by him, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**62. Prior to the Class Period, Everbridge acquired only six companies in the nearly three years between the Company's September 2016 IPO and Meredith's succession of Ellertson as CEO in July 2019.**

62. The allegations in paragraph 62 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 62, except he admits that Everbridge acquired six companies between Everbridge's IPO in September 2016 and July 2019.

**C.    Meredith Takes Over as CEO**

**63. On June 18, 2019, Everbridge announced that Meredith had been appointed as CEO and a member of the Board of Directors of the Company, to be effective July 15, 2019. Meredith succeeded Ellertson, who transitioned to the role of Executive Chairman of the Board of Directors.**

63. Ellertson admits the allegations in paragraph 63.

**64. As part of Meredith's employment agreement, the Company granted Meredith 100,000 performance stock units (the "PSU Grant"), with up to 62.5% of the PSU Grant becoming eligible to vest on September 30, 2021, based on the compound annual growth rate ("CAGR") achieved by the Company during the eight fiscal quarters preceding such date, and up to an additional 62.5% of the PSU Grant becoming eligible to vest on September 30, 2022, based on the CAGR achieved during the 12 fiscal quarters preceding such date. The vesting of the**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**PSU Grant was subject to Meredith's continued service to the Company through each applicable vesting date or event.**

64.    The allegations in paragraph 64 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 64. Ellertson refers to Everbridge's Form 8-K filed on June 18, 2019, with Defendant Meredith's employment agreement attached as an exhibit, for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Form 8-K and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings.

**D.    Defendants Engaged in a Series of Acquisitions**

**65.    Under Meredith's leadership, from the beginning of the Class Period to its end, Defendants engaged in a flurry of acquisitions, purchasing nine new companies.**

65.    Ellertson denies the allegations in paragraph 65 to the extent they relate to him, except he admits that Everbridge engaged in multiple acquisitions during the Class Period.

**66.    As explained below, starting with the acquisition of NC4 and continuing throughout the Class Period, Everbridge engaged in a buying spree, purchasing nine separate companies.**

66.    The allegations in paragraph 66 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 66, except he admits that Everbridge engaged in multiple acquisitions during the Class Period.

**67.    However, Defendants misled investors about the Company's organic growth by downplaying the revenue contribution from the acquired company, making it appear that the Company's organic revenue was growing more than it**

33

**actually was. Because Everbridge's publicly available financial statements did not break out revenue from each acquired company, there was a lack of transparency as to the extent to which organic growth was lagging. Despite several analyst questions about the legitimacy of the Company's organic growth numbers, Defendants misled investors about the extent to which the revenues it obtained from the acquired company were being used to mask increasingly stagnant growth.**

67.    The allegations in paragraph 67 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 67. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 67, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**68.    Moreover, Defendants mislead investors when they were specifically asked whether in fact the Company was experiencing any integration problems with respect to its acquisition of numerous companies during the Class Period. For example, as to the xMatters acquisition, Defendants claimed that Everbridge had "locked up key hires" and was "retaining" xMatters employees. But in fact, Everbridge was unable to effect complete integration of the acquired companies as their products required multiple, different systems, running on different internal databases, with dedicated legacy sales staffs trained and operating differently than those originally with Everbridge, leading many to leave the Company.**

68.    The allegations in paragraph 68 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 68 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 68, except he admits that on November

34

30, 2021, representatives from Everbridge attended the Credit Suisse Technology, Media & Telecom Conference. Ellertson refers to the November 30, 2021 conference call transcript for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the November 30, 2021 conference call, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

### 1. **Everbridge Acquires NC4, its Largest Acquisition to Date, and Misleads Investors About Integrating NC4**

**69.    Shortly after Meredith took over as CEO, the Company made its largest acquisition ever to that point. On August 1, 2019, Everbridge entered into a purchase agreement with NC4 Inc., NC4 Public Sector LLC, and Celerium Group Inc., pursuant to which Everbridge purchased all the outstanding membership interests of NC4 Inc. and NC4 Public Sector LLC (collectively, "NC4") for total consideration of approximately $84.5 million. The Company paid approximately $51.7 million in cash at closing and paid the remaining purchase price with 320,998 newly issued shares of our common stock.**

69.    The allegations in paragraph 69 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 69, except he admits that on August 1, 2019, Everbridge entered a purchase agreement with NC4 Inc., NC4 Public Sector LLC, and Celerium Group Inc.

**70.    NC4 offers threat intelligence solutions that empower businesses, government organizations, and communities to assess and disseminate risk data and information to manage and mitigate the impact of critical events. According to the Form 10-Q filed on November 8, 2019, the "Company's acquisition of NC4 was made primarily to expand the Company's customer base and to a lesser**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**extent to complement some of the existing facets of NC4's business with the Company's existing products."**

70. The allegations in paragraph 70 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 70, except he admits that NC4 was a leading global provider of threat intelligence solutions and that Everbridge filed a Form 10-Q on November 8, 2019, and refers to it for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Form 10-Q and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings.

**71.    Moreover, CW 1 stated that Everbridge was "struggling with attrition" and integration of its acquisitions. CW 1 explained that there were too many new people being integrated into Everbridge after numerous acquisitions beginning in 2019. CW 1 added that these employees were spread across all different time zones, which made it difficult to get everyone on the same page and then, once progress was being made, another company would be acquired and Everbridge would have to go through the process all over again. CW 1 also cited problems integrating the acquired companies themselves into Everbridge's business.**

71. The allegations in paragraph 71 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the alleged statements of CW 1 and otherwise denies the allegations.

**72.    After the NC4 acquisition, the Company engaged in a flurry of acquisitions without fully integrating them into Everbridge. With each new**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**acquisition, the integration problems intensified, leading to a boiling point after the xMatters acquisition.**

72.    The allegations in paragraph 72 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 72.

## 2.    Defendants Acquire Five Companies in 2020 But Do Not Integrate them into Everbridge's CEM Suite

**73.    The Company engaged in five acquisitions in the first eight months of 2020. The Company repeatedly claimed that their CEM suite was superior to competitors because Everbridge is "the only company today that provides a full, *integrated CEM solution*." Therefore, investors paid close attention to these acquisitions and how they were integrated into Everbridge's CEM solution.**

73.    The allegations in paragraph 73 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 73, except he admits that Everbridge engaged in five acquisitions in the first eight months of 2020 and Everbridge filed a Form 10-K on February 28, 2020, and refers to such filing for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Form 10-K and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings.

**74.    The first acquisition of 2020 occurred on February 7, 2020, when the Company entered into a Stock Purchase Agreement with Connexient, Inc. ("Connexient") pursuant to which the Company purchased all issued and outstanding shares of stock of Connexient for a base consideration of $20.2 million. The Company paid $11.5 million in cash at closing and paid the remaining purchase price with 96,611 newly issued shares of the Company's common stock.**

37

74.     The allegations in paragraph 74 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 74, except he admits on February 7, 2020, Everbridge entered into a Stock Purchase Agreement to acquire Connexient, Inc., ("Connexient") and that Connexient was the first company Everbridge acquired in 2020.

**75.     The second acquisition of 2020 took place on February 25, 2020, when Everbridge acquired CNL Software Limited ("CNL Software") for a base consideration of approximately $35.6 million. The Company paid approximately $19.6 million in cash at closing and paid the remaining purchase price with 153,217 newly issued shares of the Company's common stock.**

75.     The allegations in paragraph 75 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 75, except he admits that on February 25, 2020, Everbridge entered into a Stock Purchase Agreement with CNL Software Limited ("CNL Software") and that CNL Software was the second company Everbridge acquired in 2020.

**76.     The third acquisition of 2020 occurred on March 19, 2020, when the Company acquired One2Many Group B.V. ("one2many") for a base consideration of $13.0 million. The Company paid $5.5 million in cash at closing, acquired purchase liabilities of $2.0 million, and paid the remaining purchase price with 52,113 newly issued shares of the Company's common stock. According to the Company's Form 10-Q filed on May 2, 2020, Everbridge "acquired one2many to expand the Company's customer base and for its cell broadcast technology to enhance the Company's public warning applications."**

76.     The allegations in paragraph 76 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks

38

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 76, except he admits that on March 19, 2020, Everbridge entered into a Stock Purchase Agreement with One2Many Group B.V., ("one2many") and that one2many was the third company Everbridge acquired in 2020.

**77.     The fifth and final acquisition of 2020 occurred on August 4, 2020, when Company acquired SnapComms Limited ("SnapComms") for a base consideration of $34.2 million. Everbridge paid $13.2 million in cash and issued 121,858 newly issued shares of the Company's common stock at closing.**

77.     The allegations in paragraph 77 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 77, except he admits that on August 4, 2020, Everbridge entered into a Stock Purchase Agreement with SnapComms Limited ("SnapComms") and that SnapComms was the fifth and final company Everbridge acquired in 2020.

### 3.     Everbridge Acquires RedSky in January 2021 but Does Not Integrate it into Everbridge's CEM Suite

**78.     On January 15, 2021, Everbridge acquired Red Sky Technologies Inc. ("RedSky") for a base consideration of $55.4 million, net of cash acquired. The Company paid $32.4 million in cash, net of cash acquired, and issued 162,820 newly issued shares of the Company's common stock at closing. The Company did not disclose historical financial statements or pro forma financial information about Red Sky, nor did it disclose expected revenue contribution from RedSky.**

78.     The allegations in paragraph 78 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 78, except he admits that on January 15, 2021, Everbridge entered into a Stock Purchase Agreement with Red Sky Technologies, Inc., ("RedSky").

**79.** CW 3 was employed by RedSky and then Everbridge after acquisition and was involved in the vetting of RedSky during the Winter of 2020 (shortly before the acquisition) as a member of the executive team. According to CW 3, she believed RedSky would be incorporated into Everbridge's CEM, but Everbridge showed "no effort" in performing an integration. According to CW 3, Everbridge just wanted RedSky's customers and revenue. Following the acquisition, CW 3 recalled colleagues saying to one another, "why did they buy us?" CW 3 stated that it appeared that Everbridge "did not know what [to] do with us [RedSky]." This, according to CW 3, contributed to the integration process being difficult.

79.    The allegations in paragraph 79 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding alleged statements of CW 3 and otherwise denies the allegations.

### 4.    Without Knowledge of the Integration Issues, the Market Believed that the Company Had Strengthened its CEM Suite

**80.** As explained in ¶¶ 69-79, Defendants did not integrate the above acquisitions into Everbridge's CEM suite.

80.    Ellertson denies the allegations in paragraph 80.

**81.** Defendants led investors to believe that Everbridge was poised to continue its growth trajectory as it penetrated the large and growing CEM market. For example, on February 19, 2021, Stephens issued an analyst report stating that improving the Company's CEM suite highlighted Everbridge's strong fourth quarter 2020. Specifically, Stephens stated that:

> **Overall, a strong finish to 2020 for EVBG and we like the catalysts ahead as Everbridge capitalizes on the EU Directive opportunity and uses its top-down sales approach to win additional CEM deals. Additionally, we expect Everbridge to continue to execute on its long**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**runway for Mass Notification wins, grow the CEM pipeline, and expand internationally.**

81.    Ellertson denies the allegations in paragraph 81 to the extent they relate to him and the alleged perceptions of investors and otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 81. Ellertson denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 81, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**82.    Also on February 19, 2021, William Blair issued an analyst report reiterating it's outperform rating on Everbridge stock and highlighting the Company's CEM opportunity. Specifically, William Blair noted that "Everbridge also saw continued strength in CEM customer additions and multiproduct deals." William Blair noted that "[w]hile we view this progress positively, we note that this result still represents very low penetration of the company's overall installed base and we continue to see a large up-sell opportunity ahead."**

82.    The allegations in paragraph 82 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 82. Ellertson denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 82, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

41

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**5.    Everbridge Acquires xMatters, the Company's Largest Acquisition Ever**

**83.    On April 6, 2021, Everbridge filed a Form 8-K announcing a definitive agreement for the acquisition of xMatters Holdings, Inc. ("xMatters") and the private placement of approximately $80.0 million in shares of Everbridge's common stock to certain stockholders of xMatters as partial consideration for the Acquisition. The closing of the xMatters acquisition took place on May 7, 2021. On that day, the Company filed an amendment to the Form 8-K to provide the total number of shares of common stock issued in connection with the acquisition. At closing, the Company acquired xMatters for a base consideration of $242.6 million, consisting of $178.1 million in cash and 555,332 newly issued shares of the Company's common stock.**

83.    The allegations in paragraph 83 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 83, except he admits that Everbridge's acquisition of all issued and outstanding shares of stock of xMatters closed on May 7, 2021, and that Everbridge filed a Form 8-K on April 6, 2021, and a Form 8-K/A Amendment on May 7, 2021, and refers to such filings for their complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Form 8-Ks and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings.

**84.    xMatters is an IT service reliability platform that helps rapidly deliver products at scale by automating workflows and ensuring digital infrastructure and applications are always working.**

84.    The allegations in paragraph 84 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 84.

> **a.** **Defendants Purposefully Downplay the Revenue Contribution from xMatters in Order to Hide Increasingly Stagnant Organic Revenue Growth**

**85.** **After the Company announced the xMatters acquisition, Defendants misled investors about how much revenue xMatters would contribute to Everbridge's overall revenue for the rest of 2021. The April 6, 2021 Form 8-K disclosed that the Company "anticipates *the partial year contribution to 2021 revenue will be approximately $9-11 million.*" Brickley confirmed this figure a month later, during the May 10, 2021 earnings call, when he said that "[o]ur expectations for the financial contribution from xMatters for the remainder of the year *have not changed from the view we provided about a month ago.*"**

85. The allegations in paragraph 85 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 85 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 85, except he admits that Everbridge filed a Form 8-K on April 6, 2021, and held an Earnings Call on May 10, 2021. Ellertson refers to the filing and transcript for their complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Form 8-K and the Earnings Call transcript and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**86.** **These statements were false and misleading because xMatters was going to contribute much more than $9-11 million to the Company's 2021 revenue. The true revenue contribution from xMatters for the rest of 2021 was *$20-25 million—more than double* the $9-11 million figure Defendants presented to the public.**

43

86.    The allegations in paragraph 86 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 86 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 86.

**87.    As explained below, Defendants *knew* that the Company's internal forecasting models showed that xMatters would contribute *$20-25 million for the rest of 2021*, but Defendants nonetheless told investors that it would *contribute only $9-11 million*. Defendants did this so they would have an extra $11-16 million in "hidden," undisclosed revenue from xMatters to add to the Company's overall revenue, making it appear as though the Company's organic revenue was growing more than it actually was.**

87.    The allegations in paragraph 87 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 87.

**88.    CW 1, an Everbridge employee since before the Class Period who had knowledge of Everbridge's M&A process and transactions, recalled that the projected revenue figures relayed to Wall Street for xMatters were an additional approximately $11 million for Everbridge in 2021. According to CW 1, however, realistically, the forecasts were presenting figures closer to *$20 - $25 million*.**

88.    The allegations in paragraph 88 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning alleged statements of CW 1 and otherwise denies the allegations.

**89.    CW 1 stated that she raised concerns regarding these discrepancies to her immediate superior, which were then passed on to Meredith and Brickley. CW 1 added that she expressed concerns *directly* to Meredith and Brickley as well, in the form of presentations and emails regarding the deal. CW 1 explained**

44

that she sent Meredith and Brickley emails in the lead up to the acquisition. **CW 1 added that she was not the only person to express concerns about the xMatters acquisition.**

89. The allegations in paragraph 89 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning alleged statements of CW 1 and otherwise denies the allegations.

**90.    According to CW 1, the rationale Meredith provided** *was that the discrepancy in figures was to "buffer" the declines in Everbridge's organic revenue.* **According to CW 1, the difference in revenue reported versus what was projected was to allow Everbridge to use the discrepancy to cover up for their overall performance.**

90. The allegations in paragraph 90 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning alleged statements of CW 1 and otherwise denies the allegations.

**91.    CW 1 added that based on the actual forecasts, it was "clear" that xMatters was not necessarily going to grow, which was contrary to what was being presented to the public.**

91. The allegations in paragraph 91 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning alleged statements of CW 1 and otherwise denies the allegations.

**92.    Defendants were able to mislead investors about revenue contributions from xMatters because Everbridge's financial statements do not**

**break out revenue from its acquisitions. Thus, it was impossible for investors to determine how much revenue came from xMatters in the Company's annual and quarterly reports.**

92. The allegations in paragraph 92 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 92 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 92.

**93. Moreover, at the time of the acquisition, Everbridge did not disclose historical financial statements or pro forma financial information for xMatters because, according to the Company, the acquisition was "not material and neither the investment in the assets nor the results of operations of th[is] acquisition[] w[as] significant to the Company's consolidated financial position or results of operations." Thus, there was no transparency into xMatters' historical yearly revenue such that an investor could forecast xMatters' future revenue on their own.**

93. The allegations in paragraph 93 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the alleged perceptions of investors and otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 93, except he admits that Everbridge filed a Form 10-Q on May 10, 2021, and refers to such filing for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Form 10-K and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings.

**94. Given the size and importance of the acquisition to the Company's growth, several analysts tried to get an update on the revenue contribution. For example, during the Company's May 10, 2021 earnings call, an analyst from J.P. Morgan Chase & Co. asked for clarification, stating:**

46

**Can you remind us more specifically, what was the expectation that you gave about a month ago for xMatters? Because if I take the beat and kind of add it to kind of the midpoint of what you had, it looks like you're including about $9 million for xMatters. Is that the right way to think about it? And that the guidance was really taking the beat, flowing it through to the full year and then adding xMatters to it?**

94.    The allegations in paragraph 94 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 94, except he admits that Everbridge hosted an Earnings Call on May 10, 2021, and refers to the call transcript for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the transcript and other transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**95.    Brickley responded by avoiding the question and highlighting other parts of the business that Defendants were "excited" about. Specifically, Brickley's "answer" to the question was:**

**So as David said, we did have a little bit of pull in. Our guidance for Q2 and for the full year, we're doing our usual, we're factoring in uncertainties that impact both revenue and profitability. And we were happy to see implementation success at certain Public Warning projects that results in some additional revenue in Q1. But really, the strength of Q1 and what we're excited about for the rest of the year reflects a reacceleration of non-COVID-related CEM and Public Warning activity, the increasing number of large deals that you saw. And in fact, subscription revenue grew more than 30%, both at Q end and on a trailing 12-month basis. And our current RPO grew 34%.**

**So these, on top of the existing backlog, which I referenced of signed but-not-yet-invoiced contracts, which is still measured in the midteens of millions of dollars, and which we hope to recognize each revenue into upcoming quarters. These give us a lot of**

47

**momentum as we look out towards the rest of the year. But as usual, when we're providing guidance as we've been doing for the past many quarters now, we're just – we're trying to provide a prudent outlook, and we hope to be able to continue our track record of outperforming expectations.**

95.     The allegations in paragraph 95 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 95, except he admits that Everbridge hosted an Earnings Call on May 10, 2021, and refers to the call transcript for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the transcript and other transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**96.     Shortly after this cryptic response, a separate analyst followed up on the J.P. Morgan Chase analyst's question and tried to get a straight answer from Brickley regarding the revenue contribution from xMatters. Specifically, the analyst asked, "Could you just help parse out the impact from the acquisition and the deferred revenue haircut versus just increasing growth investments?"**

96.     The allegations in paragraph 96 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 96, except he admits that Everbridge hosted an Earnings Call on May 10, 2021, and refers to the call transcript for its complete and accurate contents. Ellertson further denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the transcript and other transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**97.     Brickley responded in vague terms again, stating that:**

**Well, it's hard to do. We just closed the deal last Friday. We're certainly giving ourselves a wide birth here in the**

48

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**first quarter postacquisition on the bottom line. And – but you did see that for the full year, we raised a little bit. We do think that net-net, this acquisition is going to be accretive – squarely accretive to adjusted EBITDA in 2022.**

**So we just want to be prudent as we put the acquired company's financials through public accounting and— but we're optimistic that we're going to do this year what we said we were going to do, which is continue to make incremental improvements on the bottom line, whether that's adjusted EBITDA or non-GAAP net income or free cash flow. We anticipate gradual improvement versus last year, despite any purchase accounting impact to this acquisition.**

97.    The allegations in paragraph 97 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 97, except he admits that Everbridge hosted an Earnings Call on May 10, 2021, and refers to the call transcript for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the transcript and other transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**98.    Similarly, at the Company's next earnings call, on August 9, 2021, one analyst asked about how the acquired revenue from xMatters would impact the Company's total revenue for 2021. Specifically, the analyst asked:**

**Got it. And just one follow-up, if I may. On the xMatters acquisition, is it possible to get the xMatters contribution to the revenue for the quarter? And really given the positive commentary throughout the call, I mean, I guess,** *are you expecting much more than the $9 million to $11 million in total revenue that you guided for xMatters earlier this year***.**

98.    The allegations in paragraph 98 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks

49

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 98, except he admits that Everbridge hosted an Earnings Call on August 9, 2021. Ellertson refers to the August 9, 2021 Earnings Call transcript for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the August 9, 2021 earnings call, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

99. **Meredith refused to directly answer the analyst's questions, thereby falsely maintaining the misimpression that the prior $9-11 million estimate remained intact, and instead touted the smooth integration of xMatters and the strong sales of its products:**

> **Yes, Koji, it's a great question. So let me just give an update on what's going on with xMatters. One is, we are probably ahead of schedule on getting them integrated with the organization and we acquired a really tremendous team. They understand our space and the strategic fit of digital plus physical is resonating well with customers. And so based on our internal expectations, what we thought we'd do on sales, like we're doing better. And so we certainly are going to try to continue that.**

> *We are integrating.* **We did have an ITA business previously.** *So we're integrating those teams. They've already been integrated.* **So it is interesting in terms of which deals were already in the funnel, would we have won them anyway, not won them. So we're really not –** *and it's probably impossible to kind of break out going forward because we're putting the teams together.* **But our overall guidance reflects our view of the consolidated view going forward. And overall, we're very bullish on the acquisition and the results exceeded what we thought prior to having gone through Sarbanes-Oxley and closing the deal and all that.**

99. The allegations in paragraph 99 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks

50

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 99, except he admits that Everbridge hosted an Earnings Call on August 9, 2021. Ellertson refers to the August 9, 2021 Earnings Call transcript for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the August 9, 2021 earnings call, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**100. The above statements were false and misleading because they failed to correct the prior material misstatement that revenue contribution from xMatters for the remainder of the year would be $9-11 million. See ¶¶ 85-91, supra. The statements about the xMatters integration were false and misleading because, unbeknownst to investors, Everbridge was experiencing significant integration problems in connection with the xMatters acquisition, including losing a "tremendous" number of xMatters legacy employees. See ¶¶ 115-123, infra.**

100. The allegations in paragraph 100 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 100 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 100.

**101. Under Meredith's leadership, Everbridge engaged in a flurry of acquisitions. According to CW 1, the xMatters deal was "forced through" to "boost" revenue figures.**

101. The allegations in paragraph 101 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in the first sentence of paragraph 101, except he admits that Everbridge engaged in multiple acquisitions during the Class Period. Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding alleged statements of CW 1 and otherwise denies the allegations.

51

**102.    Armed with an additional $9-16 million in "hidden" revenue from xMatters, Defendants raised guidance for the full year 2021. Defendants had previously projected 2021 revenue at $342.1 million to 344.1 million. But after the xMatters acquisition, Defendants raised full year guidance to $358 million to $359.6 million, which would represent revenue growth of 32% to 33%. Thus, after the xMatters acquisition, the Company raised overall revenue guidance by approximately $15 million, of which they claimed only $9-11 million could be attributed to xMatters, meaning the Company claimed it was projecting an additional $4-6 million in organic revenue after the xMatters acquisition.**

102.    The allegations in paragraph 102 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 102, except he admits that on February 18, 2021, Everbridge disclosed projected 2021 revenue at $342.1 million to $344.1 million and that on May 10, 2021, Everbridge raised full year guidance to $358 million to $359.6 million, which would represent revenue growth of 32% to 33%.

**103.    What investors did not know, however, is that xMatters was going to contribute $20- 25 million in revenue—meaning *organic revenue actually was decreasing*, not increasing by $4-6 million. Had investors known the true xMatters revenue contribution number, they would have understood that the Company's organic revenue growth was decreasing, not increasing.**

103.    The allegations in paragraph 103 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 103.

**104.    But without this knowledge, analysts were comforted by Defendants' updated guidance, specifically its organic revenue guidance, and believed Everbridge's updated guidance reflected an increase in organic revenue. For example, on May 11, 2021, William Blair issued an analyst report which stated:**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**Everbridge guided revenue for 2021 in the range of $358.0 million to $359.6 million, representing an increase of 32.3% year-over-year at the midpoint. The updated guidance was above the Street mean estimate of $345.0 million, or 27.2% growth, and represents a raise relative to management's prior outlook of $342.1 million to $344.1 million.** *At the midpoint, this revised guidance reflects the upside generated in the first quarter as well as expected contribution from the recently closed xMatters acquisition, which is expected to generate between $9 million and $11 million in revenue in 2021. Excluding xMatters, the updated guidance implies roughly 29% organic growth at the midpoint compared to the midpoint of the company's prior outlook at 26.6% growth.*

104. The allegations in paragraph 104 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 104. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 104, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**105. Analysts were also comforted by Defendants' false assurances regarding how well the xMatters acquisition was going. For example, on August 10, 2021, Stephens issued an analyst report titled "2Q Beat & Raise; Record CEM Winds Highlight Increasing Enterprise Momentum." The report reiterated Stephen's overweight rating—meaning Stephens expected the stock's total return to be greater than the total return of the company's industry sector, on a risk adjusted basis, over the next 12 months—based on "a strong 2Q beat across the board and increased 2021 guidance."**

105. The allegations in paragraph 105 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 105. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

referenced in paragraph 105, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**106.    Stephens explained that they "were encouraged to hear that *xMatters is exceeding expectations* and resonating well w[ith] customers. Looking ahead, *we expect CEM momentum to continue into [second half of 2021]/2022* and see potential upside from xMatters/Public Warning activity." As a result, Stephens increased their price target for Everbridge's stock from $165 to $180 per share. Similarly, William Blair issued an analyst report on the same day stating that Everbridge's "strong revenue performance was driven by solid net adds, strong international performance, and *another quarter of records strength in CEM* and large deal wins."**

106.   The allegations in paragraph 106 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegation in paragraph 106. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 106, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**107. However, as explained in ¶¶ 115-23 infra, Everbridge was experiencing significant integration challenges that caused sales to drop off by mid- 2021.**

107.   The allegations in paragraph 107 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 107.

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**b.    Defendants Mislead Investors About Significant Problems Integrating xMatters into Everbridge**

**108.    Defendants also misled investors about the Company's efforts to integrate xMatters into Everbridge. Despite significant integration challenges described below, Defendants continuously touted the Company's integration efforts, making it appear as though the Company had not experienced any issues when they had.**

108.    The allegations in paragraph 108 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 108 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 108.

**109.    During the Company's August 9, 2021 earnings call, Meredith provided more details on how well the xMatters integration was going:**

> **So let me just give an update on what's going on with xMatters. One is, we are probably ahead of schedule on getting them integrated with the organization and we acquired a really tremendous team. They understand our space and the strategic fit of digital plus physical is resonating well with customers. And so based on our internal expectations, what we thought we'd do on sales, like we're doing better. And so we certainly are going to try to continue that.**
>
> *We are integrating. We did have an ITA business previously. So we're integrating those teams. They've already been integrated.*

109.    The allegations in paragraph 109 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 109, except he admits that Everbridge hosted an Earnings Call on August 9, 2021. Ellertson refers to the August 9, 2021 Earnings Call transcript for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing,

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

or characterization of Everbridge's statements on the August 9, 2021 earnings call, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

110. **During the Company's November 9, 2021 earnings call, Meredith once again touted the xMatters integration, stating:**

> **Obviously, with the xMatters platform, it was many years of development, really nice system, interface, functionality use cases, digital operations. It's – it really adds a lot of capability to what we were doing with our IT Alerting. And we're already doing integrations, right?** *So we've got that integrated now with our crisis management module, we've got it integrated with our employee communications module, integrated with our Visual Command Center.* **So people are seeing the value of it coming together over time and giving us really positive feedback.**

110. The allegations in paragraph 110 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 110, except he admits that on November 9, 2021, Everbridge hosted an Earnings Call. Ellertson refers to the November 9, 2021 Earnings Call transcript for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the November 9, 2021 earnings call, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

111. **Brickley also touted the xMatters integration during the November 9, 2021 earnings call. During the earnings call, Brickley reiterated that the xMatters integration went well, stating, "it's performing as expected.** *We've integrated the people. We've integrated the sales. We've integrated the funnels. We're integrating the technology.* **So we don't break it out. But so far, so good."**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

111.   The allegations in paragraph 111 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 111, except he admits that on November 9, 2021, Everbridge hosted an Earnings Call. Ellertson refers to the November 9, 2021 Earnings Call transcript for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the November 9, 2021 earnings call, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**112.  On November 30, 2021, Brickley attended the Credit Suisse Technology, Media & Telecom Conference. During the conference, Brickley responded to a question as to the status of the xMatters integration using similar language to what he had said during the November 9, 2021 Earnings Call, claiming that "[w]e've begun that technological integration. *We've locked up key hires, and we're retaining them. And so, so far, so good.*"**

112.   The allegations in paragraph 112 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 112, except he admits that on November 30, 2021, Everbridge attended the Credit Suisse Technology, Media & Telecom Conference. Ellertson refers to the November 30, 2021 Conference Call transcript for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements at the November 30, 2021 conference, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**113.  On November 30, 2021, the Company issued a press release "announc[ing] the launch of [Everbridge's] new Digital Operations Platform, helping organizations to save time and money, deliver continuous service uptime and maintain revenue streams. The new platform extends Everbridge's market-**

57

**leading CEM for Digital solution to further support customers' digital transformation efforts." According to the press release, "Everbridge's new Digital Operations Platform represents** *the seamless integration of the Everbridge and xMatters enterprise IT and cyber resilience solutions (following Everbridge's acquisition of xMatters in May 2021)."*

113.   The allegations in paragraph 113 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 113, except he admits that Everbridge issued a Press Release on November 30, 2021. Ellertson refers to Everbridge's Press Release issued on November 30, 2021, for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Press Release issued on November 30, 2021, and other press releases, and any factual inferences or legal conclusions Lead Plaintiff makes based on those press releases.

**114.   Meredith and Brickley's statements about the xMatters integration were false and misleading because, unbeknownst to investors, Everbridge was experiencing significant integration problems in connection with the xMatters acquisition, including losing a "tremendous" number of xMatters' legacy employees. Moreover, because Defendants spoke about the xMatters integration, including the retention of xMatters' employees, they had a duty to disclose information about the Company's integration challenges and reasonable investors would find that losing most of xMatters sales' staff would significantly alter the mix of available information about the Company.**

114.   The allegations in paragraph 114 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 114 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 114.

**115. A former employee described the xMatters integration as a disaster. CW 2—who worked at xMatters before the acquisition and remained at Everbridge after it, and who had knowledge of the integration team during the xMatters acquisition—described the integration of xMatters by Everbridge as a "[expletive] show."**

115. The allegations in paragraph 115 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning alleged statements of CW 2 and otherwise denies the allegations.

**116. CW 2 further explained that xMatters was Everbridge's largest acquisition to date and Everbridge failed to account for or consider how sophisticated a company of xMatters' size could be. CW 2 added that this contributed to the poor integration and redundant systems, [and] not only slowed down sales, but visibility became a "huge challenge," and it was necessary to manually consolidate reports.**

116. The allegations in paragraph 116 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning alleged statements of CW 2 and otherwise denies the allegations.

**117. The xMatters integration was a disaster for several reasons. According to CW 1, the xMatters deal was "forced through" to "boost" revenue figures.**

117. The allegations in paragraph 117 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations, except he lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning alleged statements of CW 1.

59

**118.   Moreover, Defendants' failure to integrate xMatters, along with the other Class Period acquisitions, overly complicated the Company's internal operating systems. According to CW 2, after the xMatters acquisition, Everbridge was now operating four different instances of Salesforce used by all different sales representatives. CW 2 added that in addition to Salesforce, Everbridge was also using two instances of NetSuite in addition to all their European systems.**

118.   The allegations in paragraph 118 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations, except Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding alleged statements of CW 2.

**119.   CW 2 explained that the convoluted nature of the systems "really slowed down sales."**

119.   The allegations in paragraph 119 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning alleged statements of CW 2 and otherwise denies the allegations.

**120.   Another factor contributing to the Company's poor sales performance was the fact that Everbridge failed to integrate xMatters' teams and people—most importantly, xMatters' sales staff. Indeed, Everbridge made no effort to integrate xMatters' salespeople into Everbridge. CW 2 added that certain groups and teams at Everbridge were "not amenable" and did not care to observe best practices and elected to use a "my way or the highway" approach.**

120.   The allegations in paragraph 120 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations, except Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding alleged statements of CW 2.

60

**121. As a result, most of xMatters' sales staff left after the acquisition. According to CW 2, who worked at both xMatters and Everbridge, Everbridge lost a "*tremendous*" number of legacy xMatters sales representatives, including the global sales leader.6 CW 2 had heard that the legacy xMatters staff was treated "poorly" and that some of the conduct resulted in lawsuits. CW 2 continued to say that xMatters was a "very familial" organization, a sentiment that Everbridge did not share.**

121. The allegations in paragraph 121 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations, except Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding alleged statements of CW 2.

**122. According to CW 2, there was "attrition" from the xMatters side following the acquisition as a result, and the quarter ending in September 2021 was "dismal" from an xMatters perspective. CW 2 added that xMatters' "didn't come close" to achieving their targets that quarter.Because the attrition caused a dismal third quarter, the majority xMatters' sales staff had already left Everbridge by September 30, 2021 (the last day of the third quarter).**

122. The allegations in paragraph 122 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning alleged statements of CW 2 and otherwise denies the allegations.

**123. Although the xMatters integration issues were severe, Everbridge had been experiencing similar integration challenges since the start of the Class Period. For example, CW 1 described Everbridge as "struggling with attrition" and integration of acquisitions. CW 1 explained that there were too many new people being integrated into Everbridge after numerous acquisitions beginning in 2019.**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

123.   The allegations in paragraph 123 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations, except Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding alleged statements of CW 1.

**E.   The Relevant Truth Regarding the Company's Slowing Organic Growth Slowly Emerges**

**124.   On December 9, 2021, Defendants partially revealed the true state of Everbridge through a press release containing two equally unexpected announcements. First, Everbridge announced that Defendant Meredith had resigned from his position as CEO and member of the Board of Directors. Second, Everbridge reduced revenue guidance for 2022 to 20-23%, well below the Company's history forecasts of 30% plus revenue growth.**

124.   Ellertson denies the allegations in paragraph 124 and refers to the December 9, 2021 press release for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the December 9, 2021 press release, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**125.   At the same time, however, Defendants insisted that the two announcements were unrelated, stating that "Meredith's resignation *[wa]s not related to any matter regarding the Company's financial condition* [or] reported financial results."**

125.   Ellertson denies the allegations in paragraph 125 and refers to the December 9, 2021 press release for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the December 9, 2021 press release, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**126.   On this news, Everbridge's stock price plummeted by more than *45%*, as investors began to understand the Company's revenue growth was**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**unsustainable. Indeed, multiple analysts subsequently downgraded their rating of Everbridge stock, with Northland Capital Markets, for example, noting that the revenue guidance was "a *notable change*" from "the company's historic guidance . . . that they should grow *30%+ organically*." Similarly, Barclays explained that they had "less confidence in growth visibility ahead" and noted that "[i]nvestors *will focus even more on organic growth going forward, and are unlikely to give EVBG the benefit of the doubt on future acquisitions*."**

126.  The allegations in paragraph 126 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 126. Ellertson refers to the public record for the price of Everbridge common stock for the relevant period referenced in paragraph 126. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 126, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**127.  However, Defendants did not disclose the full truth, and investors were left to wonder about Meredith's abrupt departure and its possible relation to the Company's slowing, unexpected, and therefore worrisome organic revenue growth. For example, on December 13, 2021, J.P. Morgan issued an analyst report stating, "there remain a lot more questions than answers at the moment." Chief among those questions was "[w]hy is the CEO really leaving," and "does the timing of the CEO departure actually indicate concerns about growth potential over the next year?"**

127.  Ellertson denies the allegations in paragraph 127. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 127, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

63

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**128. After two more months of "more questions than answers," on February 24, 2022, investors finally learned the full truth about the Company's slowing revenue growth. On that date, Defendants issued a press release announcing Everbridge was lowering its full year 2022 guidance once again, this time to 15-17%, nearly half the usual 30% plus revenue growth.**

128. Ellertson denies the allegations in paragraph 128, except he admits that Everbridge filed a Form 8-K on February 24, 2022. Ellertson refers to Everbridge's Form 8-K filed on February 24, 2022, for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Form 8-K filed on February 24, 2022, and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings.

**129. Moreover, the press release also explained that Defendants were "taking decisive actions to streamline, integrate and reduce complexity in [Everbridge's] key offerings, which we expect to drive sustainable growth in the years ahead."**

129. Ellertson denies the allegations in paragraph 129 and refers to Everbridge's Form 8-K filed on February 24, 2022, for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Form 8-K filed on February 24, 2022, and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings.

**130. Co-CEO Vernon Irvin clarified this statement during the Company's earnings call on the same day, stating that "beginning in December," i.e., when the Company announced Meredith's abrupt departure as CEO, "our management team, together with the Board, conducted a comprehensive review of our strategy and operations" which looked at "the number of acquisitions completed in 2020 and 2021" and how those acquisitions were integrated into Everbridge.**

64

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

130.   The allegations in paragraph 130 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 130. Ellertson refers to the February 24, 2022 Earnings Call transcript for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the Earnings Call transcript and other public transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**131.   Indeed, according to Irvin, that comprehensive Everbridge management review concluded that "certain *acquired technologies*" created a "barrier to upsell and cross-sell *from increased complexity, and incomplete integrations*." He further stated that "the number of *acquisitions completed in 2020 and 2021*," along with their products and businesses, "created incremental product line *complexity that produce integration challenges* and have complicated our go- to-market efforts."**

131.   The allegations in paragraph 131 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 131. Ellertson refers to the February 24, 2022 Earnings Call transcript for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the Earnings Call transcript and other public transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**132.   Based on this incomplete integration, Irvin explained that it was "harder for . . . [Everbridge's] enterprise sales organization to execute on [its] land, adopt and expand sales strategies." Similarly, Brickley stated during the earnings call that the flurry of acquisitions "created complexity for the business seen in the product, back office and go-to-market headwinds *that are obstacles to sales growth*." Brickley further explained that "we were well down a path of selling dozens of solutions that *were not always tightly integrated*. We were selling**

65

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

them to multiple buyers. And as [Irvin] said, *that was confusing to customers and to our sellers*."

132.    The allegations in paragraph 132 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 132. Ellertson refers to the February 24, 2022 Earnings Call transcript for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the Earnings Call transcript and other public transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**133.    As a result, Irvin explained that the Company was taking immediate action to "paus[e] material new M&A and instead prioritiz[e] development efforts to *focus on accelerating product integrations across our existing acquired assets*."**

133.    The allegations in paragraph 133 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 133. Ellertson refers to the February 24, 2022 Earnings Call transcript for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the Earnings Call transcript and other public transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**134.    On this news, Everbridge's stock price fell more than 33%, closing at $30.61 per share on February 25, 2022, as investors finally understood that, the Company failed to integrate them, causing a drop off of organic sales to such an extent that it could no longer be camouflaged with the revenues from additional acquisitions.**

134.    The allegations in paragraph 134 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the

allegations in paragraph 134. Ellertson refers to the public record for the price of Everbridge common stock for the relevant period referenced in paragraph 134.

**135.   Shortly after the full truth was revealed, Barclays noted that "*some investors were holding out hope that the CEO departure was separate from growth concerns*." But this could no longer be denied. Indeed, as William Blair noted, the "*incomplete integrations* and the accumulated portfolio of somewhat disjointed point solutions that *resulted from this rapid pace of M&A* was creating difficulties in the company's land-and-expand motion from the perspective of both sellers and buyers."**

135.   The allegations in paragraph 135 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 135. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 135, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

## V.   <u>DEFENDANTS' FALSE AND MISLEADING STATEMENTS</u>

**136.   Lead Plaintiff alleges that Defendants' statements highlighted in bold and italics within this section were knowingly and materially false and misleading and/or omitted to disclose material information of which Defendants were aware or were reckless in not knowing. As alleged herein, such statements artificially inflated or maintained the price of Everbridge's publicly trade common stock and operated as a fraud or deceit on all persons and entities that purchased common stock during the Class Period.**

136.   The allegations in paragraph 136 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 136.

**137.    Throughout the Class Period, Defendants made a series of false and misleading statements regarding: (i) the extent to which the revenues it obtained from those acquired companies were being used to hide increasingly lower organic revenue growth; and (ii) the significant problems Everbridge was facing as a result of Defendants' failure to integrate the acquired companies. At the same time, Defendants omitted material facts indicating that the Company's revenue growth was unsustainable and would be short-lived due to incomplete integrations and increased complexity.**

137.    The allegations in paragraph 137 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 137.

A.    February 18, 2020 Earnings Call

**138.    On February 18, 2020, Everbridge held an earnings call to discuss the Company's fourth quarter and full year ended December 31, 2019 (the "Fourth Quarter and Full Year 2019 Earnings Call"). During that call, one analyst expressed uncertainty about the Company's organic revenue growth, asking Ellertson the following question:**

**But if I look at your revenue guidance, it seems like you're guiding below the 30% mark organically, which will be below the commentary that Jaime spoke about earlier for sustainable 30% growth with M&A in addition to that. Are there any one- timers that we should be thinking about or just timing of revenue recognition that are impacting fiscal '20?**

138.    Ellertson denies the allegations in paragraph 138, except he admits that Everbridge hosted an Earnings Call on February 18, 2020. Ellertson refers to the February 18, 2020 Earnings Call transcript for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of any statements on the Earnings Call transcript and other public transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

68

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**139.    Ellertson stated that the Company had already integrated NC4 into its product offering. Specifically, Ellertson stated:**

> **And as I said earlier, as we head into 2020, *we've really integrated NC4 and Risk Center into our entire product offering*. And so it's difficult to break that out.**

139.    Ellertson denies the allegations in paragraph 139, which purports to characterize and selectively quote contents of Everbridge's February 18, 2020 Earnings Call. Ellertson refers to the transcript of Everbridge's February 18, 2020 Earnings Call for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of statements purportedly made by him, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**140.    Ellertson's statement about integrating NC4 into Everbridge's product offering was false and misleading because starting with NC4, during Meredith's tenure, Defendants' failure to integrate the acquisitions, caused significant integration challenges throughout the Class Period. For example, CW 1 explained that there were too many new people being integrated into Everbridge after numerous acquisitions beginning in 2019. CW 1 added that these employees were spread across all different time zones, which made it difficult to get everyone on the same page and then, once progress was being made, another company would be acquired and Everbridge would have to go through the process all over again. CW 1 also cited problems integrating the acquired companies themselves into Everbridge's business.**

140.    Ellertson denies the allegations in paragraph 140, except Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding alleged statements by CW 1.

69

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**B.    March 23, 2020 Corporate Analyst and Investor Meeting**

**141.    On March 23, 2020, Everbridge hosted its Corporate Analyst and Investor Meeting, which was attended by several Everbridge officers and employees, including the Individual Defendants. During the conference, Meredith touted the growth of the Company's CEM platform with the addition of the recent Connexient and CNL Software acquisitions. Meredith stated:**

> **Secondly, we're continuing to innovate around Critical Event Management with significant new capabilities in CEM, specifically related to IoT. *And if you look at the acquisitions that we have done with Connexient, one2many and others, we now have over 225 out- of-the-box integrations. So we now truly can be that unified enterprise-wide operating system* to allow you to operate across your business, your organization globally, and that's very powerful and that's very sticky.**

141.    The allegations in paragraph 141 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 141, except he admits that on March 23, 2020, Everbridge hosted a Corporate Analyst and Investor Meeting. Ellertson refers to the transcript of the March 23, 2020 Corporate Analyst and Investor Meeting for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of the contents of the Corporate Analyst and Investor Meeting transcript, and any factual inferences or legal conclusions Lead Plaintiff makes based on those contents.

**142.    Meredith's statement was false and misleading because it created an impression that the Company had integrated the acquired companies, including Connexient, into the Company's CEM platform when they had not.**

142.    The allegations in paragraph 142 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 142.

**143. During the Class Period, Defendants engaged in a flurry of acquisition but failed to integrate these acquisitions. Thus, contrary to Meredith's statements, the recent acquisitions did not make Everbridge a "unified enterprise-wide operating system."**

143.   Ellertson denies the allegations in paragraph 143. Ellertson refers to the transcript of the March 23, 2020 Corporate Analyst and Investor Meeting for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of the contents of the Corporate Analyst and Investor Meeting transcript, and any factual inferences or legal conclusions Lead Plaintiff makes based on those contents.

**C.   The April 6, 2021 xMatters Acquisition Press Release**

**144.   On April 6, 2021, the Company issued a press release on Form 8-K announcing that Everbridge had acquired xMatters for a purchase price of approximately $240 million in cash and stock. The press release stated:**

> **Everbridge anticipates the partial year contribution to 2021 revenue will be approximately $9-11 million, after considering the material impact of purchase accounting and the associated deferred revenue haircut. Everbridge expects that the xMatters acquisition will have minimal impact to the company's adjusted EBITDA in 2021 and will become accretive to the company's adjusted EBITDA in 2022. The company will provide an update to its full-year guidance on its next earnings call.**

144.   The allegations in paragraph 144 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 144, except he admits that Everbridge filed a Form 8-K on April 6, 2021. Ellertson refers to such filing for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Form 8-K and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings.

71

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**145. This statement was false and misleading because the revenue contribution from xMatters for the rest of 2021 was actually $20-25 million—the high end of which was nearly triple the $9-11 million figure Defendants presented to the public. Defendants knew that xMatters would contribute $20-25 million for the rest of 2021, but purposefully downplayed the revenue contribution from xMatters to mask the Company's slowing organic revenue. By claiming xMatters would contribute $9-11 million, when it would actually contribute $20-25 million, Defendants had an extra $11-16 million in "hidden," undisclosed revenue from xMatters that they could add to the Company's overall revenue, making it appear as though the Company's revenue was growing organically far more than it actually was.**

145. The allegations in paragraph 145 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 145 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 145.

**146. CW 1, who had knowledge of Everbridge's M&A process and transactions, stated that Everbridge ended up paying 4.0 – 4.5x the revenue for xMatters, in a deal that *was "forced through" to "boost" revenue figures*. Specifically, CW 1 recalled that the projected revenue figures relayed to Wall Street for xMatters were an additional approximately $11 million for Everbridge in 2021. According to CW 1, however, realistically, the forecasts were presenting figures closer to *$20 - $25 million*. CW 1 added that based on the actual forecasts, it was "clear" that xMatters was not necessarily going to grow, which was contrary to what was being presented to the public.**

146. The allegations in paragraph 146 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the

72

allegations concerning alleged statements by CW 1 and otherwise denies the allegations.

**147.   CW 1 stated that she raised concerns regarding these discrepancies to her immediate superior, which were then passed on to Meredith and Brickley. CW 1 added that she expressed concerns *directly* to Meredith and Brickley as well, in the form of presentations and emails regarding the deal. CW 1 explained that she sent Meredith and Brickley emails in the lead up to the acquisition. CW 1 added that she was not the only person to express concerns about the xMatters acquisition.**

147.   The allegations in paragraph 147 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning alleged statements by CW 1 and otherwise denies the allegations.

**148.   According to CW 1, the rationale Meredith provided *was that the discrepancy in figures was to "buffer" the declines in Everbridge's organic revenue*. According to CW 1, the difference in revenue reported versus what was projected was to allow Everbridge to use the discrepancy to cover up for their overall performance.**

148.   The allegations in paragraph 148 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning alleged statements by CW 1 and otherwise denies the allegations.

**D.    The May 10, 2021 Earnings Call**

**149.   On May 10, 2021, the Company filed its Form 10-Q for the quarterly period ended March 31, 2021 (the "2021 First Quarter Form 10-Q").**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

149.   The allegations in paragraph 149 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson admits Everbridge filed a Form 10-Q on May 10, 2021.

**150.   During the May 10, 2021 Earnings Call, Brickley provided updated guidance for the rest of 2021 based on the recent xMatters acquisition. The updated guidance raised the Company's full year revenue estimate to represent growth of 32% to 33%. Specifically, Brickley explained:**

> **Our updated guidance for 2021 considers the impact of our acquisition of xMatters. Having just completed the transaction on Friday, *Our* [sic] *expectations for the financial contribution from xMatters for the remainder of the year have not changed from the view we provided about a month ago*.**
>
> **. . .**
>
> **For the second quarter, we anticipate revenue of between $83.7 million and $84.1 million, representing growth of 28% to 29%.**
>
> **. . .**
>
> **"For the full year, we now expect revenue to be in the range of $358 million to $359.6 million, representing growth of 32% to 33%."**

150.   The allegations in paragraph 150 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 150, except he admits that Everbridge hosted an Earnings Call on May 10, 2021, and refers to the call transcript for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the May 10, 2021 Earnings Call transcript and other transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**151.    This statement was false and misleading because it failed to correct the prior material misstatement that revenue contribution from xMatters for the remainder of the year would be $9-11 million. See ¶¶ 144-148, supra.**

151.    The allegations in paragraph 151 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 151 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 151.

**152.    Analysts were comforted by Defendants' updated guidance, specifically its organic revenue guidance, and believed that the Company could continue its strong trajectory. For example, on May 11, 2021, William Blair issued an analyst report reiterating its outperform rating on Everbridge's stock. In the report, William Blair noted that, "[e]xcluding xMatters, the updated guidance implies roughly 29% organic growth at the midpoint compared to the midpoint of the company's prior outlook at 26.6% growth." On June 3, 2021, William Blair issued another analyst report stating "[t]he Company has been putting up strong numbers post-pandemic and we believe this trajectory will continue in the coming quarters."**

152.    The allegations in paragraph 152 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 152. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 152, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

### E.    The August 9, 2021 Earnings Call

**153.    On August 9, 2021, the Company held an earnings call discussing the Company's second quarter 2021 financial results (the "August 9, 2021 Earnings Call"). During the call, an analyst asked about the xMatters acquisition and how**

75

the acquired revenue would impact the Company's total revenue moving forward. Specifically, the analyst asked:

> **Got it. And just one follow-up, if I may. On the xMatters acquisition, is it possible to get the xMatters contribution to the revenue for the quarter? And really given the positive commentary throughout the call, I mean, I guess, are you expecting much more than the $9 million to $11 million in total revenue that you guided for xMatters earlier this year.**

153. The allegations in paragraph 153 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 153, except he admits that Everbridge hosted an Earnings Call on August 9, 2021. Ellertson refers to the August 9, 2021 Earnings Call transcript for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the August 9, 2021 Earnings Call, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**154.    In response, Meredith refused to give a revenue contribution number from xMatters, but instead touted the integration of xMatters and the strong sales of its products:**

> **Yes, Koji, it's a great question. So let me just give an update on what's going on with xMatters. One is, we are probably ahead of schedule on getting them integrated with the organization and we acquired a really tremendous team. They understand our space and the strategic fit of digital plus physical is resonating well with customers. And so based on our internal expectations, what we thought we'd do on sales, like we're doing better. And so we certainly are going to try to continue that.**
>
> ***We are integrating.*** **We did have an ITA business previously.** ***So we're integrating those teams. They've already been integrated.*** **So it is interesting in terms of**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**which deals were already in the funnel, would we have won them anyway, not won them. So we're really not – and it's probably impossible to kind of break out going forward because we're putting the teams together. But our overall guidance reflects our view of the consolidated view going forward. And overall, we're very bullish on the acquisition and the results exceeded what we thought prior to having gone through Sarbanes-Oxley and closing the deal and all that.**

154. The allegations in paragraph 154 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 154. Ellertson refers to the August 9, 2021 Earnings Call transcript for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the August 9, 2021 Earnings Call, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**155. The statements in ¶ 154 were false and misleading because they led investors to believe that the xMatters integration was going well and that Everbridge had already integrated xMatters' teams and employees, when in reality, the xMatters integration was not going well and Everbridge had lost a "tremendous" number of xMatters employees. Contrary to Meredith's statement that the xMatters teams had "already been integrated," most xMatters employees left Everbridge after the acquisition. According to CW 2, who worked at both xMatters and Everbridge, Everbridge lost a "*tremendous*" number of legacy xMatters sales representatives, including the global sales leader.**

155. The allegations in paragraph 155 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 155 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 155, except he lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

77

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

regarding alleged statements by CW2. Ellertson refers to the August 9, 2021 Earnings Call transcript for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the August 9, 2021 Earnings Call, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**156.    The statements in ¶ 154 were false and misleading for the additional reason that they led investors to believe that the Company was already integrating xMatters when they were not.**

156.    The allegations in paragraph 156 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 156 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 156.

### F.    The November 9, 2021 Earnings Call

**157.    On November 9, 2021, the Company held an earnings call discussing the Company's third quarter 2021 financial results (the "November 9, 2021 Earnings Call"). During the call, Meredith represented that, "[t]here's an increased awareness of the importance of CEM. And we're doing a better job of bundling together our different CEM capabilities into deals, and that's manifesting itself in the ASPs [average selling prices] and the large deals."**

157.    The allegations in paragraph 157 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 157, except he admits that on November 9, 2021, Everbridge hosted an Earnings Call. Ellertson refers to the November 9, 2021 Earnings Call transcript for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the November 9, 2021 Earnings Call, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

78

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**158. Specifically addressing the xMatters acquisition, Meredith further represented:**

> **Obviously, with the xMatters platform, it was many years of development, really nice system, interface, functionality use cases, digital operations. It's – it really adds a lot of capability to what we were doing with our IT Alerting. And we're already doing integrations, right?** *So we've got that integrated now with our crisis management module, we've got it integrated with our employee communications module, integrated with our Visual Command Center.* **So people are seeing the value of it coming together over time and giving us really positive feedback.**

158. The allegations in paragraph 158 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 158, except he admits that on November 9, 2021, Everbridge hosted an Earnings Call. Ellertson refers to the November 9, 2021 Earnings Call transcript for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the November 9, 2021 Earnings Call, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**159. During the November 9, 2021 Earnings Call, Brickley reiterated that the xMatters integration went well, stating, "it's performing as expected. *We've integrated the people. We've integrated the sales. We've integrated the funnels. We're integrating the technology.* So we don't break it out. But so far, so good."**

159. The allegations in paragraph 159 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 159, except he admits that on November 9, 2021, Everbridge hosted an Earnings Call. Ellertson refers to the November 9, 2021 Earnings Call

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

transcript for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the November 9, 2021 Earnings Call, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**160.    Meredith and Brickley's statements in ¶¶ 158-59 about the xMatters integration were false and misleading because, unbeknownst to investors, Everbridge was experiencing significant integration problems in connection with the xMatters acquisition, including losing a "tremendous" number of xMatters legacy employees by August 2021. See ¶¶ 115-123, supra. Moreover, because Defendants spoke about the xMatters integration, including the retention of xMatters employees, they had a duty to disclose information about the Company's integration challenges and reasonable investors would find that losing most of xMatters' sales staff would significantly alter the mix of available information about the Company.**

160.    The allegations in paragraph 160 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 160 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 160.

**G.    The November 30, 2021 Credit Suisse Conference**

**161.    On November 30, 2021, Brickley attended the Credit Suisse Technology, Media & Telecom Conference. During the conference, Brickley responded to a question as to the status of the xMatters integration using similar language to what he had said during the November 9, 2021 Earnings Call, claiming that "[w]e've begun that technological integration. *We've locked up key hires, and we're retaining them. And so, so far, so good.*"**

161.    The allegations in paragraph 161 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

allegations in paragraph 161, except he admits that on November 30, 2021, Everbridge attended the Credit Suisse Technology, Media & Telecom Conference. Ellertson refers to the November 30, 2021 Conference Call transcript for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the November 30, 2021 Conference Call, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**162.   This statement was false and misleading because for the reasons set forth in ¶¶ 155- 56, 160, supra.**

162.   The allegations in paragraph 162 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 162.

**H.      The November 30, 2021 Press Release**

**163.   On November 30, 2021, the Company issued a press release "announc[ing] the launch of [Everbridge's] new Digital Operations Platform, helping organizations to save time and money, deliver continuous service uptime and maintain revenue streams. The new platform extends Everbridge's market-leading CEM for Digital solution to further support customers' digital transformation efforts." According to the press release, "Everbridge's new Digital Operations Platform represents *the seamless integration of the Everbridge and xMatters enterprise IT and cyber resilience solutions (following Everbridge's acquisition of xMatters in May 2021)*."**

163.   The allegations in paragraph 163 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 163, except he admits that Everbridge issued a Press Release on November 30, 2021. Ellertson refers to Everbridge's Press Release issued on November 30, 2021, for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Press

81

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

Release and other press releases, and any factual inferences or legal conclusions Lead Plaintiff makes based on those press releases.

**164.   This statement was false and misleading because the xMatters integration was not "seamless" as set forth in ¶¶ 155-56, 160, supra.**

164.   The allegations in paragraph 164 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 164 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 164.

VI.   **THE TRUTH EMERGES**

**165.   The truth and foreseeable risks concealed by Defendants' misconduct, misleading statements, and omissions during the Class Period were partially revealed and/or partially materialized on December 9, 2021. However, the truth and foreseeable risks were not fully revealed and/or fully materialized until February 24, 2022.**

165.   The allegations in paragraph 165 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 165.

**A.   The Truth is Partially Revealed on December 9, 2021 When Defendants Disclose Meredith's Abrupt Departure and Lower Revenue Guidance, But Investors Still Question How the Two are Related**

**166.   The truth and foreseeable risks concealed by Defendants' misconduct, misleading statements, and omissions during the Class Period were partially revealed and/or partially materialized after the markets closed on December 9, 2021, when Defendants issued a press release that contained two unexpected announcements.**

166.   The allegations in paragraph 166 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the

82

allegations in paragraph 166, except he admits that Everbridge filed a press release on December 9, 2021. Ellertson refers to the December 9, 2021 press release for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the December 9, 2021 press release, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**167. First, Everbridge announced that Meredith had resigned effective immediately from his position as CEO and member of the Board of Directors. However, the Company provided no explanation for his decision. The Company announced that it would immediately establish an Office of the CEO and begin to transition leadership to Defendant Brickley and Irvin, Everbridge's Executive Vice President and Chief Revenue Officer, as interim Co-CEOs pending the appointment of a permanent CEO.**

167. The allegations in paragraph 167 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 167. Ellertson refers to the December 9, 2021 press release for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the December 9, 2021 press release, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**168. The second announcement from the same press release was Everbridge's reduction of revenue guidance for 2022 to 20%-23% growth, well below its historic forecasts of 30% plus revenue growth.**

168. The allegations in paragraph 168 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 168. Ellertson refers to the December 9, 2021 press release for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the December 9, 2021

83

press release, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**169.   As a direct and proximate result of this partial corrective disclosure, the price of Everbridge's common stock fell $52.37 per share, or more than 45.4%, to close at $63.00 per share on December 10, 2021.**

169.   The allegations in paragraph 169 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 169 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 169. Ellertson refers to the public record for the price of Everbridge common stock for the relevant period referenced in paragraph 169.

**170.   Indeed, analysts were shocked by Meredith's "abrupt" resignation. For example, on December 10, 2021, Bank of America Securities issued an analyst report stating: "We find the resignation of David Meredith as CEO and a board member as *abrupt and unexpected*, particularly given the business is still working through the large and transformative acquisition of xMatters from earlier this year and the relatively good results in 2021 thus far." Similarly, on the same day, Northland Capital Markets issued an analyst report stating the resignation "was fairly abrupt and without a transition plan."**

170.   The allegations in paragraph 170 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 170 and further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 170, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**171.   Analysts were also shocked by the lower revenue guidance for 2022. For example, in their December 10, 2021 analyst report, Bank of America went**

84

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**on to say, "[m]ore concerning to us is the 2022 prelim[inary] revenue guidance *that suggests a sharp revenue growth deceleration* in 2022 from 2021 (+20-23% vs. our +36% 2021 forecast)." Northland Capital Markets commented that the revenue guidance was "a *notable change*" from "the company's historic guidance . . . that they should grow 30%+ organically." Northland Capital Markets also stated that the lower revenue guidance "seems a little at odds with macro trends" that would be expected to benefit Everbridge, "such as a continued barrage of critical events, the uncertainty remaining around Covid, strong public safety investments in other areas, digital transformation plans, and the rise of the CSO within companies."**

171. The allegations in paragraph 171 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 171 and further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 171, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**172. However, the Company did not disclose the full truth regarding the Company's slowing revenue growth. The Company's December 9, 2021 press release misled investors by claiming that "Meredith's resignation [wa]s not related to any matter regarding the Company's financial condition [or] reported financial results." This statement was false and misleading because it led investors to believe that Meredith's departure was not related to the Company's growth deceleration in 2022. In reality, Meredith's resignation was directly related to the Company's slowing growth, as under Meredith's leadership, the Company had chased acquisitions to bolster its growth numbers but failed to integrate them, causing a drop off in sales to such an extent that it could no longer**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**be camouflaged with the revenues from additional acquisitions, leading to a significant growth deceleration in 2022.**

172.    The allegations in paragraph 172 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 172 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 172, except admits that Everbridge filed a press release on December 9, 2021. Ellertson refers to the December 9, 2021 press release for its complete and accurate contents. Ellertson further denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the December 9, 2021 press release, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**173.    As a result of Defendants' false assurances that Meredith's departure was unrelated to lower revenue guidance, investors did not yet understand what caused Everbridge's slowing revenue growth. As Raymond James explained in their December 16, 2021 analyst report, "investors are still trying to dissect what's driving the organic deceleration in 2022." J.P. Morgan also questioned whether Meredith's abrupt departure was related to the Company's slowing revenue growth. On December 13, 2021, J.P. Morgan issued an analyst report stating, "there remain a lot more questions than answers at the moment." Most importantly, J.P. Morgan asked "[w]hy is the CEO really leaving" and "does the timing of the CEO departure actually indicate concerns about growth potential over the next year?"**

173.    Ellertson denies the allegations in paragraph 173. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 173, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**174.    J.P. Morgan noted that Meredith's abrupt departure was at odds with the continued positive gloss that he and the other Defendants had put on Everbridge's growth potential throughout the Class Period. Moreover, by resigning as CEO, Meredith left on the table approximately 55% of the remaining unvested performance-based compensation. This performance-based compensation was tied to the Company's annual growth rate over the 12 quarters ended on September 30, 2022. Meredith's departure raises the question of whether he left the compensation on the table because he knew that revenue was declining dramatically and could no longer be propped up with further acquisitions, thereby diminishing the value of the performance-based compensation. JP Morgan made the cogent observation that, "[w]hat we found is that [Meredith] is leaving a decent amount on the table with his departure. If the decision was solely his to make, it does raise the question on whether he was lacking confidence in earning the remaining performance-based incentive." That Meredith later took the position of CEO of privately held Boomi, an intelligent connectivity and automation company, does not lessen the saliency of that question.**

174.    Ellertson denies the allegations in paragraph 174 to the extent they are related to him and otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 174, except he admits that, on January 31, 2022, Meredith took the position of CEO of Boomi. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 174, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**B.    The Full Truth is Fully Revealed on February 24, 2022 When Defendants Lower Revenue Guidance Even Further and Admit the Company had not Integrated its Acquisitions During Meredith's Tenure as CEO**

**175.    Investors finally got answers to their questions on February 24, 2022, when the truth and foreseeable risks concealed by Defendants' misconduct, misleading statements, and omissions during the Class Period were fully revealed and/or fully materialized. After the market closed on that day, Everbridge revealed the full truth to investors about its slowing organic growth.**

175.    The allegations in paragraph 175 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 175. Ellertson refers to Everbridge's Form 8-K filed on February 24, 2022, for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the Form 8-K filed on February 24, 2022, and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings.

**176.    On February 24, 2022, the Company issued a press release which once again lowered 2022 revenue guidance, this time forecasting full year revenue growth at 15% to 17%. The press release also contained a statement from Co-CEO Irvin, stating "[w]e are taking decisive actions to streamline, integrate and reduce complexity in our key offerings, which we expect to drive sustainable growth in the years ahead."**

176.    The allegations in paragraph 176 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 176, except he admits that Everbridge filed a press release on February 24, 2022. Ellertson refers to Everbridge's press release filed on February 24, 2022, for its complete and accurate contents, and further denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the press release filed

88

on February 24, 2022, and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings.

**177. On the same day, Everbridge held the February 24, 2022 Earnings Call, during which Everbridge officers further explained why these "decisive actions" were being taken, including disclosing for the first time material facts that were completely in opposition with Defendants' representations throughout the Class Period.**

177. The allegations in paragraph 177 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 177, except he admits that Everbridge hosted an Earnings Call on February 24, 2022. Ellertson refers to the February 24, 2022 Earnings Call transcript for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the Earnings Call transcript and other public transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**178. Irvin began by saying that "beginning in December," i.e., when Meredith resigned as CEO, "our management team, together with the Board, conducted a comprehensive review of our strategy and operations." The review, however, was apparently focused on matters that, during the Class Period, Defendants had discussed extensively with investors and analysts, independently and in answer to questions posed to them, and as to which they were already intimately familiar. For example, the review looked at "the number of acquisitions completed in 2020 and 2021" and how those acquisitions were integrated into Everbridge.**

178. Ellertson denies the allegations in paragraph 178. Ellertson refers to the February 24, 2022 Earnings Call transcript for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

on the Earnings Call transcript and other public transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**179. Irvin stated that this review resulted in the conclusion that "certain acquired technologies" had created a *"barrier to upsell and cross-sell from increased complexity, and incomplete integrations* and pushed out demand for travel-related solutions, as well as smaller deal size for international public warning wins that are having adverse impacts on business, our go-to market strategy and sales organization." He further stated that "the number of acquisitions completed in 2020 and 2021," along with their products and businesses "have created *incremental product line complexity that produce integration challenges and have complicated our go-to market efforts*." With incomplete integration, Irvin explained that it was "harder for . . . [Everbridge's] enterprise sales organization to execute on [its] land, adopt and expand sales strategies."**

179. The allegations in paragraph 179 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 179. Ellertson refers to the February 24, 2022 Earnings Call transcript for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the Earnings Call transcript and other public transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**180. Defendant Brickley expanded upon these revelations, stating that the acquisitions in 2020 and 2021 "have created complexity for the business seen in product, back office and go-to market headwinds t*hat are obstacles to sales growth*. Removing these headwinds by accelerating integration work will be our focus in the first half of this year." He further elaborated on that complexity caused by the flurry of acquisitions in 2020 and 2021, explaining that "we were well down a path of selling dozens of solutions that *were not always tightly***

90

*integrated*. **We were selling them to multiple buyers. And as Vernon said,** *that was confusing to customers and to our sellers*.**"**

180.   The allegations in paragraph 180 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 180. Ellertson refers to the February 24, 2022 Earnings Call transcript for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the Earnings Call transcript and other public transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**181.   As a result, Irvin explained that the Company was taking immediate action to "paus[e] material new M&A and instead prioritiz[e] development efforts to** *focus on accelerating product integrations across our existing acquired asset***s." In addition, Everbridge stated that it intends to "simplif[y] our product offerings, moving from several dozen individual product–point products to focus on 4 strategic CEM solutions." In particular, the Company will "deemphasize certain smaller, nonstrategic products that don't fit cleanly into our CEM and public warning focus areas.** *While these products do deliver some stand-alone revenue, they are a distraction to our primary focus and negatively impact our sellers' overall productivity*.**"**

181.   The allegations in paragraph 181 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 181. Ellertson refers to the February 24, 2022 Earnings Call transcript for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the Earnings Call transcript and other public transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**182. On this news, Everbridge's common stock price fell an additional $15.68 per share, or approximately 34%, to close at $30.61 per share on February 25, 2022.**

182. The allegations in paragraph 182 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 182 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 182. Ellertson refers to the public record for the price of Everbridge common stock for the relevant period referenced in paragraph 182.

**183. Analysts were once again shocked by Everbridge's lower guidance, which was substantially lower than the guidance provided on December 9, 2021. On February 25, 2022, William Blair published an analyst report stating that "Everbridge provided updated full year 2022 guidance, with lower-than-expected revenue" which William Blair explained was "below the Street mean estimate of ... 21.8% growth" and "*notably below* the initial outlook provided in December 2021." William Blair further explained that Everbridge's "*incomplete integrations and the accumulated portfolio of somewhat disjointed point solutions that resulted from this rapid pace of M&A was creating difficulties in the company's land-and-expand motion from the perspective of both sellers and buyers.*"**

183. The allegations in paragraph 183 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 183 and further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 183, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**184. Moreover, investors finally understood that Meredith's departure was connected to the growth concerns. Barclays issued an analyst report on**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**February 25, 2022, stating that Everbridge "guided FY22 revenues below expectations again, as we believe some investors were holding out hope that the CEO departure was separate from growth concerns." These investors could no longer hold out hope— it was clear that Meredith's departure was connected to the growth concerns. Barclays explained that "[w]e are disappointed these activities around past M&A have such a significant impact on revenues ($17 mil. of headwinds in FY22), and we believe xMatters in particular could be holding growth back."**

184. The allegations in paragraph 184 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 184 and further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 184, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**185. On March 17, 2022, activist investor Ancora, who beneficially owned approximately 4% of the Company's outstanding common stock, issued a letter calling for the sale of Everbridge. The Ancora letter explained that Ancora was first attracted to Everbridge because it is the market leader in CEM. Ancora praised the Company for its early vision and strategy, stating:**

> **Having pioneered the market for critical communications solutions, Everbridge should be commended for its early vision in helping protect people around the world by powering mass notification for both public sector and corporate entities. Building on this leadership position, Everbridge has successfully evolved from a single-product business into a diversified and robust platform selling a portfolio of solutions to address varied needs. In this context, the Company's early strategy of consolidating adjacent technologies via tuck-in acquisitions made enormous sense. Through this approach, Everbridge established a dominant CEM offering by creating a platform that obviates the need for**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

> **customers to contract with multiple point solution providers. As the markets for managing response to risks converge, we believe Everbridge is in an excellent position to continue winning market share.**

185.    The allegations in paragraph 185 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 185. Ellertson denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 185, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**186.    Ancora also touched on how the Company had misled investors about its growth by failing to disclose revenue contributions from its acquisitions. Ancora explained, "Everbridge does not disclose contributions from M&A, *seemingly obscuring that the Company has been paying higher prices to acquire growth.*"**

186.    The allegations in paragraph 186 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 186, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**187.    With respect to the Company's failure to integrate its acquisitions, Ancora questioned why the Company had not previously realized the need to integrate its acquisitions. Ancora stated:**

> **While Everbridge has invested in developing some products organically, *the vast majority of product growth***

94

> *over the years has come through acquisitions*. **On the Company's Q4 2021 earnings call, Everbridge called out the need to focus on integrating its acquired technologies. While this initiative makes sense, we are** *puzzled by why Everbridge is only now recognizing the need to integrate products after so many years, when a well-disciplined management team and Board would understand the advantages to executing on this as soon as possible*.

187. The allegations in paragraph 187 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 187. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 187, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**188. Ancora also explained how the Company's Board of Directors enriched Brickley and Irvin at the expense of shareholders: According to an 8-K filed on December 9, 2021, co-CEOs Brickley and Irvin were to receive $5 million worth of restricted stock units ("RSUs") "on or about January 1, 2022." Instead, the Board seemingly withheld these share grants for another 60 days, only issuing the grants on March 2, 2022. In our conversation with co-CEO Brickley, he explained this delay was due to the Company being restricted from issuing awards during a blackout period. However, this explanation appears suspicious, considering the Board was nonetheless able to issue RSUs to newly appointed director David Henshall in a Form 4 filing dated January 11, 2022. By delaying the co-CEO grants until after the Company issued disappointing results and guidance, it appears the Board only served to further dilute shareholders by requiring more share grants at lower prices. The optics of this information asymmetry are troubling and suggest the Board has chosen to prioritize enriching company executives at the expense of shareholders.**

188.   The allegations in paragraph 188 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 188. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 188, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

## VII.   **LOSS CAUSATION**

**189.   During the Class Period, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Everbridge common stock and operated as a fraud or deceit on Class Period purchasers of Everbridge common stock by failing to disclose and misrepresenting the adverse facts detailed herein.**

189.   The allegations in paragraph 189 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 189.

**190.   Class members unknowingly and in reliance upon Defendants' materially false or misleading statements and/or omissions purchased Everbridge common stock at artificially inflated prices. But for Defendants' misrepresentations, omissions, and fraudulent scheme, Lead Plaintiff and other Class members would not have purchased Everbridge stock at the artificially inflated prices at which it traded during the Class Period.**

190.   The allegations in paragraph 190 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 190.

**191.   The relevant truth regarding Defendants' fraud was revealed in two corrective disclosures and/or materializations of concealed risk that occurred on December 9, 2021 and February 24, 2022. During this period, Everbridge's stock**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**fell precipitously as the artificial inflation caused by Defendants' unlawful conduct exited Everbridge's stock price. It was not until the final partial corrective disclosure and/or materialization of concealed risk on February 24, 2022, that the full truth was known to the market, such that there was no longer any artificial inflation in Everbridge's stock price attributable to the fraud.**

191.    Ellertson denies the allegations in paragraph 191. Ellertson refers to the December 9, 2021 Form 8-K and the February 24, 2022 Form 8-K for their complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the Form 8-Ks, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**192.    The declines in Everbridge's stock price during this period, including the declines summarized below, are directly attributable to the market absorbing information that corrected and/or reflected the materialization of risks concealed by the Defendants' material misrepresentations or omissions.**

192.    The allegations in paragraph 192 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 192.

**193.    As a result of their purchases of Everbridge common stock during the Class Period, Lead Plaintiff and the other Class members suffered economic loss (i.e., damages) under the federal securities laws. Defendants' materially false and misleading statements had the intended effect and caused Everbridge common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $166.36 per share on August 30, 2021.**

193.    The allegations in paragraph 193 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 193. Ellertson refers to the public record for the price of Everbridge common stock for the relevant period referenced in paragraph 193.

97

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**194. By concealing from investors, the adverse facts detailed herein, Defendants presented a misleading picture of Everbridge's business. As the truth about the Company and the extent of the fraud was revealed to the market, the price of Everbridge common stock fell significantly. These declines removed the inflation from the price of Everbridge common stock, causing real economic loss to investors who had purchased Everbridge common stock during the Class Period.**

194. The allegations in paragraph 194 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 194.

**195. Each decline in the price of Everbridge common stock, as detailed below, was a direct and proximate result of the nature and extent of Defendants' fraudulent misrepresentations and/or omissions being revealed to investors and the market.**

195. The allegations in paragraph 195 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 195.

**196. The economic loss, i.e., damages, suffered by Lead Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of Everbridge common stock and the subsequent decline in the value of Everbridge common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.**

196. The allegations in paragraph 196 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 196.

**197. The market for Everbridge common stock was open, well-developed, and efficient at all relevant times, with average daily trading volume of approximately 583,652 shares during the Class Period. As a result of Defendants'**

98

**misstatements and material omissions, as alleged herein, Everbridge's common stock traded at artificially inflated prices. Lead Plaintiff and other Class members purchased Everbridge common stock relying upon the integrity of the market relating to Everbridge common stock and suffered economic losses as a result thereof.**

197.    The allegations in paragraph 197 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 197. Ellertson refers to the public record for the average daily trading volume of Everbridge common stock for the relevant period referenced in paragraph 197.

**198.    The declines in Everbridge's common stock price on December 10, 2021 and February 25, 2022 were a direct and foreseeable result of the nature and extent of Defendants' prior misstatements and omissions being revealed to investors after the market close on December 9, 2022 and February 24, 2022. The timing and magnitude of Everbridge's stock price declines evidence the impact of Defendants' statements had on the Company's stock price during the Class Period and negate any inference that the loss suffered by Lead Plaintiff and other Class members were caused by changed market conditions or macroeconomic, industry, or Company-specific facts unrelated to Defendants' fraudulent conduct.**

198.    The allegations in paragraph 198 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 198.

**A.    December 9, 2021 – First Partial Corrective Disclosure/Materialization of the Risk**

**199.    On December 9, 2021, Defendants partially revealed the true state of its business through a press release that contained two announcements.**

99

199.   Ellertson denies the allegations in paragraph 199, except he admits that Everbridge filed a press release on December 9, 2021. Ellertson refers to the December 9, 2021 press release for its complete and accurate contents. Ellertson further denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the December 9, 2021 press release, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**200.   First, Everbridge announced that Meredith had resigned from his position as CEO and member of the Board of Directors. However, the Company provided no explanation for his decision. The Company announced that it would immediately establish an Office of the CEO and begin to transition leadership to Defendant Brickley and Irvin, Everbridge's Executive Vice President and Chief Revenue Officer, as interim Co-CEOs pending the appointment of a permanent CEO.**

200.   The allegations in paragraph 200 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 200. Ellertson refers to the December 9, 2021 press release for its complete and accurate contents. Ellertson further denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the December 9, 2021 press release, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**201.   The second shocking announcement from the press release was the fact that Everbridge reduced revenue guidance for 2022 to 20%-23% growth, well below its historic forecasts of 30% plus revenue growth. However, the Company claimed that the two announcements were unrelated, stating that "Meredith's resignation [wa]s not related to any matter regarding the Company's financial condition [or] reported financial results."**

201.   The allegations in paragraph 201 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

allegations in paragraph 201. Ellertson refers to the December 9, 2021 press release for its complete and accurate contents. Ellertson further denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the December 9, 2021 press release, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**202.    As a direct and proximate result of this partial corrective disclosure, the price of Everbridge's common stock fell $52.37 per share, or more than 45.4%, to close at $63.00 per share on December 10, 2021.**

202.    The allegations in paragraph 202 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 202 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 202. Ellertson refers to the public record for the price of Everbridge common stock for the relevant period referenced in paragraph 202.

**203.    Analysts were shocked by Meredith's "abrupt" resignation. See ¶ 170, supra.**

203.    The allegations in paragraph 203 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 203 and further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 203, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**204.    Analysts were also shocked by the lower revenue guidance for 2022. See ¶ 171, supra.**

204.    The allegations in paragraph 204 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 204 and further denies any paraphrasing, summarizing or

101

characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 204, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**205.   However, the Company did not disclose the full truth regarding the Company's slowing revenue growth. The Company's December 9, 2021 press release misled investors by claiming that "Meredith's resignation [wa]s not related to any matter regarding the Company's financial condition [or] reported financial results." This statement was false and misleading because it led investors to believe that Meredith's departure was not related to the Company's growth deceleration in 2022. In reality, Meredith's resignation was directly related to the Company's slowing growth, as under Meredith's leadership, the Company had failed to integrate acquired companies, causing a drop off in sales to such an extent that it could no longer be camouflaged with the revenues from additional acquisitions, leading to a significant growth deceleration in 2022.**

205.   The allegations in paragraph 205 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 205 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 205, except he admits that Everbridge filed a press release on December 9, 2021. Ellertson refers to the December 9, 2021 press release for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the December 9, 2021 press release, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**206.   Indeed, analysts questioned whether Meredith's abrupt departure was related to the Company's slowing revenue growth. See ¶¶ 173-74, supra. For example, J.P. Morgan asked "[w]hy is the CEO really leaving" and "does the**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

timing of the CEO departure actually indicate concerns about growth potential over the next year?"

206.   The allegations in paragraph 206 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 206 and further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 206, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**207.   As explained in ¶ 174, supra, J.P. Morgan noted that, "[w]hat we found is that [Meredith] is leaving a decent amount [of performance based compensation] on the table with his departure. If the decision was solely his to make, it does raise the question on whether he was lacking confidence in earning the remaining performance-based incentive."**

207.   The allegations in paragraph 207 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 207 and further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 207, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

## B.    February 24, 2022 – Final Corrective Disclosure/Materialization of the Risk

**208.   On February 24, 2022, Everbridge revealed the full truth to investors about its slowing organic growth. On that date, the Company issued a press release which once again lowered 2022 revenue guidance, this time forecasting full year revenue growth at 15% to 17%. The press release also contained a statement from Co-CEO Irvin, stating "[w]e are taking decisive actions to**

103

**streamline, integrate and reduce complexity in our key offerings, which we expect to drive sustainable growth in the years ahead."**

208.   The allegations in paragraph 208 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 208, except admits that Everbridge filed a press release on February 24, 2022. Ellertson refers to Everbridge's press release filed on February 24, 2022, for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the press release filed on February 24, 2022, and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings.

**209.   On the same day, Everbridge held the February 24, 2022 Earnings Call, during which Everbridge officers further explained why these "decisive actions" were being taken, including disclosing for the first time material facts that were completely in opposition with Defendants' representations throughout the Class Period.**

209.   Ellertson denies the allegations in paragraph 209, except admits that Everbridge hosted an Earnings Call on February 24, 2022. Ellertson refers to the February 24, 2022 Earnings Call transcript for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the Earnings Call transcript and other public transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**210.   Irvin began by saying that "beginning in December," i.e., when Meredith resigned as CEO, "our management team, together with the Board, conducted a comprehensive review of our strategy and operations." The review, however, was apparently focused on matters that, during the Class Period, Defendants had discussed extensively with investors and analysts, independently and in answer to questions posed to them, and as to which they were already intimately familiar. For example, the review looked at "the number of**

104

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**acquisitions completed in 2020 and 2021" and how those acquisitions were integrated into Everbridge.**

210. Ellertson denies the allegations in paragraph 210. Ellertson refers to the February 24, 2022 Earnings Call transcript for its complete and accurate contents, and further denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the Earnings Call transcript and other public transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**211. Irvin stated that this review resulted in the conclusion that "certain acquired technologies" had created a *"barrier to upsell and cross-sell from increased complexity, and incomplete integrations* and pushed out demand for travel-related solutions, as well as smaller deal size for international public warning wins that are having adverse impacts on business, our go-to market strategy and sales organization." He further stated that "the number of acquisitions completed in 2020 and 2021," along with their products and businesses "have created *incremental product line complexity that produce integration challenges and have complicated our go-to market efforts*." With incomplete integration, Irvin explained that it was "harder for . . . [Everbridge's] enterprise sales organization to execute on [its] land, adopt and expand sales strategies."**

211. The allegations in paragraph 211 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 211. Ellertson refers to the February 24, 2022 Earnings Call transcript for its complete and accurate contents, and further denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the Earnings Call transcript and other public transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**212. Defendant Brickley expanded upon these revelations, stating that the acquisitions in 2020 and 2021 "have created complexity for the business seen in**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**product, back office and go-tomarket headwinds** *that are obstacles to sales growth***. Removing these headwinds by accelerating integration work will be our focus in the first half of this year." He further elaborated on that complexity caused by the flurry of acquisitions in 2020 and 2021, explaining that "we were well down a path of selling dozens of solutions that** *were not always tightly integrated***. We were selling them to multiple buyers. And as Vernon said, that was confusing to customers and to our sellers."**

212.   The allegations in paragraph 212 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 212. Ellertson refers to the February 24, 2022 Earnings Call transcript for its complete and accurate contents, and further denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the Earnings Call transcript and other public transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**213.   As a result, Irvin explained that the Company was taking immediate action to "paus[e] material new M&A and instead prioritiz[e] development efforts to** *focus on accelerating product integrations across our existing acquired assets***." In addition, Everbridge stated that it intends to "simplif[y] our product offerings, moving from several dozen individual product–point products to focus on 4 strategic CEM solutions." In particular, the Company will "deemphasize certain smaller, nonstrategic products that don't fit cleanly into our CEM and public warning focus areas.** *While these products do deliver some standalone revenue, they are a distraction to our primary focus and negatively impact our sellers' overall productivity***."**

213.   The allegations in paragraph 213 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 213. Ellertson refers to the February 24, 2022 Earnings Call transcript for its complete and accurate contents, and further denies any paraphrasing,

106

summarizing, or characterization of Everbridge's statements on the Earnings Call transcript and other public transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**214.    On this news, Everbridge's common stock price fell an additional $15.68 per share, or approximately 34%, to close at $30.61 per share on February 25, 2022.**

214.    The allegations in paragraph 214 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 214 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 214. Ellertson refers to the public record for the price of Everbridge common stock for the relevant period referenced in paragraph 214.

**215.    Analysts were once again shocked by Everbridge's lower guidance, which was substantially lower than the guidance provided on December 9, 2021. See ¶ 183, supra.**

215.    The allegations in paragraph 215 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 215 and further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 215, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**216.    Moreover, investors finally understood that Meredith's departure was connected to the growth concerns. Barclays issued an analyst report on February 25, 2022, stating that Everbridge "guided FY22 revenues below expectations again, as we believe some investors were holding out hope that the CEO departure was separate from growth concerns." These investors could no longer hold out hope— it was clear that Meredith's departure was connected to**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

the growth concerns. Barclays explained that "[w]e are disappointed these activities around past M&A have such a significant impact on revenues ($17 mil. of headwinds in FY22), and we believe xMatters in particular could be holding growth back."

216. The allegations in paragraph 216 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 216 and further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 216, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

217. On March 17, 2022, activist investor Ancora, who beneficially owned approximately 4% of the Company's outstanding common stock, issued a letter calling for the sale of Everbridge. The Ancora letter explained that Ancora was first attracted to Everbridge because it is the market leader in CEM. Ancora praised the Company for its early vision and strategy, stating:

> Having pioneered the market for critical communications solutions, Everbridge should be commended for its early vision in helping protect people around the world by powering mass notification for both public sector and corporate entities. Building on this leadership position, Everbridge has successfully evolved from a single-product business into a diversified and robust platform selling a portfolio of solutions to address varied needs. In this context, the Company's early strategy of consolidating adjacent technologies via tuck-in acquisitions made enormous sense. Through this approach, Everbridge established a dominant CEM offering by creating a platform that obviates the need for customers to contract with multiple point solution providers. As the markets for managing response to risks converge, we believe Everbridge is in an excellent position to continue winning market share.

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

217.   The allegations in paragraph 217 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 217. Ellertson denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 217, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**218.   Ancora also touched on how the Company had misled investors about its growth by failing to disclose revenue contributions from its acquisitions. Ancora explained, "Everbridge does not disclose contributions from M&A,** *seemingly obscuring that the Company has been paying higher prices to acquire growth.***"**

218.   The allegations in paragraph 218 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 218. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 218, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**219.   With respect to the Company's failure to integrate its acquisitions, Ancora questioned why the Company had not previously realized the need to integrate its acquisitions. Ancora stated:**

> **While Everbridge has invested in developing some products organically,** *the vast majority of product growth over the years has come through acquisitions***. On the Company's Q4 2021 earnings call, Everbridge called out the need to focus on integrating its acquired technologies. While this initiative makes sense, we are** *puzzled by why Everbridge is only now recognizing the*

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

*need to integrate products after so many years, when a well-disciplined management team and Board would understand the advantages to executing on this as soon as possible.*

219. The allegations in paragraph 219 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 219. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 219, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**220. Ancora also explained how the Company's Board of Directors enriched Brickley and Irvin at the expense of shareholders:**

> **According to an 8-K filed on December 9, 2021, co-CEOs Brickley and Irvin were to receive $5 million worth of restricted stock units ("RSUs") "on or about January 1, 2022." Instead, the Board seemingly withheld these share grants for another 60 days, only issuing the grants on March 2, 2022. In our conversation with co-CEO Brickley, he explained this delay was due to the Company being restricted from issuing awards during a blackout period. However, this explanation appears suspicious, considering the Board was nonetheless able to issue RSUs to newly appointed director David Henshall in a Form 4 filing dated January 11, 2022. _By delaying the co-CEO grants until after the Company issued disappointing results and guidance, it appears the Board only served to further dilute shareholders by requiring more share grants at lower prices. The optics of this information asymmetry are troubling and suggest the Board has chosen to prioritize enriching company executives at the expense of shareholders._**

220. The allegations in paragraph 220 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 220. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents

110

referenced in paragraph 220, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

## VIII.  **ADDITIONAL INDICIA OF SCIENTER**

**221.  Defendants were active and culpable participants in the fraud, as evidenced by their knowing and reckless issuance and/or ultimate authority over Everbridge's and their materially false or misleading statements and omissions. The Individual Defendants acted with scienter in that they knew or recklessly disregarded that the public statements more specifically set forth in § V, infra, were materially false or misleading when made, and knowingly or recklessly participated or acquiesced in the issuance or dissemination of such statements as primary violator of the federal securities laws. In addition to the specific facts alleged above, Defendants' scienter is further evidenced by the following facts.**

221.  The allegations in paragraph 221 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 221.

A.  **Core Operations Allegations: Everbridge's CEM Platform Was Critical to the Company's Growth Plan and Integrating the Acquired Companies was Necessary for CEM's Success**

**222.  The Individual Defendants' knowledge of the integration problems can be inferred from the fact that the Company's CEM suite—which Defendants consistently touted as a market leader because it was the only "fully integrated" CEM—was critically important to the Company's growth strategy moving forward. See § IV.A, supra. During the Class Period, the Company claimed that its TAM was approximately $41 billion, and that CEM's TAM was approximately $25.9 billion, meaning CEM represented *63% of the Company's potential revenue and growth*. Because the CEM suite was so important to the Company's future growth, Defendants knew or were reckless in not knowing that**

111

**they did not properly integrate the Class Period acquisitions into Everbridge's CEM suite.**

222.   The allegations in paragraph 222 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 222. Ellertson refers to Everbridge's Form 8-K filed on March 23, 2020, attaching the meeting presentation from the Company's Analyst Day 2020 disclosing the Company's $41+ billion TAM and CEM's TAM as $25.9B, for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the filing and other public filings, and any factual inferences or legal conclusions Lead Plaintiff makes based on those filings.

**223.   Defendants also knew or were reckless in not knowing about the xMatters integration in particular problems because xMatters was Everbridge's largest acquisition ever and critical to the Company's CEM platform moving forward. The Company acquired xMatters' outstanding stock for a total consideration of $242.6 million. The previous year, 2020, the Company's total revenue was only $271.1 million. Thus, the xMatters acquisition cost the Company nearly as much as the Company's entire 2020 revenue.**

223.   The allegations in paragraph 223 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 223 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 223, except he admits that Everbridge purchased all of the issued and outstanding shares of stock of xMatters for a base consideration of $242.6 million and that Everbridge generated revenue of $271.1 million in 2020.

**224.   The xMatters acquisition was also critical to the Company's CEM. Defendants claimed that Everbridge "acquired xMatters for its service reliability platforms *to enhance the Company's CEM suite of solutions* as well as market penetration and customer reach." Thus, Defendant knew or should have known**

112

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**about the challenges the Company faced in integrating xMatters into Everbridge's CEM suite. As described above in ¶¶ 115-123, multiple former employees described the integration a disaster and detailed integration problems.**

224.  The allegations in paragraph 224 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 224 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 224.

**225.  Further evidence that Defendants knew of the significant integration problems is the fact that most of xMatters' salespeople left after the acquisition, which caused a "dismal" third quarter from an xMatters perspective. See ¶¶ 115-123, supra. Defendants knew or should have known about the "dismal" third quarter 2021 because they had access to the Company's Leadership Dashboard.**

225.  The allegations in paragraph 225 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 225 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 225.

**226.  Defendants themselves admitted that they closely monitored the Company's upselling and cross-selling. For example, on January 14, 2021, Meredith and Brickley participated in the Needham Virtual Growth Conference (the "January 14, 2021 Conference"). During that conference, an analyst asked Meredith and Brickley about the average number of products customers buy from Everbridge. Brickley responded:**

> **No, we've been talking a lot about it internally. And with COVID,** *we've really had an opportunity to focus on upsell with our customers because they've been using – our existing base has been using us more and more and more. They've been buying more products, more contacts, more usage*. **And so we've been learning a lot during 2020. And as we look at our penetration of the Fortune 1000, and it's only about 35%, but half of that 35% is just mass notification.**

113

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**I mean we think of that as a huge opportunity. And so we'll have more intentional focus on that existing base to sell more products in. It's a huge uplift per product for us. So that's going to be more and more intentional for us. *And we'll be tracking internally, certainly, watching the products per customer go up*. In particular, for that base. We have to – we want to grow efficiently. We can't spray and pray and try to do everything under the sun at once. But we've got these – we've got this penetration of the Fortune 1000. We think they should all be CEM customers.**

226.  The allegations in paragraph 226 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 226, except he admits that Everbridge participated in the Needham Virtual Growth Conference on January 14, 2021. Ellertson refers to the transcript of the January 14, 2021 Needham Virtual Growth Conference for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements at the January 14, 2021 Needham Virtual Growth Conference, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**227.  Similarly, on March 2, 2021, Meredith explained that "we have an internal metric around what we call growth bookings, which is basically cross sell, upsell. And we really consistently beat our internal growth target – growth bookings targets every quarter last year."**

227.  The allegations in paragraph 227 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 227. Ellertson refers to the transcript of the March 2, 2021 Raymond James Institutional Investor Conference for its complete and accurate contents. Ellertson further denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the March 2, 2021 transcript, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**228.    Therefore, in 2021, both Meredith and Brickley monitored the Company's sales and thus knew or should have known of the dismal third quarter from an xMatters perspective, which was caused by significant loss of talented xMatters salespeople.**

228.    The allegations in paragraph 228 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 228.

**B.    The Abrupt Departure of Meredith Supports Scienter**

**229.    The timing and circumstances of the resignation of Meredith, the key executive responsible for overseeing the numerous acquisitions at issue in this case, is highly suspicious. The fact that this resignation is connected to the alleged corrective disclosures of the Company's fraud further supports that inference.**

229.    The allegations in paragraph 229 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 229 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 229.

**230.    Specifically, on December 9, 2021, the Company announced that Meredith had resigned as CEO *without any succession plan in place*, prompting the Company to temporarily appoint Brickley and Irvin as Co-CEO while the Company searched for a replacement CEO. Adding to this suspicious departure is the fact that Meredith left on the table approximately one third of the restricted stock units that were awarded to him that remained unvested, and approximately 55% of the remaining unvested performance-based compensation. As J.P. Morgan observed, "[i]f the decision was solely his to make, it does raise the question on whether he was lacking confidence in earning the remaining performance-based incentive."**

230.    The allegations in paragraph 230 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the

115

allegations in paragraph 230. Ellertson refers to the December 9, 2021 Form 8-K for its complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the December 9, 2021 Form 8-K, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements. Ellertson further denies any paraphrasing, summarizing or characterization of any third-party statements, analyses, reports, or other documents referenced in paragraph 230, and denies any factual inferences or legal conclusions Lead Plaintiff makes based on those filings, statements, analyses, reports or documents.

**231.   As discussed above, Meredith's departure, which was announced on the same day the Company reduced 2022 revenue guidance to a historically low figure, was highly suspicious and adds to a strong inference of scienter.**

231.   The allegations in paragraph 231 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 231 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 231. Ellertson refers to the December 9, 2021 Form 8-K for its complete and accurate contents. Ellertson further denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the December 9, 2021 Form 8-K, and any factual inferences or legal conclusions Lead Plaintiff makes based on those statements.

**232.   This inference is even stronger based on the final corrective disclosure on February 24, 2022, when the Company revealed that after Meredith's departure, management conducted a thorough review of the Company's strategy under Meredith, and concluded the numerous acquisitions created integration challenges and created obstacles to the Company's sales growth. As a result, the Company was pausing all new M&A to focus on integrating the previously acquired technologies. At this point, it was clear that Meredith's departure was connected to the Company's growth concerns, which further adds to a strong inference of scienter.**

116

232.   The allegations in paragraph 232 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 232 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 232. Ellertson refers to Everbridge's February 24, 2022 Earnings Call transcript for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the Earnings Call transcript, and any factual inferences or legal conclusions Lead Plaintiff makes based on that transcript.

**C.    Defendants' Statements Themselves Support Scienter**

**233.    As discussed above, the Individual Defendants continuously touted the Company's revenue growth throughout the Class Period, claiming it was mostly organic and the result of legitimate and lawful factors such as "continued strong performance."**

233.   Ellertson denies the allegations in paragraph 233.

**234.    Similarly, Defendants continuously dispelled investor concerns about the revenue contribution from xMatters. For example, during the Company's May 10, 2021 earnings call, multiple analysts asked Brickley for an update on the xMatters revenue contribution numbers. However, Brickley refused to provide an update. See ¶¶ 94-97, supra. Similarly, during the Company's August 9, 2021 earnings call, an analyst asked for an update on the $9-11 million in revenue that Defendants previously guided for xMatters, but Meredith refused to give an update and instead touted the integration of xMatters and the Company's strong sales. See ¶¶ 98-99. supra. Meredith's refusal to provide an update, despite several questions from analysts, further supports a strong inference of scienter.**

234.   The allegations in paragraph 234 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 234, except he admits that Everbridge hosted Earnings Calls on May 10, 2021 and August 9, 2021, and refers to the call transcripts for their

117

complete and accurate contents. Ellertson denies any paraphrasing, summarizing, or characterization of Everbridge's statements in the transcripts and other transcripts, and any factual inferences or legal conclusions Lead Plaintiff makes based on those transcripts.

**235. By dispelling investor concerns about the Company's organic revenue growth, Defendants either: (1) knew that the Company was using acquired revenue to hide slowing organic revenue growth, and that this strategy was unsustainable as it relied on acquiring companies without properly integrating them into Everbridge; or (2) were reckless in not knowing that this was the case. Under either scenario, there is a strong inference that Defendants made these statements with scienter.**

235. The allegations in paragraph 235 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 235.

## D.      Meredith's Employment Agreement Further Supports Scienter

**236. The structure of Meredith's employment agreement further supports a strong inference of scienter. As part of Meredith's employment agreement, the Company granted Meredith 100,000 performance stock units (the "PSU Grant"), with up to 62.5% of the PSU Grant becoming ligible to vest on September 30, 2021, based on the compound annual growth rate ("CAGR") achieved by the Company during the eight fiscal quarters preceding such date, and up to an additional 62.5% of the PSU Grant becoming eligible to vest on September 30, 2022, based on the CAGR achieved during the 12 fiscal quarters preceding such date. The vesting of the PSU Grant was subject to Meredith's continued service to the Company through each applicable vesting date or event.**

236. The allegations in paragraph 236 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 236 do not relate to Ellertson and therefore no response is required. To the extent a response is required,

Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained paragraph 236. Ellertson refers to Everbridge's Form 8-K filed on June 18, 2019, with Meredith's employment agreement attached as an exhibit, for its complete and accurate contents, and denies any paraphrasing, summarizing, or characterization of Everbridge's statements on the Form 8-K, and any factual inferences or legal conclusions Lead Plaintiff makes based on that filing.

**237.    Therefore, Meredith's employment agreement included bonuses based on the Company's growth rate.**

237.    The allegations in paragraph 237 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained paragraph 237.

**E.    Statements by Former Everbridge Employees Corroborate that Defendants Knowingly Downplayed the Revenue Contribution from xMatters to Mask Slowing Organic Growth**

**238.    The CWs make clear that it was not simply a mistake, or a reasonable estimate based on available data, but that the Defendants knew that xMatters would contribute much more than $9-11 million in revenue for the rest of 2021 and purposefully downplayed xMatters' revenue contribution to mask the Company's slowing organic growth and cover up for its overall performance.**

238.    The allegations in paragraph 238 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 238, except Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding alleged statements of CW 1.

**239.    Both Meredith and Brickley were made aware of the discrepancy in xMatters' revenue contribution numbers. Specifically, CW 1 recalled that the projected revenue figures relayed to Wall Street for xMatters were an additional**

119

**approximately $11 million for Everbridge in 2021. According to CW 1, however, realistically, the forecasts were presenting figures closer to <u>$20 - $25 million</u>. CW 1 added that based on the actual forecasts, it was "clear" that xMatters was not necessarily going to grow, which was contrary to what was being presented to the public. According to CW 1, she raised concerns regarding these discrepancies to her immediate superior, which were then passed on to Meredith and Brickley. CW 1 continued to say that she expressed concerns <u>directly</u> to Meredith and Brickley as well, in the form of presentations and e-mails regarding the deal. CW 1 explained that she sent e-mails with Meredith and Brickley in the lead up to the acquisition. CW 1 added that she was not the only person to express concerns about the xMatters acquisition. According to CW 1, the rationale Meredith provided was that the discrepancy in figures was to "buffer" the declines in Everbridge's organic revenue.**

239.    The allegations in paragraph 239 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations contained paragraph 239, except Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding alleged statements of CW 1.

IX.    **CONTROL PERSON ALLEGATIONS**

**240.    The Individual Defendants, by virtue of their high-level and controlling positions at Everbridge, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information about the Company, its business, operations, internal controls, growth, financial statements, and financial condition as alleged herein. As set forth below, the materially misstated information conveyed to the public was the result of the collective actions of these individuals.**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

240. The allegations in paragraph 240 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 240.

**241. Defendants Meredith, Brickley, and Ellertson, as senior executives and directors of Everbridge—a publicly-held company whose common stock was, and is, traded on the NASDAQ, and governed by the federal securities laws—had a duty to disseminate prompt, accurate, and truthful information with respect to the Company's business, operations, internal controls, growth, financial statements, and financial condition, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Everbridge's publicly traded common stock would be based on accurate information. Each of the Individual Defendants violated these requirements and obligations during the Class Period.**

241. The allegations in paragraph 241 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 241, except he admits that, during the Class Period, Defendant Meredith and Defendant Brickley were senior executives of Everbridge and that, during the Class Period, Everbridge was a publicly-held company whose common stock was traded on the NASDAQ, and governed by the federal securities laws.

**242. Defendants Meredith, Brickley, and Ellertson because of their positions of control and authority as senior executive officers and directors of Everbridge, were able to and did control the content of Everbridge's SEC filings, press releases, and other public statements issued by or on behalf of Everbridge during the Class Period. Each would have been provided with copies of the statements made in the SEC filings at issue in this action before they were issued to the public and would have had the ability to prevent their issuance or cause them to be corrected. Accordingly, the Individual Defendants were responsible for the accuracy of the public statements alleged herein.**

242.   The allegations in paragraph 242 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 242.

**243.   The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Everbridge common stock by disseminating materially false and misleading information and concealing and omitting material adverse facts. The scheme deceived the investing public regarding Everbridge's business, operations, and management, and the intrinsic value of Everbridge's common stock, and caused Lead Plaintiff and members of the Class to purchase Everbridge common stock at artificially inflated prices.**

243.   The allegations in paragraph 243 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 243.

## X.    CLASS ACTION ALLEGATIONS

**244.   Lead Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities who or which purchased or otherwise acquired the publicly traded common stock of Everbridge during the Class Period and were damaged thereby. Excluded from the Class are: (i) Defendants; (ii) members of the immediate family of any Defendant who is an individual; (iii) any person who was an officer or director of Everbridge during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) Everbridge's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person.**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

244. The allegations in paragraph 244 state legal conclusions and Lead Plaintiff's characterization of its Complaint for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 244.

**245. The members of the Class are so numerous that joinder of all members is impracticable. According to public reports file with the SEC, during the Class Period, Everbridge had over 34 million shares of common stock and was actively trade on the NASDAQ under the ticker symbol "EVBG." While the exact number of Class members is unknown to Lead Plaintiff at this time, and such number can only be ascertained through appropriate discovery, Lead Plaintiff believes that the proposed Class has thousands of members and is widely dispersed geographically. Record owners and other members of the Class may be identified from records maintained by Everbridge and/or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.**

245. The allegations in paragraph 245 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 245 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 245. Ellertson refers to the public record for the quantity of Everbridge common stock for the relevant period referenced in paragraph 245.

**246. Lead Plaintiff's claims are typical of the claims of the members of the Class. All members of the Class were similarly affected by Defendants' allegedly wrongful conduct in violation of the Exchange Act as complained of herein.**

246. The allegations in paragraph 246 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 246.

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**247. Lead Plaintiff will fairly and adequately protect the interests of the members of the Class. Lead Plaintiff has retained counsel competent and experienced in class and securities litigation.**

247. The allegations in paragraph 247 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 247 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 247.

**248. Common questions of law and fact exist as to all members of the Class and predominate over questions solely affecting individual members of the Class. The questions of law and fact common to the Class include, but are not necessarily limited to, the following:**

**(a)    Whether Defendants violated the federal securities laws by their acts and omissions alleged herein;**

**(b)    Whether the statements Defendants made to the investing public during the Class Period contained material misrepresentations or omitted to state material information;**

**(c)    Whether, and to what extent, the market price of Everbridge common stock was artificially inflated during the Class Period because of the material misstatements alleged herein;**

**(d)    Whether Defendants acted with the requisite level of scienter;**

**(e)    Whether the Individual Defendants were controlling persons of Everbridge; and**

**(f)    Whether the members of the Class have sustained damages as a result of the conduct complained of herein, and if so, the proper measure of such damages.**

124

248. The allegations in paragraph 248 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 248.

**249. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, among other things, joinder of all members of the Class is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.**

249. The allegations in paragraph 249 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 249 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 249.

XI. **APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE**

**250. To the extent that Lead Plaintiff alleges that Defendants made affirmative misstatements, Lead Plaintiff will rely upon the presumption of reliance established by the fraud on-the-market doctrine in that, among other things:**

**(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;**

**(b) The omission and misrepresentations were material;**

**(c) The Company's securities traded in an efficient market;**

**(d) The misrepresentations alleged would tend to induce a reasonable investor misjudge the value of the Company's securities;**

**(e) Lead Plaintiff and other members of the Class purchased Everbridge's securities between the time Defendants misrepresented or failed to**

125

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts;

(f)    Everbridge's common stock met the requirements for listing and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(g)    As a regulated issuer, Everbridge filed periodic public reports with the SEC and NASDAQ;

(h)    Everbridge regularly communicated with public investors via established market mechanisms, including regular dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(i)    Everbridge was followed by numerous securities analysts employed by major brokerage firms including, but not limited to, William Blair & Co., Bank of America Global Research, Wells Fargo Securities, LLC, Stephens Inc., Truist Securities, Cannaccord Genuity, and Barclays, all of which wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace.

250.    The allegations in paragraph 250 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 250 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 250.

251.    As a result of the foregoing, the market for Everbridge common stock promptly digested current information regarding Everbridge from publicly available sources and reflected such information in Everbridge's common stock price(s). Under these circumstances, all purchasers of Everbridge common stock during the Class Period suffered similar injury through their purchase of

126

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

**Everbridge common stock at artificially inflated prices and the presumption of reliance applies.**

251. The allegations in paragraph 251 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 251 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 251.

**252. The material misrepresentations and omissions alleged herein would induce a reasonable investor to misjudge the value of Everbridge's common stock.**

252. The allegations in paragraph 252 state legal conclusions for which no response is required. Moreover, the allegations in paragraph 252 do not relate to Ellertson and therefore no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 252.

**253. Without knowledge of the misrepresented or omitted material facts alleged herein, Lead Plaintiff and other members of the Class purchased shares of Everbridge common stock between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed.**

253. The allegations in paragraph 253 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 253.

**254. To the extent that the Defendants concealed or improperly failed to disclose material facts with respect to Everbridge's business, Lead Plaintiff is entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972).**

254. The allegations in paragraph 254 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 254.

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

## XII.    **NO SAFE HARBOR**

**255.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the materially false and misleading statements alleged in this pleading. First, many of the statements alleged to be false and misleading relate to historical facts or existing conditions. Second, to the extent any of the allegedly false and misleading statements may be characterized as forward-looking, they were not adequately identified as "forward- looking" statements when made. Third, any purported forward-looking statements were not accompanied by meaningful cautionary language because, among other reasons, the risks that Defendants warned of had already come to pass.**

255.    The allegations in paragraph 255 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 255.

**256.    To the extent any statements alleged to be false and misleading may be construed to discuss future intent, they are mixed statements of present or historical facts and future intent and are not entitled to PSLRA safe-harbor protection—at least with respect to the part of the statement that refers to the present.**

256.    The allegations in paragraph 256 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 256.

**257.    In addition, the PSLRA imposes an additional burden on oral forward- looking statements, requiring Defendants to include a cautionary statement that the particular oral statement is a forward-looking statement, and that "actual results might differ materially from those projected in the forward-looking statement." 15 U.S.C. § 78u-5(c)(2)(A)(i)-(ii). Defendants failed to both**

128

**identify certain oral statements as forward-looking and include the cautionary language required by the PSLRA.**

257. The allegations in paragraph 257 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 257.

**258. Furthermore, Defendants did not accompany their statements with meaningful cautionary language identifying important factors that could cause actual results to differ materially from any results projected. To the extent Defendants included any cautionary language, that language was not meaningful because, among other reasons, any potential risks identified by Defendants had already passed or manifested. As detailed herein, Defendants failed to disclose to the market that, throughout the Class Period, Defendants did not properly integrate them into Everbridge, thus leading to a drop off in sales to such an extent that it could no longer be camouflaged with the revenues from additional acquisitions.**

258. The allegations in paragraph 258 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 258.

**259. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, or the forward- looking statement was authorized or approved by an executive officer of Everbridge who knew that the statement was false when made.**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

259.   The allegations in paragraph 259 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 259.

## XIII.   **CAUSES OF ACTION**

## **COUNT I**

**For Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 Promulgated Thereunder**
**Against Everbridge and the Individual Defendants**

**260.   Lead Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.**

260.   Paragraph 260 reflects Plaintiffs' characterization of its own allegations for which no response is required. To the extent a response is required, Ellertson denies those allegations.

**261.   As alleged herein, throughout the Class Period, Everbridge and the Individual Defendants, individually and in concert, directly and indirectly, by the use of the means or instrumentalities of interstate commerce, the mails and/or the facilities of national securities exchanges, made untrue statements of material fact and/or omitted to state material facts necessary to make their statements not misleading and carried out a plan, scheme and course of conduct, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. Everbridge and the Individual Defendants intended to and did, as alleged herein, (i) deceive the investing public, including Lead Plaintiff and members of the Class; (ii) artificially inflate and maintain the price of Everbridge common stock; and (iii) cause Lead Plaintiff and members of the Class to purchase Everbridge common stock at artificially inflated prices.**

261.   The allegations in paragraph 261 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 261.

**262. The Individual Defendants were individually and collectively responsible for making the false and misleading statements and omissions alleged herein and having engaged in a plan, scheme, and course of conduct designed to deceive Lead Plaintiff and members of the Class, by virtue of having made public statements and prepared, approved, signed, and/or disseminated documents that contained untrue statements of material fact and/or omitted facts necessary to make the statements therein not misleading.**

262. The allegations in paragraph 262 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 262.

**263. As set forth above, Everbridge and the Individual Defendants made their false and misleading statements and omissions and engaged in the fraudulent activity described herein knowingly and intentionally, or in such a deliberately reckless manner as to constitute willful deceit and fraud upon Lead Plaintiff and the other members of the Class who purchased Everbridge common stock during the Class Period.**

263. The allegations in paragraph 263 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 263.

**264. In ignorance of the false and misleading nature of Everbridge's and the Individual Defendants' statements and omissions, and relying directly or indirectly on those statements or upon the integrity of the market price for Everbridge common stock, Lead Plaintiff and other members of the Class purchased Everbridge common stock at artificially inflated prices during the Class Period. But for the fraud, Lead Plaintiff and members of the Class would not have purchased Everbridge common stock at such artificially inflated prices. As set forth herein, when the true facts were subsequently disclosed, the price of Everbridge common stock declined precipitously, and Lead Plaintiff and**

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

members of the Class were damaged and harmed as a direct and proximate result of their purchases of Everbridge common stock at artificially inflated priced and the subsequent decline in the price of that security when the truth was disclosed.

264. The allegations in paragraph 264 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 264.

265. By virtue of the foregoing, Everbridge and the Individual Defendants are liable to Lead Plaintiff and members of the Class for violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

265. The allegations in paragraph 265 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 265.

## COUNT II

### For Violations of Section 20(A) of the Exchange Act
### Against the Individual Defendants

266. Lead Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

266. Paragraph 266 reflects Plaintiffs' characterization of its own allegations for which no response is required. To the extent a response is required, Ellertson denies the allegations.

267. This Count is asserted pursuant to Section 20(a) of the Exchange Act against the Individual Defendants.

267. Paragraph 267 reflects Plaintiffs' characterization of its own allegations for which no response is required. To the extent a response is required, Ellertson denies the allegations.

268. The Individual Defendants had control over Everbridge and made the materially false and misleading statements and omissions on behalf of Everbridge within the meaning of Section 20(a) of the Exchange Act as alleged

**herein. By virtue of their executive leadership positions, as alleged above, the Individual Defendants had the power to influence and control and did, directly or indirectly, influence and control the decision making of the Company, including the content and dissemination of the various statements which Lead Plaintiff contends were false and misleading. The Individual Defendants were provided with or had unlimited access to the Company's internal reports, press releases, public filings, and other statements alleged by Lead Plaintiff to be misleading prior to or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause them to be corrected.**

268.    The allegations in paragraph 268 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 268.

**269.    In particular, the Individual Defendants had direct involvement in and responsibility over the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein.**

269.    The allegations in paragraph 269 state legal conclusions for which no response is required. Ellertson denies the allegations in paragraph 269.

**270.    By virtue of such wrongful conduct, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' wrongful conduct, Lead Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's shares during the Class Period.**

270.    The allegations in paragraph 270 state legal conclusions for which no response is required. To the extent a response is required, Ellertson denies the allegations in paragraph 270.

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

## ANSWER TO PRAYER FOR RELIEF

Ellertson denies that Lead Plaintiff is entitled to relief, and respectfully requests that the Court dismiss all claims against Ellertson with prejudice and order such further relief for Ellertson as the Court deems just and proper. Ellertson further denies that this action is appropriate for class action treatment.

## ANSWER TO JURY TRIAL DEMANDED

Ellertson denies the allegations of Lead Plaintiff's demand for a jury trial, but states that Lead Plaintiff purports to demand a jury trial. Ellertson reserves the right to challenge this demand.

## AFFIRMATIVE AND OTHER DEFENSES

As separate and distinct affirmative defenses, Ellertson alleges the following. By alleging the matters set forth below, Ellertson does not thereby allege or admit that Ellertson has the burden of proof or the burden of persuasion with respect to any of these matters. Furthermore, Ellertson hereby gives notice that he intends to rely upon such other and further defenses as may become available or apparent during pretrial proceedings in this action and hereby reserves the rights to amend his answer and assert all such defenses.

## FIRST DEFENSE

This action is barred, in whole or in part, because Lead Plaintiff fails to state a claim upon which relief may be granted.

## SECOND DEFENSE

This action is barred, in whole or in part, because the statements Lead Plaintiff challenges were not false or misleading.

## THIRD DEFENSE

This action is barred, in whole or in part, because Ellertson neither had a duty nor breached a duty to disclose any facts allegedly not disclosed. In particular, Ellertson did not have a duty to disclose any of the information alleged to have been omitted from the public statements complained of in the Complaint.

134

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

## FOURTH DEFENSE

This action is barred, in whole or in part, because Ellertson did not omit to state any material facts necessary in order to make any challenged statement not false or misleading.

## FIFTH DEFENSE

This action is barred, in whole or in part, because Ellertson conducted adequate due diligence and a reasonable investigation, and had a good-faith basis and reasonable grounds to believe, and did believe that the statements alleged in the Complaint to have been made by Ellertson were true, and that he omitted no material fact necessary to make those statements misleading.

## SIXTH DEFENSE

This action is barred, in whole or in part, because any alleged misrepresentations or omissions for which Ellertson is allegedly responsible were made in reasonable reliance upon the work, opinions, information, representations and advice of others upon whom Ellertson was entitled to rely.

## SEVENTH DEFENSE

This action is barred, in whole or in part, because any alleged misrepresentations or omissions for which Ellertson is allegedly responsible were not material to the investment decisions of a reasonable investor and were immaterial in light of the total mix of available information.

## EIGHTH DEFENSE

This action is barred, in whole or in part, because any alleged misrepresentations or omissions for which Ellertson is allegedly responsible were not made in connection with the purchase or sale of any securities by Lead Plaintiff or putative class members.

## NINTH DEFENSE

With regard to claims arising under Section 20 of the Exchange Act, and regulations promulgated thereunder, Ellertson is not a "controlling person" within the meaning of Section 20, or regulations promulgated thereunder; among other things, he

had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist, he was not a culpable participant in any alleged primary violation, and he acted in good faith and did not directly or indirectly induce the act or acts constituting the cause of action.

### TENTH DEFENSE

This action is barred, in whole or in part, because certain statements complained of in the Complaint are non-actionable statements of opinion or statements of puffery.

### ELEVENTH DEFENSE

This action is barred, in whole or in part, if and to the extent the statements at issue that the Complaint alleges are attributable to Ellertson are found to have been false or misleading (which Ellertson denies) because the actual facts alleged to have been misstated or omitted were in fact publicly available and/or widely known to the securities market and to the investing community through credible sources. Lead Plaintiff and the putative class are not entitled to any recovery because the substance of the allegedly material information that Lead Plaintiff alleges to have been omitted or misrepresented was in fact disclosed in Everbridge's public filings, disclosures and announcements, those of third parties, in the documents referenced in the Complaint, and/or from other sources that were otherwise publicly available and/or widely known to the market and to the investing community.

### TWELFTH DEFENSE

This action is barred, in whole or in part, by the doctrines of contributory negligence, comparative negligence and/or assumption of risk because Lead Plaintiff and the putative class knew, or in the exercise of reasonable care should have known, the risks inherent in investing in the securities at issue and they assumed the risk of a decline in the value of their investments.

### THIRTEENTH DEFENSE

This action is barred, in whole or in part, because Ellertson was not the actual or proximate cause of any injury to Lead Plaintiff or the putative class.

136

## FOURTEENTH DEFENSE

This action is barred, in whole or in part, to the extent there are intervening and superseding causes of alleged harm, if any, suffered by Lead Plaintiff or the putative class.

## FIFTEENTH DEFENSE

This action is barred, in whole or in part, to the extent Lead Plaintiff and the putative class would have purchased or chosen not to sell Everbridge common stock even with knowledge of the facts that Lead Plaintiff now allege were misrepresented or omitted.

## SIXTEENTH DEFENSE

This action is barred, in whole or in part, because Lead Plaintiff's and the putative class's damages, if any, are speculative and thus are not recoverable.

## SEVENTEENTH DEFENSE

This action is barred, in whole or in part, to the extent Lead Plaintiff and the putative class seek damages that exceed those permitted under the federal securities laws and other applicable laws.

## EIGHTEENTH DEFENSE

This action is barred, in whole or in part, because Ellertson did not know, and in the exercise of reasonable care could not have known, that any of the challenged statements contained an untrue statement of material fact or an omission of a material fact necessary to make the statements, in light of the circumstances under which they were made, not misleading.

## NINETEENTH DEFENSE

This action is barred, in whole or in part, to the extent that Lead Plaintiff's sophistication and experience precluded it, as a matter of law, from relying on or being materially misled by any of the statements or omissions alleged in the Complaint to be false or misleading.

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

## TWENTIETH DEFENSE

This action is barred, in whole or in part, because it is not maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure because the requirements of Rule 23 are not met.

## TWENTY-FIRST DEFENSE

This action is barred, in whole or in part, to the extent that Lead Plaintiff has failed to join necessary and indispensable parties under Federal Rule of Civil Procedure 19.

## TWENTY-SECOND DEFENSE

This action is barred, in whole or in part, because Lead Plaintiff and the putative class lack standing.

## TWENTY-THIRD DEFENSE

This action is barred, in whole or in part, because Ellertson acted in good faith and did not directly or indirectly induce any acts constituting the alleged violations and claims for relief.

## TWENTY-FOURTH DEFENSE

Lead Plaintiff's claim for relief under Section 10(b) of the Exchange Act is barred, in whole or in part, because Ellertson did not act with scienter.

## TWENTY-FIFTH DEFENSE

Lead Plaintiff's claim for relief under Section 10(b) of the Exchange Act is barred, in whole or in part, due to the absence of loss causation, including because any declines in the market price of Everbridge common stock during the purported class period were caused by factors other than the materialization of undisclosed risks and the disclosure of the supposed truth regarding the statements and omissions alleged in the Complaint to be false or misleading.

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

## TWENTY-SIXTH DEFENSE

Lead Plaintiff's claim for relief under Section 10(b) of the Exchange Act is barred, in whole or in part, because neither the "fraud-on-the-market" presumption nor the *Affiliated Ute* presumption of reliance applies in this action.

## TWENTY-SEVENTH DEFENSE

This action is barred, in whole or in part, because Ellertson is immune from liability from certain statements set forth in the Complaint under the safe harbor provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 § U.S.C. 77z-2, 15 U.S.C. § 78u-5, and/or the bespeaks caution doctrine, where certain statements were identified as forward-looking statements and accompanied by meaningful cautionary language and/or were made without actual knowledge of their falsity.

## TWENTY-EIGHTH DEFENSE

Lead Plaintiff's claim for relief under Section 10(b) of the Exchange Act is barred, in whole or in part, because Everbridge's securities were not traded on an efficient market.

## TWENTY-NINTH DEFENSE

This action is barred, in whole or in part, by the applicable statute of limitations, statute of repose, or other limitations period.

## THIRTIETH DEFENSE

This action is barred, in whole or in part, by equitable estoppel, waiver, unclean hands, and/or other equitable doctrines to the extent that at the time Lead Plaintiff acquired Everbridge common stock, Lead Plaintiff and members of the putative class knew or should have known of any alleged untrue statement of material fact in the offering documents or of any omission of a material fact required to be stated therein or necessary to make the statements therein not misleading.

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO

## THIRTY-FIRST DEFENSE

This action is barred, in whole or in part, because the putative class period is overbroad and, therefore, many of the putative class members are not entitled to any recovery.

## THIRTY-SECOND DEFENSE

This action is barred, in whole or in part, because Lead Plaintiff and members of the putative class have no compensable damages.

## THIRTY-THIRD DEFENSE

This action is barred, in whole or in part, because some or all of Lead Plaintiff and the members of the putative class would be unjustly enriched if they were permitted to obtain any recovery in this action.

## THIRTY-FOURTH DEFENSE

This action is barred, in whole or in part, because some or all of Lead Plaintiff and the members of the putative class have failed to mitigate damages and have failed to exercise due diligence in an effort to mitigate their damages (to which, in any event, they are not entitled).

## THIRTY-FIFTH DEFENSE

Any recovery for damages allegedly incurred by Lead Plaintiff, if any, is limited to the percentage of responsibility of Ellertson in proportion of the total fault of all persons, whether or not named as parties to this action, who may have caused or contributed to Lead Plaintiff's alleged damages, if any, pursuant to the proportionate liability provisions of the PSLRA, as codified at 15 U.S.C. § 78u-4(f)(3)(A).

## THIRTY-SIXTH DEFENSE

Any recovery for damages allegedly incurred by Lead Plaintiff, if any, is subject to offset in the amount of any benefits received by Lead Plaintiff and any putative class members through their investments.

## THIRTY-SEVENTH DEFENSE

Ellertson adopts and incorporates by reference herein any applicable affirmative or other defenses asserted or to be asserted by any of the other defendants to the extent that Ellertson may share in such a defense.

**WHEREFORE**, Ellertson respectfully requests that the Complaint be dismissed with prejudice and that the Court award Ellertson his costs and attorneys' fees and any other relief deemed just and proper.

DATED: November 10, 2025

Respectfully submitted,

/s/ *Virginia F. Milstead*_____
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Virginia Milstead (CA #234578)
2000 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (213) 687-5000
Fax: (213) 687-5600
virginia.milstead@skadden.com

James R. Carroll (*pro hac vice*)
Michael S. Hines (*pro hac vice*)
Rene H. DuBois (*pro hac vice*)
500 Boylston Street
Boston, MA 02116
Telephone: (617) 573-4800
Fax: (617) 573-4822
james.carroll@skadden.com
michael.hines@skadden.com
rene.dubois@skadden.com

*Counsel for Defendant Jaime Ellertson*

DEFENDANT JAIME ELLERTSON'S ANSWER TO THE SECOND AMENDED COMPLAINT
CASE NO. 2:22-CV-02249-FWS-RAO