Virginia Milstead (SBN 234578)
virginia.milstead@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (213) 687-5000
Fax: (213) 687-5600

James R. Carroll (*pro hac vice*)
james.carroll@skadden.com
Michael S. Hines (*pro hac vice*)
michael.hines@skadden.com
Rene H. DuBois (*pro hac vice*)
rene.dubois@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116
Telephone: (617) 573-4800
Fax: (617) 573-4822

*Counsel for Defendant Jaime Ellertson*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| SYLEBRA CAPITAL PARTNERS MASTER FUND LTD, SYLEBRA CAPITAL PARC MASTER FUND, AND SYLEBRA CAPITAL MENLO MASTER FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EVERBRIDGE, INC., DAVID MEREDITH, PATRICK BRICKLEY, and JAIME ELLERTSON,<br><br>Defendants. | Case No.: 2:22-cv-02249-FWS-RAO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT JAIME ELLERTSON'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Hearing Date: January 15, 2026<br>Time: 10:00 a.m.<br>Dept.  10D<br>Judge: Hon. Fred W. Slaughter<br><br>*Date Action filed: April 4, 2022*<br>*Second Amended Complaint Filed: October 15, 2025* |

DEFENDANT ELLERTSON'S MEM. OF POINTS & AUTHORITIES
ISO MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 2:22-CV-02249-FWS-RAO

## I. INTRODUCTION

This Court previously dismissed Lead Plaintiff's FAC and SAC against all defendants without prejudice on both falsity and scienter grounds. (ECF No. 79; ECF No. 109.) Lead Plaintiff chose not to further amend its complaint and instead appealed to the Ninth Circuit. Although Lead Plaintiff's allegations against Mr. Ellertson in its previous complaints were sparse, after the Ninth Circuit's decision, Lead Plaintiff's remaining allegations against Mr. Ellertson have been whittled down to near nonexistent. In striking allegations in the SAC that were no longer viable in light of the Ninth Circuit's decision, Lead Plaintiff deleted nearly two-thirds of the allegations that either mentioned or referenced Mr. Ellertson. (ECF Nos. 152; 150.2 (redline showing deletions).) The vast majority of the allegations in the operative SAC have nothing to do with Mr. Ellertson. What little remains of Lead Plaintiff's case against Mr. Ellertson does not state a claim for relief as a matter of law and should be dismissed now.

Lead Plaintiff's claims against Mr. Ellertson are predicated on the thinnest of allegations:

- Prior to the Class Period, Mr. Ellertson was the CEO of Everbridge, and during the Class Period he was the Chairman of the Board of Directors. (SAC ¶ 42.)[1]

- Prior to the Class Period, Mr. Ellertson discussed, and had a role in, Everbridge's growth and acquisition strategy. (SAC ¶¶ 10-11, 42, 61.)

- On the first day of the Class Period, Mr. Ellertson made the following statement on an earnings call: "*we've really integrated NC4 and Risk*

---

[1] The operative SAC incorrectly alleges that Mr. Ellertson was the Executive Chairman of the Board "during all relevant times." *Id.* Mr. Ellertson retired as an employee and Executive Chairman on December 31, 2020, and transitioned to Non-Executive Chairman on January 1, 2021, and remained in that role until he resigned on December 31, 2022. (*See* Everbridge Jan. 5, 2021 8-K available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001437352/000119312521002052/d102674d8k.htm at 2; April 13, 2023 Proxy Statement available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1437352/000095017023012741/evbg-20230413.htm at 67.)

*Center into our entire product offering*." (SAC ¶ 139.) This is the only statement made by Mr. Ellertson that Lead Plaintiff challenges.[2]

Lead Plaintiff fails to plead the requisite strong inference of scienter as to Mr. Ellertson with respect to that sole challenged statement. Its scienter allegations rely exclusively on vague and generalized statements from a single confidential witness (CW1) about purported unspecified issues *Everbridge* faced when integrating unidentified employees from unidentified acquisitions. But CW1 is not alleged to have had any connection to Mr. Ellertson whatsoever or ever spoken with him, and CW1 says nothing about *what* Mr. Ellertson knew and *when* he knew it. The few non-particularized statements CW1 makes about purported issues integrating employees have nothing to do with Mr. Ellertson's statement about integrating NC4's products into Everbridge's product offering:

| *Mr. Ellertson's Statement* | *CW1's Statements* |
|---|---|
| Q: "But if I look at your revenue guidance, it seems like you're guiding below the 30% mark organically, which will be below the commentary that Jaime spoke about earlier for sustainable 30% growth with M&A in addition to that. Are there any one-timers that we should be thinking about or just timing of revenue recognition that are impacting fiscal '20?" (SAC ¶ 138.)<br><br>A: "And as I said earlier, as we head into 2020, ***we've really integrated NC4 and Risk Center into our entire product offering***." (SAC ¶ 139.) | • "[T]here were too many new people being integrated into Everbridge after numerous acquisitions beginning in 2019." (SAC ¶ 140.)<br>• "[T]hese employees were spread across all different time zones, which made it difficult to get everyone on the same page and then, once progress was being made, another company would be acquired and Everbridge would have to go through the process all over again." (*Id.*)<br>• There were "problems integrating the acquired companies themselves into Everbridge's business." (*Id.*) |

---

[2] The Ninth Circuit's Order found that this statement was adequately alleged to be false at this stage because it was not a forward-looking statement protected by the Private Securities Litigation Reform Act of 1995 ("PSLRA")'s safe harbor or inactionable puffery. (ECF No. 116 at 5.) But the Ninth Circuit's Order did not specifically address whether Mr. Ellertson was adequately alleged to have made that statement with the requisite state of mind. Now that Lead Plaintiff has filed its operative SAC based on the Ninth Circuit's decision and the pleadings are closed, Mr. Ellertson seeks dismissal of that statement on lack of scienter grounds.

CW1's statements are grossly inadequate to support a strong inference of scienter against Mr. Ellertson. The SAC offers no other allegations of scienter as to Mr. Ellertson. And Lead Plaintiff's conclusory allegations seeking to hold Mr. Ellertson liable as a control person for statements made by others by virtue of his position as a then-director of the board are wholly inadequate. Mr. Ellertson therefore respectfully requests that the Court enter judgment dismissing Lead Plaintiff's Section 10(b) and 20(a) claims against him with prejudice.

## II. ARGUMENT

A motion for judgment on the pleadings under Rule 12(c) "is properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 980 (9th Cir. 1999). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6)." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).[3]

Granting judgment on the pleadings is appropriate where, as here, a complaint stating claims under Section 10(b) and Rule 10b-5 fails to satisfy the heightened pleading standards of Rule 9(b) and the PSLRA. *In re eHealth, Inc. Sec. Litig.*, No. 20-cv-02395, 2023 WL 6390593, at *2 (N.D. Cal. Sept. 28, 2023) (granting motion for judgment on the pleadings in putative securities fraud action for failure to allege falsity); *Heliotrope*, 189 F.3d at 980 (affirming judgment on the pleadings because complaint "failed to satisfy the pleading standards of" PSLRA); *Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125, 1134 (9th Cir. 2004) (affirming judgment on the pleadings under PSLRA for failure to adequately allege scienter).

---

[3] When ruling on a Rule 12(c) motion, courts must consider the "complaint in its entirety, as well as … documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021). The Court may take judicial notice of publicly filed SEC documents. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (affirming dismissal of securities fraud claim).

### A. The Section 10(b) Claim Against Mr. Ellertson Should Be Dismissed

To plead a claim under Section 10(b) and Rule 10b-5, Lead Plaintiff must allege: (1) a false or misleading statement; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014) (affirming dismissal). Scienter is a "a mental state embracing intent to deceive, manipulate, or defraud." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) (affirming dismissal and finding CW's generic statements insufficient to support scienter). Scienter requires particularized allegations raising a strong inference of intentional deceit or deliberate recklessness. *Id.* For an inference of scienter to be "strong," the factual allegations must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007).

The sole challenged statement made by Mr. Ellertson is part of an answer that he gave in response to an analyst's question in a February 18, 2020 earnings call about the company's revenue guidance. Lead Plaintiff alleges that Mr. Ellertson made this statement with scienter based solely on statements from CW1 (*supra* at 2; SAC ¶ 140). CW1's statements must "themselves be indicative of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) (affirming dismissal). They do not come even close.

CW1 does not allege *what* information Mr. Ellertson learned about these vague employee integration issues, *how* and *when* he knew it, or critically *how* they contradicted what he said. That is not surprising: CW1 is not alleged to have ever reported to Mr. Ellertson, interacted with him or <u>even spoken with him</u>. CW1 has no basis to know anything about Mr. Ellertson's state of mind with respect to the challenged statement. *See Cheng v. Activision Blizzard, Inc.*, No. CV 21-6240, 2023 WL 2136787, at *8 n.4 (C.D. Cal. Jan. 22, 2023) (CW allegations insufficient where they "do not establish exactly what [defendant] knew, nor when he knew it, to allege

that [he] knew his predictions were false when he made them."); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014) (affirming dismissal and finding no scienter where a link was missing between the confidential witnesses and the defendant). CW1 was allegedly several reporting levels removed from Defendants Brickley and Meredith and the sole allegations of purported interactions between CW1 and those executives relate to the xMatters acquisition, not NC4. (SAC ¶ 45.) None of the other confidential witnesses mention Mr. Ellertson. Like CW1, neither CW2 nor CW3 are alleged to have reported to, interacted with or even spoken with Mr. Ellertson, and the statements attributed to them concern different acquisitions (xMatters and RedSky), not NC4. (SAC ¶¶ 46-47.)

CW1's statements also cannot support an adequate allegation of scienter against Mr. Ellertson because they bear no connection to what he said. Mr. Ellertson stated in response to a question about revenue guidance that "we've really integrated NC4 and Risk Center *into our entire product offering.*" Mr. Ellertson was plainly referring to Everbridge having integrated the products acquired through the NC4 acquisition into the products offered for sale by Everbridge. (SAC ¶ 139.) There is nothing inconsistent between CW1's generic statements about purported issues integrating unidentified "*people*" and unspecified "*employees*" and Mr. Ellertson's specific statement about integrating NC4's products into Everbridge's *"product offering." See Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) (affirming dismissal and finding that allegations that company faced operational problems integrating employees after an acquisition were insufficient to support scienter regarding statements made about revenue growth).

Even if CW1's few generalized statements could be linked to Mr. Ellertson's statement (and they cannot), they are entirely devoid of any particularized facts that would support any inference of scienter, let alone a strong one. For example, which "people" or "employees" were being integrated? What does it mean that it was "difficult to get everyone on the same page"? When did these employee integration

issues occur and for how long? Which acquisitions were allegedly facing these purported employee integration problems? Was the NC4 acquisition even one of them? What "problems" of integration with respect to NC4 were there? CW1 does not say. *See Fadia v. FireEye, Inc.*, No. 5:14-cv-05204, 2016 WL 6679806, at *13 (N.D. Cal. Nov. 14, 2016) (rejecting CWs' generalized statements about integration issues, such as "the acquisition created 'a lot of confusion'" and the "loss of channel business was 'a very big deal'" as insufficient to satisfy the scienter requirement because they failed to allege concrete allegations with explanations). And nowhere does the SAC allege any facts about any integration issues specific to the NC4 acquisition. Instead, Lead Plaintiff's allegations about the NC4 acquisition are relegated to two paragraphs that provide factual background about the structure of the acquisition and Everbridge's motivation for acquiring NC4. (SAC ¶¶ 69-70.)

The operative SAC offers <u>no</u> other allegations of scienter as to Mr. Ellertson. (SAC ¶¶ 221-239.) For example, there are no allegations of witnessed discussions or "inconsistent contemporaneous statements or information (such as internal reports) made by or available to [Mr. Ellertson]." *Crihfield v. CytRx Corp.*, No. CV 16-05519, 2017 WL 2819834, at *16 (C.D. Cal. June 14, 2017) (dismissing case). Because Lead Plaintiff has not adequately pled a strong inference of scienter as to Mr. Ellertson's sole challenged statement as a matter of law, the Court should enter judgment dismissing Lead Plaintiff's Section 10(b) claim with prejudice.

### B. The Section 20(a) Claim Against Mr. Ellertson Should Be Dismissed

Section 20(a) imposes liability on a person who "controls any person liable under any provision of this chapter or any rule or regulation thereunder." 15 U.S.C. §78t(a). To prevail on its Section 20(a) claim against Mr. Ellertson, Lead Plaintiff must allege (1) "a primary violation of federal securities law" and (2) that Mr. Ellertson "exercised actual power or control over the primary violator." *Zucco*, 552 F.3d at 990. Lead Plaintiff's Section 20(a) claim against Mr. Ellertson must be

dismissed because there are no factual allegations to support the bare assertion that Mr. Ellertson was a control person under Section 20(a).

Lead Plaintiff cannot allege that Mr. Ellertson was a control person solely by relying on his status as a then-board director.  Yet that is precisely what it does.  (*See* SAC ¶ 242 ("Defendants Meredith, Brickley, and Ellertson because of their positions of control and authority as senior executive officers and directors of Everbridge, were able to and did control the content of Everbridge's SEC filings, press releases, and other public statements issued by or on behalf of Everbridge during the Class Period"); *see also* ¶ 240 ("The Individual Defendants, by virtue of their high-level and controlling positions at Everbridge, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information about the Company, its business, operations, internal controls, growth, financial statements, and financial condition as alleged herein.").)[4]  Those boilerplate status-based allegations are wholly insufficient to plead Section 20(a) control.  *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007) (dismissing Section 20(a) claims and finding similar boilerplate allegations based on high-level positions insufficient to state a claim for control person liability); *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1101 (C.D. Cal. 2008) (generalized allegations that defendants had direct and supervisory control of operations are insufficient).

Everbridge's public SEC filings further dispel any suggestion that Mr. Ellertson controlled the content and dissemination of any challenged statement.  For all but one conference early in the Class Period, Mr. Ellertson did not participate in any earnings

---

[4]  Lead Plaintiff's allegation that Mr. Ellertson was "responsible for the Company's M&A" in his role as Executive Chairman of the Board relies on a selective quotation and mischaracterization of Mr. Ellertson's pre-Class Period statement about his role at the company at that time.  (SAC ¶ 42.)  Mr. Ellertson did not say that he was "responsible" for the day-to-day operations of integrating acquisitions and merely stated that his "day job is M&A" and he is "just doing the M&A stuff."  (*Id.*)  Lead Plaintiff elsewhere alleges that Defendant Meredith as CEO was responsible for the Class-Period acquisitions.  (SAC ¶¶ 65-66, 69.)

or conference calls in which Everbridge or the company's then-executive officers made the challenged statements, and Mr. Ellertson did not appear on or sign any SEC filing or press release containing a challenged statement. (*See* ECF Nos. 85.15-17, 85.21-22.) This dooms Lead Plaintiff's Section 20(a) claim against Mr. Ellertson.

### III. CONCLUSION

Mr. Ellertson respectfully requests that his Motion for Judgment on the Pleadings be granted and all claims asserted against him be dismissed with prejudice.

DATED: November 19, 2025

Respectfully submitted,

/s/ Virginia Milstead_____
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Virginia Milstead (CA #234578)
2000 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (213) 687-5000
Fax: (213) 687-5600
virginia.milstead@skadden.com

James R. Carroll (*pro hac vice*)
Michael S. Hines (*pro hac vice*)
Rene H. DuBois (*pro hac vice*)
500 Boylston Street
Boston, MA 02116
Telephone: (617) 573-4800
Fax: (617) 573-4822
james.carroll@skadden.com
michael.hines@skadden.com
rene.dubois@skadden.com

*Counsel for Defendant Jaime Ellertson*

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1**

The undersigned, counsel of record for Defendant Jaime Ellerston certifies that this brief contains 2,580 words, which complies with the word limit of L.R. 11-6.1.

Dated November 19, 2025            By:   /s/ Virginia Milstead
                                          VIRGINIA MILSTEAD