# EXHIBIT A

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 15 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| SYLEBRA CAPITAL PARTNERS MASTER FUND LTD; SYLEBRA CAPITAL PARC MASTER FUND; SYLEBRA CAPITAL MENLO MASTER FUND, individually and on behalf of all others similarly situated,<br><br>Plaintiffs - Appellants,<br><br>v.<br><br>EVERBRIDGE, INC.; DAVID MEREDITH; PATRICK BRICKLEY; JAIME ELLERTSON,<br><br>Defendants - Appellees. | No. 24-2474<br><br>D.C. No. 2:22-cv-02249-FWS-RAO<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Fred W. Slaughter, District Judge, Presiding

Argued and Submitted May 20, 2025
Pasadena, California

Before: GRABER, WARDLAW, and JOHNSTONE, Circuit Judges.

Sylebra Capital Partners Master Fund Ltd., Sylebra Capital Parc Master

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Fund, and Sylebra Capital Menlo Master Fund (collectively, "Sylebra") appeal the dismissal of their putative class action against Everbridge, Inc. ("Everbridge"), David Meredith, Patrick Brickley, and Jaime Ellertson.  In its Second Amended Complaint ("SAC"), Sylebra alleges that Everbridge and its officers gave false and misleading information about its acquisition strategy, growth projections, and integration efforts, in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5.  *See* 15 U.S.C. §§ 78j(b), 78t(a); 17 C.F.R. § 240.10b-5.  The district court dismissed the SAC under Federal Rule of Civil Procedure 12(b)(6), ruling that the SAC inadequately alleged scienter and falsity.  We have jurisdiction under 28 U.S.C. § 1291.  Reviewing de novo, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009), we reverse and remand.

1.     Sylebra adequately alleged scienter as to Everbridge's statements concerning its integration of acquired companies and its revenue estimates.  Under the Private Securities Litigation Reform Act ("PSLRA"), a complaint must "state with particularity facts giving rise to a strong inference that [each] defendant acted with [scienter]."  15 U.S.C. § 78u-4(b)(2)(A).  An inference is "strong" if a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007).

Relying on confidential witness ("CW") statements, the SAC alleges that

Everbridge and its officers (1) told investors that integration of its acquisitions was going well or that integration was completed when, in fact, the company was facing large hurdles that stood in the way of integrating its acquisitions and (2) that Defendants understated revenue contribution from an acquisition to hide slowing growth. CWs 1, 2, and 3 are described with "sufficient particularity to establish their reliability and personal knowledge" of Everbridge's integration efforts. *Zucco Partners*, 552 F.3d at 995. The job titles and experiences of CWs 1, 2 and 3 demonstrate that they were in "a reliable position to observe" Everbridge integrate its acquisitions. *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 940 (9th Cir. 2023). For example, CW-1's "responsibilities included work related to Everbridge's mergers and acquisitions ("M&A") process," CW-2 "worked as part of the integration team during the xMatters acquisition," and CW-3 "was involved in the vetting" of a target company. CWs 1, 2 and 3 also describe widespread issues that the company was having integrating its acquisitions, which contradict the company's public statements about its acquisitions.

"[W]e examine a confidential witness's hearsay report to determine if it is sufficiently reliable, plausible, or coherent." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1208 (9th Cir. 2016) (quotation marks and citations omitted). Here, we credit the allegations attributed to CW-1 because they form a plausible and coherent narrative. CW-1 was "in a position to be personally knowledgeable,"

3

*Zucco Partners*, 552 F.3d at 996, about the forecasts because she "sent weekly or bi-weekly emails to Brickley and Meredith with the modeling in the lead-up to the acquisition." CW-1 also explained in detail that the company forecasted to its investors that the xMatters acquisition would contribute revenue of $9-11 million dollars in 2021, when Everbridge's internal estimates showed that the contribution would actually be $20-25 million dollars. When CW-1 expressed concerns about the forecasts to Meredith and Brickley, Meredith explained that "the discrepancy in figures was to 'buffer' the declines in Everbridge's organic revenue." Reviewed holistically, *Tellabs, Inc.*, 551 U.S. at 326, the SAC suggests that issues with integration were widespread and that the company's officers misstated revenue estimates to conceal these issues. We therefore conclude that—as to Everbridge's statements concerning post-acquisition integration and revenue estimates—the inference that Defendants intentionally or recklessly misled investors is at least as compelling as any competing inference.

However, we agree with the district court that the SAC fails to allege scienter adequately with regard to Everbridge's statements about its general acquisition strategy and its motivations for acquiring one2many, Techwan, SnapComms, Connexient, CNL Software, RedSky, and xMatters. As the district court explained, the SAC's allegations regarding these statements are too conclusory to support a strong inference of scienter.

24-2474

2.      Sylebra also adequately alleged falsity.  The district court correctly found that "certain statements" were forward-looking statements protected under PSLRA's safe-harbor provision or inactionable puffery, such as Everbridge's statements that it expected "continued strong performance," that it was "well down the path of rightsizing and integrating that business," and that "integration is . . . going great."  But some of the alleged statements neither fell within the safe harbor nor were puffery.  Everbridge repeatedly touted its past success integrating its acquisitions, stating "we've really integrated NC4 and Risk Center into our entire product offering," "we now truly can be that unified enterprise-wide operating system," "they've already been integrated," "we've locked up key hires, and we're retaining them," "Everbridge's new Digital Operations Platform represents the seamless integration of . . . Everbridge and xMatters," and "we've got that integrated now . . . We've integrated the people . . . the sales . . . [and] the funnels." Each of these statements relays "past or current facts."  *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017).  When read in combination with the SAC's other allegations, "[t]hese statements affirmatively created an impression of a state of affairs that differed in a material way from the one that actually existed." *Id.* at 1144 (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)) (internal quotations, citations, and brackets omitted).  "[O]nce defendants choose to tout positive information to the market, they are bound to do

so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1009 (9th Cir. 2018) (quotation marks and brackets omitted).  And though Everbridge's statement "anticipat[ing] the partial year contribution to 2021 revenue" from xMatters as "approximately $9-11 million" was forward-looking, the SAC plausibly alleges, based on CW-1's report, that the statement "was made with actual knowledge . . . that the statement was false or misleading," such that the PSLRA's safe harbor would not apply.  15 U.S.C. § 78u-5(c)(1)(B)(i).

**REVERSED** and **REMANDED** for further proceedings.