# EXHIBIT B

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE FRED W. SLAUGHTER, JUDGE PRESIDING


SYLEBRA CAPITAL PARTNERS     ) CERTIFIED TRANSCRIPT
MASTER FUND, LTD., et al.,   )
                   Plaintiffs, )
     vs.                     )
                             )  CV-22-02249-FWS
EVERBRIDGE, INC., et al.,    )
                             )
                   Defendants. )
----------------------------)



REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

September 25, 2025



SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(612) 804-8655

APPEARANCES OF COUNSEL:

For the Plaintiffs:

MICHAEL H. ROGERS
LABATON KELLER SUCHAROW, LLP
140 Broadway
New York, NY  10005-1108
(212) 907-0814

For Defendants EVERBRIDGE, INC.; DAVID MEREDITH;
                and PATRICK BRICKLEY:

MARK EDWARD MCKANE
KIRKLAND & ELLIS, LLP
555 California Street, 27th Floor
San Francisco, CA  94104
(415) 439-1473

JORDAN D. PETERSON
KIRKLAND & ELLIS, LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

For Defendant JAMIE ELLERTSON:

VIRGINIA F. MILSTEAD
SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
2000 Avenue of the Stars
Los Angeles, CA  90067
(213) 687-5000

SANTA ANA, CALIFORNIA; THURSDAY, SEPTEMBER 25, 2025; 9:11 A.M.

THE CLERK:  Calling Item No. 1, CV-22-02249-FWS, Sylebra Capital Partners Master Fund, Ltd., et al., versus Everbridge, Inc., et al.

Counsel, please state your appearances.

MR. ROGERS:  Good morning, Your Honor.  Michael Rogers, Labaton Keller Sucharow, LLP, on behalf of the lead plaintiff, Sylebra Funds.

THE COURT:  Thank you.

MR. MCKANE:  Good morning, Your Honor.  Mark McKane and Jordan Peterson of Kirkland & Ellis on behalf of Everbridge, Mr. Meredith, and Mr. Brickley.  Mr. Peterson will be handling today.

THE COURT:  All right.  Thank you.

MS. MILSTEAD:  Good morning, Your Honor.  Virginia Milstead, Skadden Arps Slate Meagher & Flom, on behalf of Jamie Ellertson.

THE COURT:  All right, thank you very much.  And good morning again to everyone.

First, I want to thank the parties for their joint status report.  I appreciate all the information in it and also the attached worksheet, so that is all the information I really needed to have.  I do see that the issue is what is the operative Complaint?  The Court plans on issuing a

scheduling order, but I see that in that scheduling order, you have a deadline to stipulate to allegations stricken by the Ninth Circuit order and to an operative Complaint is what I would add.

So what is coming to this is we're coming out of the remand.  We need to know what the operative Complaint is.  It is the roadmap, the sheet music, the script, that the whole trial is going to be based upon, the whole case. So I want to make sure that this is something the parties are also taking care of because, everyone, I know that there is going to be advocacy.  I expect to see excellent advocacy on both sides.  But at the same time, I would expect the parties to be able to do this themselves.  I would expect that.  I understand that you want to be an advocate, and you want to have it your way.  But at the same time, the rulings are the rulings.  You're all officers of the court, and this is not the time to do try to do slight of hand to say, well, this really is an active cause of action or this isn't.

So I understand the arguments that I'm seeing.  So what you'll see is there will be a deadline to stipulate to allegations stricken by the Ninth Circuit order and, two, to an operative Complaint.  I'm going to footnote that, too. And my footnote is going to say something to the effect of if the parties are unable to stipulate to an operative Complaint by October 8, 2025, the parties shall file:  (1) a

clean version of what the respective party believes is the operative Complaint; (2) a separate redlined version of the Second Amended Complaint demonstrating the differences between the Second Amended Complaint in its original form at Docket 84 and what the respective party is arguing is the operative Complaint; and (3) a five-page brief with case law supporting their version of the operative Complaint on or before October 16, 2025.  And then the Court may schedule a further in-person hearing if necessary to resolve the issue of what constitutes the operative Complaint.

So again, on remand, I expect that the parties would kind of see what the landscape looks like.  I'm not sure how many disputes there are, if it's a minor dispute or not.  I just can't tell from the status report.  I see what's written there, but sometimes what's written may be a little bit different.  But I do appreciate that the parties are looking to work that out, but that will be in my plan.

As to the dates, the Court will look to the dates. As the parties know, the Court possesses inherent control of its own docket and calendar.  I will try to go with the parties' dates, but if there's something that doesn't work, the Court will try to make these to be viable dates, because what I want the parties to know is you're picking these dates now.  This is what the Court is looking to have as your dates.  I know how hard it is as an attorney to

coordinate your own schedule, let alone your witnesses' schedules, all the different things, so I want you to have a pretty viable roadmap.

Now, just know there can be changes.  If I have a criminal matter -- I have several RICO cases -- they will take precedent over your case, but I'm trying to have it so you have an idea of what the schedule will look like.  And the Court will always remind you that, you know, I'm picking these dates because I think they're going to work for you. If it doesn't work for the Court, then I have to make modifications, like on a criminal case.

Also, though, if you request continuances, stipulations, stipulating between the parties alone is not going to be enough.  You're going to have to give me good cause.  I know that's very fundamental.  I'm the kind of person that if I'm walking down the street and somebody says look both ways before you cross, I appreciate that.  Some people don't like being told kind of the fundamental things, but it's just a friendly reminder.  If you are a prosecutor in a case, I might say you know you can't comment on the defendant's silence.  It's very common.  So just note if I ever say anything, it's not condescending.  It's only to try to be helpful because I want to value your time.

All right, so that's what I see in terms of the scheduling order.  I don't have any really further

questions, but I do appreciate all the work that was put into your status report.

Do the parties have any questions for me?

MR. ROGERS:  The only question I would have, Your Honor, is will the Court be issuing an order with the dates you just recited in terms of the stipulation on the 8th and the potential briefing on the 16th?

THE COURT:  Absolutely.  I think I did mention that, that this is what's in what I propose is going to be the written order.  It will be a scheduling order, but I think I even said it's footnoted.  So, yes, that will be issued in the next day or so or maybe today.

MR. ROGERS:  Then I have no further questions unless the Court has something it would like me to answer, Your Honor.

THE COURT:  No.  When I have a meeting with the parties, I'm always so excited to go into a detailed pretrial hearing, but it's a little early for that right now.  You know, I just finished trial last week, so I'm still in trial -- I'm always in trial mode.  That's why I'm here.  But just expect that when we do or if we do get to the point of trial, that it will be -- I'll say this.  Once we have the dates, your schedule should be clear around that trial because we may have multiple hearings.  If we have Daubert hearings, you know, your witness is going to have to

come in.  Oftentimes, we do have that.

So I'm telling you that as far in advance so you can -- when you're picking these dates, these are real dates.  Don't, for example, schedule depositions and say I can't make it.  Another thing is all of our hearings now are in person, so be ready for them to be in person.  You know, when it's getting closer to around the trial, between the documents being filed for trial and the actual trial date, all that period in there, there may be multiple hearings.  I think in some cases we've had like eight pretrials because it's detailed.

I have seen it in other places, whether it be a criminal or a civil trial, where it's just a pretrial the Friday before your trial date.  That generally leads to a lot of sidebars, and I want to value the jury's time.  I also want to value your time.  I'm going to be setting reasonable time limits, too.  If you have a lot of sidebars, that's going to equate and be worked into your reasonable trial time, and that cuts against it.

So again, another thing I'll tell you is meet and confer on everything that you bring before the Court.  You know, we don't want to have it where you're filing motions, and then the case is delayed because, well, I was just really busy.  I was coming off vacation, and, you know, I left a message or I sent an e-mail, so, you know, that's why

I didn't really talk to them about it.  That's not going to be acceptable.  I encourage you all just like the rule says if you can even -- I don't know if it's viable here because it's not like you're a prosecutor or a D.A. and a public defender or something that see each other every day, but you need to talk about the case.

Again, as you're going through this -- I'm not trying to give advice, but you're all just officers of the court, and you're experienced.  You know what the other side wants to do.  And you know what the other side wants to do.  It is what it is.  There's a lot that you can resolve by just talking about it.  But those things you can't, that's why I'm here, and I'm ready to do it.  So hopefully, that encourages you all.

Also, I see your dates, and I expect that if there is any change to those dates, let me know as soon as possible, okay.  But talk to each other.  I'm going to invite you after today's hearing -- this is a great courthouse.  You've probably been in different courthouses, all of you.  I've been in a lot of courthouses.  This is one of the nicest.  And we have a great attorney meeting room here next to 10A.  The third floor, have you all been to the deck before, the third floor deck?  It's kind of nice, all right.  And then you have the orange trees in the front that are especially nice in the spring.

So again, so much can be resolved by meeting in person, so you're not reading a text message saying is that a nice "the" or a mean "the"?  You can just talk.  You know what the other side wants to do.  Imagine if we were in a JAG court and I said, you know what, I'm switching you, both sides.  You now are on the other side.  Think of it that way, you know, because the case is going to go forward, and I think that leads to collegiality.  Respect begets respect.

So I say this because I have the time to see you. We don't have a lot of scheduling hearings here.  The schedule just gets issued.  But again, I'm looking forward to working with everyone.  I appreciate everyone being here. Thank you so much for the call indicating -- or e-mail that you weren't going to be able to make it here on time. Things happen.

I'm always ready to tell a story.  There was one hearing that I had where it was -- I left three hours early for the hearing, and it probably was going to take me about 30 to 40 minutes to get there, but on that day, it was L.A. rain weather.  So a quarter inch of rain with, you know, a storm watch.  You know, not for the rest of the country, but it was a big deal.  And a fuel truck spilled about a mile in front of me, you know, one of the tankers you see.  So it was one of those times where I had to sit on the freeway and I could have had a lawn chair and just got out because you

11

couldn't do anything.  They had to bring the truck and bring the sand and all that.  Well, I got there 15 minutes early because it took two hours and 45 minutes.

Just always remember that, especially during trial.  Plan for the worst of traffic.  See, I'm getting into my pretrial speech now.  7:00 is when the courtroom doors -- or our courthouse doors open.  In trial, it will be an 8:00 trial.  We'll be here at least at 7:45.  We go 8:00 to 4:00 with a one-hour break for lunch, not the hour and a half you see in state court.

So I'm going to stop now because I can see I'm feeling more and more excited like are we ready?  Let's just do the trial now.  Let's just go.  But I say that I appreciate everyone's smiles on that.

Anything further from the plaintiff before I turn to the defense?

MR. ROGERS:  No, Your Honor.  Thank you very much.

THE COURT:  And thanks for taking the time.

Anything further?

MR. PETERSON:  Judge, there's just one issue we wanted to raise that was open in the status report, which is the trial date itself.  And we're sort of amenable to having you hold our feet to the fire and having a trial date.  I think one of our concerns was given the level of complexity we anticipate with discovery -- I mean, plaintiffs are

12

already raising the potential of going above the limits on depositions and interrogatories.

THE COURT:  A little slower for the court reporter.

MR. PETERSON:  Oh, apologies.

We're just concerned that setting a trial date that's sort of less than two months from the time we hear a summary judgment motion doesn't allow a lot of turnaround time for actually preparing for trial, incorporating the Court's rulings, and then getting the pretrial filings ready and sticking with the trial date.  And the concern being if we ask the Court for ten or 15 trial days, which I think is what's in the status report, and then we sort of jam the Court with that and are not able to make that turn, it's going to be hard to look into the future and find another window for that kind of trial date.

THE COURT:  I mentioned earlier that the trial court possesses the inherent power to control its own docket and calendar.  I will take that into account knowing what I've seen in scheduling orders in the past.  Again, I'm not the most experienced, but I have sat in several trials as an attorney and as a judge in state and federal.  And so I do see scheduling orders that sometimes -- I'm not evaluating this one -- don't seem to be viable or realistic.  I'm going to set the dates that I think will allow that.

13

I've seen one where I think the summary judgment date was -- or the hearing date was maybe like a week before trial or something.  I mean, I'm not going to accept that.  I'm going to make the change.  You know, we have kind of the standard in the Court's worksheet on how many weeks before each event is.  I look at that, but I also adopt what the Court thinks is the appropriate time frames given to each individual case.

Also, on that ten to 15 days, once we get ready for the trial and the pretrials, I am going to issue reasonable time estimates.  I have seen -- now, we'll go back to me as an attorney.  I thought one case was going to be about a ten-day case.  A judge in Los Angeles thought differently.  And I will tell you, the judge in Los Angeles was correct, and my ten days became three days very efficiently.  It was super efficient.  I didn't know I could be that efficient.

And so I'm not saying that's going to happen here, but I'll hear everything.  Maybe it becomes a 20-day case.  Maybe it becomes a five-day case.  I'm not sure.  But I know a trial is not timed to -- I've heard this.  Well, I'm just exploring.  That's your deposition time.  This is trial.  You've been waiting to get to that finish line.  It's time to go.  Ask your questions.  Be efficient, you know.  Well, I was just curious about that.  What element is that going

to?  My curiosity element.  You know, that's not what we're looking for.

So I do understand what's been suggested. Ultimately, I will make the call, but it can be adjusted because, again, I want to hear from you.  It is very important that I know something that you already know.  The Court relies on you for information.  This is not a Court -- I've seen this because I took some comparative law reading sometime where I can be a grand inquisitor.  I can go out and start investigating the case myself.  So if you don't put things in your papers, I may not understand or know about it.  I try to know as much as possible.  I try to be very, very engaged, and listen, and care.

Here's something.  Since I was talking about basketball earlier, I remember what a coach once told me, listening.  Everyone needs to listen here.  Listening means hearing it, understanding it, and doing it.  So again, some people just hear it, and it goes right out the other ear. I'm listening.

Also, for questions, when I ask a question, they're not loaded questions.  They may sound loaded because you may be defensive.  I'm not trying to make you defensive. I'm just trying to get the information.  If I ask you what color is your tie, purple would be your answer I think if my eyes are still working correctly.  It's not maybe there's

15

something wrong with my tie, or maybe he's asking something different about the lunch hour.  No, I'm just asking about the tie.

So again, honest, respectful communication is always the way to go because I expect there will be much litigation in this case.  This is the time to talk about that, and I look forward to that.  And I'll always be talking with the most positivity because I want everyone's experience here to be great.  All right?

MR. PETERSON:  Appreciate it.  Thank you, Your Honor.

THE COURT:  Okay.  Anything else I can do to help you?

MR. PETERSON:  No, nothing else.  Thank you.

THE COURT:  All right.

Anything else from the plaintiff?

MR. ROGERS:  No, Your Honor.  Thank you very much.

THE COURT:  It's been a real pleasure seeing everyone today.  And if there's anything the Court can help the parties with, let me know but, again, after you've had nice conversations.  Maybe have a lunch.  Or if you're in different cities or different offices, you can have a lunch where you talk on the phone and eat together kind of like watching a ballgame together, you know, but you're not there together, you know.  There's a lot of just interaction that

can help this.  And again, that doesn't stop you from litigating with great advocacy.  But again, there is that civility that I think will aid in your work product.

All right, anything else?

MR. ROGERS:  No, Your Honor.  That's all for the plaintiffs.

MR. PETERSON:  No, Your Honor.

THE COURT:  Everyone have a great day.  Please be well, happy, healthy, and safe.  We're in recess.  Thank you.

MR. ROGERS:  Thank you, Your Honor.

MR. PETERSON:  Thank you, Your Honor.

(Whereupon, the proceedings were concluded.)

*   *   *

17

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  November 18, 2025

/s/   Sharon A. Seffens  11/18/25
_____
SHARON A. SEFFENS, U.S. COURT REPORTER